Stark et al v. Seattle Seahawks et al　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Doc. 2

```
_____ FILED      _____ ENTERED
_____ LODGED  _____ RECEIVED

       NOV 29 2006       DJ

              AT SEATTLE
       CLERK U.S. DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
BY                             DEPUTY
```

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRED and KATHLEEN STARK, a married couple,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>THE SEATTLE SEAHAWKS, FOOTBALL NORTHWEST, LLC, a Washington limited liability company, FIRST & GOAL, INC., a Washington corporation, THE WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a Washington municipal corporation, and LORRAINE HINE, in her capacity as chair of the Washington State Public Stadium Authority board of directors,<br><br>　　　　　Defendants | Case No. **CV6 1719 JLR**<br><br>DECLARATION OF FRED STARK<br><br>06-CV-01719-DECL |

　　I, Fred Stark, swear under penalty of perjury under the laws of the State of Washington, to the following:

　　1.　　I have been a lifelong football fan. My wife, Kathleen, and I have been Seattle Seahawks season ticket holders since 1991.

DECLARATION OF FRED STARK - 1

ORIGINAL

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700　FAX (206) 623-8717

Dockets.Justia.com

2.      Prior to the 2005 season, neither I nor Kathleen had ever been subjected to a pat-down search at a Seahawks game, or any other NFL football game.

3.      On or about August 22, 2005, Kathleen and I attended a Seahawks pre-season home game against the Dallas Cowboys. Upon arriving at the stadium, we were surprised to learn that, as a condition of our entry to the game, we were required to submit to a pat-down search. We verbally objected, but ultimately submitted to the pat-down as our only option to attend the game. Upon inquiry, we were given no definitive answers to our questions. Only that the pat-downs were required under a new NFL policy instituted to prevent terrorist suicide bombers from detonating a hidden vest bomb. This was the first NFL game at which we were subjected to a pat-down search.

4.      On or about September 2, 2005, we attended a second Seahawks pre-season home game against the Minnesota Vikings. We again lodged our objection, but ultimately submitted to a pat-down as a condition of our entry to the stadium.

5.      On September 18, 2005, we attended our first regular season Seahawks home game for the 2005 regular season. Upon arriving at the Stadium, we discovered that the NFL's pat-down policy was being enforced at Seahawks home games during the regular season as well as the pre-season at Qwest Field (the "Stadium").

6.      At the entrance to the Stadium, we were stopped by a security officer and informed that we were required to submit to a pat-down search as a condition of our entry to the Stadium. We verbally objected, but ultimately submitted to a pat-down as our only option to gain admittance to the game.

7.      We attended Seahawks 2005 regular season and post-season home games at the Stadium on September 25, October 16, October 23, November 13, January 14, 2006 and January 22.

DECLARATION OF FRED STARK - 2

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

8. On February 5, 2006, we attended Superbowl XL at Ford Field, in Detroit, Michigan. Although we were required to pass through metal-detectors similar to the kind used at airports, we were not patted-down and did not observe any other ticket holders being patted down.

9. During the 2006 pre-season and current regular season, we attended home games at the Stadium on August 12, August 31, September 17, September 24, October 22, November 6, November 12, and November 27.

10. Pat-downs at these home games have ranged from the non-existent, to a highly intrusive, offensive, and humiliating full-body frisking.

11. At one Seahawks home game on November 13, 2005, during a heavy downpour, we were not subjected to a pat-down, nor did we observe any other ticket holders being patted-down. Many people were wearing ponchos or other bulky wet-weather protection. Had the stadium security officers conducted the pat-down searches under these conditions, large crowds would have been forced to stand in the rain before being permitted entry to the Stadium.

12. At another Seahawks home game on July 31, 2006, I verbally objected to being patted-down and asked to speak with the security officer's supervisor. Two supervisors were called to discuss the situation. Rather than submitting to yet another pat-down, I removed my shirt to show that I was not concealing anything. The original security officer whisked me through the entrance without any further search.

13. At the other end of the spectrum, at a home game on October 16, 2005, I was subjected to a highly intrusive, offensive and humiliating full-body frisking. A security officer ran his hands down my sides, reached around me and grasped my buttocks. He then felt both my arms and across my chest. Then, he moved his hands towards my groin area, where he found and handled the inhaler in my pant pocket that I carry to treat my asthma. The security

DECLARATION OF FRED STARK - 3

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

officer then placed both of his hands around my left thigh, running them down to my sneaker top, which he also felt thoroughly. After this episode and other pat-downs, I have been left feeling physically ill and emotionally unsettled for up to 24 hours afterwards.

14. Except as described above, Kathleen and I were subjected to upper body pat-downs at every Seahawks home game we attended in 2005 and 2006. Many have been cursory, unlikely to detect well-concealed contraband. Each time, we verbally objected, but ultimately submitted to the searches in order to attend the game.

15. Kathleen and I intend to continue attending Seahawks home games for the duration of the 2006 season, and intend to renew our season tickets in the future. I understand that if we do not renew our season tickets each year, we forfeit our right to purchase future season tickets and would be put on a waiting list.

16. I feel strongly that the pat-down searches at the Stadium are an unnecessary and unwarranted intrusion into my right of privacy, and I strenuously object to being treated like a criminal simply because I choose to attend a professional football game.

DATED this 27th day of November, 2006 in Seattle, Washington.

_____
FRED STARK

DECLARATION OF FRED STARK - 4

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700  FAX, (206) 623-8717