1    24.9    Further Disputes

2        The Parties agree that any Disputes which arise during the Term out of a

3    settlement agreement or arbitrator's determination shall be resolved exclusively by the

4    procedures set forth in this Section 24.

5

6    SECTION 25    CONFIDENTIALITY; PUBLIC DISCLOSURE OF INFORMATION

7        PSA shall keep confidential those matters which are exempt from public

8    disclosure under the Act, other applicable Laws, and this Section.

9    25.1    Nondisclosure of Exempt Public Records

10        PSA acknowledges that certain FGI Documents may be exempt from public

11    disclosure under RCW Chapter 42.17, RCW Chapter 19.108 or other applicable law.  Section

12    119 of the Act provides that PSA may refuse to disclose financial information on FGI, the Team,

13    concessionaires and sublessees.  In addition, Section 120(1)(jj) of the Act provides that financial

14    and commercial information requested by PSA from any Person that leases or uses the Project is

15    exempt from public inspection and copying.

16        25.1.1    Before providing PSA with any documents or other materials or

17    information of its own or of any other Person ("FGI Documents"), FGI shall determine based on

18    the good faith advice of its legal counsel whether FGI believes particular FGI Documents are

19    exempt or are permitted to be exempt from public disclosure ("Exempt Information").  FGI shall

20    endeavor to mark Exempt Information as "confidential" or with another mark of similar import

21    before transmitting Exempt Information to PSA.

22        25.1.2    PSA and its PSA Related Parties and their respective agents, contractors

23    and consultants shall refuse to disclose Exempt Information to any person, agency, or entity other

24    than its board members, employees, agents, or consultants without the prior consent of FGI and

25    shall at all times maintain the confidentiality of Exempt Information.  PSA shall inform each of

26    its board members, employees, agents, and consultants of the existence of this Agreement and

27    shall require them to comply fully with its provisions prior to disclosing to any such board

28    member, employee, agent, or consultant any Exempt Information.  FGI shall not unreasonably

29    withhold its consent to a PSA request to disclose Exempt Information, and FGI shall base its

30    decision with respect to consent on the good faith advice of its legal counsel.

Dockets.Justia.com

1           25.1.3  Except for the information provided by FGI pursuant to Section 8.9,

2    financial and commercial information provided to PSA by FGI and any user of the Project is

3    exempt from public inspection and copying, and PSA shall enforce such exemption.

4          25.2  Public Disclosure Requests

5          If any FGI Documents become the subject of a request for public disclosure, PSA

6    shall promptly notify FGI of such request and how PSA intends to respond with respect to

7    particular FGI Documents.  Unless compelled by law or consented to by FGI, PSA shall not

8    disclose any FGI Documents until ten (10) Business Days after the date PSA notifies FGI of the

9    disclosure request.  During that time, FGI may determine (based on the good faith advice of

10   FGI's legal counsel) whether FGI believes any of the FGI Documents requested are Exempt

11   Information (in addition to FGI Documents previously determined to be Exempt Information).

12   PSA shall not disclose Exempt Information, and FGI shall defend, indemnify and hold harmless

13   PSA from all damages, penalties, attorneys fees and costs PSA actually incurs related to denying

14   the request for public disclosure of Exempt Information.

15         25.2.1  Remedies

16         FGI is entitled to seek injunctive relief to prevent PSA from disclosing

17   Exempt Information, but shall not be entitled to damages.

18         25.2.2  Disclosure of Non-Exempt Information Expressly Permitted

19         Nothing in this Agreement is intended, nor shall it be construed, to prevent

20   PSA from disclosing information that State law requires PSA to disclose, that is required to be

21   disclosed by a court or other public authority or agency, that was public at the time it was

22   furnished to PSA, or that became public through any means other than the act of PSA or its board

23   members, employees, agents, or consultants.

24        25.3  Ownership of FGI Documents

25         Except to the extent, if any, that FGI Documents and any copies thereof made by

26   or for PSA are "public records" subject to applicable document retention requirements under

27   State law, all such documents shall be and remain the sole and exclusive property of PSA.  At the

28   end of any applicable records retention period, upon the request of FGI, PSA shall, to the extent

29   permitted by law and at FGI's expense, return or destroy (at FGI's option) all FGI Documents

1   and any copies of those FGI Documents in PSA's possession, except for copies of FGI
2   Documents that would be reasonably necessary for PSA to use if the Term ended.

3       25.4    PSA Use of FGI Documents

4           Nothing in this Agreement is intended to prohibit PSA from excerpting Exempt
5   Information from FGI Documents to develop its own documents analyzing particular issues;
6   provided however, that such PSA documents shall not identify FGI as the source of particular
7   Exempt Information without FGI's prior consent, and the particular Exempt Information shall
8   not be identified in any such PSA documents as relating to FGI.

9       25.5    Document Designation

10          The fact that an FGI Document is not marked as "confidential" or with other
11  words of similar import shall not relieve any Party of their obligations hereunder.

12      25.6    Term

13          For valuable consideration, including the execution of this Agreement, the
14  provisions of this Section 25 shall be retroactive to January 30, 1998, and shall continue through
15  the Term.

16

17  SECTION 26    GENERAL PROVISIONS

18      26.1    Overriding Legal Requirements

19          It is the intention of the Parties that this Lease be fully consistent with and, to the
20  extent applicable, give effect to the Act. Anything herein seemingly inconsistent with the Act
21  shall be interpreted in a manner which is consistent with the Act, and which most closely gives
22  effect to the provisions of this Lease.

23      26.2    Compliance With Law; No Discrimination

24          FGI shall at all times conduct its activities with respect to the Project in
25  compliance with all applicable Laws, including Laws with respect to discrimination, and FGI
26  shall include this covenant in every agreement or contract with any Person used by FGI in its
27  activities with respect to the Project. FGI may challenge the interpretation or application of any
28  Laws, so long as such contest is in good faith and does not jeopardize PSA's interest in the
29  Project, and so long as FGI indemnifies PSA from any cost, loss, or liability on account of the
30  contest.

1    26.3    Estoppel Certificates

2    *Each Party shall at any reasonable time, and from time to time, within ten (10)*

3    Business Days after written request by the other Party, execute, acknowledge and deliver to the

4    requesting Party or to any assignee or subtenant designated by the requesting Party, a certificate

5    stating that (a) this Lease is in full force and effect and has not been modified, supplemented or

6    amended in any way, or if there have been modifications, this Lease is in full force and effect as

7    modified, identifying such modification agreement; and if this Lease is not in force and effect,

8    the certificate shall so state; (b) the dates on which the term of this Lease commenced;

9    (c) whether all conditions under this Lease to be performed by a designated Party, to the

10    knowledge of the other Party, have been satisfied and, as of the date of such certificate, whether

11    there are any existing defenses or offsets which one Party has against the enforcement of this

12    Lease by another Party, or, if such conditions have not been satisfied or if there are any defenses

13    or offsets, the certificate shall so state.  The party to whom any such certificate shall be issued

14    may rely on the matters therein set forth and thereafter the Party issuing the same shall be

15    estopped from denying the veracity or accuracy of the same.

16    26.4    Indexing

17    "Indexed" means adjusting a dollar value by the percentage change in the Index

18    from the December 31 immediately preceding a "reference date" to the December 31

19    immediately preceding the Lease Year in which the "adjustment date" occurs.  Unless another

20    reference date is identified when the term "Indexed" is used (e.g., "Indexed as of the

21    Commencement Date"), the reference date is the Completion Date.  Unless another "adjustment

22    date" is indicated, adjustment dates are anniversaries of the reference date.  Unless another period

23    is identified when the term "Indexed" is used (e.g., "Indexed every five (5) years"), the dollar

24    value is Indexed annually.    "Index" means the Consumer Price Index for All Urban Consumers

25    (CPI-U), Seattle-Tacoma, All Items (1982-1984=100) issued by the Bureau of Labor Statistics of

26    the United States Department of Labor.  If the CPI-U ceases to use the 1982-1984 average

27    equaling 100 as the basis of calculation, or if a change is made in the term or number of items

28    contained in the CPI-U, or the CPI-U is altered, modified, converted or revised in any other way,

29    then the determination of the CPI Change shall be made with the use of such conversion factor,

30    formula or table for converting such index as may be published by the Bureau of Labor Statistics.

1    If the CPI-U is no longer published by the Bureau of Labor Statistics, than any substitute or

2    successor index published by said Bureau or other governmental agency of the United States will

3    be used, as shall be agreed upon by FGI and PSA and, if agreement cannot be reached the matter

4    shall be subject to Dispute Resolution.

5         26.5    Good Faith Consideration

6              Whenever PSA is permitted the opportunity to review and comment under this

7    Lease, FGI shall give its good faith consideration to PSA's comments, although it shall not be

8    otherwise obligated with respect to such comments.

9         26.6    No Partnership

10             Nothing in this Lease or in any instrument relating to this Lease shall be construed

11    as creating a partnership or joint venture between PSA and FGI, or cause PSA to be responsible

12    in any way for debts or obligations of FGI or any other Party.

13        26.7    Time of the Essence

14             Time is of the essence of this Lease and of each and every term, covenant,

15    agreement, condition and provision of this Lease.

16        26.8    Captions

17             The captions of this Lease and the table of contents preceding this Lease are for

18    convenience and reference only, and are not a part of this Lease, and in no way amplify, define,

19    limit or describe the scope or intent of this Lease, nor in any way affect this Lease.

20        26.9    Meaning of Terms

21             Words of any gender in this Lease shall be held to include any other gender and

22    words in the singular number shall be held to include the plural when the sense requires.

23        26.10   Lease Construed as a Whole

24             The language in all parts of this Lease shall in all cases be construed as a whole

25    according to its fair meaning and neither strictly for nor against PSA or FGI.

26        26.11   Waivers

27             No waiver made by any Party with respect to the performance, or manner or time

28    thereof, of any obligation of any other Party or any condition of a Party's own obligation under

29    this Lease shall be considered a waiver of any rights of the other Party or condition of such other

30    Party's obligation beyond those expressly waived and to the extent thereof, or a waiver in any

1   respect in regard to any other rights of the Party making the waiver or any other obligations of
2   the Party. No waiver by any Party of any provision of this Lease or any breach thereof, shall be
3   of any force and effect unless in writing; and no such waiver shall be construed to be a
4   continuing waiver.

5       26.12  Severability

6           If any provision of this Lease or the application thereof to any person or
7   circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease, or the
8   application of that provision to persons or circumstances other than those as to which it is invalid
9   or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid
10  and be enforced to the fullest extent permitted by law.

11      26.13  Survival

12          Each provision of this Lease, the full performance of which is not required prior
13  to the expiration of the Term hereof or its earlier termination shall survive expiration or earlier
14  termination, and be fully enforceable thereafter, including, without limitation, all indemnity
15  obligation hereunder.

16      26.14  Memorandum of Lease

17          The Parties shall execute and acknowledge a Memorandum of this Lease in the
18  form attached as Exhibit 26.14 for public recordation purposes, so that public notice of the Term
19  of the Lease be given. However, this Lease shall not be recorded.

20      26.15  Amendment

21          This Lease may be amended only in writing, signed by both PSA and FGI.

22      26.16  Commissions

23          PSA and FGI shall defend, indemnify and hold harmless the other from any and
24  all claims or demands, requests by real estate brokers, agents or finders with whom such
25  indemnifying Party may have dealt in connection with this Lease.

26      26.17  Notices

27          A notice or communication under this Lease by a Party to the other Party shall be
28  in writing and sufficiently given upon personal delivery or upon sending of a confirmed facsimile
29  copy (either by automatic electronic confirmation or by declaration of the sender) directed to the
30  Fax Number of the Party set forth below, or if dispatched by registered or certified mail, postage

1  prepaid, return receipt requested or by a delivery service or "overnight delivery" service that

2  provides a written confirmation of delivery, and addressed to a Party as follows:

3

4          If to PSA:          WASHINGTON STATE PUBLIC STADIUM
5                              AUTHORITY
6                              401 Second Avenue South, Suite 520
7                              Seattle, WA 98104
8                              Attn: Mr. Phillip K. Kushlan
9                              Fax No.: 206-205-8604
10                             Confirmation No.: 206-205-8600

11         with a copy to:     BALL JANIK LLP
12                             101 SW Main Street, Suite 1100
13                             Portland, OR 97204
14                             Attn: Stephen T. Janik
15                             Fax No.: 503-295-1058
16                             Confirmation No.: 503-228-2525

17         If to FGI:          FIRST & GOAL INC.
18                             110 - 110th Ave. N.E., Suite 550
19                             Bellevue, WA 98004
20                             Attn: Robert J. Whitsitt, President
21                             Fax No.: 425-453-1985
22                             Confirmation No.: 425-453-1940
23
24         with a copy to:     FIRST & GOAL INC.
25                             110 - 110th Ave. N.E., Suite 550
26                             Bellevue, WA 98004
27                             Attn:  Mr. Richard E. Leigh, Jr.
28                                    Vice President and General Counsel
29                             Fax No.: 425-453-1985
30                             Confirmation No.: 425-453-1940
31
32         and:                Foster Pepper & Shefelman PLLC
33                             1111 Third Avenue, Suite 3400
34                             Seattle, Washington 98101
35                             Attn: Allen D. Israel
36                             Fax No.: 206-447-9700
37                             Confirmation No.: 206-447-4400
38

39         Each Party may by notice to all other Parties, specify a different address or Fax or

40  Confirmation number for subsequent notice purposes.  Notice shall be deemed effective on the

41  date of actual receipt or three days after the date of mailing, whichever is earlier.

1      26.18  Consents and Approvals

2              Whenever the consent, approval, authorization or similar response of a Party is
3      required, or whenever a Party has the right to approve or give its consent, unless a different
4      standard is explicitly stated, that Party's consent, approval, authorization or similar response
5      shall neither be unreasonably withheld, conditioned nor delayed.   Any refusal to consent,
6      disapproval or similar negative response by that Party shall be in writing and must include a
7      detailed explanation for the refusal to consent, disapproval or similar negative response.  Unless
8      a different standard is explicitly stated, if the Party makes no response within a definite time
9      period provided for response, an affirmative response (i.e. consent, approval, authorization or
10     similar affirmative response) shall be deemed.  The statement of a definite period for giving a
11     response shall entitle the responding Party to give its response at any time within such period;
12     provided, however, that neither Party shall purposefully delay considering or giving any
13     requested response, and each Party will proceed in good faith to give such response in a timely
14     manner.

15     26.19  Incorporation of Exhibits by Reference

16             The Exhibits to this Lease are incorporated by reference as part of this Lease as
17     though set forth in full in this Lease.

18     26.20  Non-Waiver of Government Rights

19             By entering into this Lease and the Related Agreements, PSA is specifically not
20     obligating any other governmental agency with respect to any discretionary or regulatory action
21     relating to operation of the Project.  By entering into this Lease and the Related Agreements,
22     PSA is binding itself to the covenants in this Lease and the Related Agreements and such other
23     covenants as may be implied from this Lease and the Related Agreements, but PSA is not
24     otherwise limiting its governmental authority under the Act; provided PSA shall not exercise its
25     governmental authority (as opposed to its contractual authority under this Lease or any Related
26     Agreement which is not considered PSA's "governmental" authority for purposes of this Section)
27     so as to impose any economic or operational burdens or impacts on FGI or the Project, either
28     directly or indirectly, not provided in this Lease or the Related Agreements.

1    26.21  Exclusive Remedies

2         The rights and remedies expressly set forth in this Lease shall be deemed
3    exclusive, except where otherwise indicated.

4    26.22  No Third-Party Beneficiaries

5         The Parties intend that the rights, obligations and covenants in this Lease shall be
6    exclusively enforceable by the Parties. Except as expressly provided herein, there are no third-
7    party beneficiaries to this Lease.

8    26.23  Further Actions

9         At the request of either Party, the other Party shall, without further consideration,
10   promptly execute and deliver such other instruments and take such further actions as may be
11   necessary or appropriate to confer upon the requesting Party the benefits contemplated by this
12   Lease, and which are not contrary to the provisions of this Lease.

