Stark et al v. Seattle Seahawks et al Doc. 21



The Honorable James L. Robart

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STARK, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>THE SEATTLE SEAHAWKS, FOOTBALL, NORTHWEST, LLC, *et al.*,<br><br>Defendants. | Case No. CV06-1719 JLR<br><br>SEAHAWKS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (STATE ACTION) AND SUPPORTING MEMORANDUM OF AUTHORITIES<br><br>**NOTED FOR CONSIDERATION**: April 20, 2007<br><br>**ORAL ARGUMENT REQUESTED** |



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

RELIEF REQUESTED ..... 1

STATEMENT OF UNDISPUTED FACTS ..... 1

SUMMARY JUDGMENT STANDARD ..... 3

SUMMARY OF ARGUMENT ..... 3

THERE IS NO STATE ACTION HERE ..... 4

A. The Government Has Not Compelled or Significantly Encouraged Pat-Down Inspections at Qwest Field. ..... 6

B. The Pat-Down Inspections Are Solely Private Conduct and Therefore Cannot Be Treated as Joint Action Between a Private and Governmental Entity. ..... 7

C. FGI Is Not a Nominally Private Actor Controlled by PSA. ..... 11

D. PSA Has Not Delegated a Public Function to FGI. ..... 12

CONCLUSION ..... 13



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ........ 7, 10

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001) ........ 5, 11

*Brunette v. Humane Society of Ventura County*, 294 F.3d 1205 (9th Cir. 2002) ........ 7, 8

*Burdeau v. McDowell*, 256 U.S. 465 (1921) ........ 4

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ........ 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........ 3

*Crowder v. Conlan*, 740 F.2d 447 (6th Cir. 1984) ........ 10

*Evans v. Newton*, 382 U.S. 296 (1966) ........ 13

*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) ........ 7, 8

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995) ........ *passim*

*Greco v. Guss*, 775 F.2d 161 (7th Cir. 1985) ........ 8

*Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873 (5th Cir. 1975) ........ 10

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) ........ 10, 12

*Johnston v. Tampa Sports Authority*, 442 F. Supp. 2d 1257 (M.D. Fla. 2006) ........ 11

*Kabbani v. Council House, Inc*, 406 F. Supp. 2d 1189 (W.D. Wash. 2005) ........ 9, 10

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ........ *passim*

*Lansing v. City of Memphis*, 202 F.3d 821 (6th Cir. 2000) ........ 4, 9

*Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995) ........ 11

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ........ 5

*Martin v. Pac. Northwest Bell Telephone Co.*, 441 F.2d 1116 (9th Cir. 1971) ........ 9, 10

*Mathis v. Pac. Gas & Electric Co.*, 75 F.3d 498 (9th Cir. 1996) ........ 5



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

*Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338 (9th Cir. 1997)............................... 9, 11

*NBC v. Communications Workers of America, AFL-CIO*, 860 F.2d 1022 (11th Cir. 1988)............................................................................................................ 11

*Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230 (1957).................................................................................................... 12

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) .................................................................. 10, 13

*San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522 (1987).................................................................................................. 6, 9

*Scheuring v. Traylor Brothers, Inc.*, 476 F.3d 781 (9th Cir. 2007) ............................................. 3

*Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743 (9th Cir. 2003) ............................ *passim*

*Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826 (9th Cir. 1999)................................ 4

*United States v. Coleman*, 628 F.2d 961 (6th Cir. 1980)................................................................ 9

*Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996)................................................................................ 13

*Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227 (6th Cir. 1984).................. 10

*White v. Scrivner*, 594 F.2d 140 (5th Cir. 1979)......................................................................... 13

## STATE CASES

*Long v. Chiropractic Society of Washington*, 93 Wash. 2d 757, 613 P.2d 124 (1980)............................................................................................................ 9

*MacLean v. First Northwest Industrial of America, Inc.*, 96 Wash. 2d 338, 635 P.2d 683 (1981).......................................................................................................... 11

