# Ainsworth Declaration Exhibit D

Exhibit to Ainsworth Decl.
Page 1

Dockets.Justia.com

1                                             THE HONORABLE JAMES L. ROBART

2

3

4                        IN THE UNITED STATES DISTRICT COURT
                        FOR THE WESTERN DISTRICT OF WASHINGTON
5                                        AT SEATTLE

6   FRED and KATHLEEN STARK, a married
    couple,
7
                         Plaintiffs,                    Case No. CV06 1719 JLR
8
            v.                                         **DEFENDANT WASHINGTON STATE**
9                                                      **PUBLIC STADIUM AUTHORITY'S**
    THE SEATTLE SEAHAWKS, FOOTBALL                     **RESPONSE TO PLAINTIFF'S FIRST**
10  NORTHWEST, LLC, a Washington limited               **INTERROGATORIES AND**
    liability company, FIRST & GOAL, INC., a           **REQUESTS FOR PRODUCTION**
11  Washington corporation, THE WASHINGTON
    STATE PUBLIC STADIUM AUTHORITY, a
12  Washington municipal corporation, and
    LORRAINE HINE, in her capacity as chair of
13  the Washington State Public Stadium Authority
    board of directors,
14
                         Defendants.
15

16                        <u>GENERAL RESPONSES AND OBJECTIONS</u>

17          1.      Defendant Washington State Public Stadium Authority ("PSA") objects to

18  producing any documents protected by the attorney-client privilege, work-product doctrine, or

19  joint interest or joint defense privileges.

20          2.      PSA objects to producing any documents not within their possession, custody or

21  control.

22          3.      PSA objects to producing any documents that have been previously produced in

23  connection with this proceeding.

24          4.      PSA objects to any instruction in the Plaintiffs' First Interrogatories and Requests

25  for Production which imposes any obligation beyond that provided in the Federal Rules of Civil

26  Procedure.

Page 1 - DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
         PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
         Case No  CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

1    5.    This response is made without in any way waiving or intending to waive (a) the

2    right to object on grounds of competence, privilege, relevance, materiality or on any other

3    ground, to the use of any such information, for any purpose in whole or in part, in any

4    subsequent step or proceeding in this action or any other action; and (b) the right to object on any

5    and all grounds, at any time, to any other discovery procedure involving or relating to the subject

6    matter of this request.

7    6.    Documents will be made available for inspection and copying at the offices of

8    Ball Janik LLP at a mutually convenient time, or copied and mailed to plaintiffs at plaintiffs'

9    request and at plaintiffs' cost.

10    7.    A statement in the responses to requests for production below that documents will

11    be produced does not mean that PSA has responsive documents in its possession, custody or

12    control, just that any documents that do exist will be produced.

13    **INTERROGATORIES**

14    **INTERROGATORY NO. 2:** Please identify each person partly or wholly responsible

15    for establishing, creating, enforcing, implementing, or overseeing the policies and procedures

16    relating to security at Qwest Field.

17    **ANSWER:** PSA lacks sufficient information to respond to this Interrogatory, other than

18    to state that these persons must be employees of First & Goal, Inc. (FGI) and/or the National

19    Football League ("NFL").

20    **INTERROGATORY NO. 3:** Please describe in detail the policies and procedures in

21    effect at Qwest Field relating to security, terrorist attacks, threats of terrorist attacks, the safety of

22    workers, and/or the safety of Patrons.

23    **ANSWER:** Objection, vague and overbroad to the extent the request could be construed

24    to seek policies regarding construction activities. PSA further responds that it lacks detailed

25    information sufficient to respond to this Interrogatory, other than to state that there is a practice

26    by FGI of limited pat-down searches at NFL games and possibly other events, including one

Page 2 -   DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
           PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
           Case No CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page113

1    college football game known to PSA, the September 17, 2005 WSU football game. PSA is also

2    aware that certain policies and procedures relating to event security have been described in a

3    Qwest Field Event Staff Handbook and on the Quest Field website, both of which are believed to

4    have been produced by FGI. These policies or procedures are not those of PSA. PSA has no

5    policies or procedures of its own relating to event security.

6        **INTERROGATORY NO. 4**: Please describe your involvement, if any, in the creation,

7    development, institution, enforcement, or implementation of the policy or procedure requiring

8    "pat-down" searches of individuals attending Seahawks games at Qwest Field.

9        **ANSWER**: None.

10       **INTERROGATORY NO. 5**: Please describe any policies or procedures relating to

11   conducting "pat-down" searches, bag searches, metal detection devices, explosive-sniffing dogs,

12   or other similar security measures for events other than Seahawks games at Qwest Field.

13       **ANSWER**: PSA lacks information sufficient to respond to this Interrogatory, other than

14   to state that limited pat-downs occurred before admission to at least one college football game,

15   the September 17, 2005 WSU football game. PSA is also aware that certain policies and

16   procedures relating to event security have been described in a Qwest Field Event Staff Handbook

17   and on the Quest Field website, both of which are believed to have been produced by FGI.

18   These policies or procedures are not those of PSA. PSA has no policies or procedures of its own

19   relating to event security.

20       **INTERROGATORY NO. 6**: Please identify each Public Event which occurred at

21   Qwest Field since July 2002.

22       **ANSWER**: Objection, burdensome and duplicative. Based on a reasonable

23   investigation, PSA does not have a document which identifies all such Public Events.

24       **INTERROGATORY NO. 7**: For each event identified in response to Interrogatory No.

25   6, please describe the Patron screening procedures employed, including but not limited to

26   whether bag searches, pat-down searches, explosive-sniffing dogs, metal detection devices were

Page 3 - DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page114

1 used on Patrons attending the event.

2  **ANSWER:** PSA lacks information sufficient to respond to this Interrogatory, other than

3 to state that there is a practice by FGI of limited pat-down searches at NFL games and that pat-

4 down searches occurred at the September 17, 2005 WSU football game.

5  **INTERROGATORY NO. 9:** Please identify any and every company, contractor, or

6 subcontractor that is providing, has provided, or with whom you have or have had a contractual

7 agreement to provide security services at Qwest Field, stating for each the specific services

8 provided.

9  **ANSWER:** PSA has no contractual agreement or arrangement for security services at

10 Qwest Field.

11  **INTERROGATORY NO. 11:** Please identify and describe all threats of terrorist or

12 other violent attacks, including but not limited to suicide bomb attacks, against Qwest Field or

13 Patrons or employees at Qwest Field of which you have been informed or of which you have

14 become aware since July 2002. Such descriptions shall include the date of the threat, the date on

15 which you became aware of such threat, the nature of the threat, and the source of your

16 information regarding such threat.

17  **ANSWER:** PSA was informed of and became aware of warnings regarding a potential

18 dirty bomb attack, as described in the email dated October 18, 2006, attached as Exhibit 1.

