SECOND AMENDMENT

to

MASTER LEASE

Dated November 24, 1998

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: September _17_, 1999

EXHIBIT 4
Page 135 of 179

PSA 000174

Second Amendment to Master Lease doc

Exhibits to Ainsworth Decl.
Page 305
Dockets.Justia.com

## SECOND AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: September ___, 1999

BETWEEN:              WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

                      a Washington State public corporation

                      401 Second Avenue South, Suite 520

                      Seattle, WA 98104                    ("PSA")


AND:                  FIRST & GOAL INC.,

                      a Washington corporation

                      110-110th Avenue N.E., Suite 550

                      Bellevue, WA 98004                   ("FGI")


        This is the Second Amendment to the Master Lease dated November 24, 1998, between the parties hereto, as previously amended on July 22, 1999, (collectively, together with this Second Amendment, the "Lease"). All defined terms used herein shall have the same meaning as in the Lease unless otherwise defined herein. All references in other documents to the "Master Lease" shall be interpreted to mean the Lease as hereby amended, unless a different interpretation is compelled by the circumstances. All references to the "County Ordinance" shall be interpreted to mean King County Ordinance No. 1999-0366, as amended or superseded from time to time. All references to the "MOU" shall be interpreted to mean the Memorandum of Understanding Regarding Implementation of Various Aspects of Chapter 220, Laws of 1997, dated August 26, 1998 among the Office of Financial Management of the State of Washington, the Office of the State Treasurer of the State of Washington, and PSA, as amended on April 20 and April 28, 1999.

        1.      Taxes and Ticket Surcharge. Section 18 of the Lease is hereby amended to read in its entirety as follows:

**EXHIBIT 4**
Page 136 of 179

PSA 000175

Exhibits to Ainsworth Decl.
Page306

18.1    King County Taxes.

King County is authorized by RCW 36.38.010 to levy a tax of up to 10% on tickets for admission to events at the Project (the "Admissions Tax"), and by RCW 36.38.040 to levy a tax of up to 10% on parking at the Project (the "Parking Tax"). FGI shall collect and remit such taxes as provided by Law, including the County Ordinance (and in applying such County Ordinance, FGI is "a person who by agreement with PSA is obligated to collect the tax") and by any agreement with King County or the State of Washington. Any failure of FGI to collect and remit such taxes as required by Law or any Admissions Tax and Parking Tax collection agreement with King County or the State of Washington, which failure is material and remains uncured, shall constitute an Event of Default under this Lease.

18.2    Ticket Surcharge.

18.2.1 In accordance with Section 13.2.3.2 of the Development Agreement and Section 19.3 of this Lease, PSA hereby imposes and FGI hereby consents to and agrees to pay, a Ticket Surcharge. The Ticket Surcharge of this Section 18.2 is the exclusive surcharge on tickets for events at the Project contemplated by Section 19.3 of this Lease and Section 13.2.3.2 of the Development Agreement. FGI agrees to this limited and exclusive exercise of PSA's authority under Section 105(5) of the Act. PSA shall not impose any other fees, charges, surcharges or taxes pursuant to Section 105(5) of the Act or Section 13.2.3.2 of the Development Agreement or Section 19.3 of this Lease without FGI's prior consent which may or may not be given in FGI's sole discretion.

18.2.2 FGI shall collect, remit, and report to the State Treasurer (notwithstanding anything in the Development Agreement or Lease to the contrary) the Ticket Surcharge substantially in the manner, and subject to substantially the terms (including without limitation record retention, late charges, and provisions for delinquent payments or underpayments), as those applicable to FGI's collection, remittance, and reporting of the Admissions Tax under Section 18.1 by the County Ordinance. Notwithstanding the foregoing, the amount of the Ticket Surcharge shall not be printed on tickets. For the purposes of applying this clause and Section 18.3.2 below, the rights

Exhibits to Ainsworth Decl.
Page307

1    of the County or State under the County Ordinance shall be considered corresponding

2    rights of PSA and the State Treasurer herein (and either PSA or the State Treasurer may

3    exercise such rights).   PSA and FGI may mutually agree upon different methods of

4    collection, remittance and reporting of Ticket Surcharges if they determine them to be

5    simpler or more efficient. FGI shall remit the Ticket Surcharge and Rent by separate

6    checks. FGI shall provide to PSA written evidence of payment of the Ticket Surcharge to

7    the State Treasurer at the same time FGI makes each such payment to the State Treasurer.

8    The Ticket Surcharge shall be computed as a percentage of charges for admission to

9    events computed in exactly the same manner and on the identical revenue base as the

10   Admissions Tax on the Project levied by King County pursuant to the authority of

11   Section 301(5) of the Act, codified as RCW 36.38.010(5).

12            18.2.3 The Ticket Surcharge percentage rate shall be one and two-tenths

13   percent (1.2%).  The Ticket Surcharge shall commence effective upon the effective date

14   that the County's Admission Tax is reduced to a rate, whereby such tax rate plus 1.2%

15   does not exceed the "maximum permissible admissions tax rate" as defined in Section

16   13.2.3.3 of the Development Agreement ("Maximum Total Rate"); provided, however,

17   that:  (a) in the event of an NFL player strike or lockout which materially reduces the

18   number of Team Regular Season or Playoff Home Games played in the Stadium; or

19   damage or destruction materially reduces the number of events held at the Project, and if

20   the sum of the Ticket Surcharge and the Admissions Tax then being imposed is less than

21   the Maximum Total Rate, then the Parties shall, with approval of the State, negotiate a

22   reasonable temporary adjustment to the Ticket Surcharge percentage rate (up to a

23   maximum rate equal to the amount by which the Maximum Total Rate exceeds the actual

24   rate of Admissions Tax then being imposed) to compensate for the estimated lost Ticket

25   Surcharge for such reduced Home Games and/or events, but only to the extent reasonably

26   necessary to enable PSA to raise the Maximum Aggregate Amount contemplated by

27   Section 18.2.4, including projected future interest and earnings; and (b) such Ticket

28   Surcharge rate is always subject to reduction to a lesser rate (or, with the agreement of

29   FGI, to increase to a greater rate) as may be determined by the State Treasurer consistent

30   with Section 8.13 of the Lease, Protection of Tax-Exempt Bonds; and (c) PSA may

EXHIBIT 4
Page 138 of 179

PSA 000177

Exhibits to Ainsworth Decl.
Page308

increase the Ticket Surcharge, to a percentage rate greater than one and two-tenths percent (1.2%), but not greater than a rate (when combined with the Admissions Tax rate) that would exceed the Maximum Total Rate, if PSA reasonably determines that projected revenues and earnings necessary to fund the Deferred Sales Tax Funds (defined in the Development Agreement) at any particular time are likely to be less than those previously projected as necessary to accrue sufficient Deferred Sales Tax Funds to timely repay the Deferred Sales Tax, but only to the extent reasonably necessary to enable PSA to raise the Maximum Aggregate Amount contemplated by Section 18.2.4, including projected future interest and earnings. In the event of the enactment of any Law which would make a subsequent imposition of any Ticket Surcharge, or increase of the rate of any Ticket Surcharge, illegal in the absence of the agreement of any person or persons other than the parties to this Lease, then the parties to this Lease shall in good faith negotiate an amendment to this Lease to achieve the intended outcome of this Section 18.2 while being fully consistent with such Law.

