THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRED and KATHLEEN STARK, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>THE SEATTLE SEAHAWKS, FOOTBALL NORTHWEST, LLC, a Washington limited liability company, FIRST & GOAL, INC., a Washington corporation, THE WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a Washington municipal corporation, and LORRAINE HINE, in her capacity as chair of the Washington State Public Stadium Authority board of directors,<br><br>Defendants. | Case No. CV06 1719 JLR<br><br>**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE**<br><br>NOTE ON MOTION CALENDAR:<br>**April 20, 2007**<br><br>**ORAL ARGUMENT REQUESTED** |

Summary judgment should be entered dismissing the claims against the Washington State Public Stadium Authority ("PSA") and its Board Chair, Lorraine Hine.

**I.    RELIEF REQUESTED.**

Pursuant to Federal Rule of Civil Procedure 56(b), defendants Washington Public Stadium Authority ("PSA") and Lorraine Hine respectfully move the Court for summary judgment dismissing each of plaintiffs' three claims.

Page 1 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR   ::ODMA\PCDOCS\PORTLAND\562338\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

dockets.Justia.com

## II. SUMMARY OF ARGUMENT.

Plaintiffs cannot demonstrate that PSA or Ms. Hine had any role in implementing the challenged pat downs, and there is no basis for attributing that conduct to them as "state action." PSA and Ms. Hine have not directed, suggested, or participated in the decision to conduct pat-downs at Qwest Field. The pat-downs were planned and carried out by private parties. PSA owns Qwest Field, but Qwest Field is leased to a private party which has been given "exclusive power and authority" over stadium operations, including security. This Court should reject plaintiffs' efforts to attribute to PSA and Ms. Hine the actions of private parties. The Supreme Court has repeatedly rejected the notion that acquiescence by the state in private conduct can somehow convert private conduct into state action. There is no basis for the injunctive relief that plaintiffs seek here against PSA and Ms. Hine. The private conduct here does not constitute state action, and summary judgment should be granted dismissing the claims against PSA and Ms. Hine.

## III. STATEMENT OF UNDISPUTED FACTS.

### A. Defendants PSA and Hine.

PSA is the owner of Qwest Field & Event Center (or "Qwest Field"). PSA is a "body corporate" with "all the usual powers of a corporation for public purposes." RCW 36.102.020(3). Lorraine Hine is its Board Chair. She has been named solely in her official capacity as Board Chair, and there is no allegation of improper conduct in her individual capacity.

### B. Construction of Qwest Field.

Qwest Field cost approximately $430 million dollars to build and develop, including a $300 million investment of public funds, authorized by the Stadium and Exhibition Center Financing Act ("Stadium Act"). A private party, First and Goal, Inc. ("FGI"), paid the balance of the development costs. (Declaration of Ann Kawasaki-Romero ("Kawasaki Dec."), ¶ 5). FGI is an affiliate of Football Northwest ("Seahawks"), the company name of the Seattle Seahawks.

Page 2 - **MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR** ::ODMA\PCDOCS\PORTLAND\562338\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

### C. The Master Lease.

As provided in the Stadium Act, PSA and FGI entered into a master lease agreement, dated November 28, 1998 (the "Master Lease"). RCW 36.102.060(8). The Master Lease grants FGI "exclusive power and authority" to possess, operate, use, and sublease Qwest Field. (Kawasaki Dec. ¶ 7, Ex. A, §§ 2, 19). FGI is the sole and exclusive operator of Qwest Field. FGI is solely and exclusively responsible for all operations at Qwest Field; that includes everything from event booking to ticketing to parking to concessions to security. (Kawasaki Dec. ¶ 7).

Pursuant to the Stadium Act[1] and the Master Lease, FGI has all operating and maintenance responsibilities, risk, legal liability, and operating costs associated with Qwest Field. PSA does not pay any of Qwest Field's operating costs. (Kawasaki Dec. ¶ 8, Ex. A, §§ 2, 10, 15, 19).

As sole master tenant, FGI retains all revenues from the operation of Qwest Field, with some minor exceptions. (Kawasaki Dec. ¶ 9, Ex. A, §§ 2, 6). FGI must pay PSA annual rent for Qwest Field. Annual rent for Qwest Field and other facilities is the greater of $850,000 (as adjusted for inflation) or reasonable PSA operating expenses for a lease year (if those expenses exceed $850,000). (Kawasaki Dec. ¶ 9, Ex. A, § 5).