13   26.24  Attorneys' Fees

14        In the event a suit, action, Dispute Resolution, or other proceeding of any nature
15   whatsoever, including without limitation any proceeding under the U.S. Bankruptcy Code, is
16   instituted, or the services of an attorney are retained, to interpret or enforce any provision of this
17   Lease or with respect to any dispute relating to this Lease, the prevailing or non-defaulting Party
18   shall be entitled to recover from the losing or defaulting Party its attorneys', paralegals',
19   accountants', and other experts' fees and all other fees, costs, and expenses actually incurred and
20   reasonably necessary in connection therewith. In the event of suit, action, Dispute Resolution, or
21   other proceeding, the amount thereof shall be determined by the judge or arbitrator, shall include
22   fees and expenses incurred on any appeal or review, and shall be in addition to all other amounts
23   provided by law. In any suit, action, Dispute Resolution, or other proceeding in which FGI is the
24   substantially prevailing party, then PSA's attorneys', paralegals', accountants', and other experts'
25   fees and all other fees, costs, and expenses actually incurred, and the amount, if any, which PSA
26   must pay toward FGI's attorneys', paralegals', accountants', and other experts' fees and all other
27   fees, costs, and expenses actually incurred, shall not be considered Reasonable PSA Operating
28   Expenses and if PSA is the substantially prevailing party then the unrecovered amounts of PSA
29   costs as set forth above shall be Reasonable PSA Operating Expenses.

1     26.25  Interest

2          Whenever any sums are due and payable, from one Party to another Party under

3  this Lease they shall bear interest from the date originally due until paid in full at the Prime Rate

4  plus four percentage points ("Default Interest"), if it is determined as a result of Dispute

5  Resolution, that the Party failing to make the payment when due did not have a good faith and

6  reasonable basis not to make the payment when due. If it is determined, as a result of Dispute

7  Resolution, that the Party failing to make the payment when due did have a good faith and

8  reasonable basis not to make the payment when due, such sums shall bear interest from the date

9  due until paid in full at the Prime Rate plus two percentage Points ("Economic Interest"). The

10  "Prime Rate" shall mean the prime rate of interest as quoted from time-to-time in The Wall

11  Street Journal, or any successor publication. In no event shall the interest rate exceed the highest

12  rate of interest that may be charged under applicable law.

13     26.26  Conflict of Interest

14          No member, director, officer, or employee of PSA shall have any personal

15  interest, direct or indirect, in this Lease, nor shall any such member, director, officer, or

16  employee participate in any decision relating to this Lease which affects his/her personal interest

17  or the interest of any Person in which he/she is, directly or indirectly, interested.

18     26.27  No PSA Personal Liability

19          No member, director, officer, or employee of PSA shall be personally liable to

20  FGI or any successor in interest to FGI in the event of any default or breach by PSA or for any

21  amount which may become due to FGI or such successor with respect to any obligations under

22  the terms of this Lease.

23     26.28  Governing Law

24          This Lease shall be construed according to and governed by the laws of the State

25  of Washington.

26     26.29  Reference Date of Lease

27          For reference purposes, the date of this Lease shall be the date on the first page,

28  irrespective of the date PSA or FGI actually executes this Lease.

1     26.30  Entire Agreement

2         This Lease and the Related Agreements constitute the entire agreement between

3 the Parties as of the date of execution of this Lease.  No prior agreements or understanding

4 pertaining to the same shall be valid or of any force or effect and the covenants and agreements

5 of this Lease shall not be altered, modified or added to except in writing signed by PSA and FGI.

6         IN WITNESS WHEREOF, this Lease has been executed by the Parties as of the

7 dates set forth below.

8

9    PSA:               WASHINGTON STATE PUBLIC STADIUM

10                      AUTHORITY, a public corporation of the State of

11                      Washington

12

13

14                  By: Lorraine Hine

15                    Lorraine Hine, Chair of the Board

16

17   FGI:              FIRST & GOAL INC., a Washington corporation

18

19

20                 By: Robert Whitsitt

21                 Robert J. Whitsitt, President

22

1    STATE OF WASHINGTON    )
2                           ) ss.
3    COUNTY OF KING         )
4
5
6         I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person
7    who appeared before me, and said person acknowledged that said person signed this instrument,
8    on oath stated that said person was authorized to execute the instrument and acknowledged it as
9    the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a
10   public corporation of the State of Washington, to be the free and voluntary act of such
11   corporation for the uses and purposes mentioned in the instrument.
12
13
14   Dated this 24ᵗʰ day of November, 1998.
15
16
17                                              _____
18                                              (Signature of Notary)
19                                              **ALLEN D. ISRAEL**
20                                              _____
                                                (Legibly Print or Stamp Name of Notary)
21                                              Notary public in and for the State of Washington,
                                                residing at _____Seattle_____
22
23                                              My appointment expires ___6/15/02___
24
25
26   STATE OF WASHINGTON    )
27                          ) ss.
28   COUNTY OF KING         )
29
30
31        I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the
32   person who appeared before me, and said person acknowledged that said person signed this
33   instrument, on oath stated that said person was authorized to execute the instrument and
34   acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the
35   free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.
36
37   Dated this 24ᵗʰ day of November, 1998.
38
39
40                                              _____
41                                              (Signature of Notary)
42                                              **ALLEN D. ISRAEL**
43                                              _____
                                                (Legibly Print or Stamp Name of Notary)
44                                              Notary public in and for the State of Washington,
                                                residing at _____Seattle_____
45
46                                              My appointment expires ___6/15/02___

50034209.13 -- STADIUM MASTER LEASE
11/23/98                                          -90-

## MASTER LEASE
## EXHIBIT A

### PROJECT SITE DESCRIPTION

THE "PROJECT SITE" CONSISTS OF:  All of Lots 1 through 35, inclusive, of Block 325 and that portion of Lots 1 through 35, inclusive, of Block 285 of the Seattle Tide Lands as shown on the official maps of the Seattle Tide Lands in volume 2, pages 29, 30, 31 and 32 in King County, Washington, and vacated 3rd Avenue South, per City of Seattle Ordinance No. 10552, described as follows:

Beginning at the Southwest corner of said Block 325, said corner being the intersection of the North margin of South Connecticut Street with the East margin of Occidental Avenue South;

Thence north along said East margin of Occidental Avenue South and West boundary of said Block 325 a distance of 2060.28 feet to the Northwest corner of said Block 325, said corner being the intersection of the East margin of Occidental Avenue South with the South margin of South King Street;

Thence South 89°54'20" East along said South margin of South King Street and North boundary of said Blocks 325 and 285 a distance of 673.47 feet;

Thence South 0°05'40" West a distance of 60.00 feet;

Thence South 89°54'20" East a distance of 112.18 feet;

Thence South 1°06'04" West a distance of 1192.89 feet;

Thence South 10°36'22" West a distance of 820.21 feet to an intersection with the North margin of South Connecticut Street and the South boundary of said Block 285;

Thence South 89°59'21" West along said North margin of South Connecticut Street and the South boundary of said Blocks 285 and 325 a distance of 611.66 feet TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THE FOLLOWING PROPERTY (the "North Half Lot"):

That portion of Lots 1 through 5, of Block 325, and that portion of Lots 1 through 5, of Block 285 of the Seattle Tide Lands, and vacated 3rd Avenue South, per City of Seattle Ordinance No. 10552, all in the Northwest ¼ of Section 5, Township 24 North, Range 4 East, West Meridian, King County Washington, described as follows:

Beginning at the Northwest corner of said Block 325, said corner being the intersection of the East margin of Occidental Avenue South with the South margin of South King Street, thence South 88°46'43" East along said south margin of South King Street and the North boundary of said Blocks 325 and 285, a distance of 673.45 feet; thence South 1°11'39" West 60.00 feet; thence South 88°48'21" East 112.18 feet; thence South 2°12'15" West 181.02 feet to a line 30.00 feet South of and parallel to the centerline of the proposed Weller Street Pedestrian overpass; thence North 88°44'49" West along said

parallel line 782.19 feet to said East margin of Occidental Street; thence North 1°08'01" East along said margin 240.51 feet to THE POINT OF BEGINNING.

THE PROJECT SITE ALSO INCLUDES: all rights of use and other rights of the Washington State Public Stadium Authority ("PSA") with respect to the Project Site and the North Half Lot, as set forth in the certain Agreement and Letter of Intent dated June 25, 1998 among King County, Washington, the City of Seattle, the Washington State Public Stadium Authority, First & Goal Inc., Football Northwest Inc. and the Washington State Department of Transportation, (the "1998 Letter of Intent"); that certain Agreement, Stadium and Exhibition Center, Property Contributions and Reservation of Possessory Rights between King County, Washington and the Washington State Public Stadium Authority dated as of September 30, 1998 (the "Property Contribution Agreement"); and the Special Use Permit described in the Property Contribution Agreement. If the North Half Lot is acquired by the PSA pursuant to Section 5.3 of the Property Contribution Agreement or otherwise, the North Half Lot shall, upon such acquisition, become part of the Project Site and subject to the Master Lease.

MASTER LEASE
EXHIBIT 1

DEFINED TERMS

The following defined terms have the following defined meanings when used in this Master Lease Agreement. Some definitions are taken from the Development Agreement or Stadium Use Agreement.

Defined terms may be used together, and when so used will have the combined meaning of the two defined terms.

| TERM | FIRST USED | DEFINED |
|------|-----------|---------|
| 1998 Letter of Intent | 3.3 | Development Agreement |
| AAA | 24.4 | 24.4 |
| Act | Recital A | Recital A |
| actual Reasonable PSA Operating Expenses | 5.1.3.4 | 5.1.3.4 |
| adjustment date | 26.2 | 26.2 |
| Admissions Tax | 18 | 18 |
| Affected Area | 8.8.1 | 8.8.1 |
| Affiliate | 6.1.1.2 | |
| affordable price | 8.1.2.1 | 8.1.2.1 |
| Affordable Priced Seats | 8.1.2.1 | 8.1.2.1 |
| Aggregate Adjustment Amount | 8.1.2.3 | 8.1.2.3 |
| Agreement of Event Scheduling Principles | 8.2.2 | 8.2.2 |
| Allen | Recital H | Recital H |
| Allen Ownership Group | 21.8.1.1 | 21.8.1 |
| Annual Loan Debt Service | 5.1.3.1 | 5.1.3.1 |
| Annual Maintenance Plan | 11.1.3 | 11.1.3 |
| Annual Review | 8.2.3 | 8.2.3 |
| average | 8.1.2.1 | 8.1.2.1 |
| Backup marketing expenses | 4.2.1 | Trade meaning |
| Basic Rent | 5.1.2.1 | 5.1.2.1 |
| Bonds | 14.1.2 | Development Agreement |
| booking policies | 6.1.4 | 6.1.4 |
| bunker suite | 8.1.3 | 8.1.3 |
| Business Days | 5.1.3.4 | Development Agreement |
| Capital Improvements Account | 6.1.1.3 | 11.7 |
| Cash Reserve | 5.7.1.1 | 5.7.1.1 |
| Change of Control of FNW | 21.8.1 | 21.8.1 |
| Change of Control of Other Tenant | 21.8.2 | 21.8.2 |
| Club Seat | 8.1.3 | Stadium Use Agreement |
| Collective Bargaining Agreement | 8.7 | Common meaning |
| Commencement Date | 3.1 | 3.1 |
| Comparable Exhibition Facilities | 7.2.1 | 11.1.2.1 |
| Comparable Facilities | 11.1.2.1 | 11.1.2.1 |

| | | |
|---|---|---|
| Comparable Parking Facilities | 7.2.1 | 11.1.2.1 |
| Comparable Stadium Facilities | 11.1.2.1 | 11.1.2.1 |
| Completion Date | 3.1 | 3.1 |
| Completion Term | 4 | 4.3.1 |
| Control | 21.8 | 21.8 |
| Damages | 15.1 | 15.1 |
| de facto naming right | 17.1.2 | 17.1.2 |
| Default Interest | 26.17 | 26.17 |
| design development | 11.9.1 | Trade meaning |
| Development Agreement | Recital C | Recital C |
| Development Areas | 5.1.3.1 | Development Agreement |
| Dispute | 24.1 | 24.1 |
| Dispute Notice | 24.2 | 24.2 |
| Dispute Resolution | 5.1.3.4 | 24.1 |
| Economic Interest | 22.6 | 26.17 |
| Equitable Proceeding | 24.7 | 24.7 |
| Event of Default | 4.2.1 | 22.1 |
| Exempt Information | 25.1.1 | 25.1.1 |
| Exhibition Center | 6.1.3 | Development Agreement |
| Exhibition Hall | Recital C | Recital C |
| Exhibition Hall Events | 6.1.1.2 | 6.1.1.4 |
| Exhibition Hall Expenses | 6.1.1.3 | 6.1.1.3 |
| Exhibition Hall Naming Rights | 6.1.1.2 | 17.1.1.3 |
| Exhibition Hall Naming Rights | 17.1.1.3 | 17.1.1.3 |
| Exhibition Hall Net Profits | 6.1.1.1 | 6.1.1.1 |
| Exhibition Hall Parking Expenses | 6.1.1.6 | 6.1.1.6 |
| Exhibition Hall Parking Revenue | 6.1.1.2 | 6.1.1.5 |
| Exhibition Hall Revenues | 6.1.1.2 | 6.1.1.2 |
| Extension Period | 4 | 4.2 |
| Fax Number | 26.14 | 26.14 |
| FGI | Introduction | Introduction |
| FGI Contribution | 14.1.2 | Development Agreement |
| FGI Documents | 25.1 | 25.1.1 |
| FGI's Personal Property | 23.1 | 23.1 |
| first reasonable opportunity | 8.1.2.3 | 8.1.2.3 |
| First-Class Condition | 11.1.2.1 | 11.1.2.1 |
| First-Class Manner | 7.2.1 | 7.2.1 |
| Five-Year Plan | 11.1.4 | 11.1.4 |
| flat shows | 6.1.1.4 | Common meaning |
| FNW | Recital H | Recital H |
| Force Majeure | 12.1.5 | Follows in this Exhibit |
| GAAP | 6.1.5 | 6.1.5 |
| Governmental Authority | 6.1.1.2 | Follows in this Exhibit |
| Hazardous Substances | 7.3.1 | Development Agreement |
| Home Game | 8.1.2.1 | Stadium Use Agreement |
| Impositions | 6.1.1.3 | Follows in this Exhibit |

| | | |
|---|---|---|
| Indemnified Party | 15.3 | 15.3 |
| Indemnifying Party | 15.3 | 15.3 |
| Indexed | 5.1.1 | 26.2 |
| Initial Term | 4 | 4.1 |
| Institution | 13.8.1 | Follows in this Exhibit |
| Insurance | 6.1.1.3 | 13 |
| internally generated financing | 11.1.2.2 | 11.1.2.2 |
| IP Rights | 17.1 | 17.1 |
| L/C Reserve | 5.7.1.1 | 5.7.1.1 |
| Laws | 5.1.3.1 | Development Agreement |
| League | 8.1.1 | Stadium Use Agreement |
| Lease | Recital I | Recital I |
| Lease Year | 4.1 | 4.1 |
| lottery basis | 8.1.3 | Common meaning |
| Lottery Promotion obligation | 8.4.4 | Development Agreement |
| lowest ticket prices | 8.1.2.1 | 8.1.2.1 |
| Maintenance | 6.1.1.3 | 11.1.1 |
| Major Maintenance | 11.1.1 | 11.3.1 |
| Management Company | 21.3.4.2 | 21.3.7 |
| Mariners | 8.2.1 | 8.2.1 |
| Master Lease Guaranty | 2.2 | Development Agreement |
| Master Use Permit | 8.8.2 | 8.8.2 |
| MBE | 8.6 | 8.6 |
| Memorandum of Lease | 26.11 | Exhibit 25.10 |
| Modernization | 6.1.1.3 | 11.4 |
| Modernization Improvements | 11.1.2.2 | 11.4.1 |
| Modernization Plan | 11.4.2 | 11.4.2 |
| naming rights | 17.1 | Trade Meaning |
| Naming Rights Account | 6.1.1.3 | 11.6 |
| Neighboring communities | 8.12 | 8.12 |
| NFL Season | 8.1.2.2 | Stadium Use Agreement |
| Nondisturbance | 21.2.2 | 21.2.4 |
| Normal Maintenance | 11.1.1 | 11.2.1 |
| North Parking Lot | 3.3 | Development Agreement |
| occurrence basis | 13.3.6 | Trade meaning |
| Operating Reserve | 5.7.1.1 | 5.7.1.1 |
| Other Improvements | Recital C | Recital C |
| Other Transferee | 21.8.2 | 21.8.2 |
| Other Transferee Affiliate | 21.8.2.1 | 21.8.2.1 |
| Parking Facilities Naming Rights | 6.1.1.2 | 17.1.1.4 |
| Parking Facility | Recital C | Recital C |
| Parking Facility Naming Rights | 17.1.1.5 | 17.1.1.5 |
| Parking Tax | 18 | 18 |
| Partial Taking | 14.3 | 14.3 |
| Parties | 4.1 | Development Agreement |
| Percentage Rent | 6.1.2 | 6.1.2 |