*Washington v. Carter*, 151 Wash. 2d 118, 85 P.3d 887 (2004) ..................................................... 4

*Washington v. Clark*, 48 Wash. App. 850 (1987) .......................................................................... 5

## FEDERAL RULE

Fed. R. Civ. P. 56 ....................................................................................................................... 1, 3



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 56(b), defendants the Seattle Seahawks, Football Northwest, LLC, and First & Goal Inc. respectfully move the Court for summary judgment as to each of Plaintiffs' three claims. Plaintiffs contend that pat-down inspections conducted as a condition of entry to NFL games at Qwest Field violate the Fourth Amendment of the U.S. Constitution and its state counterpart. Undisputed facts establish (1) that the pat-down inspections are conducted by private parties at their own initiative, at their own cost, at private sporting events, and (2) that defendant Washington State Public Stadium Authority ("PSA"), which owns Qwest Field, has no involvement whatsoever with the challenged conduct. Because there is no state action to support plaintiffs' constitutional claims, defendants are entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

FGI, a privately held company affiliated with the Seattle Seahawks, leases Qwest Field from PSA, a public entity. (Declaration of Ann Kawasaki Romero ¶ 6; Declaration of Paul Schieck ¶ 5.)[1] FGI is the "sole master tenant" of Qwest Field; it has "exclusive power and authority" to possess, operate, use, and sublease the premises. (Kawasaki Decl. ¶¶ 6-7.) FGI is solely and exclusively responsible for all operations at Qwest Field, including game day security. (*Id.* ¶ 7; Schieck Decl. ¶ 5.) PSA, in contrast, has no obligation, control, or responsibility for operations at Qwest Field (Kawasaki Decl. ¶ 8), and

[1] Ms. Kawasaki is Executive Director of PSA. (Kawasaki Decl. ¶ 2.) (Ms. Kawasaki's declaration has been filed by PSA in connection with its own Motion for Summary Judgment on State Action. All other declarations and exhibits are attached to the Declaration of Paul A. Ainsworth filed in Support of the Seahawks Defendants' Motion for Summary Judgment. ) Mr. Schieck is Assistant General Manager of FGI; with 22 years of experience as a security professional in the public assembly business, he oversees security, including the pat-down inspections, at Qwest Field. (Schieck Decl. ¶ ¶ 2 ,3.)



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

has no policies or procedures of its own relating to event security, (Def. PSA's Resp. Pls.' First Interrog. No. 3).

Following September 11, 2001, NFL Commissioner Paul Tagliabue recommended a broad array of improved stadium security practices for NFL games (Declaration of Milton Ahlerich ¶¶ 6-13), including limited pat-down inspections of each person entering the stadium (*id.* ¶ 23).[2] The NFL made the pat-downs mandatory following the July 2005 suicide bombings on the London subway, which demonstrated the ease with which low-cost improvised explosive devices ("IEDs") could be made, the willingness of terrorists to employ suicide bombers against soft civilian targets, and the inability of the intelligence community to predict such attacks with specificity. (*Id.* ¶ 18.) The pat-downs are intended to detect IEDs; they are not designed to detect contraband such as drugs. (*Id.* ¶ 28.)[3] At the direction of the NFL and the Seahawks, FGI implemented the pat-down policy at the start of the 2005 NFL season. (*Id.* ¶ 13.)

PSA had no involvement in the decision to implement the pat-downs; it was not consulted by the NFL, the Seahawks, or FGI; it has never had any role in planning, implementing, designing, or enforcing any game day security measures. (Kawasaki Decl. ¶ 10; Def. PSA's Resp. Pls.' First Interrog. No. 4.) Nor has PSA approved, compelled, encouraged, or otherwise ratified the pat-down procedures. (Kawasaki Decl. ¶ 10.) Likewise, local law enforcement agencies have not directed or participated in implementing or executing the pat-downs. (Schieck Decl. ¶ 15.) Off-duty police officers are present at Qwest Field on

---

[2] Mr. Ahlerich, a former senior executive of the Federal Bureau of Investigation, is Vice President of Security for the National Football League. (Ahlerich Decl. ¶¶ 2, 3.)