19  **INTERROGATORY NO. 14:** Are you aware of any specific instance in which Qwest

20 Field security personnel have discovered any explosive device or devices at Qwest Field through

21 "pat-down" searches or any other means? If so, please describe the facts and circumstances

22 surrounding such discovery.

23  **ANSWER:** No.

24  **INTERROGATORY NO. 15:** Please identify and describe any and all incidents or

25 reports of violence or threatened violence at Qwest Field of which you are aware which involved

26 the use of firearms, explosives, incendiary devices, weapons of mass destruction or other devices

Page 4 - DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719      ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

1    capable of harming large numbers of people.

2    **ANSWER:** None are known to PSA, other than the "dirty bomb" warnings described

3    above.

4    **INTERROGATORY NO. 16:** Please identify and describe all incidents or reports of

5    violence or threatened violence at any stadium in which a National Football League team plays

6    of which you are aware which involved the use of firearms, explosives, incendiary devices,

7    weapons of mass destruction or other devices capable of harming large numbers of people.

8    **ANSWER:** See Answers to Interrogatories 3, 14 and 15.

9    **INTERROGATORY NO. 17:** For each incident, event, or threat identified in response

10   to Interrogatories 13, 14, 15 or 16, please describe with particularity your response or the

11   response of any of the defendants in this lawsuit or of the National Football League, if any, to

12   such incident, event, or threat.

13   **ANSWER:** PSA did not respond to the dirty bomb warning. PSA understands that

14   responses may have made by FGI and the NFL, but PSA lacks sufficient information to respond

15   with particularity as to what those responses were.

16   **INTERROGATORY NO. 18:** Please describe the nature and extent of your authority

17   relating to security measures at Qwest Field, including but not limited to conducting pat-down or

18   other searches of Patrons attending events at Qwest Field.

19   **ANSWER:** Pursuant to the terms of the Master Lease Agreement, FGI, not PSA, has the

20   exclusive power and authority to possess, operate and use Qwest Field, and this power includes

21   security operations.

22   **INTERROGATORY NO. 20:** Identify the date and from whom you first learned that

23   the NFL had adopted a policy requiring pat-down searches of all Patrons at NFL games. Identify

24   the date and from whom you first learned that the NFL's pat-down policy would be implemented

25   at Qwest Field.

26   **ANSWER:** To the best of its knowledge, PSA learned of the NFL policy on pat-down

Page 5 -  DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
          PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
          Case No CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page116

1    searches on or about September 28, 2005.

2    **INTERROGATORY NO. 21:** Please describe the various levels of security alert at

3    Qwest Field (i.e., "yellow", "orange", etc...) and, for each level, identify the specific time

4    periods (by date) during which each such alert level was in effect.

5    **ANSWER:** PSA lacks sufficient information to respond to this Interrogatory, other than

6    to state that it has a copy of a 2006 Qwest Field Event Staff Handbook, which contains a

7    description of levels that may have been in use in the 2006 football season. A copy of that

8    Handbook is attached as Exhibit 2. PSA had no role in producing this Handbook. PSA has

9    established no levels of security alert.

10    **INTERROGATORY NO. 22:** If there has ever been a change in the level of alert at

11    Qwest Field, please describe the reason for the change, identify the person who directed that the

12    alert level be changed, and identify each event or communication relied upon as a basis for that

13    change.

14    **ANSWER:** The answer to this Interrogatory is not known to PSA.

15    **INTERROGATORY NO. 24:** Explain why full-body pat-downs are not conducted at

16    Qwest Field and at other venues where NFL games are played.

17    **ANSWER:** The answer to this Interrogatory is not known to PSA.

18    **INTERROGATORY NO. 25:** Please identify the number of people arrested and the

19    number of people refused access to Qwest Field as a result of the pat-down screening at

20    Seahawks games.

21    **ANSWER:** The answer to this Interrogatory is not known to PSA.

22    **INTERROGATORY NO. 26:** Have the security screeners at Qwest Field ever found

23    any contraband as a result of the "pat-down" searches during the 2005 and 2006 seasons? If so,

24    describe the contraband and the action taken by the screeners upon finding such contraband.

25    **ANSWER:** Based on a September 30, 2005 letter from FGI, a copy of which is attached

26    as Exhibit 3, PSA understands that pat-downs have identified alcohol brought into the stadium,

Page 6 - DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page117

1    as well as one handgun.

2    **INTERROGATORY NO. 27:**  Who pays for security at Qwest Field?  For each of the

3    2005 and 2006 seasons (including pre and post-season games), how much did it cost to have pat-

4    down screeners at Seahawks home games?

5    **ANSWER:**  PSA does not pay for security at Qwest Field and lacks information

6    sufficient to respond.

7    **INTERROGATORY NO. 28:**  Identify the number of Patrons who have complained

8    about the pat-down policy at Qwest Field.  Please describe the procedure, if any, by which

9    security screeners conducting pat-downs handle and report such complaints.

10    **ANSWER:**  Two Patrons have sent written complaints to PSA.  PSA lacks information

11    as to the procedures for reporting complaints received by security screeners, who are not

12    employed by PSA.

13    **INTERROGATORY NO. 29:**  Identify each Public Event, and the venue where that

14    event took or takes place, for which all patrons, to your knowledge, were or are subjected to an

15    upper body pat-down as a condition of entry.

16    **ANSWER:**  PSA lacks precise information, other than its understanding that there is a

17    practice by FGI of limited pat-down searches at Seahawks' games and at least one college

18    football game, the September 17, 2005 WSU game.

19    **INTERROGATORY NO. 30:**  Identify each Public Event, and the venue where that

20    event took or takes place, for which all patrons, to your knowledge, were or are subjected to a

21    full body pat-down as a condition of entry.

22    **ANSWER:**  No such Event is known to PSA.

23    **INTERROGATORY NO. 31:**  Identify all communications, and the participants to

24    those communications, relating to the impact or potential impact of increased security or the

25    implementation of the pat-down policy at Qwest Field or other NFL stadiums on any insurance

26    premiums for any policy for which a defendant or the NFL is a named insured.

Page 7 -  DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page118

1          **ANSWER:** No such communications are known to PSA.

2          **INTERROGATORY NO. 35:** Please describe any revenue, rents, profits, profit-sharing

3  or other income you receive from First & Goal, Inc. or any other entity or person who uses or has

4  used Qwest Field.

5          **ANSWER:** Objection: vague. In lieu of a further response, pursuant to Federal Rule of

6  Civil Procedure 33(d), PSA identifies the Master Lease Agreement, as amended, a copy of which

7  is attached as Exhibit 4, and the Approval and Naming Rights Agreement, a copy of which is

8  attached as Exhibit 5.