18.2.4 The Ticket Surcharge is intended to enable PSA to collect sufficient funds (including the aggregate proceeds of the Ticket Surcharge itself and the projected interest and other earnings accrued thereon) for, and may be utilized solely for the purpose of, enabling PSA to meet its obligations under Section 13.3 of the Development Agreement, up to the Maximum Aggregate Amount. The "Maximum Aggregate Amount" of the Ticket Surcharge, and interest and earnings thereon, shall be equal to the amount by which (x) the lesser of the actual Deferred Sales Tax or $37,000,000; exceeds (y) the amount of Deferred Sales Tax Funds (other than Ticket Surcharge proceeds) deposited pursuant to Section 13.2.3.1 of the Development Agreement and the MOU, and the interest earned on such funds. PSA shall timely perform all of its obligations under the Lease, the Development Agreement and the provisions of the MOU under the captions "Payments for Deferred Sales Taxes" and "PSA Obligation to Repay Expenditures in Excess of $300 Million Expenditure Limit." When, based on the reasonable projections, the amount of aggregate Ticket Surcharges theretofore collected and remitted, together with actual and projected future interest and earnings, equals or exceeds 95% of the total Ticket Surcharges and interest and earnings

Exhibits to Ainsworth Decl.
Page309

thereon projected to be required under this Section 18.2, then FGI's obligation to collect and remit additional Ticket Surcharges shall cease, subject to the following sentence. At the time for the last installment payment by PSA of the Deferred Sales Taxes, FGI shall remit to PSA such amount as may be required (together with other remaining Deferred Sales Tax Funds) to timely pay in full the remaining Deferred Sales Taxes, up to the Maximum Aggregate Amount described in this Section 18.2.4, plus any additional amount required from FGI under Section 13.2.2 of the Development Agreement. Any disagreement between PSA and FGI as to when PSA has received sufficient Ticket Surcharge funds is subject to Dispute Resolution.

18.2.5 PSA shall cause the State Treasurer to establish an interest-bearing account (or to invest in interest-bearing instruments) for such Ticket Surcharge proceeds to accumulate funds to pay the amount of the Deferred Sales Taxes, which account will be a different account than the account described in Section 13.2.3.1 of the Development Agreement.

18.2.6. The Ticket Surcharge collected with respect to admissions in respect of Exhibition Hall Events is included in both "Exhibition Hall Revenues" and "Exhibition Hall Expenses."

18.3 Audit Rights.

18.3.1. As provided in Section 17.2 of the Development Agreement, FGI shall have the right to audit the applicable records of PSA to determine if PSA is in compliance with its obligations under Section 18.2 of the Lease and to determine when the Ticket Surcharge should terminate.

18.3.2 PSA shall have the same rights regarding auditing of records relating to Ticket Surcharges as the audit rights of the County and the State Treasurer relating to Admission Taxes pursuant to the County Ordinance and the statutes referenced therein. PSA may rely on, and participate in, any such audit performed by or for State Treasurer, or may perform its own audit. FGI shall fully cooperate with any such audit.

2. Other Terms Ratified.

All other terms and conditions of the Lease are hereby ratified and affirmed.

Exhibits to Ainsworth Decl.
Page310

3.     <u>Inconsistencies in Development Agreement.</u>

To the extent any provision of Section 13.2 of the Development Agreement is inconsistent with the provisions of Section 18 of the Lease, the language in the Lease shall control.

IN WITNESS WHEREOF, this Second Amendment has been executed by the Parties as of the dates set forth below.

PSA:                              WASHINGTON STATE PUBLIC STADIUM
                                  AUTHORITY, a public corporation of the State of
                                  Washington


                                  By: _Larraine Hine_____
                                       Lorraine Hine, Chair of the Board

FGI:                              FIRST & GOAL INC., a Washington corporation


                                  By: _Robert J. Whitsitt_____
                                       Robert J. Whitsitt, President

**EXHIBIT 4**
**Page 141 of 179**

PSA 000180

Second Amendment to Master Lease.doc

6

Exhibits to Ainsworth Decl.
Page311

STATE OF WASHINGTON   )
                               ) ss.
COUNTY OF KING         )

     I certify that I know or have satisfactory evidence that LORRAINE HINE is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 17th day of September, 1999.

*Robin M Wohlhueter*
(Signature of Notary)
*Robin M Wohlhueter*
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at *King County*

My appointment expires 4/4-01

STATE OF WASHINGTON   )
                               ) ss.
COUNTY OF KING         )

     I certify that I know or have satisfactory evidence that ROBERT J. WHITSITT is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of FIRST & GOAL INC., a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 8TH day of September, 1999.

*Charlotte J. Kores*
(Signature of Notary)
*Charlotte J. Kores*
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at Renton

My appointment expires May 19, 2003

**EXHIBIT 4**
**Page 142 of 179**

PSA 000181

7

Exhibits to Ainsworth Decl.
Page312

*LL014400?*
*ALL #1400*
*Doc# 6299*

*Rev 115*

# THIRD AMENDMENT

to

# MASTER LEASE

between

# WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

# FIRST & GOAL INC.,

a Washington corporation

Dated: September 28, 2000

EXHIBIT 4
Page 143 of 179

PSA 000182

C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.doc

Exhibits to Ainsworth Decl.
Page313

## THIRD AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: September 28, 2000

BETWEEN:        WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
                a Washington State public corporation
                401 Second Avenue South, Suite 520
                Seattle, WA  98104                                   ("PSA")

AND:            FIRST & GOAL INC.,
                a Washington corporation
                110-110th Avenue N.E., Suite 550
                Bellevue, WA  98004                                  ("FGI")

This is the Third Amendment to the Master Lease between PSA and FGI (the "Lease").  All defined terms used in this Third Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Third Amendment.

1.    The First Amendment to the Master Lease dated November 24, 1998 is hereby deleted.

2.    Section 11.1.3 of the Master Lease is modified as follows:

The first sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"FGI shall submit to PSA, for PSA's review and approval, a plan for the Normal Maintenance activities to be conducted at the Premises by FGI for a given Lease Year (the "Annual Maintenance Plan"). The Annual Maintenance Plan for the Exhibition Hall shall be submitted by June 1, 2001 and by June 1 of each Lease Year thereafter. The first Annual Maintenance Plan for the Stadium and Other Improvements shall be submitted by October 31, 2003 and thereafter by June 1 of each Lease Year thereafter."

PSA 000183

EXHIBIT 4
Page 144 of 179

1 C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.do

09/27/00

3.   Section 11.1.4 of the Master Lease is modified as follows:

The first sentence of Section 11.1.4 is deleted in its entirety and replaced with the following:

"FGI shall submit to PSA, for PSA's review and approval, a new or updated plan of scheduled work to be performed upon the Premises during the ensuing five-year period in order to meet FGI's obligations under Section 11.3 for Major Maintenance and under Section 11.1.2.2 for certain modifications, capital improvements and upgrading, as well as FGI's rights under Section 11.4 for Modernization Improvements (a 'Five-Year Plan'). The Five-Year Plan for the Exhibition Hall shall be submitted by March 1, 2001 and by March 1 of each Lease Year thereafter. The first Five-Year Plan for the Stadium and Other Improvements shall be submitted by October 31, 2003, and thereafter by March 1 of each Lease Year thereafter."

4.   No Further Modification.

The Lease remains in full force and effect and unmodified except by the Second Amendment and this Third Amendment.

IN WITNESS WHEREOF, this Third Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                     WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington

By: _Lorraine Hine_____
     Lorraine Hine, Chair of the Board

FGI:                     FIRST & GOAL INC., a Washington corporation

By: _Robert Whitsitt_____
     Robert J. Whitsitt, President

PSA 000184

**EXHIBIT 4**
**Page 145 of 179**

2 C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.do

09/27/00

STATE OF WASHINGTON   )
                         ) ss.

COUNTY OF KING        )

        I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 28th day of September, 2000.

_Robin M Worchester_
(Signature of Notary)

_____
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Kisey County WA_

My appointment expires _4-14-01_

STATE OF WASHINGTON   )
                         ) ss.

COUNTY OF KING        )

        I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 3 day of November, 2000.

_Charlotte J. Kores_
(Signature of Notary)

_Charlotte J. Kores_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Renton_

My appointment expires _May 19, 2003_

**EXHIBIT 4**
**Page 146 of 179**

3C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.do

09/27/00

PSA 000185

LL 014-01
F 1402
D 1071

# FOURTH AMENDMENT

## to

## MASTER LEASE

### between

## WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

### and

## FIRST & GOAL INC.,

a Washington corporation

Dated: November 1, 2001

PSA 000186

**EXHIBIT 4**
**Page 147 of 179**

O:\Contracts & Agreements\#261614 v1 - Fourth Amendment to Master Lease.doc

## FOURTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: November 1, 2001

BETWEEN:     WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
a Washington State public corporation
401 Second Avenue South, Suite 520
Seattle, WA 98104                               ("PSA")

AND:         FIRST & GOAL INC.,
a Washington corporation
505 Fifth Avenue South, Suite 900
Seattle, WA 98104                               ("FGI")

This is the Fourth Amendment to the Master Lease between PSA and FGI (the "Lease"). All defined terms used in this Fourth Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Fourth Amendment.