### D. The Pat-Downs by FGI.

PSA (and its Board Chair Ms. Hine) have had no involvement in FGI's decision to pat-down all persons attending Seahawks home games. PSA was not consulted by the NFL, the Seahawks, or FGI about the decision to perform pat-downs. PSA has had no role in planning,

---

[1] The Stadium Act provides, in pertinent part, that:

"The public stadium authority shall have the authority to enter into a long-term lease agreement with a team affiliate whereby, in consideration of the payment of fair rent and assumption of operating and maintenance responsibilities, risk, legal liability, and costs associated with the stadium and exhibition center, the team affiliate becomes the sole master tenant of the stadium and exhibition center." RCW 36.102.060(8).

Page 3 - **MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR** ::ODMA\PCDOCS\PORTLAND\562338\1

1 implementation, design, or enforcement of the pat-downs or any other game day security

2 measure; nor has PSA approved, compelled, encouraged, or ratified the pat-downs. (Kawasaki

3 Dec. ¶ 10, Hine Dec. ¶ 2).

4     PSA has no financial responsibility for the pat-downs or any other security measures.

5 Pursuant to the terms of the Master Lease, FGI is solely responsible for all costs associated with

6 the pat-downs. (Kawasaki Dec. ¶ 11, Ex. A, Section 10). PSA has not profited, directly or

7 indirectly, from the pat-down inspections or from any other stadium security procedures.

8 (Kawasaki Dec. ¶ 12).

9 **IV.  SUMMARY JUDGMENT STANDARDS.**

10     Entry of summary judgment is appropriate "against a party who fails to make a showing

11 sufficient to establish the existence of an element essential to that party's case, and on which that

12 party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

13 S. Ct. 2548, 2552 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.

14 1995). If the plaintiff has the burden of proof at trial, the defendant who moves for summary

15 judgment has no burden to negate the plaintiff's claim. *Celotex Corp.*, 477 U.S. at 323, 106

16 S. Ct. at 2553. Rather, in order to defeat a summary judgment motion, the party with the burden

17 of proof must come forward with evidence supporting its claims. *Id.* "If the evidence [submitted

18 by the plaintiff opposing the motion] is merely colorable, or is not significantly probative,

19 summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50,

20 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986) (citation omitted).

21 **V.  SUMMARY JUDGMENT SHOULD BE ENTERED DISMISSING THE CLAIMS AGAINST PSA AND MS. HINE.**
22

23     Summary judgment should be granted against each of plaintiffs' three claims against PSA

24 and Ms. Hine. In order to prevail on these claims, plaintiff must show state action. The first

25 claim, for violation of plaintiffs' Fourth Amendment rights, can be made under the Fourteenth

26 Amendment, but state action is required for such a claim. *Lugar v. Edmondson Oil Co., Inc.*, 457

Page 4 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR ::ODMA\PCDOCS\PORTLAND\562338\1

1  U.S. 922, 924, 102 S. Ct. 2744 (1982) ("Because the [Fourteenth] Amendment is directed at the
2  States, it can be violated only by conduct that may be fairly characterized as 'state action.'").
3  The second claim, for violation of section 1983, also requires that state officials act "under color
4  of state law," which again amounts to a requirement of state action. *Id.* at 935, n.18 ("color of
5  state law" requirement of section 1983 "does not add anything not already included within the
6  state-action requirement of the Fourteenth Amendment"). The third claim, for violation of the
7  Washington Constitution, will be judged by the same standards that apply to the federal claims,
8  under which state action is required. *State v. Carter*, 151 Wash.2d 118, 124, 85 P.3d 887 (Wash.
9  2004) ("As a general rule, neither state nor federal constitutional protections against
10 unreasonable searches and seizures are implicated, without state action.").
11         Plaintiffs' claim cannot satisfy the state action requirement. First, because PSA and Ms.
12 Hine had no role in the pat-downs, there was no action by them, and there should be no claim
13 against them. Second, plaintiffs cannot satisfy any of the tests for attributing private conduct to
14 governmental defendants like PSA and Ms. Hine. Third, mere acquiescence by the PSA and Ms.
15 Hine in the conduct by the Seahawks Defendants is not "state action." Finally, given the lack of
16 conduct by PSA and Ms. Hine, there is no basis for injunctive relief against them.
17         **A.   PSA and Ms. Hine Played No Role in the Pat-Downs.**
18         Before plaintiffs can maintain an action against PSA and Ms. Hine, they must be
19 connected to the alleged wrong. This is not a case brought solely against private parties who are
20 alleged to be equivalent to "state" actors. Nor is it a case against state officials who purportedly
21 sought to enforce state law, where the question often is whether the private motives which
22 triggered the enforcement of those laws can fairly be attributed to the State. The State normally
23 can be held responsible for a private decision only when it has exercised coercive power or has
24 provided such significant encouragement, either overt or covert, that the choice must in law be
25 deemed to be that of the State. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). There is no
26 evidence that PSA or Ms. Hine were involved in the decision to conduct the pat-downs, that they