| | | |
|---|---|---|
| Permitted Exceptions | 20.1.2 | Exhibit 20.1.2 |
| Person | 2.2 | Development Agreement |
| Personal Property | 3.4 | 3.4 |
| PFD | 8.2.1 | 8.2.1 |
| Phase I | 3.1 | Development Agreement |
| Phase I Parcel | 3.1 | Exhibit 3.1, Development Agreement |
| Phase II | 3.1 | Development Agreement |
| Playoff Home Games | 8.1.1 | Stadium Use Agreement |
| Premises | 2 | 3.1; 3.2 |
| Prime Rate | 26.17 | 26.17 |
| Project | Recital F | Recital F |
| Project Art | 8.14.1 | 8.14.1 |
| Project Art Fund | 8.14.1 | 8.14.1 |
| Project Art Selection Committee | 8.14.2 | |
| Project Art Spaces | 8.14.2 | 8.14.2 |
| Project Element | Recital E | Recital E |
| Project Improvements | Recital E | Recital E |
| Project Labor Agreement | 8.7 | Development Agreement |
| Project Naming Rights | 17.1.1.1 | 17.1.1.1 |
| Project Site | Recital B | Recital B |
| Property Contribution Agreement | 3.3 | Development Agreement |
| PSA | Introduction | Introduction |
| PSA Advisory Committee | 17.4.4 | Development Agreement |
| PSA Office Space | 3.5.3 | 8.11.1 |
| PSA Possession Date | 21.2.1 | 21.2.1 |
| PSA's Board Meetings | 8.11.5 | 8.11.5 |
| PSLs | 2.1 | Development Agreement |
| public area | 8.11.1 | 8.11.1, Act |
| public or entertainment areas | 10.2.5 | Act |
| public records | 25.3 | Common meaning |
| punch list | 11.9.3 | Trade meaning |
| Qualified Sublease | 21.1 | 21.2.1 |
| Ratable proportion of PSL Proceeds | 14.1.2 | 14.1.2 |
| Reasonable Efforts | 4.4 | Development Agreement |
| reasonable expenses | 22.4.3 | 22.4.3 |
| Reasonable PSA Operating Expenses | 4.2.1 | 5.1.3.1 |
| reasonable rental value | 22.4.2 | 22.4.2 |
| reference date | 26.2 | 26.2 |
| Regular Season Home Games | 8.1.1 | Stadium Use Agreement |
| Related Agreements | 15.2 | Development Agreement |
| Related Person | 7.3.3 | Development Agreement |
| Rent | 4.2.2 | 5.1 |
| Rent Letter of Credit | 21.5.1 | 21.5.1 |
| Reserve Letter of Credit | 5.7.3.1 | 5.7.3.1 |
| Restoration | 12.1 | 12.1 |

| | | |
|---|---|---|
| Restoration Proceeds | 12.1.4 | 12.1.4 |
| Seattle metropolitan area | 8.7 | Common meaning |
| sight draft | 5.7.3.1 | Trade meaning |
| Special Naming Rights | 17.1.1 | 17.1.1 |
| Special Naming Rights Agreement | 17.4.2 | 17.4.2 |
| Stadium | Recital C | Recital C |
| Stadium | 6.1.1.4 | Development Agreement |
| Stadium Mitigation Report and Plan | 8.8.2 | 8.8.2 |
| Stadium Naming Rights | 17.1.1.2 | 17.1.1.2 |
| Substantial Completion | 3.1 | Development Agreement |
| Substantial Taking | 14.2 | 14.2 |
| Sufficient Experience | 21.3.4.2 | 21.3.4.2 |
| Suite | 8.1.3 | Stadium Use Agreement |
| Suite Lottery | 8.1.3 | 8.1.3 |
| Suite Lottery Program | 8.1.3 | 8.1.3 |
| Swing Space | Recital D | Recital D |
| Tax Collection and Disbursement Agreement | 18 | 18 |
| Team | Recital H | Recital H |
| team affiliate | Recital H | Act |
| Temporary Taking | 14.6 | 14.6 |
| Term | 3.2 | 4 |
| Total Taking | 14.1 | 14.1 |
| Transfer | 21.3.1 | 21.7 |
| Transferee | 21.3.1 | 21.3.1 |
| Trustee of Insurance | 12.1.2 | 13.8.1 |
| turn-key | Recital G | Trade meaning |
| Utilities | 6.1.1.3 | Follows in this Exhibit |
| WBE | 8.6 | 8.6 |

Force Majeure. "Force Majeure" means any matter beyond the reasonable control of a party (financial inability excepted), including, without limitation, weather, strikes, labor unrest, labor disputes, lockouts, picketing, labor shortages, failure of Utilities, materials shortages, transportation shortages, energy shortages, governmental action or inaction, rationing, inability to obtain permits or third-party approvals, war, acts of terrorism, acts of vandalism, civil commotion, insurrection, riots, local or national emergency, acts of God, natural disasters, or fire or other casualty.

Governmental Authority. "Governmental Authority" means any federal, state, regional, local or municipal government, corporation, department, agency, district, court, tribunal, or other instrumentality having jurisdiction over the matter(s) in question.

Impositions. "Impositions" means all taxes, including without limitation admissions taxes, parking taxes, sales taxes, gross receipts taxes, compensating or other retail excise taxes, special and general assessments, use and occupancy taxes, rent taxes, possessory interest taxes, excises, levies, license and sales and permit fees and taxes of general application and all other charges of

general application which shall during the Term of the Lease be assessed, levied, charged, confirmed or imposed by any Governmental Authority, or which accrue or become due or payable on account of or become a lien on or against the Premises or Project Improvements or any portion thereof, or any interest in the Premises.

Institution.    "Institution" shall mean a bank, insurance company, pension fund, major financial institution, or other entity actively engaged in a business related to the business for which "Institution" is contemplated by the particular context of this Lease, with total assets of at least $100,000,000, Indexed.

Utilities.  "Utilities" means all services and utilities delivered to, provided for, or consumed on the Premises, including, without limitation, such services as janitorial and garbage pick-up, and such utilities as gas, water, sewer, storm water drainage, electricity, cable, microwave, television, and telecommunications services.

# MASTER LEASE
## EXHIBIT 3.1
### PHASE I PARCEL DESCRIPTION

**General description of Phase I of the Project Site (not an official legal description):**

That portion of the Project Site (described in Exhibit A) lying south of the following described line:

Beginning at a point on the eastern margin of Occidental Street, located 780 feet north of the northeast intersection of S. Royal Brougham Way and Occidental Ave. So.; thence easterly to a point that intersects a line that is an arc which is concentric with the existing Kingdome building and which runs 20 feet south of the existing Kingdome Gate "A"; thence leaving such concentric arc and running easterly to the ending point located on the easterly margin of a roadway known as "Street of Dreams" which ending point is located on a line that runs 740 feet north from the northerly margin of S. Royal Brougham Way.

**MASTER LEASE**
**EXHIBIT 4.1**

## CONFIRMATION OF COMMENCEMENT DATE AND COMPLETION DATE

### CONFIRMATION OF COMMENCEMENT DATE

Pursuant to Section 4.1 of the Master Lease dated November 24, 1998, between PSA and FGI ("Master Lease"), the parties hereby confirm that:

The Commencement Date as defined in the Master Lease is

<u>October 28, 1999</u>.

Dated: _October 29, 1999_

WASHINGTON STATE PUBLIC STADIUM
AUTHORITY

By: _____

Ann M. Kawasaki, Executive Director

FIRST & GOAL INC.

By: _____

Robert J. Whitsitt, President

19991102000895
PAGE 002 OF 002
11/02/1999 12:31
KING COUNTY, WA

PUBLIC STADIUM MISC    9.00

Exhibit 4.1 Page 1

RETURN ADDRESS

```
19991102000895
PAGE 001 OF 002
11/02/1999 12:31
KING COUNTY, WA
```

PUBLIC STADIUM MISC        9.00

After recording return to:
Robin Wohlhueter
Public Stadium Authority
401 2nd Avenue South, Suite 520
Seattle, WA 98104

Please print neatly or type information

## Document Title(s)

*Confirmation of Commencement Date - Phase I*

## Reference Numbers(s) of related documents

Additional Reference #'s on page ____

## Grantor(s) (Last, First and Middle Initial)

*Washington State Public Stadium Authority*

Additional grantors on page ____

## Grantee(s) (Last, First and Middle Initial)

*First & Goal Inc.*

Additional grantees on page ____

## Legal Description (abbreviated form: i.e. lot, block, plat or section, township, range, quarter/quarter)

Additional legal is on page ____

## Assessor's Property Tax Parcel/Account Number

Additional parcel #'s on page ____

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

## NOTICE OF CONFIRMATION OF COMPLETION DATE

This Notice of Confirmation is executed by WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a Washington public corporation ("PSA") and FIRST & GOAL INC., a Washington Corporation ("FGI").

This relates to Section 4.1 of the Master Lease dated November 24, 1998, between PSA and FGI ("Master Lease"), a Memorandum of which is recorded in King County, Washington on May 22, 2000 as Document Number 20000522000751. The parties hereby confirm that:

1.     The Completion Date as used in the Master Lease is June 27, 2002.

Dated this 26th of July, 2002.

PSA:                          WASHINGTON STATE PUBLIC STADIUM
                              AUTHORITY

                              By: _____
                                   Ann M. Kawasaki

FGI:                          FIRST & GOAL INC.

                              By: _____
                                   Robert J. Whitsitt, President

[ACKNOWLEDGEMENTS FOLLOW]

1

LL 014-007
F829
D 134925

**Return Address:**
Seahawks Stadium & Ev. Center
800 Occidental Av S #700
Seattle WA 98134

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**20020807001911**
WA STATE PUBL N                    21.00
PAGE 001 OF 003
08/07/2002 12:08
KING COUNTY, WA

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet**  (RCW 65.04)

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)

1. Notice of Confirmation of Completion Date
3. _____ 4. _____

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page _____ of document     20000522000751

**Grantor(s)** (Last name, first name, initials)
1. Public Stadium Authority , _____
2. _____ , _____

Additional names on page _____ of document.

**Grantee(s)** (Last name first, then first name and initials)
1. First & Goal Inc. , _____
2. _____ , _____

Additional names on page _____ of document.

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)

_____
_____

Additional legal is on page _____ of document.

**Assessor's Property Tax Parcel/Account Number**     ☐ Assessor Tax # not yet assigned

_____

The Auditor/Recorder will rely on the information provided on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010. I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document.

John Nole - PSA _____ Signature of Requesting Party

STATE OF WASHINGTON )
                     )
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that **ANN M. KAWASAKI** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Executive Director of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a Washington public corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 20th day of ____July____, 2002.



_____
(Signature of Notary)

____J. E. Todd____
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at ____Bothell, WA____

My appointment expires ____6/9/05____

STATE OF WASHINGTON )
                     )
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of the **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 21st day of ____July____, 2002.

_____
(Signature of Notary)

____KIM LINDBECK____
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at ____EDMONDS, WA.____

My appointment expires ____3/15/04____

20020807001911

2

# MASTER LEASE
# EXHIBIT 6.2
## POSSIBLE FUTURE PROJECT ACTIVITIES

**NOTHING HEREIN SHALL BE CONSTRUED AS ENTITLING FGI TO USE THE PREMISES OTHER THAN IN ACCORDANCE WITH SECTION 7.1.**

Adult Shows

Advertising and Sponsorship

Aircraft Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc. (e.g., lighter than air, heavier than air, powered, unpowered, current, futuristic, vintage, etc.)

Antique/ Collectibles Fairs/ Events or Activities

Arcades/ Games/ Gaming

Art Events or Activities/ Demonstrations/ Shows/ Sales/ Auctions/ etc.

Arts, Crafts and/or Hobby Events or Activities/ Demonstrations/ Shows/ Sales/ Auctions/ etc.

Automobile and /or Vehicle (e.g. motorcycles, off-road, tractor, powered, un-powered) Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc. (e.g. current, futuristic, vintage, etc.)

Bartering, Exchanging or Trading Events or Activities

Bazaars (Holiday etc.)

Beer, Wine and/or Food Events or Activities / Festivals/ etc.

Bicycle and other Human Powered and Unpowered Vehicle Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc.

Boat and other Watercraft Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc. (e.g., motor powered, sail, unpowered, current, futuristic, vintage, etc.)

Bridal or Wedding Shows/ Events or Activities

"Bumbershoot" type Events or Activities

Carnivals

Charity Events or Activities/ Runs/ Walks/ Auctions/ Rallies/ etc.

Children Shows/ Events or Activities

Circuses

Civic Events or Activities

Classes

Combination Events or Activities

Commercial Events or Activities

Commercial Equipment Shows (e.g. office equipment)

Commercial Seminars (e.g. self-improvement such as Anthony Robbins)

Competitions (e.g. Band/ Cheerleader/ Dance/ Food (e.g. Chili Cook Off)/ Chess/ Athletic/ Academic/ etc.)

Computers and Technology Events or Activities

Concerts

Concessions/ Catering/ Novelties/ Visitor Services

Conventions

Corporate and Business Meetings (e.g. annual meetings)/ Parties/ Events or Activities

Demonstrations

Direct Marketing Events or Activities (e.g. Amway, Herbalife)

Disabled/Special Needs Persons Events or Activities

Distribution

"Double Dare" type Events or Activities

Educational Events or Activities

Emergency Events or Activities / Training/ Housing/ Medical/ Detention/ etc.

Entertainment Events or Activities

Exhibitions

"Extreme Sports" Events or Activities

Fairs

Family Shows/ Events or Activities

Farmers Markets

Fashion Shows/ Events or Activities

Festivals (e.g. Ethnic/ Food (e.g. Bite of Seattle)/ Music (e.g. Bumbershoot)/ etc.)

Film, Video, and Photography Events or Activities

Fireworks Shows

Flea Markets

Frisbee/ Frisbee Golf/ etc. Tournaments/ Events or Activities

Games and Related Events or Activities

Gatherings; (e.g. Million Man March, Promise Keepers)

Goodwill Games

Government Events or Activities

"Haunted House" type Events or Activities

Highland Games/ Events or Activities

Holiday Events or Activities/ Festivals/ Shows/
    etc., (e.g. New Years, New Millennium,
    Fourth of July, Christmas, Easter, etc.)

Home/ Yard/ Garden Shows/ Events or
    Activities

"Hoop it Up" type Events or Activities

Hot Air Balloon Events or Activities

Hot Rod Car Shows/ Events or Activities

Industry Events or Activities/ Games/ etc., (e.g.
    log rolling, bus rodeo)

Junior Olympics

Labor/ Union Events or Activities

Laser Shows

Laser Tag

Manufacturing/ Assembly

Martial Arts Competitions/ Events or Activities

Mazes

Meetings

Meets

Model and/or Hobby Shows/ Demonstrations/
    Competitions/ Sales (e.g. aircraft, trains
    boats, cars)

Motivational Speakers

Motorcycle/ Bicycle / Motocross Competitions/
    Events or Activities

Movie Theater

Museums

Music Events or Activities/ Performances/
    Festivals (e.g. Bumbershoot/ Jazz/ "Lillith
    Fair"/ "Lollapalooza"/ Blues/ etc.)/
    Concerts/ Recitals/ etc.

"Major League Baseball Experience" type
    Events or Activities

"Major Soccer League Experience" type Events
    or Activities

Neighborhood Events or Activities

Noncommercial Seminars

Nonprofit Events or Activities

"NFL Experience" type Events or Activities t

Office

Olympic Games Events or Activities

Outdoor/ Sportsman Shows/ Events or Activities

Paintball

Parachuting/ Air Sports Events or Activities

Parades

Parties and Celebrations e.g. Weddings, Bar
    Mitzvahs, Confirmations, Birthdays, New
    Years, Millennium, etc.