[3] Background of the NFL's development of the pat-down requirement is set forth in the Ahlerich Declaration.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

game days, but they do not participate, conduct, direct, or otherwise assist in the security screening procedures, including the pat-downs. (Def. Seahawks Resp. Pls.' First Interrog. No. 9.)

FGI has contracted with a third-party security vendor, Staff Pro, which provides its own employees to conduct the pat-downs at Qwest Field. (Schieck Decl. ¶¶ 10-11.) PSA is not a party to these vendor contracts, has no role in selecting the vendor, and has no responsibility for the costs. (*Id.* ¶ 10; Def. PSA's Resp. Pls.' First Interrog. No. 9.) PSA has no financial responsibility for any security measure and does not profit – directly or indirectly – from the pat-down inspections. (Kawasaki Decl. ¶¶ 11-12; Def. PSA's Resp. Pls.' First Interrog. No. 27.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding whether summary judgment is appropriate, this Court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party." *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007).

**SUMMARY OF ARGUMENT**

The pat-downs at Qwest Field are not subject to constitutional scrutiny because they do not involve state action. The pat-downs are conducted by private security personnel pursuant to a privately implemented security policy as a condition of entry to a private sporting event.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

Constitutional protection from unreasonable searches does not apply to private actors except in the unusual circumstance where there is a close nexus between the government and the *private action* itself. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). That standard is ordinarily met only when the government compelled the action, controlled the action, or participated jointly in its execution. *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746-47 (9th Cir. 2003).

The requirement of state action is not satisfied by the state's mere ownership of Qwest Field or by the presence of off-duty police officers at Qwest Field on game days. *See Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) ("neither public funding nor private use of public property is enough to establish a close nexus between state and private actors"); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1450 (10th Cir. 1995) (citations omitted) ("mere presence of police officers does not transform the conduct of private parties into state action").

Because the allegedly unconstitutional conduct is not state action, defendants are entitled to summary judgment.

**THERE IS NO STATE ACTION HERE**

Constitutional guarantees against unreasonable searches do not protect against searches conducted by private parties. *See Burdeau v. McDowell*, 256 U.S. 465, 475 (1921); *Washington v. Carter*, 151 Wash.2d 118, 124, 85 P.3d 887, 890 (2004). Plaintiffs therefore must establish that the government is responsible for the pat-downs. *Single Moms*, 331 F.3d at 746-47. Such a showing is difficult in light of "the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826,

835 (9th Cir. 1999); *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 501 (9th Cir. 1996) (treating private conduct as state action is done "sparingly").

Under both federal and state constitutions, a search conducted by a private entity can be attributed to the state only upon finding "'a close nexus between the State and the *challenged action*.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1095 (9th Cir. 2003) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (emphasis added); *Washington v. Clark*, 48 Wash. App. 850, 855 (1987) (state constitutional provision "affords no more protection from private searches than does the Fourth Amendment").

Private conduct may be treated as state action only when: (1) "the government compelled the action using its coercive power or provided significant encouragement, either overt or covert, for the action"; (2) "the government and private actor willfully participated in joint activity"; (3) "the government controlled a nominally private actor"; or (4) "the government delegated a public function to the private actor." *Single Moms, Inc.*, 331 F.3d at 747 (citations and quotations omitted).[4] As we demonstrate with respect to each of those alternative theories below, undisputed evidence establishes that none of these circumstances is present here.