9                    <u>**REQUESTS FOR PRODUCTION**</u>

10          **REQUEST FOR PRODUCTION NO. 1:** Please produce all documents relating to

11  policies and procedures for security at Qwest Field since 2002, including but not limited to

12  policies and procedures for searching or screening patrons attending events at Qwest Field.

13          **RESPONSE:** Responsive non-privileged documents will be produced.

14          **REQUEST FOR PRODUCTION NO. 2:** Please produce all documents relating to

15  security, terrorist attacks, threats of terrorist attacks, the safety of workers, and/or the safety of

16  Patrons at Qwest Field.

17          **RESPONSE:** Objection, overbroad and vague to the extent the request asks for

18  documents regarding worker safety. Notwithstanding these objections, responsive non-

19  privileged documents regarding security during events will be produced.

20          **REQUEST FOR PRODUCTION NO. 3:** Please produce all documents, including

21  correspondence, relating to the creation, development, institution, enforcement, or

22  implementation of the policy or procedure requiring "pat-down" searches of individuals

23  attending Seahawks games at Qwest Field.

24          **RESPONSE:** Responsive non-privileged documents will be produced.

25          **REQUEST FOR PRODUCTION NO. 4:** Please produce all documents relating to

26  conducting "pat-down" searches, bag searches, metal detection devices, explosive-sniffing dogs,

Page 8 -  DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
          PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
          Case No. CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page119

1    or other similar security measures for events at Qwest Field.

2        **RESPONSE:** Responsive non-privileged documents will be produced.

3        **REQUEST FOR PRODUCTION NO. 5:** Please produce all documents relating to the

4    training, supervision, screening, or employment of individuals conducting customer screening

5    services for Patrons attending events at Qwest Field.

6        **RESPONSE:** Responsive non-privileged documents will be produced.

7        **REQUEST FOR PRODUCTION NO. 6:** Please produce all contracts or agreements

8    relating to any company, contractor, or subcontractor that is providing, has provided, or with

9    whom you have or have had a contractual agreement to provide security services at Qwest Field

10    identified in response to Interrogatory No. 9.

11        **RESPONSE:** Responsive non-privileged documents will be produced.  Based on a

12    reasonable investigation, PSA believes it has no such documents.

13        **REQUEST FOR PRODUCTION NO. 7:** Please produce all documents relating to any

14    threats of terrorist or other violent attacks, including but not limited to suicide bomb attacks,

15    against Qwest Field or Patrons or employees at Qwest Field identified in response to

16    Interrogatory No. 11.

17        **RESPONSE:** Responsive non-privileged documents will be produced.

18        **REQUEST FOR PRODUCTION NO. 8:** Please produce all documents relating to any

19    specific instance of a planned or an attempted terrorist bomb attack at Qwest Field identified in

20    response to Interrogatory No. 13.

21        **RESPONSE:** Responsive non-privileged documents will be produced.

22        **REQUEST FOR PRODUCTION NO. 9:** Please produce all documents relating to any

23    specific instance in which Qwest Field security personnel have discovered any explosive device

24    or devices at Qwest Field through pat-down searches or any other means identified in response to

25    Interrogatory No. 14.

26        **RESPONSE:** Responsive non-privileged documents will be produced.  Based on a

Page 9 - DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719           ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page120

1    reasonable investigation, PSA believes it has no such documents.

2    **REQUEST FOR PRODUCTION NO. 10:**  Please produce all documents relating to

3    any incidents or reports of violence or threatened violence at Qwest Field of which you are aware

4    which involved the use of firearms, explosives, incendiary devices, weapons of mass destruction

5    or other devices capable of harming large numbers of people identified in response to

6    Interrogatory No. 15.

7    **RESPONSE:**  Responsive non-privileged documents will be produced.

8    **REQUEST FOR PRODUCTION NO. 11:**  Please produce all contracts, agreements or

9    other documents relating to security requirements imposed upon or applicable to any person or

10   entity contracting to use Qwest Field for the purposes of holding sporting events or competitions,

11   concerts or other events open to the general public.

12   **RESPONSE:**  Responsive non-privileged documents will be produced.  Based on a

13   reasonable investigation, PSA believes it has no such documents.

14   **REQUEST FOR PRODUCTION NO. 12:**  Please produce written reports containing

15   the information required to be included in such reports by F.R.C.P. 26 relating to any expert

16   whom you expect to call as a witness at trial, along with copies of all documents provided to

17   such experts to the extent such documents have not been produced in response to a Request for

18   Production herein.

19   **RESPONSE:**  Responsive non-privileged documents will be produced.

20   **REQUEST FOR PRODUCTION NO. 13:**  Please produce all documents relating to

21   any analysis, review, study, or consideration relating to the policy requiring pat-down searches of

22   patrons entering Qwest Field for Seahawks games.

23   **RESPONSE:**  Responsive non-privileged documents will be produced.  Based on a

24   reasonable investigation, PSA believes it has no such documents.

25   **REQUEST FOR PRODUCTION NO. 14:**  Please produce all documents and

26   communications between or among you, First & Goal, Inc., Football Northwest, LLC or the

Page 10 -DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

Exhibit to Ainsworth Decl.
Page121

1  National Football League, or any other person relating to this lawsuit or to the policy requiring

2  pat-down searches of Patrons entering Qwest Field for Seahawks games.

3  **RESPONSE:** Responsive non-privileged documents will be produced.

4  **REQUEST FOR PRODUCTION NO. 15:** Please produce all documents relating to

5  any analysis, review, study or consideration of alternative measures you have considered for

6  screening Patrons entering Qwest Field.

7  **RESPONSE:** Responsive non-privileged documents will be produced. Based on a

8  reasonable investigation, PSA believes it has no such documents.

9  **REQUEST FOR PRODUCTION NO. 16:** Please produce all documents relating to

10  any agreement between or among you, First & Goal, Inc., Football Northwest, LLC or the

11  National Football League, or any other person to indemnify, hold harmless, pay defense costs for

12  or otherwise pay any loss, judgment, or expenses you may suffer as a result of this lawsuit.

13  **RESPONSE:** Objection. Responsive non-privileged documents will be produced.

14  **REQUEST FOR PRODUCTION NO. 17:** Please produce all correspondence between

15  or among you and counsel for First & Goal, Inc., Football Northwest, LLC and/or the National

16  Football League.

17  **RESPONSE:** Objection, overbroad and burdensome to the extent the request seeks all

18  correspondence, regardless of whether the request relates to security issues. Responsive non-

19  privileged documents, if any, regarding security issues will be produced.

20  **REQUEST FOR PRODUCTION NO. 18:** Please produce all documents evidencing

21  training materials, training manuals, or other materials used to train personnel providing security

22  services at Qwest Field.