1.     Section 11.1.3 of the Master Lease, as amended, is modified as follows:

1.1     The second sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"The Annual Maintenance Plan for the Exhibition Center and Parking Facility shall be submitted by June 1, 2001 and by August 1 of each Lease Year thereafter."

1.2     The third sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"The first Annual Maintenance Plan for the Stadium and Other Improvements shall be submitted by August 1, 2003 and by August 1 of each Lease Year thereafter."

1.3     The fourth sentence of Section 11.1.3 is deleted and replaced with the following:

**EXHIBIT 4**
**Page 148 of 179**

PSA 000187

"PSA shall have ninety (90) days from FGI's submission to review and approve, conditionally approve, or disapprove the Annual Maintenance Plan."

2.    Section 11.1.4 of the Master Lease, as amended, is modified as follows:

The fifth sentence of Section 11.1.4 is deleted in its entirety and replaced with the following:

"PSA shall have sixty (60) days from FGI's submission to review and approve, conditionally approve, or disapprove each Five-Year Plan."

3.    Section 11.1.5 of the Master Lease, as amended, is revised by adding the following after the first sentence of Section 11.1.5:

"PSA shall have ninety (90) days to review and comment on each annual maintenance report."

4.    No Further Modification.

The Lease remains in full force and effect and unmodified except by the Second Amendment, the Third Amendment and this Fourth Amendment.

IN WITNESS WHEREOF, this Fourth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                          WASHINGTON STATE PUBLIC STADIUM
                              AUTHORITY, a public corporation of the State of
                              Washington


                              By: _Lorraine Hine_____
                                  Lorraine Hine, Chair of the Board


**EXHIBIT 4**
**Page 149 of 179**

2                                          PSA 000188

Exhibits to Ainsworth Decl.
Page319

FGI:                    FIRST & GOAL INC., a Washington corporation

                        By: _____
                                Robert J. Whitsitt, President

**EXHIBIT 4**
**Page 150 of 179**

3

PSA 000189

STATE OF WASHINGTON )

) ss.

COUNTY OF KING )

     I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.



    Dated this 25TH day of _October_, 2001.

_J E Todd_
(Signature of Notary)

_J. E. Todd_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Bothell, WA_

My appointment expires _6-9-05_

STATE OF WASHINGTON )

) ss.

COUNTY OF KING )

     I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

    Dated this 1st day of _NOVEMBER_, 2001.

(Signature of Notary)

_KIM LINDBECK_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _EDMONDS, WA_

My appointment expires _3/15/04_

*LL 014-007*
*F 1402*
*D 10710*

# FIFTH AMENDMENT

to

## MASTER LEASE

between

### WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

### FIRST & GOAL INC.,

a Washington corporation

Dated: October 25, 2001

**EXHIBIT 4**
**Page 152 of 179**

PSA 000191

Exhibits to Ainsworth Decl.
Page322

# FIFTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: October 25, 2001

BETWEEN:              WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
                      a Washington State public corporation
                      401 Second Avenue South, Suite 520
                      Seattle, WA 98104                                    ("PSA")

AND:                  FIRST & GOAL INC.,
                      a Washington corporation
                      505 Fifth Avenue South, Suite 900
                      Seattle, WA 98104                                    ("FGI")

This is the Fifth Amendment to the Master Lease between PSA and FGI (the "Lease"). All defined terms used in this Fifth Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Fifth Amendment.

1.    Field Surface. A new Section 7A entitled FIELD PLAYING SURFACE is added between the end of existing Section 7 and the beginning of existing Section 8, as follows:

"SECTION 7A              FIELD PLAYING SURFACE

7A.1   Field Surface.

7A.1.1 Initial Installation.    FGI is authorized to install and maintain an artificial turf, known as FieldTurf™ ("FieldTurf"), as the playing surface in the Stadium (the "Field Surface"). FieldTurf shall not have indelible lines, yardage markers, hash marks, end zones, field logos or similar indicators, and all such indicators shall be removable. The design specifications for the FieldTurf, including, but not limited to, its sub-base, drainage and installation, are hereby approved to the extent they are consistent with the FieldTurf manufacturer's specifications.    To the extent the design specifications are not consistent with the FieldTurf manufacturer's specifications, however, they shall be subject to the prior approval of the PSA in its sole discretion. FGI agrees to defend and indemnify PSA from any claim or liability on account of or arising out of the performance characteristic of the FieldTurf Field Surface known as "GMAX." Except as provided in the preceding sentence, the Project Design Documents and Construction Documents for the Stadium, as described in the Development

Exhibits to Ainsworth Decl.
Page323

Agreement, are hereby deemed amended to reflect a FieldTurf Field Surface, and are hereby approved by the PSA.

7A.1.2 Replacement. If after installation of the FieldTurf, FGI elects to change the Field Surface to another type of artificial surface or natural grass, such change shall constitute Major Maintenance or Modernization.

7A.2    Olympic Games and/or World Cup Soccer.

FGI acknowledges that FieldTurf is not currently approved for Olympic Games soccer by the International Olympic Committee and is not currently approved for the final round of World Cup Soccer by the Federation Internationale de Football Association ("FIFA"). If the Olympic Games are awarded to Seattle and Olympic Games soccer games are venued at the Stadium or in the event that the final round of World Cup Soccer games are venued at the Stadium, and at that time the regulatory body for whichever of the above competitions is occurring requires a natural grass playing field for soccer games, then FGI shall overlay the Field Surface with a temporary natural grass playing surface that meets the then current requirements of the applicable regulatory body. The cost of complying with the requirements of this Section shall be paid by FGI, but such cost is not an allowed cost of preparing, operating, and restoring the Project for purposes of Section 6.3 or Major Maintenance or Modernization. If there is any uncertainty over whether or not the International Olympic Committee or FIFA will allow its respective competitions to be played on the Field Surface, such uncertainty shall be resolved based on a letter signed by the applicable regulatory authority specifically identifying the approved playing surface.

7A.3    National Teams Soccer.

If required to attract and host a match involving either the United States Men's or Women's National Team or United States Men's or Women's Olympic Team, in either a World Cup qualifying match, Olympics qualifying match, or a "friendly" (exhibition) international exhibition match, FGI shall overlay the Field Surface with a temporary natural grass playing surface that meets the then current requirements of the applicable regulatory authority at FGI's sole expense, so long as the applicable regulatory authority allows the match on an overlay of natural grass. Compliance with this Section is not Major Maintenance or Modernization. This obligation shall be limited to one match per Lease Year. If in a given Lease Year, a match described above has not used the Stadium as its venue, then FGI's obligation under this Section shall nonetheless be satisfied for that Lease Year, and such obligation shall not cumulate or carry over to a future Lease Year.

Exhibits to Ainsworth Decl.
Page324

7A.4    <u>International Exhibition Soccer.</u>

If required to attract and host "First Division" or above international professional soccer matches (games), FGI shall overlay the Field Surface with a temporary natural grass playing surface that meets the then current requirements of the applicable regulatory authority, except as limited in the following paragraph, so long as the applicable regulatory authority allows the match on an overlay of natural grass.    Compliance with this Section is not Major Maintenance or Modernization.

This obligation shall be limited to three (3) matches per Lease Year when the Field Surface is not accepted for play by either of the competing teams in the specific match.    If in a given Lease Year, less than three (3) matches described above use the Stadium as a venue, then FGI's obligation under this Section shall nonetheless be satisfied for that Lease Year, and such obligation shall not cumulate or carry over to a future Lease Year.    FGI's compliance with the requirements of this Section 7A.4 shall be at FGI's sole cost and expense, except that if the match has paid attendance of fewer than 40,000, FGI may charge the promoter for some or all of the cost of compliance with the requirements of this Section.    For purposes of this Section, attendees that occupy club seats, luxury suites, or season ticket holders, who do not pay a separate charge for attendance at the match, but rather receive tickets for the match as part of their annual payment for attending Events at the Stadium, shall be counted as paid attendance. In order to effectuate this provision, FGI may require the promoter of the match to post reasonable security to pay the estimated cost of FGI's compliance with this Section, and that Security shall either be returned to the promoter or, if the promoter does not promptly pay to FGI the estimated cost of FGI's compliance with this Section, then such security shall be delivered to FGI following the match, depending on whether the actual paid attendance is at least 40,000 or not, all on specific terms and conditions to be more fully developed in the Use Agreement with the promoter.