Page 5 - **MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR** ::ODMA\PCDOCS\PORTLAND\562338\1

were involved in the implementation of the pat-downs, or that they played any role in the decision. Given that PSA and Ms. Hine played no role in the pat-downs, plaintiffs have no claim that PSA or Ms. Hine acted in the pat-downs.

**B. Pat-Downs by Private Parties Here Should Not be Attributed to PSA or Ms. Hine.**

Constitutional guarantees against unreasonable searches do not apply to searches conducted by private parties. *Washington v. Carter*, 85 P.3d 887, 890 (Wash. 2004). In order to satisfy the state action requirement, plaintiffs seek to attribute the private conduct here to PSA and Ms. Hine, but there is no basis for doing so.

The Seahawks Defendants are private persons, but plaintiffs argue that the Seahawks Defendants should be treated as governmental actors, and that their conduct should be treated as state action. As demonstrated by the Seahawks Defendants in their summary judgment papers, as a matter of law, plaintiffs cannot satisfy any of the tests for treating these private persons as governmental actors. Rather than repeat the points and authorities cited by the Seahawks Defendants, PSA and Ms. Hine adopt them and offer only a brief summary.

First, the PSA did not compel or encourage the pat-downs. PSA and Ms. Hine had no role in the challenged action. (Kawasaki Dec. ¶¶ 10-12; Hine Dec. ¶ 2). (*See* Seahawks Defendants' Summary Judgment Mtn and Supp. Mem. ("Seahawks Mtn.") at 6-11).

Second, plaintiffs cannot show any joint activity between the Seahawks Defendants and PSA or Ms. Hine, or that PSA and Ms. Hine willfully participated in a joint activity. Plaintiffs cannot establish the crucial link between the PSA or Ms. Hine and the challenged activity, the pat-downs. The only evidence is that the challenged conduct was instigated, planned, and executed by private parties, with no involvement by PSA or Ms. Hine. (Kawasaki Dec. ¶¶ 10-12; Hine Dec. ¶ 2). Plaintiffs also cannot show that the Seahawks Defendants and PSA have the kind of "symbiotic relationship" that converts private action into state action. Plaintiffs will no doubt point out that PSA provided 70% of the funds needed to build Qwest Field, (Kawasaki

Page 6 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR ::ODMA\PCDOCS\PORTLAND\562338\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

1  Dec. ¶ 5), but that does not constitute state action in the challenged conduct. The lease payments
2  by FGI to PSA also fail to establish governmental involvement in the actions by the Seahawks
3  Defendants, because PSA did not profit from the pat-downs. (Kawasaki Dec. ¶ 12). As a matter
4  of law, there is no joint activity. (*See* Seahawks Mtn. 6-11).

5      Third, plaintiffs cannot show that PSA or Ms. Hine controlled the Seahawks Defendants
6  or that the Seahawks Defendants were nominally private actors. The Master Lease gives FGI
7  "exclusive power and authority" over stadium operations, including security. There was no
8  compulsion or coercion of the pat-downs by PSA or Ms. Hine, who did not influence or
9  encourage the searches in any way. (Kawasaki Dec. ¶¶ 10-12; Hine Dec. ¶ 2). (*See* Seahawks
10 Mtn. 11-12).