Patriotic Events or Activities

Performance Theater

Pet, Livestock and other animal Shows/ Events
    or Activities

Plant Shows/ Events or Activities

Police Station

Political Conventions/ Events or Activities

Polo

Pope/ President/ Dignitary/ Celebrity Events or
    Activities

Private Events or Activities

Public Events or Activities

Public Service Events or Activities

Rallies

Races

Recreational Equipment Shows/ Events or
    Activities

Recreational Vehicle Shows/ Events or
    Activities

Religious Events or Activities / Revivals/
    Services/ Prayer Meetings/ Convocations/
    etc.

Religious Group or Organization Events or
    Activities / etc.

Retail Sales/ Showroom

Retreats

Rifle/ Gun/ Weapons/ Ammo Shows/ Sales/
    Events or Activities/ etc.

Rock Climbing and related Events or Activities

Rodeo

Runs

Sales

Science or Scientific Fairs/ Events or Activities

"Saturday Market" type Events or Activities

Scouting/Campfire/and Other Youth Group
    Events or Activities

"Seafair" Events or Activities

"Seahawk Experience" type Events or Activities

Seasonal Events or Activities (e.g. Octoberfest/
    Spring Time Celebration)

Seminars

Shakespearean type Festivals/ Events or
    Activities

Shows

Skating Events or Activities (including in-line
    and skateboards)

Ski Jump Events or Activities

Ski Shows/ Events or Activities

Social Events or Activities

Special Interest Group Events or Activities

Special Olympics Events or Activities

Speeches

Sports and/or Athletic Events or Activities,
    including without limitation school, college,
    amateur, semi-pro, professional, seniors,
    international, disabled, and charitable events

Exhibit 6.2  Page 2

or activities and activities, including without
limitation competitions, tryouts, training,
practices and exhibition, regular season,
preliminary, qualifying, post-season,
championship, tournament, and "all-star"
games for any sport, including without
limitation: football, soccer, tennis, softball,
baseball, lacrosse, track and field,
gymnastics, field hockey, bicycle, rugby,
fencing, Olympic-type events or activities,
decathlon, triathlon, biathlon, fencing,
shooting, boxing, wrestling, archery, golf,
cricket, croquet, lawn bowling, ice and
roller/in-line skating, skateboard, ice
skating, swimming, diving, skiing, etc.; and
including without limitation any
organizational, promotional, ceremonial,
celebratory, historical, fan participation, fan
recognition, community outreach, or other
or similar type event ancillary or otherwise
related to any such sporting or athletic
events or activities (or series or season of
such Events or Activities) or to any player
or coach or other participant, team, league
or other organization involved in such
events or activities.

Superbowl and Related Events or Activities
Swap Meets
Television Shows (e.g. Wheel of Fortune)
Theater
Theme Park
Tournaments
Tractor Pulls
Trade Shows/ Events or Activities
Training
Virtual Reality/Holograms
Walks
Warehouse
Water Park
Wholesale Sales/ Showroom
World Championships and Preliminaries
World Cup Soccer
World Masters Games

# MASTER LEASE
## EXHIBIT 8.11

### FORM OF CONFIRMATION OF PSA OFFICE SPACE DESIGNATION
### ARCHITECT OF RECORD DRAWING
### A111 H - PSA OFFICES



Exhibit 8.11

U.S. EXHIBIT HALLS & TOTAL SQUARE FEET
OF CURRENT EXHIBIT SPACE*

1. McCormick Place
   Chicago, IL
   2,200,000

2. Las Vegas Convention Center
   Las Vegas, NV
   1,300,000

3. Georgia World Congress
   Center
   Atlanta, GA
   1,180,000

4. Astrodome U*S*A (includes)
   Astrohall, Astroarena,
   Astrodome)
   Houston, TX
   1,130,000

5. Orange County Convention
   Center
   Orlando, FL
   1,103,538

6. Kentucky Exposition Center
   Louisville, KY
   1,068,050

7. Sands Expo & Convention
   Center
   Las Vegas, NV
   1,006,396

8. International Exposition (I-X)
   Center
   Cleveland, OH
   902,000

9. Los Angeles Convention &
   Exhibition Center
   Los Angeles, CA
   865,000

10. Convention Center
    Dallas, TX
    850,000

11. Cobo Conference/
    Exhibition Center
    Detroit, MI
    800,000

12. Jacob K. Javits Convention
    Center of New York
    New York City, NY
    760,000

13. Anaheim Convention Center
    Anaheim, CA
    720,000

14. Ernest N. Morial
    Convention Center – New
    Orleans
    New Orleans, LA
    700,000

15. National Western Complex
    Denver, CO
    601,500

16. Rosemount Convention
    Center
    Rosemount, IL
    600,000

17. San Diego Convention
    Center
    San Diego, CA
    571,981

18. Indiana State Fairgrounds
    Event Center
    Indianapolis, IN
    559,000

19. Miami Beach Convention
    Center
    Miami Beach, FL
    502,717

20. America's Center/Cervantes
    Convention Center
    St. Louis, MO
    502,000

21. New Atlantic City Convention
    Center
    Atlantic City, NJ
    500,000

22. Kansas City Convention
    Center (includes H. Roe Bartle
    Hall)
    Kansas City, MO
    498,600

23. George R. Brown Convention
    Center
    Houston, TX
    451,500

24. Tulsa Exposition Center
    Tulsa, OK
    448,000

25. Moscone Convention Center
    San Francisco, CA
    442,000

26. Phoenix Civic Plaza
    Phoenix, AZ
    438,000

27. Pennsylvania Convention
    Center
    Philadelphia, PA
    435,000

28. New Charlotte Convention
    Center
    Charlotte, NC
    412,500

29. Cleveland Convention Center
    Cleveland, OH
    409,000

30. Long Beach Convention &
    Entertainment Center
    Long Beach, CA
    390,382

*Tradeshow Week's Major Exhibit Hall Directory, 1997

31. Washington Convention Center
Washington, D.C.
381,000

32. Indiana Convention Center & RCA Dome
Indianapolis, IN
377,452

33. Palmetto Expo Center
Greenville, SC
375,000

34. American Royal Center
Kansas City, MO
372,000

35. Reno Convention Center
Reno, NV
370,000

36. Fairplex
Pomona, CA
348,920

37. Portland Metropolitan Exposition Center
Portland, OR
341,200

38. Minneapolis Convention Center
Minneapolis, MN
319,000

39. Eastern States Exposition
West Springfield, MA
317,000

40. Greater Columbia Convention Center
Columbus, OH
306,000

41. Baltimore Convention Center
Baltimore, MD
300,000

42. Colorado Convention Center of the Denver Convention Complex
Denver, CO
300,000

43. Cow Palace
San Francisco
300,000

44. Atlanta Market Center (Merchandise Mart, Apparel Mart, Gift Mart, INFORUM)
Atlanta, GA
296,000

45. Henry B. Gonzalez Convention Center
San Antonio, TX
291,600

46. King County Stadium/"The Kingdome"
Seattle, WA
281,147

47. CAL EXPO/California Exposition & State Fair
Sacramento, CA
263,600

48. Fort Washington Expo Center
Fort Washington, PA
260,000

49. Salt Palace Convention Center
Salt Lake City, UT
256,000

50. Wisconsin Center
Milwaukee, WI
256,000

51. Arizona State Fair Park &Exposition
Phoenix, AZ
255,880

52. Bayside Expo Center
Boston, MA
250,000

53. Dane County Expo Center
Madison, WI
250,000

54. San Mateo County Expo Center
San Mateo, CA
245,000

55. Louisiana Superdome
New Orleans, LA
240,030

56. Dr. Albert B. Sabin Convention Center
Cincinnati, OH
240,000

57. Tampa Convention Center
Tampa, FL
236,000

58. Charlotte Merchandise Mart
Charlotte, NC
224,000

*Tradeshow Week's Major Exhibit Hall Directory, 1997

Here is the Stadia information that you requested. Some do have
names (naming rights), some do not.

NFL Stadia Opened Since 1996:

1.    ALLTEL Stadium - Jacksonville Jaguars
2.    Ericcson Stadium - Carolina Panthers
3.    Jack Kent Cooke Stadium - Washington Redskins
4.    Baltimore Ravens Stadium

NFL Stadia Proposed by 2006 (to date)

1.    Tampa Bay Stadium - Tampa Bay Buccaneers
2.    Tennessee Oilers Stadium
3.    Cleveland Browns Stadium
4.    Cincinnati Bengals Stadium
5.    Detroit Lions Stadium
6.    San Francisco 49ers Stadium (on hold)
7.    Washington State Football/Soccer Stadium and Exhibition Center - Seattle Seahawks
8.    Denver Broncos Stadium
9.    Pittsburgh Steelers Stadium

MLB Stadia Opened Since 1996:

1.    Turner Field - Atlanta Braves
2.    BankOne Ballpark - Arizona Diamondbacks

MLB Stadia Proposed by 2006 (to date):

1.    Miller Field - Milwaukee Brewers
2.    Safeco Field - Seattle Mariners
3.    Houston Astros Stadium
4.    Detroit Tigers Stadium
5.    Minnesota Twins Ballpark (on hold)
6.    New York Mets Ballpark
7.    Cincinnati Reds Ballpark

| Free-Standing Parking Garages | | | |
|---|---|---|---|
| **Garage** | **Location** | **Owner/Operator** | **Stalls** |
| 6th & Cherry Garage | 6th & Cherry | Republic Parking | 770 |
| Post Office | 4th & Lander | Post Office | 980 |
| "Sinking Ship" | 2nd & Yesler | AMPCO | 250 |
| King County Administration Garage | 5th & Jefferson | King County | 740 |
| Bon Marche Garage | 3rd & Stewart | Bon Marche | 840 |
| Market & Western Garage | Western & Virginia | Pike Place Market PDA | 530 |
| Seattle Central Community College | Bolyston & Pine | SCCC | 527 |
| Swedish Hospital | Boren & James | Sweedish Hopital | 110 |
| Seattle University | Broadway & Marion | Sweedish Hopital | 100 (approx) |
| Providence Hospital | 15th & Jefferson | Providence Hospital | 724 |
| Mercer Garage | Mercer & 3rd | Seattle Center | 1500 |
| Key Arena Garage | Thomas & Warren | Seattle Center | 400-500 |

## MASTER LEASE
## EXHIBIT 20.1.2

### PERMITTED EXCEPTIONS

1.  Reservation of Possessory Rights by King County, Washington as set forth in that certain Warranty Deed executed by King County, Washington, as grantor, in favor of the Washington State Public Stadium Authority, as grantee, dated _____, 1998 recorded with King County Records, No. _____ (to be recorded).

2.  Assessment by Metro Tunnel filed February 13, 1991 with King County Records, No. 0440-766620-4876-09, provided that PSA shall be responsible for causing King County to pay all amounts owing as provided for in the Agreement and Letter of Intent referenced in Permitted Exception #21.

3.  An unrecorded lease between King County, as lessor, and Donald B. Murphy Contractors, Inc. & Associated, a joint venture, as lessee, dated December 1, 1973 relating to the stadium energy plant, as disclosed by an assignment for security purposes recorded under Recording No. 7402150375, which lease was subsequently assigned to Citicorp, as lessee, as disclosed by Recording No. 8612120582, and a bill of sale conveying the stadium plant to The Bank of California, N.A., by assignment recorded under Recording No. 7402150374.

4.  Financing Statement executed by King County, State of Washington Department of Stadium Administration ("King County"), as debtor, in favor of Citicorp Leasing, Inc. ("Citicorp") recorded on December 12, 1986 with King County Records, No. 8612120582, as continued by instruments recorded under Recording Nos. 9107030441, 9107250418 and 9609171167. PSA shall be responsible for causing King County to pay all amounts owing under such Financing Statement as provided for in the Agreement and Letter of Intent referenced in Permitted Exception #21 below.

5.  Liability, if any, for the pro-rated portion of current year's general taxes for the Property which is currently being carried on the tax rolls as exempt from taxation.

6.  Release of Damages executed by Northern Pacific Railway Company in favor of the City of Seattle in connection with the construction of a side sewer, dated April 23, 1949, recorded on April 29, 1949 with King County Records, No. 3897380.

7.  Release of Damages executed by Northern Pacific Railway Company in favor of the City of Seattle in connection with the construction of a side sewer, dated April 26, 1964, recorded on May 3, 1964 with King County Records, No. 5874002.

8.  Release of Damages executed by Great Northern Railway Co. in favor of the City of Seattle in connection with the construction of a side sewer dated October 11, 1967, recorded on November 15, 1967 with King County Records, No. 6265537.

Exhibit 20.1.2
Page 1

30002803.04

9.   Ordinance No. 98852 creating the Pioneer Square Historic District.

10.  Easement for fire hydrants executed by King County, as grantor, in favor of the City of Seattle, as grantee, dated May 2, 1995, recorded May 2, 1995 with King County Records, No. 9505021077.

11.  Easement for utilities, hot water flows and returns, air conditioning water flows and returns, 10,000 gallon underground fuel tank with supply and return lines recorded February 15, 1974 with King County Records, No. 7402150375.

12.  Easement for one electric substation in favor of Burlington Northern Inc recorded March 8, 1979 with King County Records, No. 7903080743.

13.  Easement for underground electric distribution facilities in favor of the City of Seattle recorded February 26, 1997 with King County Records, No. 9702261536.

14.  City of Seattle Ordinance No. 118857 pertaining to amended land use and zoning affecting a westerly portion of the Project Site recorded with King County Records, No. 9801209276.

15.  Covenants for off-site parking from Merrill Place LLC recorded June 16, 1998 with King County Records, No. 9806160880.

16.  Covenants for off-site parking from Union Station Associates LLC recorded June 16, 1998 with King County Records, No. 9806160881.

17.  Covenant for off-site parking from Union Station Associates LLC recorded June 16, 1998 with King County Records, No. 9806160882.

18   Covenant for off-site parking from Washington State Major League Baseball recorded June 18, 1998 with King County Records, No. 9806181828.

19.  Covenant for off-site parking from Washington State Public Stadium Authority recorded July 20, 1998 with King County Records, No. 9807301034.

20.  Covenant for geologic hazard area from King County recorded July 31, 1998 with King County Records, No. 9807311097.

21.  Agreement and Letter of Intent among King County, Washington, City of Seattle, Washington State Public Stadium Authority, First & Goal Inc., Football Northwest Inc. and Washington State Department of Transportation dated June 25, 1998 and recorded with King County Records, No. 9807012001.

22.  Agreement, Stadium and Exhibition Center Property Contributions and Reservation of Possessory Rights between King County, Washington and The Washington State Public Stadium Authority dated September 30, 1998 and recorded with King County Records, No. _____ (to be recorded).

Exhibit 20.1.2
Page 2

23.  Existing utility and electrical power easements.

24.  A prospective electrical power easement in favor of Seattle City Light for purposes of improving electrical services on and near the area of the current north lot of the Kingdome (to be recorded).

25.  A prospective public and private transportation easement in favor of the County's Transportation Department ("Metro") as described in the Agreement and Letter of Intent referenced in Permitted Exception #21 (to be recorded).

26.  A prospective easement in favor of the RTA in connection with a proposed Weller Street public access pedestrian bridge as such easement extends onto the Kingdome Parcel as described in the Agreement and Letter of Intent referenced in Permitted Exception #21 (to be recorded).

Exhibit 20.1.2
Page 3

30002803.04

MASTER LEASE
EXHIBIT 26.14

After Recording Return To:

Allen D. Israel
Foster Pepper & Shefelman PLLC
1111 Third Avenue, Suite 3400
Seattle, Washington 98101

## MEMORANDUM OF MASTER LEASE

**GRANTOR:**    **WASHINGTON STATE PUBLIC STADIUM AUTHORITY,** a
Washington public corporation ("PSA")

**GRANTEE:**    **FIRST & GOAL INC.,** a Washington corporation ("FGI")

## PREMISES LEGAL DESCRIPTION:

1.    Abbreviated Form:  Lots 1–35, Block 325 and Lots 1–35, Block 285,
Seattle Tidelands

2.    Additional legal description is on **Exhibit A** attached hereto.

## ASSESSOR'S PROPERTY TAX PARCEL ACCOUNT NUMBER(S):

Assessor's Property Tax Parcel Account Number(s) is(are) on **Exhibit B** attached
hereto.