---

[4] The Ninth Circuit's 2003 decision in *Single Moms* drew these factors from the Supreme Court's decision in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 296 (2001). Earlier Ninth Circuit decisions list a different set of factors drawn from an earlier Supreme Court decision, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). *See, e.g.*, *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). These differences appear to have no substantive effect; they merely reflect alternative methods of classifying the Supreme Court's precedents.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

### A. The Government Has Not Compelled or Significantly Encouraged Pat-Down Inspections at Qwest Field.

Private conduct may be treated as state action when "the government compelled the action or provided significant encouragement." *Single Moms, Inc.*, 331 F.3d at 747. In order to establish state action on this basis, plaintiffs would have to demonstrate that the government "exercised coercive power or had provided such significant encouragement [with respect to the pat-downs] that the choice must in law be deemed to be that of the [government]." *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 546 (1987); *Kirtley*, 326 F.3d at 1094. Undisputed evidence establishes that that is not the case here.

No government entity compelled or encouraged the pat-down requirement. For example, Ms. Kawasaki testified unambiguously that the PSA "had no involvement in FGI's decision to implement mandatory limited pat-down inspections of all persons attending Seahawks home games. . . . [N]or has PSA approved, compelled, encouraged or ratified the pat-down inspections." (Kawasaki Decl. ¶ 10; *see also* Def. PSA's Resp. Pls.' First Interrog. No. 4.) The choice to conduct pat-down searches at Qwest Field was exclusively a private one: The pat-down policy was formulated by the Commissioner of the NFL and implemented at the direction of the Seattle Seahawks. (Ahlerich Decl. ¶¶ 6-10; Schieck Decl. ¶ 13.) Neither PSA nor local law enforcement had any involvement, direct or indirect, in that decision. (Kawasaki Decl. ¶ 10.) Accordingly, state action cannot be established on the compulsion/encouragement ground.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

**B. The Pat-Down Inspections Are Solely Private Conduct and Therefore Cannot Be Treated as Joint Action Between a Private and Governmental Entity.**

Joint action between governmental and private entities may be treated as state action when "the government and private actor willfully participated in joint activity," *Single Moms, Inc.*, 331 F.3d at 747, or when "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Kirtley*, 326 F.3d at 1093 (quotations omitted); *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) ("by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State and its agents") (citations and quotations omitted). Alternatively, private conduct may become state action if a "symbiotic relationship" exists between the government and the challenged private conduct. *Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1210 (9th Cir. 2002). Undisputed evidence establishes that such facts are not present here.

It bears emphasis that more is required than "[m]ere approval or acquiescence in the initiatives of a private party to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum v. Yaretsky,* 457 U.S. 991, 1004-05 (1982). To find state action here, plaintiffs must show that FGI and PSA share "the goal of violating a plaintiff's constitutional rights." *Franklin*, 312 F.3d at 445 (citing *Gallagher*, 49 F.3d at 1453-54).

The NFL pat-down policy is not the result of a conspiracy between private and governmental entities. Rather, undisputed evidence establishes that the pat-down policy was designed by the NFL and implemented at the direction of the Seahawks – both private entities – on their own initiative and at their own expense. (Ahlerich Decl. ¶¶ 6-13; Schieck Decl.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

¶ 13). PSA has never had any involvement in the development, implementation, or execution of the policy. (Kawasaki Decl. ¶ 10; Def. PSA's Resp. Pls.' First Interrog. No. 4.) As Mr. Schieck confirmed, "PSA has not participated in any way in the development, implementation or administration of pat-down inspections for Seattle Seahawks games at Qwest Field." (Schieck Decl. ¶ 15.)

For the same reason, the pat-downs cannot be considered "joint action with the State and its agents." *Franklin*, 312 F.3d at 445. This test "require[s] a substantial degree of cooperation" between the government and private actor in carrying out the challenged conduct. *Id.* The requisite degree of cooperation is "substantial;" for example, the Ninth Circuit held there was no joint action when a news photographer accompanied a government employee in executing a search warrant because the actions of the private and state actor were not "inextricably intertwined." *Brunette*, 294 F.3d at 1210-13.