23  **RESPONSE:** Responsive non-privileged documents will be produced.

24  **REQUEST FOR PRODUCTION NO. 19:** Please provide all documents evidencing

25  any policies, procedures, requirements or practice for conducting background checks for any

26  personnel having access to Qwest Field, including but not limited to background checks for

Page 11 -DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
   PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
   Case No. CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page122

1   employees of the Public Stadium Authority, First & Goal, Inc., Football Northwest, LLC, and the

2   National Football League.

3       **RESPONSE:** Responsive non-privileged documents will be produced.

4       **REQUEST FOR PRODUCTION NO. 20:** Please produce all videos, photographs, or

5   other media in your possession showing, documenting, or memorializing security screening

6   procedures at Qwest Field, including but not limited to procedures for searching Patrons entering

7   Qwest Field, procedures for searching employees entering Qwest Field, procedures for detecting

8   explosive devices and other weapons, and procedures to prevent unauthorized access to Qwest

9   Field.

10       **RESPONSE:** Responsive non-privileged documents will be produced.  Based on a

11   reasonable investigation, PSA believes it has no such documents.

12       **REQUEST FOR PRODUCTION NO. 21:** Please provide documents evidencing the

13   cost of security measures taken to screen or search Patrons (or their bags or possessions) entering

14   Qwest Field for each year beginning in 2002.

15       **RESPONSE:** Responsive non-privileged documents will be produced.  Based on a

16   reasonable investigation, PSA believes it has no such documents.

17       **REQUEST FOR PRODUCTION NO. 22:** Please provide all documents relating to

18   policies, procedures or practices to conduct background searches or other screening measures on

19   personnel who provide security services at Qwest Field.

20       **RESPONSE:** Responsive non-privileged documents will be produced.

21       **REQUEST FOR PRODUCTION NO. 23:** Please produce any and all contracts or

22   agreements between and/or among any of defendants, the NFL, and any third-party provider of

23   security services (including, but not limited to, Guardsmark and any other provider of security

24   consulting services) since 2002.

25       **RESPONSE:** Objection.  The request is vague as to whether it is limited to contracts

26   dealing with security, which based upon reasonable investigation PSA believes it does not have,

Page 12 –DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719                       ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page123

1    or whether the request instead seeks all contracts between FGI and PSA, in which case the

2    request is overbroad and burdensome.

3    **REQUEST FOR PRODUCTION NO. 24:**  Please produce any and all documents and

4    communications internal to, between and/or among any of the defendants, the NFL, and any

5    third-party provider of security services (including, but not limited to, Guardsmark and any other

6    provider of security consulting services) since 2002, relating to security at Qwest Field,

7    including but not limited to, internal and third-party security audits.  This request applies not

8    only to documents and communications directed specifically to Qwest Field, but also to those

9    relating to NFL stadiums in general.

10    **RESPONSE:**  Responsive non-privileged documents, if any, will be produced.

11    **REQUEST FOR PRODUCTION NO. 25:**  Please produce any and all communications

12    internal to, between and/or among any of defendants, the NFL, and any third-party provider of

13    security services (including, but not limited to, Guardsmark and any other provider of security

14    consulting services) since 2002, relating to each specific terrorist attack that formed the basis for

15    implementation of the NFL mandated pat-down policy at Qwest Field.

16    **RESPONSE:**  Responsive non-privileged documents will be produced.

17    **REQUEST FOR PRODUCTION NO. 26:**  Please produce a list of Seahawks season

18    ticket prices for each season beginning with the 2002 season.

19    **RESPONSE:**  Responsive non-privileged documents will be produced.  Based on a

20    reasonable investigation, PSA believes it has no such documents.

21    **REQUEST FOR PRODUCTION NO. 27:**  Please produce all documents relating to the

22    issue of Patrons bringing alcoholic beverages into Qwest Field or other NFL stadiums and/or the

23    resulting impact on sales of alcoholic beverages within such stadiums.

24    **RESPONSE:**  Responsive non-privileged documents will be produced.

25    **REQUEST FOR PRODUCTION NO. 28:**  Please produce a list of Seahawks season

26    ticket holders for the 2005 and 2006 seasons.

Page 13 -DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page124

1    **RESPONSE:**  Responsive non-privileged documents will be produced.  Based on a

2    reasonable investigation, PSA believes it has no such documents.

3    **REQUEST FOR PRODUCTION NO. 29:**  Produce each insurance policy covering any

4    period between January 1, 2002 to the present on which any defendant or the NFL is a named

5    insured.

6    **RESPONSE:**  Objection:  vague, burdensome and overbroad.  Without waiving its

7    objection, PSA will produce declaration pages of applicable policies of PSA.

8    **REQUEST FOR PRODUCTION NO. 30:**  Please produce any and all contracts or

9    agreements between and/or among any defendants and/or the NFL.

10    **RESPONSE:**  Objection:  vague, burdensome and overbroad.  PSA has already produced

11    the Master Lease Agreement, with all amendments.  PSA believes that it has no other agreements

12    with FGI dealing with security, and that PSA has no agreements between the NFL and other

13    parties.

14    **REQUEST FOR PRODUCTION NO. 31:**  Please produce a complete, executed copy

15    of the Master Lease, including all amendments thereto, between you and First & Goal, Inc.

16    relating to Qwest Field.

17    **RESPONSE:**  Responsive non-privileged documents have already been produced.

18    **REQUEST FOR PRODUCTION NO. 32:**  Please produce documents evidencing any

19    revenue, rents, profits, profit-sharing or other income you receive from First & Goal, Inc. or any

20    other entity or person who uses or has used Qwest Field since January 1, 2004.

21    **RESPONSE:**  Objection:  overbroad, burdensome and not calculated to lead to the

22    discovery of admissible evidence.  Notwithstanding its objections, PSA will produce deposit

23    slips received from FGI since January 1, 2004, along with the Master Lease and the Naming

24    Rights Agreement.

25

26    DATED:  March 19, 2007.

Page 14 -DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
Case No. CV 6-1719                                    ::ODMA\PCDOCS\PORTLAND\559887\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Exhibit to Ainsworth Decl.
Page125



1    Respectfully submitted,

2

3    By: _____
      John J. Dunbar, WSBA No. 15509

4    BALL JANIK LLP
      101 SW Main Street, Suite 1100

5    Portland, OR 97204
      Phone: (503) 228-2525

6    Fax:  503-226-3910
      Email:  jdunbar@bjllp.com

7
      Of Attorneys for Defendants The Washington

8    State Public Stadium Authority and Lorraine
      Hine

9

10   ANSWERS and RESPONSES submitted this 19ᵗʰ day of March, 2007.

11

12   By: _____

13   STATE OF Washington )
                          )
14   COUNTY OF King       ) ss.
                          )

15   Ann Kawasaki Romero ____, being first duly sworn on oath, deposes and says:

16
      That she is the Executive Director of defendant Washington State Public Stadium
17   Authority, that she has read the foregoing Answers to Interrogatories and Responses to the
      Request for Production of Documents, knows the contents thereof and believes the same to be
18   true.