7A.5    <u>Major League Soccer.</u>

If Major League Soccer ("MLS") establishes a soccer team with Seattle as its home city, FGI would enter into a long term use agreement which allows that soccer team to use the Stadium as its home field, upon commercially reasonable rates and terms.    If at that time, MLS requires a natural grass playing surface, and if MLS has not sanctioned regular season games in another venue on other than a natural grass surface, then FGI will remove the artificial Field Surface and replace it with a natural grass Field Surface that conforms to the then current requirements of both the NFL and the MLS; provided, however, that no permanent installation will be made of a Field Surface prohibited by the NFL.    The cost of initially replacing the Field Surface with natural grass shall be paid by FGI as its sole cost. Compliance with this Section is not Major Maintenance or Modernization, except

**EXHIBIT 4**
**Page 155 of 179**

-3- W:\annk\#269644 v6 - FINAL FIFTH AMENDMENT TO MASTER LEASE.doc

Exhibits to Ainsworth Decl.
Page325

as provided in Section 7A.8 below. If there is any uncertainty regarding the Field Surface requirements of MLS, this shall be resolved by reliance on a letter signed by MLS specifically identifying the approved playing surface. If at any time following installation of a natural grass Field Surface, MLS no longer requires a natural grass playing surface, or has sanctioned regular season games in another venue on other than a natural grass surface, FGI may, subject to Section 7A.1.2, remove the natural grass Field Surface and replace it with a Field Surface of other than natural grass, the cost of which shall be deemed to be Major Maintenance or Modernization.

7A.6    Amateur Events

FGI shall provide reasonable opportunities to qualifying high school, youth and recreational athletic groups to use the Stadium for athletic events ("Youth Events"). However, no such Youth Event shall interfere with FGI's scheduled commercial events or with dates then on "hold" for FGI's commercial events, which occur at the Stadium (including FGI's reasonable pre-event and post-event activities such as preparation, set-up and take-down). When Youth Events occur at the Stadium, FGI shall charge only its Direct Costs. FGI's "Direct Costs" for purposes of this paragraph are those incremental costs and expenses incurred by FGI solely due to holding the Youth Event at the Stadium, but not costs that FGI would have incurred anyway had the Youth Event not been held at the Stadium. This Section shall apply only while the Stadium Field Surface is not natural grass.

7A.7    Certain Common Terms.

For purposes of Section 7A.3 and .4 above:

"If required to attract and host the event" shall mean that whether the Field Surface is FieldTurf or overlaid natural grass is, in good faith, the decisive factor in determining whether such event shall be held at the Stadium. In other words, the Field Surface is the only remaining issue in determining whether a promoter of the event will enter into a Stadium Use Agreement, upon commercially reasonable rates and terms, such that the event will be held at the Stadium if the Field Surface is overlaid with natural grass but the event will not be held at the Stadium if the Field Surface is not overlaid with natural grass. For purposes of the foregoing provision, "commercially reasonable rates and terms" shall have its common meaning; provided, however, that FGI may recover from the promoter the costs that FGI would have reasonably incurred in preparing a natural grass field for hosting the subject event. By "hosting," it is meant only that the Stadium will be the venue at which the event will be held; FGI shall not be required or expected to act as an event promoter, or to otherwise contribute economically to hosting an event in any manner whatsoever.

PSA 000195

**EXHIBIT 4**
**Page 156 of 179**

-4-W:\annk\#269644 v6 - FINAL FIFTH AMENDMENT TO MASTER LEASE.doc

7A.8    <u>Major Maintenance or Modernization, Cost of Preparing Field Surface</u>.

If FGI permanently replaces the Field Surface with natural grass, such replacement will be deemed Major Maintenance and/or Modernization to the extent the Field Surface needs replacement anyway by reason of its age or condition. (If at the time of such replacement, the Field Surface would not be due for replacement by reason of remaining useful life, a pro rata portion of the replacement shall be deemed Major Maintenance and/or Modernization.)"

2.    <u>Integration</u>.    All matters related to the Field Surface, including any and all negotiations, discussions, correspondence, promises, and agreements relating thereto prior to the date hereof, are fully integrated into this Amendment.

3.    <u>No Further Modification</u>.    The Lease remains in full force and effect and unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth Amendment, and this Fifth Amendment.

IN WITNESS WHEREOF, this Fifth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:    WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington

By: _____
      Lorraine Hine, Chair of the Board

FGI:    FIRST & GOAL INC., a Washington corporation

By: _____
      Robert J. Whitsitt, President

**EXHIBIT 4**
**Page 157 of 179**                                    PSA 000196

–5– W:\annk\#269644 v6 - FINAL FIFTH AMENDMENT TO MASTER LEASE.doc

Exhibits to Ainsworth Decl.
Page327

1   STATE OF WASHINGTON   )

2                         ) ss.

3   COUNTY OF KING        )

4

5            I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the

6   person who appeared before me, and said person acknowledged that said person signed this

7   instrument, on oath stated that said person was authorized to execute the instrument and

8   acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**

9   **STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and

10  voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11           Dated this 25th day of October, 2001.

12

13                                               _J. E. Todd_
                                                 (Signature of Notary)
14

15                                               _J. E. Todd_
                                                 (Legibly Print or Stamp Name of Notary)
16
                                                 Notary public in and for the State of Washington,
17                                               residing at _Bothell, WA_

18                                               My appointment expires _6-9-05_

19

20

21

22  STATE OF WASHINGTON   )

23                        ) ss.

24  COUNTY OF KING        )

25

26           I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT**

27  is the person who appeared before me, and said person acknowledged that said person signed this

28  instrument, on oath stated that said person was authorized to execute the instrument and

29  acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the

30  free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

             Dated this 1st day of ~~October~~ November, 2001.

31

32

33                                               _K. O._
                                                 (Signature of Notary)
34

35                                               _KIM LINDBECK_
                                                 (Legibly Print or Stamp Name of Notary)
36
                                                 Notary public in and for the State of Washington,
37                                               residing at _EDMONDS, WA_

38           **EXHIBIT 4**                       My appointment expires _3/15/04_

39           **Page 158 of 179**

-6- W:\annk\#269644 v6 - FINAL FIFTH AMENDMENT TO MASTER LEASE.doc

PSA 000197

SIXTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 20, 2003

EXHIBIT 4
Page 159 of 179

PSA 000198

C:\Documents and Settings\annk.PSA\Local Settings\Temporary Internet Files\OLK1FF\P

## SIXTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE:    November 20, 2003

BETWEEN:    WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
a Washington State public corporation
800 Occidental Ave So #700
Seattle, WA 98134                                  ("PSA")

AND:    FIRST & GOAL INC.,
a Washington corporation
800 Occidental Ave So #200
Seattle, WA 98134                                  ("FGI")

This is the Sixth Amendment to the Master Lease between PSA and FGI (the "Lease").
All defined terms used in this Sixth Amendment shall have the same meaning as in the Lease unless
otherwise separately defined in this Sixth Amendment.

1.    Section 5.7.1.1 of the Master Lease is amended by adding the following sentence at the
end of Section 5.7.1.1:

"The L/C Reserve may be suspended and reinstated from time to time by
PSA, in its sole discretion, pursuant to Section 5.7.4."

2.    Section 5.7.4 of the Master Lease is deleted in its entirety and replaced with the
following:

"5.7.4  L/C Reserve

5.7.4.1    At any time during any Lease Year, PSA may give FGI
written notice requiring that FGI provide PSA with a standby letter of
credit in the amount of the L/C Reserve (the "Reserve Letter of Credit").
FGI agrees to provide the Reserve Letter of Credit within thirty (30)
days of receipt of PSA's written notice. The Reserve Letter of Credit
will have a term ending on that last day of the then Lease Year or such
shorter period of time as may be specified in PSA's notice to FGI
requiring the procurement of a Reserve Letter of Credit. The Reserve
Letter of Credit shall be issued by a financial institution reasonably
acceptable to PSA, and may be drawn upon by PSA upon presentation of
a "sight draft" in a reasonable, mutually agreed form.