11     Finally, plaintiffs cannot show that the Seahawks Defendants are engaged in a public
12 function. Operating a stadium has never been the exclusive prerogative of the State. Private
13 security employees have served at sporting events and concerts for decades. These activities
14 have never been the exclusive, traditional prerogative of the State. (Kawasaki Dec. ¶ 13). (*See*
15 Seahawks Mtn. 12-13). As a matter of law, the actions of the Seahawks Defendants cannot be
16 attributed to PSA or its Board Chair.

17     **C.   Any argument that PSA and Ms. Hine should have taken action also fails.**

18     Given that PSA and Ms. Hine have not been involved in the pat-downs, plaintiffs can be
19 expected to argue that PSA and Ms. Hine are liable for failing to attempt to stop the pat-downs.
20 As a matter of law, this argument fails. The Supreme Court has repeatedly held that "mere
21 approval of or acquiescence" in private conduct "is not sufficient to hold the State responsible"
22 for that conduct. *Blum*, 457 U.S. at 1004-05; *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149,
23 98 S. Ct. 1729 (1978) ("This Court, however, has never held that a State's mere acquiescence in
24 a private action converts that action into that of the State."); *Amer. Mfrs. Mut. Ins. v. Sullivan*,
25 526 U.S. 40, 52 (1999); *San Francisco Arts & Athletics v. U.S. Olympic Committee*, 483 U.S.
26 522, 547, 107 S. Ct. 2971 (1987). Supreme Court decisions "will not tolerate the imposition of

Page 7 - **MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR** ::ODMA\PCDOCS\PORTLAND\562338\1

1 Fourteenth Amendment restraints on private action by the simple device of characterizing the
2 State's inaction as 'authorization' or 'encouragement.'" *Sullivan*, 526 U.S. at 52 (internal
3 quotations omitted). Thus, this Court should reject any argument that plaintiffs have a claim
4 against PSA or Ms. Hine for not attempting to stop pat-downs by the Seahawks Defendants.

**D.    There is no basis for injunctive relief.**

Plaintiffs do not seek damages, only injunctive relief. But there is no conduct by PSA or Ms. Hine to enjoin here. Because "mere acquiescence" cannot constitute state action, PSA and Ms. Hine cannot be enjoined to take action to stop the pat-downs. Because PSA and Ms. Hine have played no role in the pat-downs, they cannot be enjoined from doing that which they were not doing in the first place. Summary judgment is therefore appropriate.

**VI.    CONCLUSION.**

Summary judgment should be entered dismissing plaintiffs' claims against PSA and Ms. Hine.

DATED: March 27th, 2007.

Respectfully submitted,

By: /s/ John J. Dunbar
John J. Dunbar, WSBA No. 15509
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Telephone: (503) 228-2525
Facsimile: 503-226-3910
Email: jdunbar@bjllp.com

Attorneys for Defendants The Washington State Public Stadium Authority and Lorraine Hine

Page 8 - MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE, Case No. CV06 1719 JLR ::ODMA\PCDOCS\PORTLAND\562338\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

# CERTIFICATE OF SERVICE

I hereby certify that, on the 27th day of March, 2007, I served a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT BY DEFENDANTS PSA AND HINE,** by the method shown below, addressed to the following named persons at their last-known addresses on the date shown above:

| | |
|---|---|
| Timothy G. Leyh, Esq.<br>Christopher T. Wion, Esq,<br>Danielson Harrigan Leyh & Tollefon LLP<br>999 Third Avenue, Suite 4400<br>Seattle, Washington 98104<br>    Counsel for Plaintiffs | BY EMAIL AND FEDERAL EXPRESS |
| Gregg H. Levy, Esq.<br>Paul A. Ainsworth, Esq.<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004 | BY EMAIL AND FEDERAL EXPRESS |
| Jeffrey Miller, Esq,<br>Timothy Filer, Esq.<br>Foster Pepper PLLC<br>1111 Third Avenue, Suite 3400<br>Seattle, Washington 98101<br>    Attorneys for Defendants The Seattle Seahawks,<br>    Football Northwest LLC and First & Goal, Inc. | BY EMAIL AND FEDERAL EXPRESS |

/s/ John J. Dunbar
John J. Dunbar, WSBA No. 15509
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Phone: (503) 228-2525
Fax: (503) 226-3910
Email: jdunbar@bjllp.com

Attorneys for Defendants The Washington State Public Stadium Authority and Lorraine Hine

Page 1 - **CERTIFICATE OF SERVICE**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\562338\1