1.    PSA has leased to FGI upon the terms and conditions of the Master Lease
between the parties dated November 24, 1998 (the "Master Lease"), certain real property
described in attached Exhibit A incorporated herein by reference (the "Premises"), together with
certain improvement to be constructed thereon pursuant to a Development Agreement between
the parties dated November 24, 1998 (the "Development Agreement").

2.    The Master Lease shall be for an initial term commencing on the Commencement
Date as defined therein and shall end on the last day of the thirtieth (30th) complete Lease Year
following the Completion Date, as defined therein, plus one completion term of up to 12 months,

30004695.02

Exhibit 26.14  Page 1



**20000522000750**
FIRST AMERICAN LE
PAGE 001 OF 005
05/22/2000 11:27
KING COUNTY, WA                    13.00

## AFTER RECORDING MAIL TO:

Name___Foster Pepper & Shefelman_____

Address___1111 Third Ave., Suite 3400_____

City/State___Seattle, WA 98101_____

_____attn: Allen D. Israel_____

**Document Title(s):** (or transactions contained therein)

1. Memorandum of Master Lease
2.
3.
4.

Reference Number(s) of Documents assigned or released:

☐ Additional numbers on page _____ of document

*First American Title Insurance Company*

353940·C3

1ST AM-S ⑥

*(this space for title company use only)*

**Grantor(s):** (Last name first, then first name and initials)

1. WashingtonnState Public Stadium Authority
2.
3.
4.
5. ☐ Additional names on page _____ of document

**Grantee(s):** (Last name first, then first name and initials)

1. First & Goal Inc.
2.
3.
4.
5. ☐ Additional names on page _____ of document

**Abbreviated Legal Description as follows:** (i.e. lot/block/plat or section/township/range/quarter/quarter)

Por. Blocks 285 & 325 Seattle Tidelands

☐ Complete legal description is on page _____ of document

**Assessor's Property Tax Parcel / Account Number(s):**

766620-4876 & 766620-4880

WA-1

NOTE: *The auditor/recorder will rely on the information on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.*

Filed for Record at Request of
After Recording Return to:

Allen D. Israel
Foster Pepper & Shefelman PLLC
1111 Third Avenue, Suite 3400
Seattle, Washington 98101

## MEMORANDUM OF MASTER LEASE

| | |
|---|---|
| **Grantor:** | **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a Washington public corporation ("PSA") |
| **Grantee:** | **FIRST & GOAL INC.**, a Washington corporation ("FGI") |
| **Legal:** | **POR. Block 285 & 325, SEATTLE TIDELANDS**, additional legal description is on Exhibit A attached hereto |
| **Tax Number:** | **POR. 76620-4876; and 766620-4880** |

1.     PSA has leased to FGI upon the terms and conditions of the Master Lease between the parties dated November 24, 1998 as amended by First Amendment to Master Lease dated July 22, 1999 (the "Master Lease"), certain real property described in attached Exhibit A incorporated herein by reference (the "Premises"), together with certain improvement to be constructed thereon pursuant to a Development Agreement between the parties dated November 24, 1998 as amended by First Amendment to Development Agreement dated November 1, 1999 (the "Development Agreement").

2.     The Master Lease shall be for an initial term commencing on the Commencement Date as defined therein and shall end on the last day of the thirtieth (30th) complete Lease Year following the Completion Date, as defined therein, plus one completion term of up to 12 months, in accordance with the terms of the Master Lease. The term may be extended for up to three extension periods of ten (10) years each, plus one completion term of up to twelve months in accordance with the terms of the Master Lease. The Completion Date is expected to occur in late 2002.

3.     If the North Half Lot, as defined in the Property Contribution Agreement which is described in the Development Agreement, is acquired by PSA, then upon such acquisition that property shall become part of the Premises and subject to the Master Lease and the modified description of the Premises shall be recorded as an amendment to this Memorandum.

3C004696.03

Section 27 of the Development Agreement contemplates the possibility of further development of certain portions of the Premises. In such event, the Premises shall be appropriately modified, if required, and the modified description of the Premises shall be recorded as an amendment to this Memorandum.

5.    In the event of a conflict between the provisions of this Memorandum and the Master Lease, the provisions of the Master Lease shall control.

Dated this _____ day of May 2000.

PSA:                                   WASHINGTON    STATE    PUBLIC    STADIUM
                                       AUTHORITY


                                       By _____
                                          Frederick Mendoza, Vice-Chair of the Board

FGI:                                   FIRST & GOAL INC.


                                       By: _____
                                           Robert L. Collier, Vice-President



                    [ACKNOWLEDGEMENTS FOLLOW]

30004595.03

STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF KING          )

I certify that I know or have satisfactory evidence that **FREDERICK MENDOZA** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Vice-Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this _15_ day of May 2000.

*Bonnie Gillen Barney*
(Signature of Notary)
*Bonnie Gillen Barney*
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at _Kent_

My appointment expires _5/9/04_

> BONNIE GILLEN BARNEY
> NOTARY PUBLIC
> STATE OF WASHINGTON
> COMMISSION EXPIRES
> MAY 9, 2004

STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF KING          )

I certify that I know or have satisfactory evidence that **ROBERT L. COLLIER** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Vice-President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this _16th_ day of May 2000.

*Leslee A. Bush*
(Signature of Notary)
*Leslee A. Bush*
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at _Bellevue_

My appointment expires _February 07, 2003_

> Notary Public
> State of Washington
> LESLEE A. BUSH
> My Appointment Expires Feb. 07, 2003

30004693.03

## EXHIBIT A

### Legal Description

Lots 5 through 35, Block 285, Lots 5 through 35, Block 325, the Seattle Tide Lands as shown on the official maps of the Seattle Tide Lands in Volume 2, pages 29, 30, 31 and 32 in King County, Washington, and that portion of 3rd Avenue South, vacated per City of Seattle Ordinance No. 10552, conveyed to King County by Burlington Northern, Inc. by Warranty Deed recorded under King County Auditor's File No. 7112140537.

EXCEPT that portion of Lot 5 said Block 325, lying North of the adjusted line per City of Seattle Lot Boundary Adjustment Number 9806721.

And EXCEPT that portion of Lot 5 said Block 285 and said vacated 3rd Avenue South lying North of the adjusted line per City of Seattle Lot Boundary Adjustment Number 9806720.

And EXCEPT any portion of said Block 285 not conveyed to King County by said Warranty Deed recorded under King County Auditor's File No. 7112140537.

TOGETHER WITH an access and egress easement for vehicles and pedestrians of all types and kinds 90 feet in width (60 foot wide roadway plus sidewalks), being a southerly extension of 2nd Ave. So to the northerly boundary of Lot 5, Block 325 described above.

SUBJECT TO an easement by reservation for a portion of the footprint of the Weller Street pedestrian bridge touchdown together with related maintenance and access rights to and for the Weller Street pedestrian bridge on, over and through that portion of the following described property which is located within the unexcepted portions of Lot 5, Block 325 and vacated 3rd Avenue South described above:

A portion of the Southwest quarter of the Northwest quarter of Section 5, Township 24 North, Range 4 East, W.M.; King County, Washington being a portion of Block 285, Seattle Tidelands as recorded in Volume 2, pages 29 and 30 of Plats, Records of King County, Washington and also vacated 3rd Avenue South as vacated by City of Seattle Vacation Ordinance No. 10552. More particularly described as follows:

Commencing at the intersection of Occidental Avenue South and South King Street; thence South 89°53'29" East (Seattle Tidelands), 703.55 feet along the centerline of South King Street; thence South 00°06'31" West, 40.00 feet perpendicular to the centerline of South King Street to a point on the South margin of South King Street said point being described as 673.47 feet distant from the intersection of the East margin of Occidental Avenue South and the South margin of South King Street in a Warranty Deed filed under Auditor's File No. 7112140537 records of King County, Washington; thence continuing South 00°06'31" West, 60 feet along a property line per said Deed; thence South 89°53'29" East, 15.10 feet along a property line per said Deed; thence South 00°40'42" East, 100.10 feet; said point being the TRUE POINT OF

BEGINNING; thence South 88°53'57" East, 93.95 feet to a property line per said Deed; thence South 01°06'03" West, 110.00 feet along said property line; thence North 88°53'57" West, 102.55 feet; thence North 00°40'42" West, 110.06 feet; thence South 88°53'57" East, 11.41 feet to the TRUE POINT OF BEGINNING.

SUBJECT TO a 10 foot wide water line easement by reservation across a portion of Lot 4, Block 285, Seattle Tidelands, located 5 feet on each side of the following described centerline:

Commencing at the intersection of Occidental Avenue South and South King Street; thence South 89°53'29" East (Seattle Tidelands), 703.55 feet along the centerline of South King Street; thence South 00°06'31" West, 40.00 feet perpendicular to the centerline of South King Street to a point on the South margin of South King Street said point being described as 673.47 feet distant from the intersection of the East margin of Occidental Avenue South and the South margin of South King Street in a Warranty Deed filed under Auditor's File No. 7112140537 records of King County, Washington; thence continuing South 00°06'31" West, 60 feet along a property line per said Deed; thence South 89°53'29" East, 15.10 feet along a property line per said Deed; thence South 00°40'42" East, 100.10 feet; thence South 88°53'57" West, 11.41 feet; thence South 00°40'42" West, 14.68; said point being the TRUE POINT OF BEGINNING; thence North 89°38'57" West 19.19 feet, more or less, to the existing 6 inch water line running approximately north and south, and the termination of the herein described centerline.

SUBJECT TO an easement by reservation for extensions of 2nd Ave. So. (approximately 90 feet), 3rd Ave. So. (approximately 72 feet), and South Lane St. (approximately 72 feet) for the purpose of providing bus ingress, egress and through travel for the benefit of King County's Transportation Department. Grantee has the right to establish the exact location of this reserved easement so long as its configuration provides reasonable bus ingress and egress and through travel to the Washington State Department of Transportation's adjacent multi-modal facility. Improvements for this reserved easement are subject to the provisions of Section 1.5.4 of the Property Contribution Agreement and Paragraph 12a, third bullet of Exhibit C thereto (Agreement and Letter of Intent) which Property Contribution Agreement is more particularly identified in Exhibit B to this Statutory Warranty Deed as Exception to Title No. 15. This reserved easement shall be extinguished upon dedication of the area comprising the reserved easement as a public street right of way meeting the same specifications as this easement reservation.

FIRST AMENDMENT

to

MASTER LEASE

Dated November 24, 1998

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: July 22, 1999

# FIRST AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: July __, 1999

BETWEEN:          WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

                            a Washington State public corporation

                            401 Second Avenue South, Suite 520

                            Seattle, WA  98104          ("PSA")

AND:          FIRST & GOAL INC.,

                            a Washington corporation

                            110-110th Avenue N.E., Suite 550

                            Bellevue, WA  98004          ("FGI")

This is the First Amendment to the Master Lease dated November 24, 1998, between the parties hereto (the "Lease"). All defined terms used herein shall have the same meaning as in the Lease unless otherwise defined herein.

    1.    Maintenance Plans. Sections 11.1.3 and 11.1.4 of the Lease are modified as follows. FGI shall submit to PSA the first Annual Maintenance Plan and the first Five-Year Plan for the Exhibition Center and Parking Facility after the RV show in March, 2000, but before June 30, 2000. Subsequent Annual Maintenance Plans and updates of Five-Year Plans shall be submitted by FGI to PSA at least thirty (30) days prior to each Lease Year, except that FGI shall submit to PSA the first Annual Maintenance Plan and the first Five-Year Plan for the Stadium and Other Improvements on or before October 31, 2003.  PSA shall have 60 days from FGI's submission to review and approve the first Annual Maintenance Plans for the Exhibition Center/Parking Facility and Stadium/Other Improvements, respectively.  Subsequent Annual Maintenance Plans shall be subject to the thirty (30) day review and approval period provided in Section 11.1.3.

    2.    Other Terms Ratified.

        All other terms and conditions of the Lease are hereby ratified and affirmed.

1
2           IN WITNESS WHEREOF, this First Amendment has been executed by the
3    Parties as of the dates set forth below.
4
5           PSA:                          WASHINGTON STATE PUBLIC STADIUM
6                                         AUTHORITY, a public corporation of the State of
7                                         Washington
8
9
10                                        By: _Lorraine Hine_____
11                                            Lorraine Hine, Chair of the Board
12
13          FGI:                          FIRST & GOAL INC., a Washington corporation
14
15
16                                        By: _Robert Whitsitt_____
17                                            Robert J. Whitsitt, President
18

1   STATE OF WASHINGTON   )
2                         ) ss.
3   COUNTY OF KING        )
4
5       I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person
6   who appeared before me, and said person acknowledged that said person signed this instrument,
7   on oath stated that said person was authorized to execute the instrument and acknowledged it as
8   the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a
9   public corporation of the State of Washington, to be the free and voluntary act of such
10  corporation for the uses and purposes mentioned in the instrument.
11
12
13      Dated this _22_ day of July, 1999.
14
15                                          _Robin M Wohlhueter_
16                                          (Signature of Notary)
17
18                                          _____
                                            (Legibly Print or Stamp Name of Notary)
19                                          Notary public in and for the State of Washington,
20                                          residing at _King County_
21
22                                          My appointment expires _4-14-01_
23
24
25  STATE OF WASHINGTON   )
26                        ) ss.
27  COUNTY OF KING        )
28
29      I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the
30  person who appeared before me, and said person acknowledged that said person signed this
31  instrument, on oath stated that said person was authorized to execute the instrument and
32  acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the
33  free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.
34
35      Dated this _22_ day of July, 1999.
36
37                                          _Cynthia L Kelley_
38                                          (Signature of Notary)
39                                          _Cynthia   L.   Kelley_
40                                          (Legibly Print or Stamp Name of Notary)
41                                          Notary public in and for the State of Washington,
42                                          residing at _Kirkland, WA_
43
44                                          My appointment expires _9-28-01_

FIRST AMENDMENT TO MASTER LEASE                    -3-                  Res. 89 Exhibit A.DOC
08/23/99

SECOND AMENDMENT

to

MASTER LEASE

Dated November 24, 1998

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: September _11_, 1999

## SECOND AMENDMENT TO MASTER LEASE

2

3      EFFECTIVE DATE: September __, 1999

4

5      BETWEEN:            WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

6                          a Washington State public corporation

7                          401 Second Avenue South, Suite 520

8                          Seattle, WA  98104                              ("PSA")

9

10     AND:                FIRST & GOAL INC.,

11                         a Washington corporation

12                         110-110th Avenue N.E., Suite 550

13                         Bellevue, WA  98004                             ("FGI")

14

15          This is the Second Amendment to the Master Lease dated November 24, 1998, between

16     the parties hereto, as previously amended on July 22, 1999, (collectively, together with this

17     Second Amendment, the "Lease"). All defined terms used herein shall have the same meaning as

18     in the Lease unless otherwise defined herein. All references in other documents to the "Master

19     Lease" shall be interpreted to mean the Lease as hereby amended, unless a different

20     interpretation is compelled by the circumstances. All references to the "County Ordinance" shall

21     be interpreted to mean King County Ordinance No. 1999-0366, as amended or superseded from

22     time to time. All references to the "MOU" shall be interpreted to mean the Memorandum of

23     Understanding Regarding Implementation of Various Aspects of Chapter 220, Laws of 1997,

24     dated August 26, 1998 among the Office of Financial Management of the State of Washington,

25     the Office of the State Treasurer of the State of Washington, and PSA, as amended on April 20

26     and April 28, 1999.

27          1.    Taxes and Ticket Surcharge. Section 18 of the Lease is hereby amended to read

28     in its entirety as follows:

18.1   King County Taxes.

King County is authorized by RCW 36.38.010 to levy a tax of up to 10% on tickets for admission to events at the Project (the "Admissions Tax"), and by RCW 36.38.040 to levy a tax of up to 10% on parking at the Project (the "Parking Tax"). FGI shall collect and remit such taxes as provided by Law, including the County Ordinance (and in applying such County Ordinance, FGI is "a person who by agreement with PSA is obligated to collect the tax") and by any agreement with King County or the State of Washington. Any failure of FGI to collect and remit such taxes as required by Law or any Admissions Tax and Parking Tax collection agreement with King County or the State of Washington, which failure is material and remains uncured, shall constitute an Event of Default under this Lease.