The pat-downs at Qwest Field are conducted solely by private security personnel employed by a private third-party vendor subject to a contract with FGI. (Schieck Decl. ¶¶ 10-11). Although off-duty police officers are present at Qwest Field on game days, they do not participate in the pat-downs. (Schieck Decl. ¶ 15; Def. Seahawks Resp. Pls.' First Interrog. No. 9.) Their "mere presence . . . does not transform the conduct of private parties into state action." *Gallagher*, 49 F.3d at 1450.

In *Gallagher*, which the Ninth Circuit has cited with approval, the Tenth Circuit held that the pat-downs of concert-goers failed to satisfy the joint action test because police officers – despite observing the pat-downs – had not "substantially assisted in the allegedly wrongful conduct." *Id.* at 1455-56; s*ee Franklin*, 312 F.3d at 445. Numerous other courts have reached the same conclusion. *See, e.g.*, *Greco v. Guss*, 775 F.2d 161, 168 (7th Cir.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

1985); *United States v. Coleman*, 628 F.2d 961, 964 (6th Cir. 1980). Because, as the undisputed facts confirm, police officers at Qwest Field do not participate in the pat-downs, they have neither "substantially assisted" nor become "inextricably intertwined" in the challenged conduct.

The pat-downs therefore could be joint action only if there is a "symbiotic relationship" between PSA and the Seattle Seahawks or FGI. In this regard, "'the crucial relationship for a finding of state action is between the governmental entity and the action taken by the private entity, not the [relationship] between the governmental entity and the private actor.'" *Kabbani v. Council House, Inc*, 406 F. Supp. 2d 1189, 1194 (W.D. Wash. 2005) (Lasnik, C.J.) (alteration in original); *see also Martin v. Pac. Northwest Bell Telephone Co*., 441 F.2d 1116, 1118 (9th Cir. 1971) (*per curiam*); *Long v. Chiropractic Soc'y of Washington*, 93 Wash.2d 757, 761, 613 P.2d 124, 127 (1980) (state action requires state involvement "with the activity that caused the injury"). Moreover, a symbiotic relationship may exist only if the "government profited from [the] alleged constitutional violation" by the private entity. *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997). As the undisputed facts confirm, no such relationship exists in this case.

Neither PSA's ownership nor the partial public financing of Qwest Field is sufficient to create such a relationship. *See, e.g., Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) ("neither public funding nor private use of public property is enough to establish a close nexus between state and private actors"). Indeed, a state "may subsidize private entities without assuming constitutional responsibilities for their action." *San Francisco Arts & Athletics v. United States Olympic Committee*, 483 U.S. 522, 544 (1987) (citation omitted). This is true even when the public funding is coupled with extensive

regulation. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 842-43 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 1012 (1982).

Similarly, the master lease agreement between PSA and FGI does not create the required symbiotic relationship; it does not establish the "crucial relationship" between the governmental entity and the *challenged activity*. *Kabbani*, 406 F. Supp. 2d at 1194. The lease makes FGI solely responsible for security at Qwest Field; there is no governmental involvement with the pat-downs. Moreover, undisputed evidence establishes that PSA does not profit – directly or indirectly – from the pat-downs. (Schieck Decl. ¶¶ 11-12.)

In any event, federal courts have consistently refused to find a symbiotic relationship based on a lease of public property. *See, e.g.*, *Crowder v. Conlan*, 740 F.2d 447, 453 (6th Cir. 1984) (state not responsible for a private hospital's personnel decisions even though county was the "owner and lessor of the hospital's physical plant"); *Greco v. Orange Mem'l Hosp. Corp.*, 513 F.2d 873 (5th Cir. 1975) (private hospital not a state actor despite operating on leased county land).[5]