19   SUBSCRIBED and SWORN to before me this 19ᵗʰ day of March , 2007.

20

21   _____
      Notary Public in and for the State of Washington
22   Residing at Mill Creek, WA
      My commission expires  6/9/09
23

24

25

26

Page 15 - DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S RESPONSE TO
       PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION
       Case No. CV 6-1719https://boar stadium org/exchange/AnnK/Inbox/PSA _xF8FF_ Stark – Discovery Responses EML/1_multipart_x

BALL JANIK LLP
One Main Place

Exhibit to Ainsworth Decl.
Page126

1                           CERTIFICATE OF SERVICE

2          I hereby certify that, on the 19th day of March, 2007, I served a true and correct copy of

3    the foregoing **DEFENDANT WASHINGTON STATE PUBLIC STADIUM AUTHORITY'S**

4    **RESPONSE TO PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR**

5    **PRODUCTION,** by the method shown below, addressed to the following named persons at their

6    last-known addresses on the date shown above:

7    Timothy G. Leyh, Esq.                          BY EMAIL AND U.S. MAIL
     Christopher T. Wion, Esq,
8    Danielson Harrigan Leyh & Tollefon LLP
     999 Third Avenue, Suite 4400
9    Seattle, Washington 98104
           Counsel for Plaintiffs
10
     Gregg H. Levy, Esq.                            BY EMAIL AND U.S. MAIL
11   Paul A. Ainsworth, Esq.
     Covington & Burling LLP
12   1201 Pennsylvania Avenue, NW
     Washington, DC 20004
13
     Jeffrey Millerm Esq,                           BY EMAIL AND U.S. MAIL
14   Timothy Filer, Esq.
     Foster Pepper PLLC
15   1111 Third Avenue, Suite 3400
     Seattle, Washington 98101
16         Attorneys for Defendants The Seattle Seahawks,
           Football Northwest LLC and First & Goal, Inc.
17
18                                        _____
                                          John J. Dunbar, WSBA No. 15509
19                                        BALL JANIK LLP
                                          101 SW Main Street, Suite 1100
20                                        Portland, OR 97204
                                          Phone: (503) 228-2525
21                                        Fax: (503) 226-3910
                                          Email: jdunbar@bjllp.com
22
                                          Attorneys for Defendants The Washington State
23                                        Public Stadium Authority and Lorraine Hine

24

25

26

Page 1 - **CERTIFICATE OF SERVICE**

::ODMA\PCDOCS\PORTLAND\559887\2

# Exhibit 1

## Ann Kawasaki Romero

| | |
|---|---|
| **From:** | Fuller, Martha [MarthaF@Seahawks.com] |
| **Sent:** | Wednesday, October 18, 2006 2:21 PM |
| **To:** | Ann Kawasaki Romero |
| **Subject:** | FW: original story... |

More...

**From:** Pearson, Dave
**Sent:** Wednesday, October 18, 2006 1:53 PM
**To:** Ruskell, Tim; Leiweke, Tod; Rizzardini, John; Fuller, Martha; Wright, Gary
**Cc:** Lavender, Suzanne; Darrington, Susan; Schieck, Paul; Nank, Michael; Reinfeldt, Mike; Gammel, Lane; Barber, Julie
**Subject:** original story...

The following is the original story AP has sent me. To review, the league's response is: **"The Department of Homeland Security has judged that the threat is not credible. Our stadiums are very well protected through the comprehensive security procedures we have in place, including secure facility perimeters, pat-downs, and bag searches."**

**####Please defer all inquiries to the league office and/or the department of homeland security.#####**

WASHINGTON (AP) _ A Web site is claiming that seven NFL football stadiums will be hit with radiological dirty bombs this weekend, but the government on Wednesday expressed doubts about the threat.
¶   The warning, posted Oct. 12, was part of an ongoing Internet conversation titled "New Attack on America Be Afraid." It mentioned NFL stadiums in New York, Miami, Atlanta, Seattle, Houston, Oakland and Cleveland, where games are scheduled for this weekend.
¶   The Homeland Security Department alerted authorities and stadium owners in those cities, as well as the NFL, of the Web message but said the threat was being viewed "with strong skepticism." Homeland Security spokesman Russ Knocke said there was no intelligence that indicated such an attack was imminent, and that the alert was "out of an abundance of caution."
¶   "The department strongly encourages the public to continue to go about their plans, including attending events that involve large public gatherings such as football games," Knocke said.
¶   The FBI also expressed doubt about the threat.
¶   The nation's alert level remains at yellow, signaling an elevated risk of an attack. The threat level for airline flights is at orange, a higher level, where it has been since a foiled plot to bomb U.S.-bound commercial jets was revealed on Aug. 10.
¶

**EXHIBIT 1**
**Page 1 of 3**

PSA 000001

Exhibit to Ainsworth Decl.
Page129

Jan 5 2007 7:15PM    PAS             No 0709  P. 6
Page 1 of 2

### Ann Kawasaki Romero

**From:** Fuller, Martha [MarthaF@Seahawks.com]
**Sent:** Wednesday, October 18, 2006 1:49 PM
**To:** Ann Kawasaki Romero
**Subject:** FW: Talking points on stadium threat

FYI This is what kept me from the PVR meeting -- fortunately, the threat was determined to be not credible. Moment of alarm, now alleviated.

**From:** Pearson, Dave
**Sent:** Wednesday, October 18, 2006 1:21 PM
**To:** Ruskell, Tim; Leiweke, Tod; Wright, Gary; Rizzardini, John; Fuller, Martha
**Cc:** Lavender, Suzanne; Nank, Michael
**Subject:** FW: Talking points on stadium threat

For now, the Seahawks will say:

### "We are still gathering information and defer all questions on this matter to either the nfl pr office or the department of homeland security"

**From:** Aiello, Greg [mailto:AielloG@NFL.com]
**Sent:** Wednesday, October 18, 2006 12:59 PM
**To:** Roberts, Reggie (NFL); Colangelo, Ron (NFL); Greene, Harvey (NFL); Bonsiewicz, Bill (NFL); Pearson, Dave; Taylor, Mike (NFL); Wyllie, Tony (NFL)
**Subject:** FW: Talking points on stadium threat

Gentlemen: Here's the statement we just issued -- "The Department of Homeland Security has judged that the threat is not credible. Our stadiums are very well protected through the comprehensive security procedures we have in place, including secure facility perimeters, pat-downs, and bag searches."