**EXHIBIT 4**
**Page 160 of 179**

1 C:\Documents and Settings\annk.PSA\Local Settings\Temporary Internet Files\OLK1FF\

PSA 000199

5.7.4.2  To the extent PSA draws against the Reserve Letter of Credit in any Lease Year, then the amount of credit available to PSA under that Reserve Letter of Credit shall be reduced by such amount(s) drawn..  If PSA holds a Reserve Letter of Credit and has given FGI notice under Section 5.7.4.1 requiring a subsequent Reserve Letter of Credit, then PSA may draw on the existing Reserve Letter of Credit if FGI has not provided the replacement Reserve Letter of Credit when required by Section 5.7.4.1.

5.7.4.3  All out-of-pocket costs (excluding the cost of FGI's employees' time) associated with the Reserve Letter of Credit, including, without limitation, all service charges, shall be paid by FGI but shall be reimbursed to FGI by PSA, and FGI shall invoice PSA for such costs (supported by reasonable documentation of the costs) within thirty (30) days of the issuance of the Reserve Letter of Credit.  PSA shall pay the invoiced amount within thirty (30) days of receipt of FGI's invoice, and if PSA does not do so, the unpaid amount shall bear interest pursuant to Section 26.25 and shall be subject to a late charge in the amount set forth in Section 5.4.2.  In addition, after such 30 day period, all such invoiced amount, plus accrued interest and late charges, which remain unpaid by PSA may be applied as a credit against any Rents payable hereunder by FGI, and the credit will satisfy PSA's payment obligation when and to the extent so applied. The amounts paid by PSA pursuant to this Section 5.7.4.3 are Reasonable PSA Operating Expenses.

5.7.4.4  The amount of the Rent Letter of Credit described in Section 21.5 shall not affect the amount of the Reserve Letter of Credit."

3.    No Further Modification.

The Lease remains in full force and effect and unmodified except by the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment, the Fifth Amendment and this Sixth Amendment.

**EXHIBIT 4**
**Page 161 of 179**

2C:\Documents and Settings\emnk.PSA\Local Settings\Temporary Internet Files\OLK1FF\

IN WITNESS WHEREOF, this Sixth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                     WASHINGTON STATE PUBLIC STADIUM
                         AUTHORITY, a public corporation of the State of
                         Washington

                         By: *Lorraine Hine*
                         _____
                             Lorraine Hine, Chair of the Board

FGI:                     FIRST & GOAL INC., a Washington corporation

                         By: _____
                             Tod Leiwcke, CEO

**EXHIBIT 4**
**Page 162 of 179**                              PSA 000201

3 C:\Documents and Settings\annk.PSA\Local Settings\Temporary Internet Files\OLK1FF\

Exhibits to Ainsworth Decl.
Page332

STATE OF WASHINGTON    )
                                   ) ss.

COUNTY OF KING              )

        I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

        Dated this 23rd day of December, 2003.



                                         (Signature of Notary)
                         J.E. Todd
                      (Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at Bothell, WA

My appointment expires 6-9-05

STATE OF WASHINGTON    )
                                     ) ss.

COUNTY OF KING              )

        I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

        Dated this 23rd day of December, 2003.



                                         (Signature of Notary)
                         J.E. Todd
                      (Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at Bothell, WA

My appointment expires 6-9-05

4 C:\Documents and Settings\annk PSA\Local Settings\Temporary Internet Files\OLK1FF\

**EXHIBIT 4**
**Page 163 of 179**

PSA 000202

SEVENTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: July 22, 2004

EXHIBIT 4
Page 164 of 179

PSA 000203

Exhibits to Ainsworth Decl.
Page334

SEVENTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: July 22, 2004

BETWEEN:       WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
               a Washington State public corporation
               Qwest Field & Events Center
               800 Occidental Ave. S. #700
               Seattle, WA 98134                                    ("PSA")

AND:           FIRST & GOAL INC.,
               a Washington corporation
               800 Occidental Ave. S., #200
               Seattle, WA  98134                                   ("FGI")

This is the Seventh Amendment to the Master Lease between PSA and FGI (the "Lease"). All defined terms used in this Seventh Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Seventh Amendment.

1.    Conformity of Due Dates.

In order that both the Annual Exhibition Center Operating Expense Budget and the Annual Maintenance Plan shall be due on the same date, Section 6.1.3 and a portion of Section 11.1.3 are hereby amended to read:

6.1.3. Annual Exhibition Center Operating Expense Budget

At least thirty (30) days prior to the beginning of each Lease Year, FGI shall submit to PSA its budget for Exhibition Center operations for that Lease Year, for PSA's review and comment.

11.1.3  Annual Maintenance Plan

All prior amendments to Section 11.1.3 are deleted and superseded by this Seventh Amendment.  Section 11.1.3, in its entirety, shall read as follows:

1
2
3
4
5
6
7
8
9
10
11
12

"At least thirty (30) days prior to each Lease Year, FGI shall submit to PSA, for PSA's review and approval, a plan for the Normal Maintenance activities to be conducted at the Premises by FGI during that Lease Year (the "Annual Maintenance Plan"). PSA shall have ninety (90) days from FGI's submission to review and approve, conditionally approve or disapprove the Annual Maintenance Plan. Any subsequent changes in the Annual Maintenance Plan shall be approved under the same procedure as for the initial approval of an Annual Maintenance Plan. FGI shall perform Normal Maintenance substantially in accordance with the PSA-approved Annual Maintenance Plan unless FGI has a reasonable justification not to do so."

13
14

2.    Notices. The addresses for purposes of notice under section 26.17 are:

15
16
17
18
19
20
21
22
23

If to PSA:          WASHINGTON STATE PUBLIC STADIUM
                    AUTHORITY
                    Qwest Field & Events Center
                    800 Occidental Ave. S. #700
                    Seattle, WA 98134
                    Attn: Ms. Ann Kawasaki Romero, Executive Director
                    Fax No.: 206-381-7949
                    Confirmation No.: 206-381-7940

24
25
26
27
28
29

with a copy to:    BALL JANIK LLP
                   101 SW Main Street, Suite 1100
                   Portland, OR 97204
                   Attn: Stephen T. Janik
                   Fax No.: 503-295-1058
                   Confirmation No.: 503-228-2525

30
31
32
33
34
35
36
37

If to FGI:         FIRST & GOAL INC.
                   Qwest Field & Events Center
                   800 Occidental Ave. S. # 200
                   Seattle, WA 98134
                   Attn: Mr. Lance Lopes, General Counsel
                   Fax No.: 206-381-7557
                   Confirmation No.: 206-381-7835

**EXHIBIT 4**
**Page 166 of 179**

-2-O:\Contracts & Agreements\Master Lease\Amendments\#451802-v4-Final Seventh Am

PSA 000205

1
2   with a copy to:     Foster Pepper & Shefelman PLLC
3                       1111 Third Avenue, Suite 3400
4                       Seattle, Washington 98101
5                       Attn: Allen D. Israel
6                       Fax No.: 206-749-1957
7                       Confirmation No.: 206-447-8911

8       3.   No Further Modification.    The Lease remains in full force and effect and

9   unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

10  Amendment, Fifth Amendment, Sixth Amendment and this Seventh Amendment.

11

12          IN WITNESS WHEREOF, this Seventh Amendment has been executed by the

13  Parties to be effective on the date first set forth above.

14      PSA:            WASHINGTON STATE PUBLIC STADIUM
15                      AUTHORITY, a public corporation of the State of
16                      Washington
17
18
19                      By _____
20                         Frederick Mendoza, Vice Chair of the Board
21

22      FGI:            FIRST & GOAL INC., a Washington corporation
23
24
25
26                      By: _____
27                          Tod Leiweke, President

EXHIBIT 4
Page 167 of 179

-3-O:\Contracts & Agreements\Master Lease\Amendements\#451802-v4-Final Seventh Am

PSA 000206

Exhibits to Ainsworth Decl.
Page337

STATE OF WASHINGTON ) 
) ss.
COUNTY OF KING )

        I certify that I know or have satisfactory evidence that **FREDERICK MENDOZA** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Vice-Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

        Dated this 22nd day of July, 2004.