18.2   Ticket Surcharge.

18.2.1 In accordance with Section 13.2.3.2 of the Development Agreement and Section 19.3 of this Lease, PSA hereby imposes and FGI hereby consents to and agrees to pay, a Ticket Surcharge. The Ticket Surcharge of this Section 18.2 is the exclusive surcharge on tickets for events at the Project contemplated by Section 19.3 of this Lease and Section 13.2.3.2 of the Development Agreement. FGI agrees to this limited and exclusive exercise of PSA's authority under Section 105(5) of the Act. PSA shall not impose any other fees, charges, surcharges or taxes pursuant to Section 105(5) of the Act or Section 13.2.3.2 of the Development Agreement or Section 19.3 of this Lease without FGI's prior consent which may or may not be given in FGI's sole discretion.

18.2.2 FGI shall collect, remit, and report to the State Treasurer (notwithstanding anything in the Development Agreement or Lease to the contrary) the Ticket Surcharge substantially in the manner, and subject to substantially the terms (including without limitation record retention, late charges, and provisions for delinquent payments or underpayments), as those applicable to FGI's collection, remittance, and reporting of the Admissions Tax under Section 18.1 by the County Ordinance. Notwithstanding the foregoing, the amount of the Ticket Surcharge shall not be printed on tickets. For the purposes of applying this clause and Section 18.3.2 below, the rights

of the County or State under the County Ordinance shall be considered corresponding rights of PSA and the State Treasurer herein (and either PSA or the State Treasurer may exercise such rights). PSA and FGI may mutually agree upon different methods of collection, remittance and reporting of Ticket Surcharges if they determine them to be simpler or more efficient. FGI shall remit the Ticket Surcharge and Rent by separate checks. FGI shall provide to PSA written evidence of payment of the Ticket Surcharge to the State Treasurer at the same time FGI makes each such payment to the State Treasurer. The Ticket Surcharge shall be computed as a percentage of charges for admission to events computed in exactly the same manner and on the identical revenue base as the Admissions Tax on the Project levied by King County pursuant to the authority of Section 301(5) of the Act, codified as RCW 36.38.010(5).

18.2.3 The Ticket Surcharge percentage rate shall be one and two-tenths percent (1.2%). The Ticket Surcharge shall commence effective upon the effective date that the County's Admission Tax is reduced to a rate, whereby such tax rate plus 1.2% does not exceed the "maximum permissible admissions tax rate" as defined in Section 13.2.3.3 of the Development Agreement ("Maximum Total Rate"); provided, however, that: (a) in the event of an NFL player strike or lockout which materially reduces the number of Team Regular Season or Playoff Home Games played in the Stadium, or damage or destruction materially reduces the number of events held at the Project, and if the sum of the Ticket Surcharge and the Admissions Tax then being imposed is less than the Maximum Total Rate, then the Parties shall, with approval of the State, negotiate a reasonable temporary adjustment to the Ticket Surcharge percentage rate (up to a maximum rate equal to the amount by which the Maximum Total Rate exceeds the actual rate of Admissions Tax then being imposed) to compensate for the estimated lost Ticket Surcharge for such reduced Home Games and/or events, but only to the extent reasonably necessary to enable PSA to raise the Maximum Aggregate Amount contemplated by Section 18.2.4, including projected future interest and earnings; and (b) such Ticket Surcharge rate is always subject to reduction to a lesser rate (or, with the agreement of FGI, to increase to a greater rate) as may be determined by the State Treasurer consistent with Section 8.13 of the Lease, Protection of Tax-Exempt Bonds; and (c) PSA may

increase the Ticket Surcharge, to a percentage rate greater than one and two-tenths
percent (1.2%), but not greater than a rate (when combined with the Admissions Tax rate)
that would exceed the Maximum Total Rate, if PSA reasonably determines that projected
revenues and earnings necessary to fund the Deferred Sales Tax Funds (defined in the
Development Agreement) at any particular time are likely to be less than those previously
projected as necessary to accrue sufficient Deferred Sales Tax Funds to timely repay the
Deferred Sales Tax, but only to the extent reasonably necessary to enable PSA to raise the
Maximum Aggregate Amount contemplated by Section 18.2.4, including projected future
interest and earnings. In the event of the enactment of any Law which would make a
subsequent imposition of any Ticket Surcharge, or increase of the rate of any Ticket
Surcharge, illegal in the absence of the agreement of any person or persons other than the
parties to this Lease, then the parties to this Lease shall in good faith negotiate an
amendment to this Lease to achieve the intended outcome of this Section 18.2 while
being fully consistent with such Law.

18.2.4 The Ticket Surcharge is intended to enable PSA to collect
sufficient funds (including the aggregate proceeds of the Ticket Surcharge itself and the
projected interest and other earnings accrued thereon) for, and may be utilized solely for
the purpose of, enabling PSA to meet its obligations under Section 13.3 of the
Development Agreement, up to the Maximum Aggregate Amount. The "Maximum
Aggregate Amount" of the Ticket Surcharge, and interest and earnings thereon, shall be
equal to the amount by which (x) the lesser of the actual Deferred Sales Tax or
$37,000,000; exceeds (y) the amount of Deferred Sales Tax Funds (other than Ticket
Surcharge proceeds) deposited pursuant to Section 13.2.3.1 of the Development
Agreement and the MOU, and the interest earned on such funds. PSA shall timely
perform all of its obligations under the Lease, the Development Agreement and the
provisions of the MOU under the captions "Payments for Deferred Sales Taxes" and
"PSA Obligation to Repay Expenditures in Excess of $300 Million Expenditure Limit."
When, based on the reasonable projections, the amount of aggregate Ticket Surcharges
theretofore collected and remitted, together with actual and projected future interest and
earnings, equals or exceeds 95% of the total Ticket Surcharges and interest and earnings

thereon projected to be required under this Section 18.2, then FGI's obligation to collect and remit additional Ticket Surcharges shall cease, subject to the following sentence. At the time for the last installment payment by PSA of the Deferred Sales Taxes, FGI shall remit to PSA such amount as may be required (together with other remaining Deferred Sales Tax Funds) to timely pay in full the remaining Deferred Sales Taxes, up to the Maximum Aggregate Amount described in this Section 18.2.4, plus any additional amount required from FGI under Section 13.2.2 of the Development Agreement. Any disagreement between PSA and FGI as to when PSA has received sufficient Ticket Surcharge funds is subject to Dispute Resolution.

18.2.5 PSA shall cause the State Treasurer to establish an interest-bearing account (or to invest in interest-bearing instruments) for such Ticket Surcharge proceeds to accumulate funds to pay the amount of the Deferred Sales Taxes, which account will be a different account than the account described in Section 13.2.3.1 of the Development Agreement.

18.2.6. The Ticket Surcharge collected with respect to admissions in respect of Exhibition Hall Events is included in both "Exhibition Hall Revenues" and "Exhibition Hall Expenses."

18.3    Audit Rights.

18.3.1. As provided in Section 17.2 of the Development Agreement, FGI shall have the right to audit the applicable records of PSA to determine if PSA is in compliance with its obligations under Section 18.2 of the Lease and to determine when the Ticket Surcharge should terminate.

18.3.2 PSA shall have the same rights regarding auditing of records relating to Ticket Surcharges as the audit rights of the County and the State Treasurer relating to Admission Taxes pursuant to the County Ordinance and the statutes referenced therein. PSA may rely on, and participate in, any such audit performed by or for State Treasurer, or may perform its own audit. FGI shall fully cooperate with any such audit.

2.    Other Terms Ratified.

All other terms and conditions of the Lease are hereby ratified and affirmed.

3.   Inconsistencies in Development Agreement.

2   To the extent any provision of Section 13.2 of the Development Agreement is
3   inconsistent with the provisions of Section 18 of the Lease, the language in the Lease shall
4   control.

5

6   IN WITNESS WHEREOF, this Second Amendment has been executed by the
7   Parties as of the dates set forth below.

8    PSA:   WASHINGTON STATE PUBLIC STADIUM
9    AUTHORITY, a public corporation of the State of
10    Washington
11
12
13    By: _Lorraine Hine_____

Lorraine Hine, Chair of the Board

15    FGI:   FIRST & GOAL INC., a Washington corporation
16
17
18    By: _Robert Whitsitt_____
19    Robert J. Whitsitt, President
20

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 17th day of September, 1999.



_Robin M Wohlhueter_
(Signature of Notary)

_Robin M Wohlhueter_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _King County_

My appointment expires _4-14-01_

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 8th day of September, 1999.

_Charlotte J. Kores_
(Signature of Notary)

_Charlotte J. Kores_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Renton_

My appointment expires _May 19, 2003_

Second Amendment to Master Lease.doc

*LL014-007*
*Au #1400*
*Doc # 6299*
*Res 115*

# THIRD AMENDMENT

to

## MASTER LEASE

between

### WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

### FIRST & GOAL INC.,

a Washington corporation

Dated: September 28, 2000

## THIRD AMENDMENT TO MASTER LEASE

EFFECTIVE DATE:  September 28, 2000

BETWEEN:         WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
                 a Washington State public corporation
                 401 Second Avenue South, Suite 520
                 Seattle, WA  98104                                    ("PSA")

AND:             FIRST & GOAL INC.,
                 a Washington corporation
                 110-110th Avenue N.E., Suite 550
                 Bellevue, WA  98004                                   ("FGI")

        This is the Third Amendment to the Master Lease between PSA and FGI (the

"Lease").  All defined terms used in this Third Amendment shall have the same meaning as in

the Lease unless otherwise separately defined in this Third Amendment.

        1.      The First Amendment to the Master Lease dated November 24, 1998 is hereby

                deleted.

        2.      Section 11.1.3 of the Master Lease is modified as follows:


        The first sentence of Section 11.1.3 is deleted in its entirety and replaced with the

following:

                "FGI shall submit to PSA, for PSA's review and approval, a plan
                for the Normal Maintenance activities to be conducted at the
                Premises by FGI for a given Lease Year (the "Annual Maintenance
                Plan").  The Annual Maintenance Plan for the Exhibition Hall shall
                be submitted by June 1, 2001 and by June 1 of each Lease Year
                thereafter.  The first Annual Maintenance Plan for the Stadium and
                Other Improvements shall be submitted by October 31, 2003 and
                thereafter by June 1 of each Lease Year thereafter."

3.    Section 11.1.4 of the Master Lease is modified as follows:

The first sentence of Section 11.1.4 is deleted in its entirety and replaced with the following:

> "FGI shall submit to PSA, for PSA's review and approval, a new or updated plan of scheduled work to be performed upon the Premises during the ensuing five-year period in order to meet FGI's obligations under Section 11.3 for Major Maintenance and under Section 11.1.2.2 for certain modifications, capital improvements and upgrading, as well as FGI's rights under Section 11.4 for Modernization Improvements (a 'Five-Year Plan'). The Five-Year Plan for the Exhibition Hall shall be submitted by March 1, 2001 and by March 1 of each Lease Year thereafter. The first Five-Year Plan for the Stadium and Other Improvements shall be submitted by October 31, 2003, and thereafter by March 1 of each Lease Year thereafter."

4.    <u>No Further Modification</u>.

The Lease remains in full force and effect and unmodified except by the Second Amendment and this Third Amendment.

IN WITNESS WHEREOF, this Third Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                        WASHINGTON STATE PUBLIC STADIUM
                            AUTHORITY, a public corporation of the State of
                            Washington

                            By: _____

                            Lorraine Hine, Chair of the Board

FGI:                        FIRST & GOAL INC., a Washington corporation

                            By: _____

                            Robert J. Whitsitt, President

2 C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.doc

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this _26th_ day of _September_, 2000.

_Robin M Wohlhueter_
(Signature of Notary)

(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at _Kersey County WA_

My appointment expires _4-14-01_

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this _3_ day of _November_, 2000.

_Charlotte J. Kores_
(Signature of Notary)
Charlotte J. Kores
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at _Renton_

My appointment expires _May 19, 2003_

3C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.do

09/27/00

LL 014-07
F 1402
D 1071

FOURTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 1, 2001

FOURTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: November 1, 2001

BETWEEN:          WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
                  a Washington State public corporation
                  401 Second Avenue South, Suite 520
                  Seattle, WA  98104                          ("PSA")

AND:              FIRST & GOAL INC.,
                  a Washington corporation
                  505 Fifth Avenue South, Suite 900
                  Seattle, WA  98104                          ("FGI")

This is the Fourth Amendment to the Master Lease between PSA and FGI (the "Lease"). All defined terms used in this Fourth Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Fourth Amendment.

1.    Section 11.1.3 of the Master Lease, as amended, is modified as follows:

1.1    The second sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"The Annual Maintenance Plan for the Exhibition Center and Parking Facility shall be submitted by June 1, 2001 and by August 1 of each Lease Year thereafter."

1.2    The third sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"The first Annual Maintenance Plan for the Stadium and Other Improvements shall be submitted by August 1, 2003 and by August 1 of each Lease Year thereafter."

1.3    The fourth sentence of Section 11.1.3 is deleted and replaced with the following:

1

> "PSA shall have ninety (90) days from FGI's submission to review and approve, conditionally approve, or disapprove the Annual Maintenance Plan."

2.    Section 11.1.4 of the Master Lease, as amended, is modified as follows:

The fifth sentence of Section 11.1.4 is deleted in its entirety and replaced with the following:

> "PSA shall have sixty (60) days from FGI's submission to review and approve, conditionally approve, or disapprove each Five-Year Plan."

3.    Section 11.1.5 of the Master Lease, as amended, is revised by adding the following after the first sentence of Section 11.1.5:

> "PSA shall have ninety (90) days to review and comment on each annual maintenance report."

4.    <u>No Further Modification</u>.

The Lease remains in full force and effect and unmodified except by the Second Amendment, the Third Amendment and this Fourth Amendment.

IN WITNESS WHEREOF, this Fourth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                              WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington

By: _____

Lorraine Hine, Chair of the Board

2

FGI:                          FIRST & GOAL INC., a Washington corporation


                              By: _____
                                   Robert J. Whitsitt, President


3

STATE OF WASHINGTON )
                          ) ss.
COUNTY OF KING )

        I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

        Dated this 25ᵀᴴ day of October, 2001.



             (Signature of Notary)
        J.E. Todd
        (Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at Bothell, WA

My appointment expires 6-9-05

STATE OF WASHINGTON )
                          ) ss.
COUNTY OF KING )

        I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

        Dated this 12 day of November, 2001.

             (Signature of Notary)
        KIM LINDBECK
        (Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at EDMONDS, WA

My appointment expires 3/15/04

4

LL 014-007
F 1402
D 10710

# FIFTH AMENDMENT

to

## MASTER LEASE

between

## WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

## FIRST & GOAL INC.,

a Washington corporation

Dated: October 25, 2001

1            FIFTH AMENDMENT TO MASTER LEASE

2

3    EFFECTIVE DATE: October 25, 2001

4.   BETWEEN:        WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
5                    a Washington State public corporation
6                    401 Second Avenue South, Suite 520
7                    Seattle, WA 98104                                    ("PSA")

8    AND:            FIRST & GOAL INC.,
9                    a Washington corporation
10                   505 Fifth Avenue South, Suite 900
11                   Seattle, WA 98104                                    ("FGI")

12        This is the Fifth Amendment to the Master Lease between PSA and FGI (the "Lease").

13   All defined terms used in this Fifth Amendment shall have the same meaning as in the Lease

14   unless otherwise separately defined in this Fifth Amendment.

15

16        1.    Field Surface. A new Section 7A entitled FIELD PLAYING SURFACE is added

17   between the end of existing Section 7 and the beginning of existing Section 8, as follows:

18

19   "SECTION 7A            FIELD PLAYING SURFACE

20   7A.1   Field Surface.
21

22          7A.1.1 Initial Installation.   FGI is authorized to install and maintain an artificial
23          turf, known as FieldTurf™ ("FieldTurf"), as the playing surface in the
24          Stadium (the "Field Surface").  FieldTurf shall not have indelible lines,
25          yardage markers, hash marks, end zones, field logos or similar indicators,
26          and all such indicators shall be removable.  The design specifications for
27          the FieldTurf, including, but not limited to, its sub-base, drainage and
28          installation, are hereby approved to the extent they are consistent with the
29          FieldTurf manufacturer's specifications.  To the extent the design
30          specifications are not consistent with the FieldTurf manufacturer's
31          specifications, however, they shall be subject to the prior approval of the
32          PSA in its sole discretion.  FGI agrees to defend and indemnify PSA from
33          any claim or liability on account of or arising out of the performance
34          characteristic of the FieldTurf Field Surface known as "GMAX." Except
35          as provided in the preceding sentence, the Project Design Documents and
36          Construction Documents for the Stadium, as described in the Development

1  Agreement, are hereby deemed amended to reflect a FieldTurf Field
2  Surface, and are hereby approved by the PSA.

4  7A.1.2 Replacement. If after installation of the FieldTurf, FGI elects to change
5  the Field Surface to another type of artificial surface or natural grass, such
6.  change shall constitute Major Maintenance or Modernization.