In *Gallagher*, for example, a private lessee of a state university contracted with a third-party to provide security, including pat-downs of all persons attending a private entertainment event. 49 F.3d at 1448. The Tenth Circuit refused to find state action, holding that the lease of a state facility, payments under the lease, and other non-economic benefits were insufficient to establish state action without proof "that the pat-down searches directly resulted from the University's policies." *Id*. at 1450-51. *See also Wagner v. Metropolitan*

---

[5] The exclusivity of the lease does not alter the analysis. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351-52 (1974) (private company's monopoly status, even if granted by the state, does not affect state action analysis); *Martin v. Pac. Northwest Bell Tel. Co.*, 441 F.2d 1116, 1118 (9th Cir. 1971) (private corporation's economic monopoly "protected and regulated by the state" does not imply state action).

*Nashville Airport Auth.*, 772 F.2d 227 (6th Cir. 1984) (lease of airport space from public entity did not cause searches by private security to be state action); *NBC v. Communications Workers of Am., AFL-CIO*, 860 F.2d 1022 (11th Cir. 1988) (private entity's lease of a public space not state action where city officials did not participate in the challenged conduct); *MacLean v. First Northwest Indus. of Am., Inc.*, 96 Wash.2d 338, 348 n.4, 635 P.2d 683, 688 n.4 (1981) (assertion of symbiotic relationship "dubious" because state had no role in setting allegedly discriminatory admission prices to Seattle Sonics games at city-owned coliseum).[6]

In sum, undisputed evidence establishes that pat-downs at Qwest Field are not the result of joint action between governmental and private entities under any recognized theory of joint participation. PSA's ownership of Qwest Field and its contractual relationship with FGI fail to establish the requisite interdependence to transform pat-downs conducted by private security personnel into state action.

### C. FGI Is Not a Nominally Private Actor Controlled by PSA.

Private conduct may be treated as state action when the "government control[s] a nominally private action." *Single Moms, Inc.*, 331 F.3d at 747; *Brentwood Acad.*, 531 U.S.

---

[6] *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), does not support plaintiff's position. In *Burton*, which addressed the refusal of a private restaurant located in a public parking garage to serve African-Americans, the Court found state action based on a symbiotic relationship between the government *and the discriminatory policy*. The Supreme Court has since stressed that its decision in *Burton* "was quite narrow" and depended on the "peculiar facts [and] circumstances present." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 409 (1995). As the Ninth Circuit has noted, "*Burton*'s symbiotic relationship test require[s] additional evidence of interdependence, such as the physical location of the private entity in a building owned and operated by the State, *and a showing that the State profited from the private entity's discrimination.*" *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1341 (9th Cir. 1997) (emphasis added).

Nor does the district court's decision in *Johnston v. Tampa Sports Authority*, 442 F. Supp. 2d 1257 (M.D. Fla. 2006) (review pending) support plaintiffs' position. Indeed, the *Johnston* court distinguished situations, such as that presented here, where "a private entity either made the decision that allegedly deprived the plaintiffs of their constitutional rights or exercised control over the conduct that allegedly deprived the plaintiffs of their constitutional rights." *Id.* at 1263 n.10.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

at 296 ("a nominally private entity [is treated] as a state actor when it is controlled by an 'agency of the State'"). Undisputed evidence establishes this circumstance is not present here.

FGI is a unquestionably a privately held company. (Schieck Decl. ¶ 5.) It cannot be considered, in any respect, a state agency performing a nominally private role.[7]

Nor is FGI controlled by PSA in any way. The pat-down policy illustrates the point: PSA "had no involvement in FGI's decision to implement" the pat-downs. (Kawasaki Decl. ¶ 10.) FGI has exclusive authority and responsibility for operations at Qwest Field, while PSA plays no role in the management or operation of the facility. (Schieck Decl. ¶ 5; Def. PSA's Resp. Pls.' First Interrog. No. 9.) State action cannot be found on this basis.