Below are talking points from the Department of Homeland Security.

-----Original Message-----
**From:** Whitworth, Kirk [mailto:Kirk.Whitworth@dhs.gov]
**Sent:** Wednesday, October 18, 2006 3:03 PM
**To:** McCarthy, Brian; Aiello, Greg
**Cc:** Knocke, William R
**Subject:** Talking points on stadium threat

Greg and Brian,

Thanks for talking with us today. Below are the talking points we intend to use, and Russ currently has a call into CNN.

Thanks, and let us know if there is anything else you need from us.

- DHS is monitoring reports of overseas allegations of pending "Dirty bomb" attacks on the US. DHS judges that the threat is not credible.
- While there is no credible intelligence indicating such attacks, out of an abundance of caution, DHS notified federal, state, local, and private sector partners about the threat, recommending that stadium and local law enforcement authorities remain vigilant.

EXHIBIT 1
Page 2 of 3

PSA 000002

Exhibit to Ainsworth Decl.
Page130

- As we have in the past, we continue to share sensitive information with our partners at all levels to ensure they have the information they need to make the right decisions to protect their communities.

*Kirk Whitworth*
*Office of Public Affairs*
*Department of Homeland Security*
*Washington, DC*
*202-282-8462*
*c-202-680-3611*

EXHIBIT 1
Page 3 of 3

PSA 000003

Exhibit 2

Exhibit to Ainsworth Decl.
Page132

EXHIBIT 2
Page 1 of 34



PSA 000004

Exhibit to Ainsworth Decl.
Page133

EXHIBIT 2
Page 2 of 34



PSA 000005

Exhibit to Ainsworth Decl.
Page 134

EXHIBIT 2
Page 3 of 34

# THE QWEST FIELD WAY!

## CONTACT INFORMATION

Contact Information ............................................. 2
Seahawks First & Goal Management ......................... 3

## OPERATIONAL POLICIES

Alcohol Management ............................................ 6
Animals ............................................................ 6
Autographs/Photographs ...................................... 6
Bag Check/Fan Screening ..................................... 6
Ball in Stands ..................................................... 7
Cameras and Camcorders ..................................... 7
Clearing an Event ............................................... 8
Code of Conduct (Fans and Guests) ....................... 8
Command Center ................................................. 8
Control Room ..................................................... 9
Credentials ........................................................ 9
Ejections .......................................................... 10
Elevators .......................................................... 10
Event Manager on Duty ....................................... 10
Exit and Re-entry ............................................... 11
Fighting and Altercations ..................................... 11
Gate Opening .................................................... 11
Housekeeping .................................................... 11
Information Requests/Media Inquiries ..................... 12
Integrity of Image .............................................. 12
Language .......................................................... 12
Lost and Found .................................................. 12
Nursing Mothers ................................................ 13
Press Box and Press Lounges ............................... 13
Prohibited Items ................................................ 13
Promotional Giveaways ....................................... 13
Radio Etiquette .................................................. 13
Reporting and Documentation ............................... 13
Restricted Areas ................................................ 14
Security ............................................................ 14
Smoking Areas (Fans) ......................................... 14
Storage ............................................................ 14
Suites and Suite Access ....................................... 14
Suspicious Items ................................................ 15

## THE QWEST FIELD ALL-STARS

Team Qwest Field All-stars ................................... 16
Awards Monthly Drawing ..................................... 16
Qwest Field Hall of Fame ..................................... 16
Merchandise Discount ......................................... 16
Food Discount .................................................... 16
Attendance Points Program .................................. 17
Staff Celebrations ............................................... 17

## OPERATIONS GUIDE

Introduction ...................................................... 19
Alcohol ............................................................ 19
Animals ............................................................ 20
Assistive Listening Devices .................................. 20
ATMs ............................................................... 20
Auto Trouble ..................................................... 20
Baby Changing Stations ...................................... 20
Bag Search ....................................................... 20
Prohibited and Restricted Items ........................... 21
Banners and Signs ............................................. 21
Bike Parking ..................................................... 21
Bottles and Cans ............................................... 21
Box Office ......................................................... 21
Cell Phones ...................................................... 22
Customer Service ............................................... 22
Community Outreach and Stadium Neighborhoods ..... 22
Concession Stands ............................................. 22
Covered Seating ................................................ 23
Credit Cards ..................................................... 23
Disabled Access Information ................................. 23
Disabled Parking Information ................................ 24
Disabled Seating Information ................................ 24
Drinking Fountains ............................................. 24
Drop-off Area .................................................... 24
Ejection ........................................................... 24
Elevators .......................................................... 24
Emergencies and Evacuation Procedures ................ 25
Employment Opportunities ................................... 25
Event Booking at Qwest Field And Event Center ........ 25
Fan Code of Conduct .......................................... 25
First Aid Stations ............................................... 26
Food and Beverage ............................................ 26

EXHIBIT 2
Page 4 of 34

Food and Beverage Policy . . . . . . . . . . . . . . . . 27
Gate Opening Times . . . . . . . . . . . . . . . . . . . 27
Internet Access . . . . . . . . . . . . . . . . . . . . . 27
Levy Restaurants . . . . . . . . . . . . . . . . . . . . 27
Lost and Found . . . . . . . . . . . . . . . . . . . . . 28
Lost Children / Parents . . . . . . . . . . . . . . . . . 28
Mobility Concepts, Inc. . . . . . . . . . . . . . . . . . 28
Paging . . . . . . . . . . . . . . . . . . . . . . . . . 28
Parking and Transportation . . . . . . . . . . . . . . . 28
Playing Surfaces . . . . . . . . . . . . . . . . . . . . 29
Police . . . . . . . . . . . . . . . . . . . . . . . . . 29
Press Gate . . . . . . . . . . . . . . . . . . . . . . . 29
Public Art Program . . . . . . . . . . . . . . . . . . . 29
Public Telephones . . . . . . . . . . . . . . . . . . . 30
Qwest Field Event Center . . . . . . . . . . . . . . . . 30
Radios and Televisions . . . . . . . . . . . . . . . . . 30
Ramps . . . . . . . . . . . . . . . . . . . . . . . . . 30
Restrooms . . . . . . . . . . . . . . . . . . . . . . . 30
Safe Ride Home Program . . . . . . . . . . . . . . . . 30
Seahawks Pro Shop . . . . . . . . . . . . . . . . . . . 30
Skateboarding/Rollerblading . . . . . . . . . . . . . . 31
Smoking . . . . . . . . . . . . . . . . . . . . . . . . 31
Solicitation / Literature . . . . . . . . . . . . . . . . 31
Spectator Services Centers . . . . . . . . . . . . . . . 31
Strollers . . . . . . . . . . . . . . . . . . . . . . . . 31
Suite Rental . . . . . . . . . . . . . . . . . . . . . . 31
Tailgating at Qwest Field . . . . . . . . . . . . . . . . 32
Taxi Services . . . . . . . . . . . . . . . . . . . . . . 32
Tours . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Transportation . . . . . . . . . . . . . . . . . . . . . 32
Umbrellas . . . . . . . . . . . . . . . . . . . . . . . 32
Video Boards (Hawkvision) . . . . . . . . . . . . . . . 33
Washington State Public Stadium Authority . . . . . . . 33
Will Call Windows . . . . . . . . . . . . . . . . . . . 33