_J E Todd_
(Signature of Notary)

_J.E. Todd_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Snohomish, WA_

My appointment expires _6-9-05_

STATE OF WASHINGTON ) 
) ss.
COUNTY OF KING )

        I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

        Dated this 26nd day of July, 2004.

_J E Todd_
(Signature of Notary)

_J.E. Todd_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Snohomish, WA_

My appointment expires _6-9-05_

-4- O:\Contracts & Agreements\Master Lease\Amendements\#451802-v4-Final Seventh Am

**EXHIBIT 4**
**Page 168 of 179**

PSA 000207

EIGHTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 17, 2005

**EXHIBIT 4**
**Page 169 of 179**

PSA 000208

Exhibits to Ainsworth Decl.
Page339

## EIGHTH AMENDMENT TO MASTER LEASE

1

2

3  EFFECTIVE DATE: November 17, 2005

4  BETWEEN:          WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
5                    a Washington State public corporation
6                    800 Occidental Ave. S., #700
7                    Seattle, WA 98134                                   ("PSA")

8
9  AND:              FIRST & GOAL INC.,
10                   a Washington corporation
11                   800 Occidental Ave. S., # 200
12                   Seattle, WA  98134                                  ("FGI")

13        This is the Eighth Amendment to the Master Lease between PSA and FGI (the "Lease").

14  All defined terms used in this Eighth Amendment shall have the same meaning as in the Lease

15  unless otherwise separately defined in this Eighth Amendment.

16        1.    Annual Exhibition Center Operating Expense Budget.  Section 6.1.3 as amended

17  in the Seventh Amendment to the Master Lease dated July 22, 2004 (the "Seventh Amendment")

18  is hereby further amended to read in its entirety as follows:

19        6.1.3   Annual Exhibition Center Operating Expense Budget

20              At least thirty (30) days prior to the beginning of each FGI Fiscal Year,

21  FGI shall submit to PSA its budget for Exhibition Center operations for that FGI Fiscal

22  Year, for PSA's review and comment.  "FGI Fiscal Year" shall initially be the 12 month

23  period ending March 31 of each year, subject to FGI giving notice of change to PSA as

24  provided herein.  For the one-time period commencing January 1, 2006 and concluding

25  March 31, 2006, FGI shall submit to the PSA its budget for the Exhibition Center

26  operations for that period, for the PSA's review and comment, no later than December

27  31, 2005.

28  2.    Reporting Period.     Section 6.1.5 is hereby amended to read in its entirety as follows:

29        6.1.5   Reporting Period

**EXHIBIT 4**
**Page 170 of 179**

-1-

S0591079 1

PSA 000209

1                 FGI shall submit to PSA, on or before the forty-fifth (45th) day of each

2  calendar quarter for the immediately preceding calendar quarter, a written statement

3  signed by FGI, and certified by its chief financial officer to be true and correct, showing

4  in detail the amount of Exhibition Hall Revenues, Exhibition Hall Expenses, and

5  Exhibition Hall Net Profits, as of the end of the preceding calendar quarter. In addition to

6  FGI's quarterly report of Exhibition Hall Net Profits, FGI shall submit to PSA an annual

7  audited report of Exhibition Hall Revenues, Exhibition Hall Expenses, and Exhibition

8  Hall Net Profits for the immediately preceding FGI Fiscal Year, not later than seven (7)

9  months following the end of each Lease Year. Each such report shall be certified as

10  accurate by the chief financial officer of FGI and each such annual report and final report

11  shall be accompanied by a certificate of an independent certified public accountant

12  reasonably satisfactory to PSA that such report has been prepared in accordance with

13  generally accepted accounting principles ("GAAP") consistently applied except as so

14  noted and accurately states the Exhibition Hall Revenues, Exhibition Hall Expenses, and

15  Exhibition Hall Net Profits for the period of such report. The format and detail of the

16  above reports shall be subject to the approval of PSA.

17  3.    <u>Annual Reporting on Operations</u>.    Section 8.9 is hereby amended to read in its entirety

18  as follows:

19          8.9    <u>Annual Reporting on Operations</u>

20                 FGI shall submit to PSA for public disclosure not later than seven (7)

21  months following the end of each Lease Year an audited profit and loss financial

22  statement for FGI's operations of the Project for the immediately preceding FGI Fiscal

23  Year. This statement shall be certified as accurate by the chief financial officer of FGI

24  and shall be accompanied by a certificate of an independent certified public accountant

25  reasonably satisfactory to PSA that such statement has been prepared in accordance with

26  GAAP, except as so noted, and accurately states the profits and losses of FGI for the

27  period of such statement. The format and detail of the statement of profits and losses

28  shall be subject to the approval of PSA.

29  4.    <u>Annual Maintenance Plan</u>. Section 11.1.3 as amended in the Seventh

PSA 000210

Exhibits to Ainsworth Decl.
Page341

1    Amendment is hereby further amended to read in its entirety as follows:

2            11.1.3  Annual Maintenance Plan

3                At least thirty (30) days prior to each FGI Fiscal Year, FGI shall submit to
4    PSA, for PSA's review and approval, a plan for the Normal Maintenance activities to be
5    conducted at the Premises by FGI during that FGI Fiscal Year (the "Annual Maintenance
6    Plan"). PSA shall have one hundred twenty (120) days from FGI's submission to review
7    and approve, conditionally approve or disapprove the Annual Maintenance Plan. Any
8    subsequent changes in the Annual Maintenance Plan shall be approved under the same
9    procedure as for the initial approval of an Annual Maintenance Plan. FGI shall perform
10   Normal Maintenance substantially in accordance with the PSA approved Annual
11   Maintenance Plan unless FGI has a reasonable justification not to do so.

12        5.  Five-Year Major Maintenance and Modernization Plan.  Section 11.1.4 as
13   amended in the Fourth Amendment to the Master Lease dated November 1, 2001 is hereby
14   further amended to read in its entirety as follows:

15           11.1.4. Five-Year Major Maintenance and Modernization Plan

16               FGI shall submit to PSA, for PSA's review and approval, a new or
17   updated plan of scheduled work to be performed upon the Premises during the next five
18   FGI Fiscal Years in order to meet FGI's obligations under Section 11.1.2.2 for certain
19   modifications, capital improvements and upgrading, as well as FGI's rights under Section
20   11.4 for Modernization Improvements (a 'Five-Year Plan'). The Five-Year Plan for the
21   Exhibition Hall shall be submitted by March 1 of each Lease Year. The Five-Year Plan
22   for the Stadium and Other Improvements shall be submitted by March 1 of each Lease
23   Year. A Five-Year Plan may be broken down into Major Repair and Modernization
24   Improvement sections. PSA shall have ninety (90) days from FGI's submission to review
25   and approve, conditionally approve, or disapprove each Five-Year Plan. Any subsequent
26   changes in a Five-Year Plan shall be approved under the same procedure as for the initial
27   Five-Year Plan. FGI shall perform Major Maintenance and Modernization each year

Exhibits to Ainsworth Decl.
Page342

1   substantially in accordance with the PSA approved Five-Year Plan, as that Five-Year

2   Plan may be revised from year to year, unless FGI has a reasonable justification not to do

3   so.

4      6.   Annual Maintenance Report. Section 11.1.5 as amended in the Fourth

5   Amendment to the Master Lease dated November 1, 2001 is hereby further amended to read in

6   its entirety as follows:

7      11.1.5  Annual Maintenance Report

8           Within one hundred twenty (120) days following each FGI Fiscal Year,

9   FGI shall provide to PSA a report in reasonable detail on the prior FGI Fiscal Year's Normal and

10  Major Maintenance. PSA shall have one hundred twenty (120) days to review and comment on

11  each annual maintenance report. In addition, PSA shall have the opportunity to audit (generally

12  pursuant to the process described in Section 6.1.7) FGI's maintenance records.