8  7A.2  Olympic Games and/or World Cup Soccer.

10  FGI acknowledges that FieldTurf is not currently approved for Olympic Games
11  soccer by the International Olympic Committee and is not currently approved for
12  the·final round of World Cup Soccer by the Federation Internationale de Football
13  Association ("FIFA"). If the Olympic Games are awarded to Seattle and Olympic
14  Games soccer games are venued at the Stadium or in the event that the final round
15  of World Cup Soccer games are venued at the Stadium, and at that time the
16  regulatory body for whichever of the above competitions is occurring requires a
17  natural grass playing field for soccer games, then FGI shall overlay the Field
18  Surface with a temporary natural grass playing surface that meets the then current·
19  requirements of the applicable regulatory body. The cost of complying with the
20  requirements of this Section shall be paid by FGI, but such cost is not an allowed
21  cost of preparing, operating, and restoring the Project for purposes of Section 6.3
22  or Major Maintenance or Modernization. If there is any uncertainty over whether
23  or not the International Olympic Committee or FIFA will allow its respective
24  competitions to be played on the Field Surface, such uncertainty shall be resolved
25  based on a letter signed by the applicable regulatory authority specifically
26  identifying the approved playing surface.

28  7A.3  National Teams Soccer.

30  If required to attract and host a match involving either the United States Men's or
31  Women's National Team or United States Men's or Women's Olympic Team, in
32  either a World Cup qualifying match, Olympics qualifying match, or a "friendly"
33  (exhibition) international exhibition match, FGI shall overlay the Field Surface
34  with a temporary natural grass playing surface that meets the then current
35  requirements of the applicable regulatory authority at FGI's sole expense, so long
36  as the applicable regulatory authority allows the match on an overlay of natural
37  grass. Compliance with this Section is not Major Maintenance or Modernization.
38  This obligation shall be limited to one match per Lease Year. If in a given Lease
39  Year, a match described above has not used the Stadium as its venue, then FGI's
40  obligation under this Section shall nonetheless be satisfied for that Lease Year,
41  and such obligation shall not cumulate or carry over to a future Lease Year.

7A.4    Underline: International Exhibition Soccer.

    If required to attract and host "First Division" or above international professional soccer matches (games), FGI shall overlay the Field Surface with a temporary natural grass playing surface that meets the then current requirements of the applicable regulatory authority, except as limited in the following paragraph, so long as the applicable regulatory authority allows the match on an overlay of natural grass.  Compliance with this Section is not Major Maintenance or Modernization.

    This obligation shall be limited to three (3) matches per Lease Year when the Field Surface is not accepted for play by either of the competing teams in the specific match.  If in a given Lease Year, less than three (3) matches described above use the Stadium as a venue, then FGI's obligation under this Section shall nonetheless be satisfied for that Lease Year, and such obligation shall not cumulate or carry over to a future Lease Year.  FGI's compliance with the requirements of this Section 7A.4 shall be at FGI's sole cost and expense, except that if the match has paid attendance of fewer than 40,000, FGI may charge the promoter for some or all of the cost of compliance with the requirements of this Section.  For purposes of this Section, attendees that occupy club seats, luxury suites, or season ticket holders, who do not pay a separate charge for attendance at the match, but rather receive tickets for the match as part of their annual payment for attending Events at the Stadium, shall be counted as paid attendance.  In order to effectuate this provision, FGI may require the promoter of the match to post reasonable security to pay the estimated cost of FGI's compliance with this Section, and that Security shall either be returned to the promoter or, if the promoter does not promptly pay to FGI the estimated cost of FGI's compliance with this Section, then such security shall be delivered to FGI following the match, depending on whether the actual paid attendance is at least 40,000 or not, all on specific terms and conditions to be more fully developed in the Use Agreement with the promoter.

7A.5    Major League Soccer.

    If Major League Soccer ("MLS") establishes a soccer team with Seattle as its home city, FGI would enter into a long term use agreement which allows that soccer team to use the Stadium as its home field, upon commercially reasonable rates and terms.  If at that time, MLS requires a natural grass playing surface, and if MLS has not sanctioned regular season games in another venue on other than a natural grass surface, then FGI will remove the artificial Field Surface and replace it with a natural grass Field Surface that conforms to the then current requirements of both the NFL and the MLS; provided, however, that no permanent installation will be made of a Field Surface prohibited by the NFL.  The cost of initially replacing the Field Surface with natural grass shall be paid by FGI as its sole cost.  Compliance with this Section is not Major Maintenance or Modernization, except

1    as provided in Section 7A.8 below. If there is any uncertainty regarding the Field
2    Surface requirements of MLS, this shall be resolved by reliance on a letter signed
3    by MLS specifically identifying the approved playing surface. If at any time
4    following installation of a natural grass Field Surface, MLS no longer requires a
5    natural grass playing surface, or has sanctioned regular season games in another
6    venue on other than a natural grass surface, FGI may, subject to Section 7A.1.2,
7    remove the natural grass Field Surface and replace it with a Field Surface of other
8    than natural grass, the cost of which shall be deemed to be Major Maintenance or
9    Modernization.
10
11
12    7A.6    Amateur Events

13    FGI shall provide reasonable opportunities to qualifying high school, youth and
14    recreational athletic groups to use the Stadium for athletic events ("Youth
15    Events"). However, no such Youth Event shall interfere with FGI's scheduled
16    commercial events or with dates then on "hold" for FGI's commercial events,
17    which occur at the Stadium (including FGI's reasonable pre-event and post-event
18    activities such as preparation, set-up and take-down). When Youth Events occur
19    at the Stadium, FGI shall charge only its Direct Costs. FGI's "Direct Costs" for
20    purposes of this paragraph are those incremental costs and expenses incurred by
21    FGI solely due to holding the Youth Event at the Stadium, but not costs that FGI
22    would have incurred anyway had the Youth Event not been held at the Stadium.
23    This Section shall apply only while the Stadium Field Surface is not natural grass.
24
25    7A.7    Certain Common Terms.
26
27    For purposes of Section 7A.3 and .4 above:
28
29    "If required to attract and host the event" shall mean that whether the Field
30    Surface is FieldTurf or overlaid natural grass is, in good faith, the decisive factor
31    in determining whether such event shall be held at the Stadium. In other words,
32    the Field Surface is the only remaining issue in determining whether a promoter
33    of the event will enter into a Stadium Use Agreement, upon commercially
34    reasonable rates and terms, such that the event will be held at the Stadium if the
35    Field Surface is overlaid with natural grass but the event will not be held at the
36    Stadium if the Field Surface is not overlaid with natural grass. For purposes of
37    the foregoing provision, "commercially reasonable rates and terms" shall have its
38    common meaning; provided, however, that FGI may recover from the promoter
39    the costs that FGI would have reasonably incurred in preparing a natural grass
40    field for hosting the subject event. By "hosting," it is meant only that the Stadium
41    will be the venue at which the event will be held; FGI shall not be required or
42    expected to act as an event promoter, or to otherwise contribute economically to
43    hosting an event in any manner whatsoever.
44

7A.8   Major Maintenance or Modernization, Cost of Preparing Field Surface.

If FGI permanently replaces the Field Surface with natural grass, such replacement will be deemed Major Maintenance and/or Modernization to the extent the Field Surface needs replacement anyway by reason of its age or condition. (If at the time of such replacement, the Field Surface would not be due for replacement by reason of remaining useful life, a pro rata portion of the replacement shall be deemed Major Maintenance and/or Modernization.)"

2.   Integration.   All matters related to the Field Surface, including any and all negotiations, discussions, correspondence, promises, and agreements relating thereto prior to the date hereof, are fully integrated into this Amendment.

3.   No Further Modification.   The Lease remains in full force and effect and unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth Amendment, and this Fifth Amendment.

IN WITNESS WHEREOF, this Fifth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:

WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington

By: _____
Lorraine Hine, Chair of the Board

FGI:

FIRST & GOAL INC., a Washington corporation

By: _____
Robert J. Whitsitt, President

1   STATE OF WASHINGTON   )

2                      ) ss.

3   COUNTY OF KING       )

4

5           I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the

6   person who appeared before me, and said person acknowledged that said person signed this

7   instrument, on oath stated that said person was authorized to execute the instrument and

8   acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**

9   **STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and

10   voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11                 Dated this 25ᵀᴴ day of October, 2001.

12

13                                   _____

14                                     (Signature of Notary)

15                              J.E. Todd

16                           (Legibly Print or Stamp Name of Notary)

17                           Notary public in and for the State of Washington,

18                           residing at _Bothell, WA_

19                           My appointment expires _6-9-05_

20

21

22   STATE OF WASHINGTON   )

23                      ) ss.

24   COUNTY OF KING       )

25

26           I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT**

27   is the person who appeared before me, and said person acknowledged that said person signed this

28   instrument, on oath stated that said person was authorized to execute the instrument and

29   acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the

30   free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

31                 Dated this 1st day of November, 2001.

32

33

34                                     (Signature of Notary)

35                              KIM LINDBECK

36                           (Legibly Print or Stamp Name of Notary)

37                           Notary public in and for the State of Washington,

38                           residing at _EDMONDS, WA_

39                           My appointment expires _3/15/04_

SIXTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 20, 2003

SIXTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE:    November 20, 2003

BETWEEN:    WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
a Washington State public corporation
800 Occidental Ave So #700
Seattle, WA 98134                                    ("PSA")

AND:    FIRST & GOAL INC.,
a Washington corporation
800 Occidental Ave So #200
Seattle, WA 98134                                    ("FGI")

This is the Sixth Amendment to the Master Lease between PSA and FGI (the "Lease").

All defined terms used in this Sixth Amendment shall have the same meaning as in the Lease unless

otherwise separately defined in this Sixth Amendment.

1.    Section 5.7.1.1 of the Master Lease is amended by adding the following sentence at the

end of Section 5.7.1.1:

"The L/C Reserve may be suspended and reinstated from time to time by
PSA, in its sole discretion, pursuant to Section 5.7.4."

2.    Section 5.7.4 of the Master Lease is deleted in its entirety and replaced with the

following:

"5.7.4    L/C Reserve

5.7.4.1    At any time during any Lease Year, PSA may give FGI
written notice requiring that FGI provide PSA with a standby letter of
credit in the amount of the L/C Reserve (the "Reserve Letter of Credit").
FGI agrees to provide the Reserve Letter of Credit within thirty (30)
days of receipt of PSA's written notice. The Reserve Letter of Credit
will have a term ending on that last day of the then Lease Year or such
shorter period of time as may be specified in PSA's notice to FGI
requiring the procurement of a Reserve Letter of Credit. The Reserve
Letter of Credit shall be issued by a financial institution reasonably
acceptable to PSA, and may be drawn upon by PSA upon presentation of
a "sight draft" in a reasonable, mutually agreed form.

5.7.4.2  To the extent PSA draws against the Reserve Letter of Credit in any Lease Year, then the amount of credit available to PSA under that Reserve Letter of Credit shall be reduced by such amount(s) drawn..  If PSA holds a Reserve Letter of Credit and has given FGI notice under Section 5.7.4.1 requiring a subsequent Reserve Letter of Credit, then PSA may draw on the existing Reserve Letter of Credit if FGI has not provided the replacement Reserve Letter of Credit when required by Section 5.7.4.1.

5.7.4.3  All out-of-pocket costs (excluding the cost of FGI's employees' time) associated with the Reserve Letter of Credit, including, without limitation, all service charges, shall be paid by FGI but shall be reimbursed to FGI by PSA, and FGI shall invoice PSA for such costs (supported by reasonable documentation of the costs) within thirty (30) days of the issuance of the Reserve Letter of Credit.  PSA shall pay the invoiced amount within thirty (30) days of receipt of FGI's invoice, and if PSA does not do so, the unpaid amount shall bear interest pursuant to Section 26.25 and shall be subject to a late charge in the amount set forth in Section 5.4.2.  In addition, after such 30 day period, all such invoiced amount, plus accrued interest and late charges, which remain unpaid by PSA may be applied as a credit against any Rents payable hereunder by FGI, and the credit will satisfy PSA's payment obligation when and to the extent so applied. The amounts paid by PSA pursuant to this Section 5.7.4.3 are Reasonable PSA Operating Expenses.

5.7.4.4  The amount of the Rent Letter of Credit described in Section 21.5 shall not affect the amount of the Reserve Letter of Credit."

3.    No Further Modification.

The Lease remains in full force and effect and unmodified except by the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment, the Fifth Amendment and this Sixth Amendment.

IN WITNESS WHEREOF, this Sixth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                        WASHINGTON STATE PUBLIC STADIUM
                            AUTHORITY, a public corporation of the State of
                            Washington


                            By: _____
                                Lorraine Hine, Chair of the Board

FGI:                        FIRST & GOAL INC., a Washington corporation


                            By: _____
                                Tod Leiweke, CEO

3 C:\Documents and Settings\mmk.PSA\Local Settings\Temporary Internet Files\OLK1FF\

STATE OF WASHINGTON      )
                         ) ss.
COUNTY OF KING           )

       I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

       Dated this 22nd day of December, 2003.



              J. E. Todd
              (Signature of Notary)
              J.E. Todd
         (Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at Bothell, WA

My appointment expires 6-9-05

STATE OF WASHINGTON      )
                         ) ss.
COUNTY OF KING           )

       I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

       Dated this 22nd day of December, 2003.

              J.E. Todd
              (Signature of Notary)
              J.E. Todd
         (Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at Bothell, WA

My appointment expires 6-9-05

4C:\Documents and Settings\annk.PSA\Local Settings\Temporary Internet Files\OLK1FR\

SEVENTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: July 22, 2004

1           **SEVENTH AMENDMENT TO MASTER LEASE**

2

3       EFFECTIVE DATE: July 22, 2004

4       BETWEEN:            WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
5                           a Washington State public corporation
6                           Qwest Field & Events Center
7                           800 Occidental Ave. S. #700
8                           Seattle, WA 98134                          ("PSA")
9
10      AND:                FIRST & GOAL INC.,
11                          a Washington corporation
12                          800 Occidental Ave. S., #200
13                          Seattle, WA  98134                         ("FGI")

14          This is the Seventh Amendment to the Master Lease between PSA and FGI (the "Lease").

15      All defined terms used in this Seventh Amendment shall have the same meaning as in the Lease

16      unless otherwise separately defined in this Seventh Amendment.


17          1.      Conformity of Due Dates.

18              In order that both the Annual Exhibition Center Operating Expense Budget and

19      the Annual Maintenance Plan shall be due on the same date, Section 6.1.3 and a portion of

20      Section 11.1.3 are hereby amended to read:

21                      6.1.3. Annual Exhibition Center Operating Expense Budget

22              At least thirty (30) days prior to the beginning of each Lease Year, FGI

23      shall submit to PSA its budget for Exhibition Center operations for that Lease Year, for PSA's

24      review and comment.

25                      11.1.3  Annual Maintenance Plan

26              All prior amendments to Section 11.1.3 are deleted and superseded by this

27      Seventh Amendment.  Section 11.1.3, in its entirety, shall read as follows:

1           "At least thirty (30) days prior to each Lease Year, FGI shall
2           submit to PSA, for PSA's review and approval, a plan for the
3           Normal Maintenance activities to be conducted at the Premises by
4           FGI during that Lease Year (the "Annual Maintenance Plan").
5           PSA shall have ninety (90) days from FGI's submission to review
6           and approve, conditionally approve or disapprove the Annual
7           Maintenance Plan.   Any subsequent changes in the Annual
8           Maintenance Plan shall be approved under the same procedure as
9           for the initial approval of an Annual Maintenance Plan.  FGI shall
10          perform Normal Maintenance substantially in accordance with the
11          PSA-approved Annual Maintenance Plan unless FGI has a
12          reasonable justification not to do so."