**D. PSA Has Not Delegated a Public Function to FGI.**

Private conduct can be treated as state action "if the government delegated a public function to the private sector." *Single Moms, Inc.*, 331 F.3d at 747. "The public function test is satisfied only on a showing that the function at issue is both *traditionally* and *exclusively* governmental." *Kirtley*, 326 F.3d at 1093 (quotation omitted) (emphasis added); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). Providing security at private sporting events is not a governmental function, much less a traditionally and exclusively governmental function.

The Tenth Circuit has held that pat-downs conducted by private security personnel at a private event in a government-owned building were not state action because – among other reasons – "the mere performance of security functions . . . is not traditionally an

---

[7] In contrast, in *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231 (1957) (*per curiam*), the Supreme Court found state action when a state agency acted in the role of a trustee, nominally a private role, of a state university.



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

exclusive function of the state." *Gallagher*, 49 F.3d at 1457 (footnote omitted). Other circuits have reached similar conclusions, holding that private security guards do not meet the public function requirement because providing security is not an exclusive governmental function. *See Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996) (private security guard employed by public housing authority is not fulfilling a public function because the function is not an exclusive state function); *White v. Scrivner*, 594 F.2d 140, 142 (5th Cir. 1979) (detaining suspected shoplifter is not an exclusive state function). Similarly, the private security personnel at Qwest Field are hired by FGI to implement FGI's, the Seahawks' and the NFL's policies; no traditional and exclusive public function is being served.

Even though the objective of preventing and deterring terrorism is of benefit to the public, that does not make the pat-downs state action, *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (footnote omitted) ("That a private entity performs a function which serves the public does not make its acts state action."). Nor is there any basis for a finding that PSA entered into a sham agreement with FGI for the express purpose of violating constitutional rights. *See, e.g., Evans v. Newton*, 382 U.S. 296 (1966) (private trustees appointed to manage previously public park for white persons only). Instead, undisputed facts establish that FGI enforced the pat-down policy at the direction of the Seahawks, which ordered the inspections to comply with an NFL mandate. The pat-down policy therefore is not subject to constitutional scrutiny based on any delegation of a public function.

## CONCLUSION

Undisputed facts establish that the challenged conduct does not constitute state action. Without state action, there is no basis for a constitutional challenge to the pat-down



**Covington & Burling LLP**
1201 Pennsylvania Ave, NW
Washington, DC 20002
Tel: 202.662.6000 FAX: 202.662.6291

inspections at Qwest Field. Accordingly, the Seahawks Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

/s/ Paul A. Ainsworth

Tim J. Filer, WSBA #16285
Jeffrey S. Miller, WSBA #28077
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101
tel: 206.447.4400
fax: 206.447.9700

*Of Counsel:*
Gregg H. Levy
Paul A. Ainsworth
COVINGTON & BURLING LLP
1201 Pennsylvania Ave, NW
Washington, DC 20004
tel: 202.662.6000
fax: 202.662.6291

March 27, 2007

**CERTIFICATE OF SERVICE**

I HEREBY certify that on March 27, 2007, I electronically filed the foregoing Motion for Summary Judgment and Memorandum of Authorities, and supporting Declarations and Responses to Interrogatories with the Clerk of the Court using the ECM/CMF system which will send notification of the filing to Timothy G. Leyh, Esq. and Christopher T. Wion, Esq. of Danielson Harrigan Leyh & Tollefson LLP, 999 Third Avenue, Suite 4400, Seattle, WA 98104, Counsel for Plaintiffs, and John J. Dunbar of Ball Janik LLP, 101 Southwest Main Street, Suite 1100, Portland, OR 9720, Counsel for Defendants the Washington State Public Stadium Authority and Lorraine Hine, in her official capacity as Chairperson of the Washington State Public Stadium Authority board of directors.

/s/ Paul A. Ainsworth

Paul A. Ainsworth
COVINGTON & BURLING LLP
1201 Pennsylvania Ave, N.W.
Washington, DC. 20004
tel: 202.662.5416
fax: 202.662.6291