**SEATTLE SEAHAWKS INFORMATION**

Additional Season Tickets . . . . . . . . . . . . . . . . 34
Address Changes . . . . . . . . . . . . . . . . . . . . 34
Away Game Tickets . . . . . . . . . . . . . . . . . . . 34
Birthday / Anniversary Packages . . . . . . . . . . . . 34
Blitz . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Broadcasts . . . . . . . . . . . . . . . . . . . . . . . 35
Cameras, Audio and Video Recorders . . . . . . . . . . 35
Charter Season Tickets . . . . . . . . . . . . . . . . . 35
Children's Tickets . . . . . . . . . . . . . . . . . . . 35
Club Wells Fargo Level Seating . . . . . . . . . . . . . 35
Designated Driver Program . . . . . . . . . . . . . . . 36

Disabled Seating . . . . . . . . . . . . . . . . . . . . 36
Fan Code of Conduct . . . . . . . . . . . . . . . . . . 36
Field Access . . . . . . . . . . . . . . . . . . . . . . 37
Group Tickets . . . . . . . . . . . . . . . . . . . . . . 37
Lost or Stolen Tickets . . . . . . . . . . . . . . . . . 37
National Anthem . . . . . . . . . . . . . . . . . . . . 37
Playoff Tickets . . . . . . . . . . . . . . . . . . . . . 38
Presentation of The Colors . . . . . . . . . . . . . . . 38
Priority Date . . . . . . . . . . . . . . . . . . . . . . 38
Re-entry Policy . . . . . . . . . . . . . . . . . . . . . 38
Resale and Scalping . . . . . . . . . . . . . . . . . . 38
Revocable License . . . . . . . . . . . . . . . . . . . 38
Ring of Honor . . . . . . . . . . . . . . . . . . . . . 38
Sea Gals . . . . . . . . . . . . . . . . . . . . . . . . 39
Seahawks Blue Thunder Drumline . . . . . . . . . . . . 39
Seat Improvement . . . . . . . . . . . . . . . . . . . . 39
Single Game Tickets . . . . . . . . . . . . . . . . . . 39
Super Bowl Tickets . . . . . . . . . . . . . . . . . . . 39
Touchdown City . . . . . . . . . . . . . . . . . . . . . 40
Ticket Office Locations . . . . . . . . . . . . . . . . . 40
Transfer Policy . . . . . . . . . . . . . . . . . . . . . 40
Wheelchair/Companion Ticket Exchanges . . . . . . . . 40

**SEATTLE SOUNDERS INFORMATION**

Appearances . . . . . . . . . . . . . . . . . . . . . . 41
Birthday / Anniversary Packages . . . . . . . . . . . . 41
Contact Information . . . . . . . . . . . . . . . . . . . 41
Group Pricing . . . . . . . . . . . . . . . . . . . . . . 41
Individual Tickets . . . . . . . . . . . . . . . . . . . . 41
Season Tickets . . . . . . . . . . . . . . . . . . . . . 42
Sounders Camps . . . . . . . . . . . . . . . . . . . . . 42

**STADIUM FIRSTS**

Seahawks Stadium Firsts . . . . . . . . . . . . . . . . 43
Qwest Field Firsts . . . . . . . . . . . . . . . . . . . 44
Attendance . . . . . . . . . . . . . . . . . . . . . . . 45
Thank You Staff . . . . . . . . . . . . . . . . . . . . . 46

**MAPS**

Field Level Map . . . . . . . . . . . . . . . . . . . . . 47
Main Concourse Plaza Level Map . . . . . . . . . . . . 49
Club Wells Fargo Map . . . . . . . . . . . . . . . . . . 51
Suite Level Map . . . . . . . . . . . . . . . . . . . . . 53
Upper Level Map . . . . . . . . . . . . . . . . . . . . 55
Price Per Game . . . . . . . . . . . . . . . . . . . . . 57
Seating Chart . . . . . . . . . . . . . . . . . . . . . . 58

Exhibit to Ainsworth Decl.
Page136

EXHIBIT 2
Page 5 of 34



## THE QWEST FIELD WAY

We are all committed to making the best experiences for our fans at Qwest Field. Everyone in our organization from players to our sales team to the CEO to the Event Staff to the vice presidents and other managers are equally invested and responsible in this pursuit of service excellence to make Qwest Field the venue of choice. Together, we make Qwest Field the greatest place to experience an event in the world. It is up to us to share that great experience and the pride we have in this great facility with our fans each day.

The Qwest Field Way for Guest Service is a set of tools based around a philosophy of service excellence that is the foundation and motivation for everything that we do at Qwest Field.

### 3 KEYS TO GUEST SERVICE

In order of importance, the three keys are our most basic foundation behind our Guest Service decision-making process.

1. Safety
2. Fan Experience
3. Efficiency

Safety is our top concern in any situation. It even supersedes service in some cases, because in reality, a safe environment is a basic requirement for a positive fan experience. Utilize these keys in the order of importance in every decision-making situation.

### MINIMUM GUIDELINES FOR GUEST SERVICE

These guidelines should be carried out by all staff at all times to all Guests of Qwest Field. We are here to have a good time and ensure our Guests do the same.

1. Greet and Thank Each Guest
2. Proactively Seek Guest Contact
3. Make Eye Contact and Smile
4. Display Appropriate Body Language
5. Maintain the Positive Fan Experience

### GUEST COMMUNICATION PROCESS

In speaking with our Guests, understand that the rules are simply a tool that we can use to make great fan experiences. Each of us here at Qwest Field is empowered to make their own judgment based on the individual situation with the goal of making great fan experiences. Follow these three steps for each situation and treat each individually.

1. Listen to the Guest

2. Use the Rules as a Guide

3. Follow Your Heart

When communicating with a guest always end a negative with a positive. Always deliver an alternative to the answer no. Don't just tell someone that they cannot do something, offer up an alternative or two that will satisfy everyone's needs.

We are all here for one reason, to pour our heart and soul into making the best fan experience possible here at Qwest Field. We also have a lot of fun ourselves in the process. The Qwest Field Way is the starting point to achieve our goals. Using this, your own judgment and the rules as a guide, you will always make a positive experience for our Guests.