13     7.   No Further Modification.   The Lease remains in full force and effect and

14  unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

15  Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment and this Eighth

16  Amendment.

17          IN WITNESS WHEREOF, this Eighth Amendment has been executed by the

18  Parties to be effective on the date first set forth above.

19     PSA:              WASHINGTON STATE PUBLIC STADIUM
20                       AUTHORITY, a public corporation of the State of
21                       Washington
22
23
24
25                       By: _Lorraine Hine_____
26                           Lorraine Hine, Chair of the Board

27

28

50591079 1                              -4-

PSA 000212

EXHIBIT 4
Page 173 of 179

Exhibits to Ainsworth Decl.
Page343

1        FGI:        .        FIRST & GOAL INC., a Washington corporation

2

3

4

5                               By: _____

6                                    Tod Leiweke, CEO

Exhibits to Ainsworth Decl.
Page344

1  STATE OF WASHINGTON    )
2                         ) ss.
3  COUNTY OF KING         )
4
5          I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the
6  person who appeared before me, and said person acknowledged that said person signed this
7  instrument, on oath stated that said person was authorized to execute the instrument and
8  acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**
9  **STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and
10 voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11          Dated this 17th day of November, 2005.

12
13                                          _Jodene E Todd_
14                                          (Signature of Notary)
15                                          _Jodene E. Todd_
16                                          (Legibly Print or Stamp Name of Notary)
17                                          Notary public in and for the State of Washington,
18                                          residing at _Mill Creek, WA_
19                                          My appointment expires _6/9/09_
20
21
22 STATE OF WASHINGTON    )
23                        ) ss.
24 COUNTY OF KING         )
25
26         I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the
27 person who appeared before me, and said person acknowledged that said person signed this
28 instrument, on oath stated that said person was authorized to execute the instrument and
29 acknowledged it as the Chief Executive Officer of **FIRST & GOAL INC.**, a Washington
30 corporation, to be the free and voluntary act of such corporation for the uses and purposes
31 mentioned in the instrument.

32          Dated this 8TH day of DECEMBER, 2005.

33
34                                          (Signature of Notary)
35
36                                          _KIM LINDBECK_
37                                          (Legibly Print or Stamp Name of Notary)
38                                          Notary public in and for the State of Washington,
39                                          residing at _EDMONDS, WA._
40                                          My appointment expires _3/15/08_

S0591079 R                     -6-
                            **EXHIBIT 4**
                          **Page 175 of 179**              PSA 000214

Exhibits to Ainsworth Decl.
Page345

NINTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: February 23, 2006

**EXHIBIT 4**
**Page 176 of 179**

PSA 000215

Exhibits to Ainsworth Decl.
Page346

## NINTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: February 23, 2006

BETWEEN:      WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
              a Washington State public corporation
              800 Occidental Ave. S. #700
              Seattle, WA 98134                                    ("PSA")

AND:          FIRST & GOAL INC.,
              a Washington corporation
              800 Occidental Ave. S., #200
              Seattle, WA 98134                                    ("FGI")

        This is the Ninth Amendment to the Master Lease between PSA and FGI dated November 24, 1998 (the "Lease"). All defined terms used in this Ninth Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Ninth Amendment.

        1.    Tobacco Sponsor Advertising.  The last sentence of Section 9.2 of the Lease is hereby deleted in its entirety and replaced with the following:

        "No advertising of any form at the Premises will contain a promotion of tobacco products, except for: (i) point of sale advertising to the extent not prohibited by Laws and (ii) Permitted Sponsor Advertising. "Permitted Sponsor Advertising" shall be strictly limited to advertising which: (a) is displayed during a national or international touring event not involving the Team (the "Touring Event"); (b) is displayed at all of the other venues in which the Touring Event takes place; (c) is required to be displayed at the Touring Event pursuant to a written agreement between a company sponsoring all or part of the Touring Event and the promoter of the Touring Event; (d) is visible only within the interior (and not exterior) of the Stadium, Exhibition Hall, and/or other areas within the Premises which are specifically designated for use solely by the Touring Event; (e) does not violate any Laws or any of the prohibitions of that certain Master Settlement Agreement made by and among various parties, including 46 states of the United States of America and various tobacco companies, executed on November 23, 1998, as amended (the "MSA"); and (f) does not promote any specific tobacco product or contain any symbols or characters associated with any tobacco product, provided that it may contain the name of the tobacco company or the Brand Name (as that term is defined in Section II(i) of the MSA) sponsoring all or part of the Touring Event."

**EXHIBIT 4**
**Page 177 of 179**

- 1 -                          NINTH AMENDMENT TO MASTER LEASE (3) (2).DOC

1    2.    <u>No Further Modification.</u>    The Lease remains in full force and effect and
2    unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth
3    Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eighth Amendment,
4    and this Ninth Amendment.

5

6    IN WITNESS WHEREOF, this Ninth Amendment has been executed by the
7    Parties to be effective on the date first set forth above.

8    PSA:    WASHINGTON STATE PUBLIC STADIUM
9    AUTHORITY, a public corporation of the State of
10    Washington
11
12
13
14    By: _Lorraine Hine_____
15    Lorraine Hine, Chair of the Board

16    FGI:    FIRST & GOAL INC., a Washington corporation
17
18
19
20    By: _____
21    Tod Leiweke, President

**EXHIBIT 4**
**Page 178 of 179**

PSA 000217

-2-    NINTH AMENDMENT TO MASTER LEASE.DOC

Exhibits to Ainsworth Decl.
Page348

1    STATE OF WASHINGTON    )

2                         ) ss.

3    COUNTY OF KING        )

4

5           I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the

6    person who appeared before me, and said person acknowledged that said person signed this

7    instrument, on oath stated that said person was authorized to execute the instrument and

8    acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**

9    **STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and

10    voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11                    Dated this 23rd day of February, 2006.

12

13

14                                   _Jodene E. Todd_

                                          (Signature of Notary)

15                                    Jodene E. Todd

16                           (Legibly Print or Stamp Name of Notary)

17                     Notary public in and for the State of Washington,

18                     residing at Mill Creek, WA

19                     My appointment expires 6/9/09

20

21

22    STATE OF WASHINGTON    )

23                        ) ss.

24    COUNTY OF KING        )

25

26           I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the

27    person who appeared before me, and said person acknowledged that said person signed this

28    instrument, on oath stated that said person was authorized to execute the instrument and

29    acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the

30    free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

31                    Dated this 28th day of February, 2006.

32

33

34                                       _Jodene E. Todd_

                                          (Signature of Notary)

35                                    Jodene E. Todd

36                           (Legibly Print or Stamp Name of Notary)

37                     Notary public in and for the State of Washington,

38                     residing at Mill Creek, WA

39                     My appointment expires 6/9/09

**EXHIBIT 4**
**Page 179 of 179**

PSA 000218

Exhibits to Ainsworth Decl.
Page349

Exhibit 5

LL 014-003
F 1542
D 136090

## APPROVAL OF NAMING RIGHTS AGREEMENT

DATED:      June 24, 2004

BETWEEN:   WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
           a Washington State public corporation
           800 Occidental Avenue South, #700
           Seattle, WA  98134                                    ("PSA")

AND:       FIRST & GOAL INC.,
           a Washington corporation
           800 Occidental Avenue South, #200
           Seattle, WA  98134                                    ("FGI")


PSA and FGI entered into that Master Lease dated November 24, 1998 (the "Lease"), pursuant to which PSA leases the Project Improvements, as defined in the Lease, to FGI. Pursuant to Section 17.4.3 of the Lease, PSA's prior reasonable approval is required before FGI may enter into a Special Naming Rights Agreement, as defined in the Lease.

Qwest Communications International, Inc. ("Qwest") entered into a Naming Rights Sponsorship Agreement (the "Sponsorship Agreement") with FGI and Football Northwest LLC ("FNLLC") on June 1, 2004. The Sponsorship Agreement contains provisions that pertain to Special Naming Rights as defined in the Lease and provisions that pertain to Qwest's sponsorship relationship with FGI and FNLLC. Those provisions of the Sponsorship Agreement that pertain to Special Naming Rights shall constitute, and are referred to herein as, the "Naming Rights Agreement."