13

14     2.     <u>Notices</u>. The addresses for purposes of notice under section 26.17 are:

15

16           If to PSA:           WASHINGTON STATE PUBLIC STADIUM
17                                     AUTHORITY
18                                     Qwest Field & Events Center
19                                     800 Occidental Ave. S. #700
20                                     Seattle, WA 98134
21                                     Attn: Ms. Ann Kawasaki Romero, Executive Director
22                                     Fax No.: 206-381-7949
23                                     Confirmation No.: 206-381-7940

24           with a copy to:       BALL JANIK LLP
25                                     101 SW Main Street, Suite 1100
26                                     Portland, OR  97204
27                                     Attn: Stephen T. Janik
28                                     Fax No.: 503-295-1058
29                                     Confirmation No.:  503-228-2525

30           If to FGI:           FIRST & GOAL INC.
31                                     Qwest Field & Events Center
32                                     800 Occidental Ave. S. # 200
33                                     Seattle, WA 98134
34                                     Attn: Mr. Lance Lopes, General Counsel
35                                     Fax No.: 206-381-7557
36                                     Confirmation No.: 206-381-7835
37

1   with a copy to:        Foster Pepper & Shefelman PLLC
2                          1111 Third Avenue, Suite 3400
3                          Seattle, Washington 98101
4                          Attn: Allen D. Israel
5                          Fax No.: 206-749-1957
6                          Confirmation No.: 206-447-8911
7

8   3.   No Further Modification.   The Lease remains in full force and effect and

9   unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

10  Amendment, Fifth Amendment, Sixth Amendment and this Seventh Amendment.

11

12              IN WITNESS WHEREOF, this Seventh Amendment has been executed by the

13  Parties to be effective on the date first set forth above.


14  PSA:                   WASHINGTON   STATE   PUBLIC   STADIUM
15                         AUTHORITY, a public corporation of the State of
16                         Washington
17
18
19
20                         By
21                            Frederick Mendoza, Vice-Chair of the Board

22  FGI:                   FIRST & GOAL INC., a Washington corporation
23
24
25
26                         By:
27                            Tod Leiweke, President

1   STATE OF WASHINGTON    )
2                          ) ss.
3   COUNTY OF KING         )
4
5           I certify that I know or have satisfactory evidence that **FREDERICK**
6   **MENDOZA** is the person who appeared before me, and said person acknowledged that said
7   person signed this instrument, on oath stated that said person was authorized to execute the
8   instrument and acknowledged it as the Vice-Chair of the Board of the **WASHINGTON STATE**
9   **PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the
10  free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.
11          Dated this 22nd day of July, 2004.
12
13
14                                              _____
15                                              (Signature of Notary)
16                                              J.E. Todd
17                                              (Legibly Print or Stamp Name of Notary)
18                                              Notary public in and for the State of Washington,
19                                              residing at _Snohomish, WA_
20                                              My appointment expires _6-9-05_
21
22  STATE OF WASHINGTON    )
23                         ) ss.
24  COUNTY OF KING         )
25
26          I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the
27  person who appeared before me, and said person acknowledged that said person signed this
28  instrument, on oath stated that said person was authorized to execute the instrument and
29  acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the
30  free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.
31          Dated this 23rd day of July, 2004.
32
33
34                                              _____
35                                              (Signature of Notary)
36                                              J.E. Todd
37                                              (Legibly Print or Stamp Name of Notary)
38                                              Notary public in and for the State of Washington,
39                                              residing at _Snohomish, WA_
                                                My appointment expires _6-9-05_

EIGHTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 17, 2005

50591079.8

1           **EIGHTH AMENDMENT TO MASTER LEASE**

2

3    EFFECTIVE DATE:  November 17, 2005

4    BETWEEN:            WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
5                               a Washington State public corporation
6                               800 Occidental Ave. S., #700
7                               Seattle, WA 98134                                                ("PSA")
8
9    AND:                   FIRST & GOAL INC.,
10                            a Washington corporation
11                            800 Occidental Ave. S., # 200
12                            Seattle, WA  98134                                             ("FGI")

13          This is the Eighth Amendment to the Master Lease between PSA and FGI (the "Lease").

14   All defined terms used in this Eighth Amendment shall have the same meaning as in the Lease

15   unless otherwise separately defined in this Eighth Amendment.

16          1.      Annual Exhibition Center Operating Expense Budget.  Section 6.1.3 as amended

17   in the Seventh Amendment to the Master Lease dated July 22, 2004 (the "Seventh Amendment")

18   is hereby further amended to read in its entirety as follows:

19                  6.1.3   Annual Exhibition Center Operating Expense Budget

20                         At least thirty (30) days prior to the beginning of each FGI Fiscal Year,

21          FGI shall submit to PSA its budget for Exhibition Center operations for that FGI Fiscal

22          Year, for PSA's review and comment.  "FGI Fiscal Year" shall initially be the 12 month

23          period ending March 31 of each year, subject to FGI giving notice of change to PSA as

24          provided herein.  For the one-time period commencing January 1, 2006 and concluding

25          March 31, 2006, FGI shall submit to the PSA its budget for the Exhibition Center

26          operations for that period, for the PSA's review and comment, no later than December

27          31, 2005.

28   2.      Reporting Period.       Section 6.1.5 is hereby amended to read in its entirety as follows:

29                  6.1.5   Reporting Period

1    FGI shall submit to PSA, on or before the forty-fifth (45th) day of each
2    calendar quarter for the immediately preceding calendar quarter, a written statement
3    signed by FGI, and certified by its chief financial officer to be true and correct, showing
4    in detail the amount of Exhibition Hall Revenues, Exhibition Hall Expenses, and
5    Exhibition Hall Net Profits, as of the end of the preceding calendar quarter. In addition to
6    FGI's quarterly report of Exhibition Hall Net Profits, FGI shall submit to PSA an annual
7    audited report of Exhibition Hall Revenues, Exhibition Hall Expenses, and Exhibition
8    Hall Net Profits for the immediately preceding FGI Fiscal Year, not later than seven (7)
9    months following the end of each Lease Year. Each such report shall be certified as
10   accurate by the chief financial officer of FGI and each such annual report and final report
11   shall be accompanied by a certificate of an independent certified public accountant
12   reasonably satisfactory to PSA that such report has been prepared in accordance with
13   generally accepted accounting principles ("GAAP") consistently applied except as so
14   noted and accurately states the Exhibition Hall Revenues, Exhibition Hall Expenses, and
15   Exhibition Hall Net Profits for the period of such report. The format and detail of the
16   above reports shall be subject to the approval of PSA.

17   3.    Annual Reporting on Operations.    Section 8.9 is hereby amended to read in its entirety
18   as follows:

19          8.9    Annual Reporting on Operations

20          FGI shall submit to PSA for public disclosure not later than seven (7)
21   months following the end of each Lease Year an audited profit and loss financial
22   statement for FGI's operations of the Project for the immediately preceding FGI Fiscal
23   Year. This statement shall be certified as accurate by the chief financial officer of FGI
24   and shall be accompanied by a certificate of an independent certified public accountant
25   reasonably satisfactory to PSA that such statement has been prepared in accordance with
26   GAAP, except as so noted, and accurately states the profits and losses of FGI for the
27   period of such statement. The format and detail of the statement of profits and losses
28   shall be subject to the approval of PSA.

29          4.    Annual Maintenance Plan.    Section 11.1.3 as amended in the Seventh

1    Amendment is hereby further amended to read in its entirety as follows:

2                 11.1.3  Annual Maintenance Plan

3                      At least thirty (30) days prior to each FGI Fiscal Year, FGI shall submit to

4    PSA, for PSA's review and approval, a plan for the Normal Maintenance activities to be

5    conducted at the Premises by FGI during that FGI Fiscal Year (the "Annual Maintenance

6    Plan"). PSA shall have one hundred twenty (120) days from FGI's submission to review

7    and approve, conditionally approve or disapprove the Annual Maintenance Plan. Any

8    subsequent changes in the Annual Maintenance Plan shall be approved under the same

9    procedure as for the initial approval of an Annual Maintenance Plan. FGI shall perform

10    Normal Maintenance substantially in accordance with the PSA approved Annual

11    Maintenance Plan unless FGI has a reasonable justification not to do so.

12    5.    Five-Year Major Maintenance and Modernization Plan.   Section 11.1.4 as

13    amended in the Fourth Amendment to the Master Lease dated November 1, 2001 is hereby

14    further amended to read in its entirety as follows:

15                 11.1.4. Five-Year Major Maintenance and Modernization Plan

16                      FGI shall submit to PSA, for PSA's review and approval, a new or

17    updated plan of scheduled work to be performed upon the Premises during the next five

18    FGI Fiscal Years in order to meet FGI's obligations under Section 11.1.2.2 for certain

19    modifications, capital improvements and upgrading, as well as FGI's rights under Section

20    11.4 for Modernization Improvements (a 'Five-Year Plan'). The Five-Year Plan for the

21    Exhibition Hall shall be submitted by March 1 of each Lease Year. The Five-Year Plan

22    for the Stadium and Other Improvements shall be submitted by March 1 of each Lease

23    Year. A Five-Year Plan may be broken down into Major Repair and Modernization

24    Improvement sections. PSA shall have ninety (90) days from FGI's submission to review

25    and approve, conditionally approve, or disapprove each Five-Year Plan. Any subsequent

26    changes in a Five-Year Plan shall be approved under the same procedure as for the initial

27    Five-Year Plan. FGI shall perform Major Maintenance and Modernization each year

1    substantially in accordance with the PSA approved Five-Year Plan, as that Five-Year

2    Plan may be revised from year to year, unless FGI has a reasonable justification not to do

3    so.

4    6.   Annual Maintenance Report. Section 11.1.5 as amended in the Fourth

5    Amendment to the Master Lease dated November 1, 2001 is hereby further amended to read in

6    its entirely as follows:

7    11.1.5 Annual Maintenance Report

8    Within one hundred twenty (120) days following each FGI Fiscal Year,

9    FGI shall provide to PSA a report in reasonable detail on the prior FGI Fiscal Year's Normal and

10    Major Maintenance. PSA shall have one hundred twenty (120) days to review and comment on

11    each annual maintenance report. In addition, PSA shall have the opportunity to audit (generally

12    pursuant to the process described in Section 6.1.7) FGI's maintenance records.

13    7.   No Further Modification.  The Lease remains in full force and effect and

14    unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

15    Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment and this Eighth

16    Amendment.

17    IN WITNESS WHEREOF, this Eighth Amendment has been executed by the

18    Parties to be effective on the date first set forth above.

19    PSA:    WASHINGTON STATE PUBLIC STADIUM
20    AUTHORITY, a public corporation of the State of
21    Washington

By: Lorraine Hine
Lorraine Hine, Chair of the Board

1        FGI:                FIRST & GOAL INC., a Washington corporation

2

3

4

5                              By:_____

6                                 Tod Leiweke, CEO

1   STATE OF WASHINGTON    )
2                          ) ss.
3   COUNTY OF KING         )
4
5        I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the
6   person who appeared before me, and said person acknowledged that said person signed this
7   instrument, on oath stated that said person was authorized to execute the instrument and
8   acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**
9   **STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and
10  voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11                        Dated this 17th day of November, 2005.

12
13                                    _Jodene E. Todd_
14                                      (Signature of Notary)
15                                    _Jodene E. Todd_
16                                    (Legibly Print or Stamp Name of Notary)
17                                    Notary public in and for the State of Washington,
18                                    residing at _Mill Creek, WA_
19                                    My appointment expires _6/9/09_
20
21
22  STATE OF WASHINGTON    )
23                         ) ss.
24  COUNTY OF KING         )
25
26       I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the
27  person who appeared before me, and said person acknowledged that said person signed this
28  instrument, on oath stated that said person was authorized to execute the instrument and
29  acknowledged it as the Chief Executive Officer of **FIRST & GOAL INC.**, a Washington
30  corporation, to be the free and voluntary act of such corporation for the uses and purposes
31  mentioned in the instrument.

32                       Dated this 6TH day of November DECEMBER, 2005.

33
34                                    _K. Lee_
35                                      (Signature of Notary)
36                                    _KTH LINDBECK_
37                                    (Legibly Print or Stamp Name of Notary)
38                                    Notary public in and for the State of Washington,
39                                    residing at _EDMONDS, WA_,
40                                    My appointment expires _3/15/08_

50591079.8                            -6-

NINTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: February 23, 2006

1          **NINTH AMENDMENT TO MASTER LEASE**

2

3     EFFECTIVE DATE: February 23, 2006

4     BETWEEN:          WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
5                       a Washington State public corporation
6                       800 Occidental Ave. S. #700
7                       Seattle, WA 98134                                    ("PSA")
8
9     AND:              FIRST & GOAL INC.,
10                      a Washington corporation
11                      800 Occidental Ave. S., #200
12                      Seattle, WA  98134                                   ("FGI")

13        This is the Ninth Amendment to the Master Lease between PSA and FGI dated

14    November 24, 1998 (the "Lease"). All defined terms used in this Ninth Amendment shall have

15    the same meaning as in the Lease unless otherwise separately defined in this Ninth Amendment.

16        1.    Tobacco Sponsor Advertising. The last sentence of Section 9.2 of the Lease is

17    hereby deleted in its entirety and replaced with the following:

18            "No advertising of any form at the Premises will contain a promotion of
19            tobacco products, except for: (i) point of sale advertising to the extent not
20            prohibited by Laws and (ii) Permitted Sponsor Advertising. "Permitted
21            Sponsor Advertising" shall be strictly limited to advertising which: (a) is
22            displayed during a national or international touring event not involving the
23            Team (the "Touring Event"); (b) is displayed at all of the other venues in
24            which the Touring Event takes place; (c) is required to be displayed at the
25            Touring Event pursuant to a written agreement between a company
26            sponsoring all or part of the Touring Event and the promoter of the
27            Touring Event; (d) is visible only within the interior (and not exterior) of
28            the Stadium, Exhibition Hall, and/or other areas within the Premises which
29            are specifically designated for use solely by the Touring Event; (e) does
30            not violate any Laws or any of the prohibitions of that certain Master
31            Settlement Agreement made by and among various parties, including 46
32            states of the United States of America and various tobacco companies,
33            executed on November 23, 1998, as amended (the "MSA"); and (f) does
34            not promote any specific tobacco product or contain any symbols or
35            characters associated with any tobacco product, provided that it may
36            contain the name of the tobacco company or the Brand Name (as that term
37            is defined in Section II(i) of the MSA) sponsoring all or part of the
38            Touring Event."

1    2.   <u>No Further Modification</u>.    The Lease remains in full force and effect and
2   unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth
3   Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eighth Amendment,
4   and this Ninth Amendment.

6         IN WITNESS WHEREOF, this Ninth Amendment has been executed by the
7   Parties to be effective on the date first set forth above.

PSA:           WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington

By: _Lorraine Hine_
Lorraine Hine, Chair of the Board

FGI:           FIRST & GOAL INC., a Washington corporation

By: _____
Tod Leiweke, President

- 2 -

NINTH AMENDMENT TO MASTER LEASE.DOC

1  STATE OF WASHINGTON    )
2                          ) ss.
3  COUNTY OF KING          )
4
5          I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the
6  person who appeared before me, and said person acknowledged that said person signed this
7  instrument, on oath stated that said person was authorized to execute the instrument and
8  acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**
9  **STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and
10 voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11         Dated this 23rd day of February, 2006.

12
13
14                              (Signature of Notary)
15
16                              Jodene E. Todd
17                              (Legibly Print or Stamp Name of Notary)
18                              Notary public in and for the State of Washington,
19                              residing at Mill Creek, WA
                                My appointment expires 6/9/09

20
21
22 STATE OF WASHINGTON    )
23                          ) ss.
24 COUNTY OF KING          )
25
26         I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the
27 person who appeared before me, and said person acknowledged that said person signed this
28 instrument, on oath stated that said person was authorized to execute the instrument and
29 acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the
30 free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

31         Dated this 28th day of February, 2006.

32
33
34                              (Signature of Notary)
35
36                              Jodene E. Todd
37                              (Legibly Print or Stamp Name of Notary)
38                              Notary public in and for the State of Washington,
39                              residing at Mill Creek, WA
                                My appointment expires 6/9/09

NINTH AMENDMENT TO MASTER LEASE.DOC