### CONTACT INFORMATION

**STADIUM ADDRESS**
First and Goal, Inc.
800 Occidental Avenue South #100
Seattle, WA 98134

**PHONE**
877-635-HAWK
(877-635-4295)
Toll free event/staff line)

**FAX**
206-381-7957

**INTERNET**
www.qwestfield.com

**SECURITY COMMAND CENTER
(24 HOURS)**
206-381-7510
x750 from any Qwest Field house phone)

PSA 000008

EXHIBIT 2
Page 6 of 34



SEAHAWKS/FIRST & GOAL MANAGEMENT

Paul G. Allen
Chairman, Seattle Seahawks,
Football Northwest
and First & Goal, Inc.

Tod Leiweke
Chief Executive Officer

Tim Ruskell
President
of Football Operations

Mike Reinfeldt
Vice President
/Football Administration

Martha Fuller
Senior Vice President
and Chief Financial Officer

Beth Wojick
Vice President
of Corporate Partnerships

Ruston Webster
Vice President/
Player Personnel

John Rizzardini
Senior Vice President
and Chief Marketing Officer

Mike Flood
Vice President/
Community Relations

Gary Wright
Vice President
Administration

Lance Lopes
Vice President
Legal Affairs

Paul Schieck
Assistant
General Manager

Steve Eckerson
Director of Sales
and Marketing

Dave Cronin
Director of
Event Operations

Scott Patrick
Vice President/
Partership Development

Susan Darrington
Vice President,
Facility Operations
& Service

Mike McFaul
Director of
Facility Operations

David Young
Director of
Event Services

Kurt Shaffer
Director of
Techincal Services

Exhibit to Ainsworth Decl.
Page138

EXHIBIT 2
Page 7 of 34

## OPERATIONAL POLICIES

### ALCOHOL MANAGEMENT

Safety is the top priority of all Qwest Field staff. Likewise, alcohol management is the responsibility of all Qwest Field staff.

According to the Washington State Liquor Control Board, signs of intoxication include but are not limited to:

- a lack of physical coordination
- carelessness or clumsiness in actions
- unsteady walking
- slurred speech and/or talking extra loud

Under Washington State law, intoxicated persons may not be served alcohol. Notify your supervisor and Levy Restaurant vendors if you observe a fan that is overly intoxicated.

### ANIMALS

Service animals or service animals in-training for guests with disabilities are welcome at the Stadium and Exhibition Center. The ADA recognizes any type of animal as a potential service animal. Guests are not required to show certification for their service animals.

### AUTOGRAPHS / PHOTOGRAPHS

We welcome a number of celebrities and VIP fans to the stadium and exhibition center throughout the year. Qwest Field staff may not ask for photographs or autographs from any person while on duty. This includes athletes and other team personnel.

VIPs and celebrities like the rest of our Guests and coworkers are simply here to either work or enjoy their experience at Qwest Field. As such, they should be afforded the same accommodations as our other Guests while in our facility. Infractions on this policy are considered major violations of the basic Guest Service guidelines.

### BAG CHECK / FAN SCREENING

All persons and bags entering Qwest Field are subject to inspection and/or search. There are two levels of fan screening corresponding to the current security threat level as assessed by the Qwest Field security department in consultation with the NFL and law enforcement authorities when appropriate.

Fan screening level will be communicated prior to each event. Security is dynamic and fan-screening Levels may change at any time during the game. The Stadium Control Room will announce any changes via radio during game day.

6



5

PSA 000010

EXHIBIT 2
Page 8 of 34

Both levels of screening involve a visual inspection of fans as they enter and an inspection of all bags. In addition, the following screening actions will be taken according to the most current announced security threat level:

**Yellow:** Random upper torso pat down
**Orange:** Full body pat down of all guests

Refer to the Qwest Field fan guide section for details on prohibited items for Seahawks games and other large stadium events. Keep in mind that the prohibited item list may change for different events.

**Employee Screening**

Employee bags will be searched and tagged at the locker room entry on the East Access Road on gameday. All bags entering Qwest Field on gameday will be searched. In addition, Qwest Field reserves the right to inspect employee bags and lockers.

**Forbidden Items**

Must be taken back to the fan's car or otherwise left outside Qwest Field. We do not check forbidden items for storage inside Qwest Field.

**Intoxicated Fans**

Visibly intoxicated fans will be denied access to Qwest Field. If you observe the signs of intoxication in a fan, politely deny access to the building. Invite the fan to wait outside until the intoxication has subsided.

Qwest Field is a family environment. Intoxicated fans pose a safety risk to other fans and themselves. Contact a team captain, alcohol enforcement or the Stadium Control Room if you need assistance. See the section above on alcohol management at Qwest Field.

**BALL IN STANDS**

NFL rules state that any ball landing in the stands as a result of play must be returned to the playing field. Qwest Field staff should politely identify themselves and request the ball be returned to the field of play.

Consult your supervisor for rules as they apply to other events such as soccer, lacrosse or other sporting matches.

**CAMERAS AND CAMCORDERS**

Personal still photography is permitted during Seahawks games and most other Qwest Field events. Flash photography, video cameras and support tools (such as tripods, large lens, etc.) are not allowed at Seahawks games and most other events.

The policy on use of camcorders and other professional-style recording equipment listed above will vary from event to event. Consult the event resource for guidelines for a specific event.

Qwest Field does not offer storage for cameras or other items not allowed into our facility. Please direct Guests to store these items in their car or elsewhere while inside Qwest Field and Qwest Field Event Center.

**CLEARING AN EVENT**

To maintain a safe environment, it is important to ensure that our fans exit our building safely and completely at the end of an event. Follow the fan exiting plan as outlined in the guidelines for your area. For other events and flat shows, follow the direction of your shift supervisor as outlined during the pre-shift briefing. Keep in mind that we remain polite and offer the best in Guest Service when clearing the building.

Building staff should never disrupt a conversation between exhibitors and/or show personnel and a guest when clearing a show. If appropriate for your area be sure to check all exterior doors to make sure they are secured and locked properly before leaving your post or area after a game or event.

**CODE OF CONDUCT (FANS AND GUESTS)**

We are committed to creating a safe, comfortable and enjoyable experience for all of our guests at Qwest Field and Qwest Field Event Center.

Our event staff will proactively seek out Guest contact to support an environment where Guests can enjoy the event experience free from the following behaviors:

- Foul / Abusive language or obscene gestures
- Intoxication or other signs of impairment related to alcohol consumption
- Displays of affection not appropriate in a public setting
- Any disruption to the progress of the event by guest's actions
- Obscene or indecent clothing
- Obscene or inappropriate signs or banners



Exhibit to Ainsworth Decl.
Page140