The Naming Rights Agreement is subject to PSA approval. Other provisions of the Sponsorship Agreement pertaining to exterior signage are subject to approval of the City of Seattle Department of Planning and Development.

**EXHIBIT 5**
**Page 1 of 7**

1                    ::ODMA\PCDOCS\PORTLAND\451762\6

PSA 000219

Pursuant to Section 17.4.5 of the Lease, consideration payable for Special Naming Rights is to be reasonably allocated between Special Naming Rights and consideration for sponsorship arrangements.

NOW, THEREFORE, in consideration of the agreements set forth in this Approval of Naming Rights Agreement (the "Agreement"), FGI and PSA agree as follows:

1.    Approval of Naming Rights Agreement

PSA hereby approves the Naming Rights Agreement, pursuant to Section 17.4.3 of the Lease.

2.    Naming Rights Consideration

2.1    FGI and PSA agree that the consideration reasonably allocable to Special Naming Rights is as set forth in attached Exhibit A.

2.2    In the event that FGI receives any payment under the Sponsorship Agreement which is less than the full payment required, the actual payment received shall be allocated between consideration for Special Naming Rights and consideration for sponsorship rights in proportion to the ratio between the applicable consideration for Special Naming Rights set forth on attached Exhibit A and the applicable total payment required under the Sponsorship Agreement, and FGI shall use commercially reasonable efforts to enforce the Sponsorship Agreement and collect the balance of the payment owed. The allocation of payments set forth in this Section 2.2 shall not apply in the event of a breach of the Sponsorship Agreement by FGI or FNLLC, in which event the provisions of Section 3 shall apply.

2.3    Pursuant to Section 17.4.5 of the Lease, FGI is authorized to deduct from the consideration received for the Special Naming Rights certain costs. The parties agree to reasonably allocate such costs between the Special Naming Rights and sponsorship rights. FGI

2                    ::ODMA\PCDOCS\PORTLAND\45176216

**EXHIBIT 5**                    PSA 000220
**Page 2 of 7**

agrees to provide reasonable documentation supporting the amount of the actual costs incurred by FGI in connection with the Special Naming Rights. The "Net Naming Rights Payment" is the applicable amount allocable to the Special Naming Rights set forth on Exhibit A, less the mutually agreed-upon costs allocable to the Special Naming Rights.

2.4    FGI agrees to pay the Net Naming Rights Payment to PSA within ten (10) days of the receipt by FGI of any payment under the Sponsorship Agreement and the determination of the amount of the Net Naming Rights Payment.

2.5    Any dispute between FGI and PSA with respect to determining the amount of a Net Naming Rights Payment shall be resolved through Dispute Resolution pursuant to Section 24 of the Lease.

3.    FGI's Performance of Its Obligations Under the Naming Rights Agreement

FGI agrees to perform its obligations under the Sponsorship Agreement and to cause FNLLC to perform its obligations under the Sponsorship Agreement. FGI agrees to enforce the Naming Rights Agreement. PSA is a third-party beneficiary of the Naming Rights Agreement. Any breach of the Sponsorship Agreement by FGI or FNLLC shall not diminish the amount of the Net Naming Rights Payment that would otherwise be payable to PSA if a breach had not occurred. Any sums received by FGI under the Sponsorship Agreement that are reduced by Qwest because of a purported breach or failure to perform by FGI or FNLLC shall cause a reallocation of the payment structure set forth in Exhibit A such that the reduced payment shall be allocated first to Special Naming Rights with the intent that PSA will receive the Net Naming Rights Payment, or any portion thereof, prior to any allocation of such sums to payments for sponsorship rights. Notwithstanding the foregoing, this Section 3 is not intended to make FGI or FNLLC personally liable to PSA for the Net Naming Rights Payments but only to obligate FGI and FNLLC to fully perform their obligations under the Sponsorship Agreement and, in the

3                    ::ODMA\PCDOCS\PORTLAND\451762\6

**EXHIBIT 5**
**Page 3 of 7**                    PSA 000221

Exhibits to Ainsworth Decl.
Page353

event that a dispute over such performance results in a payment reduction by Qwest to reallocate sums received by FGI under the Sponsorship Agreement.

4.    Modification to Naming Rights Agreement

    4.1    FGI shall not grant a material waiver of any provision of the Naming Rights Agreement nor enter into any material modification of or amendment to the Naming Rights Agreement without giving PSA prior notice of such waiver, modification or amendment and without PSA's prior approval pursuant to the standards in Section 17.4.3 of the Lease.

    4.2    The Naming Rights Agreement allows for a change in the Stadium Name, as defined in the Naming Rights Agreement under certain circumstances. FGI agrees that any such change in the Stadium Name shall be subject to PSA's prior approval pursuant to the standard set forth in Section 17.4.3 of the Lease.

5.    Complete Agreement

    This Agreement is the complete agreement of PSA and FGI with respect to the subject matter of this Agreement, and this Agreement supersedes any prior written or oral agreements on the same subject matter.

6    Master Lease

    The Lease remains in full force and effect according to its terms.

4                ::ODMA\PCDOCS\PORTLAND\451762\6

EXHIBIT 5
Page 4 of 7

PSA 000222

Exhibits to Ainsworth Decl.
Page354

IN WITNESS WHEREOF, FGI and PSA have executed and delivered this Agreement to be effective on the date first set forth above.

PSA:               WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a Washington State public corporation

By: _____
        Lorraine Hine, Chair of the Board

FGI:               FIRST & GOAL INC., a Washington corporation

By: _____
        Tod Leiweke, President

::ODMA\PCDOCS\PORTLAND\451762\6

**EXHIBIT 5**
**Page 5 of 7**

PSA 000223

Exhibits to Ainsworth Decl.
Page355

STATE OF WASHINGTON          )
                             ) ss.
COUNTY OF KING               )

      I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

      Dated this 24th day of June, 2004.



    _____
    (Signature of Notary)
    J. E. Todd
    (Legibly Print or Stamp Name of Notary)
    Notary public in and for the State of Washington, residing
    at Bothell, WA

    My appointment expires 10-9-05

STATE OF WASHINGTON          )
                             ) ss.
COUNTY OF KING               )

      I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

      Dated this 24th day of June, 2004



    _____
    (Signature of Notary)
    Kristina M. Howell
    (Legibly Print or Stamp Name of Notary)
    Notary public in and for the State of Washington, residing
    at Bellevue, WA

    My appointment expires 3/19/06

::ODMA\PCDOCS\PORTLAND\45176216

**EXHIBIT 5**
**Page 6 of 7**

PSA 000224

Exhibits to Ainsworth Decl.
Page356

# Approval of Naming Rights Agreement – Exhibit A

## Payment Schedule:

| Term | Escalation Rate | Year | Annual Payment | |
|---|---|---|---|---|
| | | | Total | Naming Rights |
| 1 | | 2004 | $4,000,000 | $1,700,000 |
| 2 | 2.8% | 2005 | $4,112,000 | $1,747,600 |
| 3 | 2.8% | 2006 | $4,227,136 | $1,796,533 |
| 4 | 2.8% | 2007 | $4,345,496 | $1,846,836 |
| 5 | 2.8% | 2008 | $4,467,170 | $1,898,547 |
| 6 | 2.8% | 2009 | $4,592,250 | $1,951,706 |
| 7 | 2.8% | 2010 | $4,720,833 | $2,006,354 |
| 8 | 2.8% | 2011 | $4,853,017 | $2,062,532 |
| 9 | 2.8% | 2012 | $4,988,901 | $2,120,283 |
| 10 | 2.8% | 2013 | $5,128,590 | $2,179,651 |
| 11 | 10.0% | 2014 | $5,641,450 | $2,397,616 |
| 12 | 2.8% | 2015 | $5,799,410 | $2,464,749 |
| 13 | 2.8% | 2016 | $5,961,794 | $2,533,762 |
| 14 | 2.8% | 2017 | $6,128,724 | $2,604,708 |
| 15 | 2.8% | 2018 | $6,300,328 | $2,677,639 |
| | | Total | $75,267,099 | $31,988,517 |
| | | Average Payment | $5,017,807 | $2,132,568 |

**EXHIBIT 5**
**Page 7 of 7**

PSA 000225

Exhibits to Ainsworth Decl.
Page357