## MASTER LEASE
## EXHIBIT 1

### DEFINED TERMS

The following defined terms have the following defined meanings when used in this Master Lease Agreement. Some definitions are taken from the Development Agreement or Stadium Use Agreement.

Defined terms may be used together, and when so used will have the combined meaning of the two defined terms.

| TERM | FIRST USED | DEFINED |
|------|-----------|---------|
| 1998 Letter of Intent | 3.3 | Development Agreement |
| AAA | 24.4 | 24.4 |
| Act | Recital A | Recital A |
| actual Reasonable PSA Operating Expenses | 5.1.3.4 | 5.1.3.4 |
| adjustment date | 26.2 | 26.2 |
| Admissions Tax | 18 | 18 |
| Affected Area | 8.8.1 | 8.8.1 |
| Affiliate | 6.1.1.2 | |
| affordable price | 8.1.2.1 | 8.1.2.1 |
| Affordable Priced Seats | 8.1.2.1 | 8.1.2.1 |
| Aggregate Adjustment Amount | 8.1.2.3 | 8.1.2.3 |
| Agreement of Event Scheduling Principles | 8.2.2 | 8.2.2 |
| Allen | Recital H | Recital H |
| Allen Ownership Group | 21.8.1.1 | 21.8.1 |
| Annual Loan Debt Service | 5.1.3.1 | 5.1.3.1 |
| Annual Maintenance Plan | 11.1.3 | 11.1.3 |
| Annual Review | 8.2.3 | 8.2.3 |
| average | 8.1.2.1 | 8.1.2.1 |
| Backup marketing expenses | 4.2.1 | Trade meaning |
| Basic Rent | 5.1.2.1 | 5.1.2.1 |
| Bonds | 14.1.2 | Development Agreement |
| booking policies | 6.1.4 | 6.1.4 |
| bunker suite | 8.1.3 | 8.1.3 |
| Business Days | 5.1.3.4 | Development Agreement |
| Capital Improvements Account | 6.1.1.3 | 11.7 |
| Cash Reserve | 5.7.1.1 | 5.7.1.1 |
| Change of Control of FNW | 21.8.1 | 21.8.1 |
| Change of Control of Other Tenant | 21.8.2 | 21.8.2 |
| Club Seat | 8.1.3 | Stadium Use Agreement |
| Collective Bargaining Agreement | 8.7 | Common meaning |
| Commencement Date | 3.1 | 3.1 |
| Comparable Exhibition Facilities | 7.2.1 | 11.1.2.1 |
| Comparable Facilities | 11.1.2.1 | 11.1.2.1 |

| | | |
|---|---|---|
| Comparable Parking Facilities | 7.2.1 | 11.1.2.1 |
| Comparable Stadium Facilities | 11.1.2.1 | 11.1.2.1 |
| Completion Date | 3.1 | 3.1 |
| Completion Term | 4 | 4.3.1 |
| Control | 21.8 | 21.8 |
| Damages | 15.1 | 15.1 |
| de facto naming right | 17.1.2 | 17.1.2 |
| Default Interest | 26.17 | 26.17 |
| design development | 11.9.1 | Trade meaning |
| Development Agreement | Recital C | Recital C |
| Development Areas | 5.1.3.1 | Development Agreement |
| Dispute | 24.1 | 24.1 |
| Dispute Notice | 24.2 | 24.2 |
| Dispute Resolution | 5.1.3.4 | 24.1 |
| Economic Interest | 22.6 | 26.17 |
| Equitable Proceeding | 24.7 | 24.7 |
| Event of Default | 4.2.1 | 22.1 |
| Exempt Information | 25.1.1 | 25.1.1 |
| Exhibition Center | 6.1.3 | Development Agreement |
| Exhibition Hall | Recital C | Recital C |
| Exhibition Hall Events | 6.1.1.2 | 6.1.1.4 |
| Exhibition Hall Expenses | 6.1.1.3 | 6.1.1.3 |
| Exhibition Hall Naming Rights | 6.1.1.2 | 17.1.1.3 |
| Exhibition Hall Naming Rights | 17.1.1.3 | 17.1.1.3 |
| Exhibition Hall Net Profits | 6.1.1.1 | 6.1.1.1 |
| Exhibition Hall Parking Expenses | 6.1.1.6 | 6.1.1.6 |
| Exhibition Hall Parking Revenue | 6.1.1.2 | 6.1.1.5 |
| Exhibition Hall Revenues | 6.1.1.2 | 6.1.1.2 |
| Extension Period | 4 | 4.2 |
| Fax Number | 26.14 | 26.14 |
| FGI | Introduction | Introduction |
| FGI Contribution | 14.1.2 | Development Agreement |
| FGI Documents | 25.1 | 25.1.1 |
| FGI's Personal Property | 23.1 | 23.1 |
| first reasonable opportunity | 8.1.2.3 | 8.1.2.3 |
| First-Class Condition | 11.1.2.1 | 11.1.2.1 |
| First-Class Manner | 7.2.1 | 7.2.1 |
| Five-Year Plan | 11.1.4 | 11.1.4 |
| flat shows | 6.1.1.4 | Common meaning |
| FNW | Recital H | Recital H |
| Force Majeure | 12.1.5 | Follows in this Exhibit |
| GAAP | 6.1.5 | 6.1.5 |
| Governmental Authority | 6.1.1.2 | Follows in this Exhibit |
| Hazardous Substances | 7.3.1 | Development Agreement |
| Home Game | 8.1.2.1 | Stadium Use Agreement |
| Impositions | 6.1.1.3 | Follows in this Exhibit |

#50038657 v2 - Defined Terms
11/23/982:38 PM

Exhibit 1, Page 2

EXHIBIT A
Page 102 of 179

PSA 000141

| | | |
|---|---|---|
| Indemnified Party | 15.3 | 15.3 |
| Indemnifying Party | 15.3 | 15.3 |
| Indexed | 5.1.1 | 26.2 |
| Initial Term | 4 | 4.1 |
| Institution | 13.8.1 | Follows in this Exhibit |
| Insurance | 6.1.1.3 | 13 |
| internally generated financing | 11.1.2.2 | 11.1.2.2 |
| IP Rights | 17.1 | 17.1 |
| L/C Reserve | 5.7.1.1 | 5.7.1.1 |
| Laws | 5.1.3.1 | Development Agreement |
| League | 8.1.1 | Stadium Use Agreement |
| Lease | Recital I | Recital I |
| Lease Year | 4.1 | 4.1 |
| lottery basis | 8.1.3 | Common meaning |
| Lottery Promotion obligation | 8.4.4 | Development Agreement |
| lowest ticket prices | 8.1.2.1 | 8.1.2.1 |
| Maintenance | 6.1.1.3 | 11.1.1 |
| Major Maintenance | 11.1.1 | 11.3.1 |
| Management Company | 21.3.4.2 | 21.3.7 |
| Mariners | 8.2.1 | 8.2.1 |
| Master Lease Guaranty | 2.2 | Development Agreement |
| Master Use Permit | 8.8.2 | 8.8.2 |
| MBE | 8.6 | 8.6 |
| Memorandum of Lease | 26.11 | Exhibit 25.10 |
| Modernization | 6.1.1.3 | 11.4 |
| Modernization Improvements | 11.1.2.2 | 11.4.1 |
| Modernization Plan | 11.4.2 | 11.4.2 |
| naming rights | 17.1 | Trade Meaning |
| Naming Rights Account | 6.1.1.3 | 11.6 |
| Neighboring communities | 8.12 | 8.12 |
| NFL Season | 8.1.2.2 | Stadium Use Agreement |
| Nondisturbance | 21.2.2 | 21.2.4 |
| Normal Maintenance | 11.1.1 | 11.2.1 |
| North Parking Lot | 3.3 | Development Agreement |
| occurrence basis | 13.3.6 | Trade meaning |
| Operating Reserve | 5.7.1.1 | 5.7.1.1 |
| Other Improvements | Recital C | Recital C |
| Other Transferee | 21.8.2 | 21.8.2 |
| Other Transferee Affiliate | 21.8.2.1 | 21.8.2.1 |
| Parking Facilities Naming Rights | 6.1.1.2 | 17.1.1.4 |
| Parking Facility | Recital C | Recital C |
| Parking Facility Naming Rights | 17.1.1.5 | 17.1.1.5 |
| Parking Tax | 18 | 18 |
| Partial Taking | 14.3 | 14.3 |
| Parties | 4.1 | Development Agreement |
| Percentage Rent | 6.1.2 | 6.1.2 |

#50038657 v2 - Defined Terms
11/23/982:38 PM

Exhibit 1, Page 3

EXHIBIT A
Page 103 of 179

PSA 000142

| Permitted Exceptions | 20.1.2 | Exhibit 20.1.2 |
|---|---|---|
| Person | 2.2 | Development Agreement |
| Personal Property | 3.4 | 3.4 |
| PFD | 8.2.1 | 8.2.1 |
| Phase I | 3.1 | Development Agreement |
| Phase I Parcel | 3.1 | Exhibit 3.1, Development Agreement |
| Phase II | 3.1 | Development Agreement |
| Playoff Home Games | 8.1.1 | Stadium Use Agreement |
| Premises | 2 | 3.1; 3.2 |
| Prime Rate | 26.17 | 26.17 |
| Project | Recital F | Recital F |
| Project Art | 8.14.1 | 8.14.1 |
| Project Art Fund | 8.14.1 | 8.14.1 |
| Project Art Selection Committee | 8.14.2 | |
| Project Art Spaces | 8.14.2 | 8.14.2 |
| Project Element | Recital E | Recital E |
| Project Improvements | Recital E | Recital E |
| Project Labor Agreement | 8.7 | Development Agreement |
| Project Naming Rights | 17.1.1.1 | 17.1.1.1 |
| Project Site | Recital B | Recital B |
| Property Contribution Agreement | 3.3 | Development Agreement |
| PSA | Introduction | Introduction |
| PSA Advisory Committee | 17.4.4 | Development Agreement |
| PSA Office Space | 3.5.3 | 8.11.1 |
| PSA Possession Date | 21.2.1 | 21.2.1 |
| PSA's Board Meetings | 8.11.5 | 8.11.5 |
| PSLs | 2.1 | Development Agreement |
| public area | 8.11.1 | 8.11.1, Act |
| public or entertainment areas | 10.2.5 | Act |
| public records | 25.3 | Common meaning |
| punch list | 11.9.3 | Trade meaning |
| Qualified Sublease | 21.1 | 21.2.1 |
| Ratable proportion of PSL Proceeds | 14.1.2 | 14.1.2 |
| Reasonable Efforts | 4.4 | Development Agreement |
| reasonable expenses | 22.4.3 | 22.4.3 |
| Reasonable PSA Operating Expenses | 4.2.1 | 5.1.3.1 |
| reasonable rental value | 22.4.2 | 22.4.2 |
| reference date | 26.2 | 26.2 |
| Regular Season Home Games | 8.1.1 | Stadium Use Agreement |
| Related Agreements | 15.2 | Development Agreement |
| Related Person | 7.3.3 | Development Agreement |
| Rent | 4.2.2 | 5.1 |
| Rent Letter of Credit | 21.5.1 | 21.5.1 |
| Reserve Letter of Credit | 5.7.3.1 | 5.7.3.1 |
| Restoration | 12.1 | 12.1 |

#50038657 v2 - Defined Terms
11/23/982:38 PM

Exhibit 1, Page 4

**EXHIBIT A**
**Page 104 of 179**

PSA 000143

| Restoration Proceeds | 12.1.4 | 12.1.4 |
|---|---|---|
| Seattle metropolitan area | 8.7 | Common meaning |
| sight draft | 5.7.3.1 | Trade meaning |
| Special Naming Rights | 17.1.1 | 17.1.1 |
| Special Naming Rights Agreement | 17.4.2 | 17.4.2 |
| Stadium | Recital C | Recital C |
| Stadium | 6.1.1.4 | Development Agreement |
| Stadium Mitigation Report and Plan | 8.8.2 | 8.8.2 |
| Stadium Naming Rights | 17.1.1.2 | 17.1.1.2 |
| Substantial Completion | 3.1 | Development Agreement |
| Substantial Taking | 14.2 | 14.2 |
| Sufficient Experience | 21.3.4.2 | 21.3.4.2 |
| Suite | 8.1.3 | Stadium Use Agreement |
| Suite Lottery | 8.1.3 | 8.1.3 |
| Suite Lottery Program | 8.1.3 | 8.1.3 |
| Swing Space | Recital D | Recital D |
| Tax Collection and Disbursement Agreement | 18 | 18 |
| Team | Recital H | Recital H |
| team affiliate | Recital H | Act |
| Temporary Taking | 14.6 | 14.6 |
| Term | 3.2 | 4 |
| Total Taking | 14.1 | 14.1 |
| Transfer | 21.3.1 | 21.7 |
| Transferee | 21.3.1 | 21.3.1 |
| Trustee of Insurance | 12.1.2 | 13.8.1 |
| turn-key | Recital G | Trade meaning |
| Utilities | 6.1.1.3 | Follows in this Exhibit |
| WBE | 8.6 | 8.6 |

Force Majeure. "Force Majeure" means any matter beyond the reasonable control of a party (financial inability excepted), including, without limitation, weather, strikes, labor unrest, labor disputes, lockouts, picketing, labor shortages, failure of Utilities, materials shortages, transportation shortages, energy shortages, governmental action or inaction, rationing, inability to obtain permits or third-party approvals, war, acts of terrorism, acts of vandalism, civil commotion, insurrection, riots, local or national emergency, acts of God, natural disasters, or fire or other casualty.

Governmental Authority. "Governmental Authority" means any federal, state, regional, local or municipal government, corporation, department, agency, district, court, tribunal, or other instrumentality having jurisdiction over the matter(s) in question.

Impositions. "Impositions" means all taxes, including without limitation admissions taxes, parking taxes, sales taxes, gross receipts taxes, compensating or other retail excise taxes, special and general assessments, use and occupancy taxes, rent taxes, possessory interest taxes, excises, levies, license and sales and permit fees and taxes of general application and all other charges of

#50038657 v2 - Defined Terms
11/23/982:38 PM
Exhibit 1, Page 5

**EXHIBIT A**
**Page 105 of 179**

PSA 000144

general application which shall during the Term of the Lease be assessed, levied, charged, confirmed or imposed by any Governmental Authority, or which accrue or become due or payable on account of or become a lien on or against the Premises or Project Improvements or any portion thereof, or any interest in the Premises.

Institution.    "Institution" shall mean a bank, insurance company, pension fund, major financial institution, or other entity actively engaged in a business related to the business for which "Institution" is contemplated by the particular context of this Lease, with total assets of at least $100,000,000, Indexed.

Utilities.  "Utilities" means all services and utilities delivered to, provided for, or consumed on the Premises, including, without limitation, such services as janitorial and garbage pick-up, and such utilities as gas, water, sewer, storm water drainage, electricity, cable, microwave, television, and telecommunications services.

#50038657 v2 - Defined Terms
11/23/982:38 PM

EXHIBIT A
Page 106 of 179

PSA 000145

Exhibit 1, Page 6

MASTER LEASE

EXHIBIT 3.1

PHASE I PARCEL DESCRIPTION

General description of Phase I of the Project Site (not an official legal description):

That portion of the Project Site (described in Exhibit A) lying south of the following described line:

Beginning at a point on the eastern margin of Occidental Street, located 780 feet north of the northeast intersection of S. Royal Brougham Way and Occidental Ave. So.; thence easterly to a point that intersects a line that is an arc which is concentric with the existing Kingdome building and which runs 20 feet south of the existing Kingdome Gate "A"; thence leaving such concentric arc and running easterly to the ending point located on the easterly margin of a roadway known as "Street of Dreams" which ending point is located on a line that runs 740 feet north from the northerly margin of S. Royal Brougham Way.

MASTER LEASE
EXHIBIT 4.1

## CONFIRMATION OF COMMENCEMENT DATE AND COMPLETION DATE

### CONFIRMATION OF COMMENCEMENT DATE

Pursuant to Section 4.1 of the Master Lease dated November 24, 1998, between PSA and FGI ("Master Lease"), the parties hereby confirm that:

The Commencement Date as defined in the Master Lease is

_____ October 28, 1999 _____.

Dated: *October 29, 1999*

WASHINGTON STATE PUBLIC STADIUM AUTHORITY

By: _____

Ann M. Kawasaki, Executive Director

FIRST & GOAL INC.

By: _____

Robert J. Whitsitt, President



19991102000895
PAGE 002 OF 002
11/02/1999 12:31
KING COUNTY, WA

PUBLIC STADIUM MISC        9 00

Exhibit 4.1 Page 1                EXHIBIT A            PSA 000147
                                  Page 108 of 179

RETURN ADDRESS



PUBLIC STADIUM MISC      9.00

19991102000895
PAGE 001 OF 002
11/02/1999 12:31
KING COUNTY, WA

After recording return to:
Robin Wohlhueter
Public Stadium Authority
401 2nd Avenue South, Suite 520
Seattle, WA  98104

Please print neatly or type information
## Document Title(s)

*Confirmation of Commencement Date - Phase I*

_____    _____

## Reference Numbers(s) of related documents

_____  _____  _____  _____

Additional Reference #'s on page ____

## Grantor(s) (Last, First and Middle Initial)

*Washington State Public Stadium Authority*

_____    _____

_____    _____

_____
Additional grantors on page ____

## Grantee(s) (Last, First and Middle Initial)

*First & Goal Inc.*    _____

_____    _____

_____    _____

_____
Additional grantees on page ____

## Legal Description (abbreviated form: i.e. lot, block, plat or section, township, range, quarter/quarter)

_____

Additional legal is on page ____

## Assessor's Property Tax Parcel/Account Number

_____    _____

Additional parcel #'s on page ____

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

**EXHIBIT A**
**Page 109 of 179**

PSA 000148

LL 014-007
F 829
D 134925

Return Address:
Seahawks Stadium & Ev. Center
800 Occidental Av S #700
Seattle WA 98134



2002080700191 1
WA STATE PUBLI N        21.00
PAGE 001 OF 003
08/07/2002 12:08
KING COUNTY, WA

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)

1. Notice of Confirmation of Completion Date
3. _____ 4. _____

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page _____ of document    2 0 0 0 0 5 2 2 0 0 0 7 5 |

**Grantor(s)** (Last name, first name, initials)
1. Public Stadium Authority _____
2. _____ _____

Additional names on page _____ of document.

**Grantee(s)** (Last name first, then first name and initials)
1. First & Goal Inc. _____
2. _____ _____

Additional names on page _____ of document.

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)

_____

_____

Additional legal is on page _____ of document.

**Assessor's Property Tax Parcel/Account Number**    ☐ Assessor Tax # not yet assigned

_____

The Auditor/Recorder will rely on the information provided on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010. I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document.

_Jodi Noe - PSA_ _____ Signature of Requesting Party

PSA 000149

# NOTICE OF CONFIRMATION OF COMPLETION DATE

This Notice of Confirmation is executed by WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a Washington public corporation ("PSA") and FIRST & GOAL INC., a Washington Corporation ("FGI").

This relates to Section 4.1 of the Master Lease dated November 24, 1998, between PSA and FGI ("Master Lease"), a Memorandum of which is recorded in King County, Washington on May 22, 2000 as Document Number 20000522000751.  The parties hereby confirm that:

1.    The Completion Date as used in the Master Lease is June 27, 2002.


Dated this 26th of July, 2002.

PSA:                              WASHINGTON STATE PUBLIC STADIUM
                                  AUTHORITY

                                  By:_____
                                      Ann M. Kawasaki


FGI:                              FIRST & GOAL INC.

                                  By:_____
                                      Robert J. Whitsitt, President


[ACKNOWLEDGEMENTS FOLLOW]

PSA 000150

**EXHIBIT A**
**Page 111 of 179**

STATE OF WASHINGTON )
                       )
COUNTY OF KING    )

      I certify that I know or have satisfactory evidence that **ANN M. KAWASAKI** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Executive Director of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a Washington public corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

      Dated this 20th day of July, 2002.



_____
(Signature of Notary)

J. E. Todd
_____
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at Bothell, WA

My appointment expires 6/9/05

STATE OF WASHINGTON )
                       )
COUNTY OF KING    )

      I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of the **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

      Dated this 31st day of July, 2002.

_____
(Signature of Notary)

KIM LINDBECK
_____
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at EDMONDS, WA.

My appointment expires 3/15/04

2

**EXHIBIT A**
**Page 112 of 179**

PSA 000151

# MASTER LEASE
## EXHIBIT 6.2
## POSSIBLE FUTURE PROJECT ACTIVITIES

NOTHING HEREIN SHALL BE CONSTRUED AS ENTITLING FGI TO USE THE PREMISES
OTHER THAN IN ACCORDANCE WITH SECTION 7.1.

Adult Shows

Advertising and Sponsorship

Aircraft Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc. (e.g., lighter than air, heavier than air, powered, unpowered, current, futuristic, vintage, etc.)

Antique/ Collectibles Fairs/ Events or Activities

Arcades/ Games/ Gaming

Art Events or Activities/ Demonstrations/ · Shows/ Sales/ Auctions/ etc.

Arts, Crafts and/or Hobby Events or Activities/ Demonstrations/ Shows/ Sales/ Auctions/ etc.

Automobile and /or Vehicle (e.g. motorcycles, off-road, tractor, powered, un-powered) Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc. (e.g. current, futuristic, vintage, etc.)

Bartering, Exchanging or Trading Events or Activities

Bazaars (Holiday etc.)

Beer, Wine and/or Food Events or Activities / Festivals/ etc.

Bicycle and other Human Powered and Unpowered Vehicle Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc.

Boat and other Watercraft Events or Activities/ Shows/ Races/ Demonstrations/ Sales/ Auctions/ etc. (e.g., motor powered, sail, unpowered, current, futuristic, vintage, etc.)

Bridal or Wedding Shows/ Events or Activities

"Bumbershoot" type Events or Activities

Carnivals

Charity Events or Activities/ Runs/ Walks/ Auctions/ Rallies/ etc.

Children Shows/ Events or Activities

Circuses

Civic Events or Activities

Classes

Combination Events or Activities

Commercial Events or Activities

Commercial Equipment Shows (e.g. office equipment)

Commercial Seminars (e.g. self-improvement such as Anthony Robbins)

Competitions (e.g. Band/ Cheerleader/ Dance/ Food (e.g. Chili Cook Off)/ Chess/ Athletic/ Academic/ etc.)

Computers and Technology Events or Activities

Concerts

Concessions/ Catering/ Novelties/ Visitor Services

Conventions

Corporate and Business Meetings (e.g. annual meetings)/ Parties/ Events or Activities

Demonstrations

Direct Marketing Events or Activities (e.g. Amway, Herbalife)

Disabled/Special Needs Persons Events or Activities

Distribution

"Double Dare" type Events or Activities

Educational Events or Activities

Emergency Events or Activities / Training/ Housing/ Medical/ Detention/ etc.

Entertainment Events or Activities

Exhibitions

"Extreme Sports" Events or Activities

Fairs

Family Shows/ Events or Activities

Farmers Markets

Fashion Shows/ Events or Activities

Festivals (e.g. Ethnic/ Food (e.g. Bite of Seattle)/ Music (e.g. Bumbershoot)/ etc.)

Film, Video, and Photography Events or Activities

Fireworks Shows

Flea Markets

Frisbee/ Frisbee Golf/ etc. Tournaments/ Events or Activities

Games and Related Events or Activities

Gatherings: (e.g. Million Man March, Promise Keepers)

Goodwill Games

PSA 000152

Government Events or Activities
"Haunted House" type Events or Activities
Highland Games/ Events or Activities
Holiday Events or Activities/ Festivals/ Shows/
    etc., (e.g. New Years, New Millennium,
    Fourth of July, Christmas, Easter, etc.)
Home/ Yard/ Garden Shows/ Events or
    Activities
"Hoop it Up" type Events or Activities
Hot Air Balloon Events or Activities
Hot Rod Car Shows/ Events or Activities
Industry Events or Activities/ Games/ etc., (e.g.
    log rolling, bus rodeo)
Junior Olympics
Labor/ Union Events or Activities
Laser Shows
Laser Tag
Manufacturing/ Assembly
Martial Arts Competitions/ Events or Activities
Mazes
Meetings
Meets
Model and/or Hobby Shows/ Demonstrations/
    Competitions/ Sales (e.g. aircraft, trains
    boats, cars)
Motivational Speakers
Motorcycle/ Bicycle / Motocross Competitions/
    Events or Activities
Movie Theater
Museums
Music Events or Activities/ Performances/
    Festivals (e.g. Bumbershoot/ Jazz/ "Lillith
    Fair"/ "Lollapalooza"/ Blues/ etc.)/
    Concerts/ Recitals/ etc.
"Major League Baseball Experience" type
    Events or Activities
"Major Soccer League Experience" type Events
    or Activities
Neighborhood Events or Activities
Noncommercial Seminars
Nonprofit Events or Activities
"NFL Experience" type Events or Activities t
Office
Olympic Games Events or Activities
Outdoor/ Sportsman Shows/ Events or Activities
Paintball
Parachuting/ Air Sports Events or Activities
Parades
Parties and Celebrations e.g. Weddings, Bar
    Mitzvahs, Confirmations, Birthdays, New
    Years, Millennium, etc.
Patriotic Events or Activities
Performance Theater

Pet, Livestock and other animal Shows/ Events
    or Activities
Plant Shows/ Events or Activities
Police Station
Political Conventions/ Events or Activities
Polo
Pope/ President/ Dignitary/ Celebrity Events or
    Activities
Private Events or Activities
Public Events or Activities
Public Service Events or Activities
Rallies
Races
Recreational Equipment Shows/ Events or
    Activities
Recreational Vehicle Shows/ Events or
    Activities
Religious Events or Activities / Revivals/
    Services/ Prayer Meetings/ Convocations/
    etc.
Religious Group or Organization Events or
    Activities / etc.
Retail Sales/ Showroom
Retreats
Rifle/ Gun/ Weapons/ Ammo Shows/ Sales/
    Events or Activities/ etc.
Rock Climbing and related Events or Activities
Rodeo
Runs
Sales
Science or Scientific Fairs/ Events or Activities
"Saturday Market" type Events or Activities
Scouting/Campfire/and Other Youth Group
    Events or Activities
"Seafair" Events or Activities
"Seahawk Experience" type Events or Activities
Seasonal Events or Activities (e.g. Octoberfest/
    Spring Time Celebration)
Seminars
Shakespearean type Festivals/ Events or
    Activities
Shows
Skating Events or Activities (including in-line
    and skateboards).
Ski Jump Events or Activities
Ski Shows/ Events or Activities
Social Events or Activities
Special Interest Group Events or Activities
Special Olympics Events or Activities
Speeches
Sports and/or Athletic Events or Activities,
    including without limitation school, college,
    amateur, semi-pro, professional, seniors,
    international, disabled, and charitable events

**EXHIBIT A**
**Page 114 of 179**

PSA 000153

or activities and activities, including without
limitation competitions, tryouts, training,
practices and exhibition, regular season,
preliminary, qualifying, post-season,
championship, tournament, and "all-star"
games for any sport, including without
limitation: football, soccer, tennis, softball,
baseball, lacrosse, track and field,
gymnastics, field hockey, bicycle, rugby,
fencing, Olympic-type events or activities,
decathlon, triathlon, biathlon, fencing,
shooting, boxing, wrestling, archery, golf,
cricket, croquet, lawn bowling, ice and
roller/in-line skating, skateboard, ice
skating, swimming, diving, skiing, etc.; and
including without limitation any
organizational, promotional, ceremonial,
celebratory, historical, fan participation, fan
recognition, community outreach, or other
or similar type event ancillary or otherwise
related to any such sporting or athletic
events or activities (or series or season of
such Events or Activities) or to any player
or coach or other participant, team, league
or other organization involved in such
events or activities.

Superbowl and Related Events or Activities
Swap Meets
Television Shows (e.g. Wheel of Fortune)
Theater
Theme Park
Tournaments
Tractor Pulls
Trade Shows/ Events or Activities
Training
Virtual Reality/Holograms
Walks
Warehouse
Water Park
Wholesale Sales/ Showroom
World Championships and Preliminaries
World Cup Soccer
World Masters Games

PSA 000154

## MASTER LEASE
## EXHIBIT 8.11

### FORM OF CONFIRMATION OF PSA OFFICE SPACE DESIGNATION
### ARCHITECT OF RECORD DRAWING
### A111 H - PSA OFFICES



Exhibit 8.11

**EXHIBIT A**
**Page 116 of 179**

PSA 000155

U.S. EXHIBIT HALLS & TOTAL SQUARE FEET
OF CURRENT EXHIBIT SPACE*

1.  McCormick Place
    Chicago, IL
    2,200,000

2.  Las Vegas Convention Center
    Las Vegas, NV
    1,300,000

3.  Georgia World Congress
    Center
    Atlanta, GA
    1,180,000

4.  Astrodome U*S*A (includes)
    Astrohall, Astroarena,
    Astrodome)
    Houston, TX
    1,130,000

5.  Orange County Convention
    Center
    Orlando, FL
    1,103,538

6.  Kentucky Exposition Center
    Louisville, KY
    1,068,050

7.  Sands Expo & Convention
    Center
    Las Vegas, NV
    1,006,396

8.  International Exposition (I-X)
    Center
    Cleveland, OH
    902,000

9.  Los Angeles Convention &
    Exhibition Center
    Los Angeles, CA
    865,000

10. Convention Center
    Dallas, TX
    850,000

11. Cobo Conference/
    Exhibition Center
    Detroit, MI
    800,000

12. Jacob K. Javits Convention
    Center of New York
    New York City, NY
    760,000

13. Anaheim Convention Center
    Anaheim, CA
    720,000

14. Ernest N. Morial
    Convention Center – New
    Orleans
    New Orleans, LA
    700,000

15. National Western Complex
    Denver, CO
    601,500

16. Rosemount Convention
    Center
    Rosemount, IL
    600,000

17. San Diego Convention
    Center
    San Diego, CA
    571,981

18. Indiana State Fairgrounds
    Event Center
    Indianapolis, IN
    559,000

19. Miami Beach Convention
    Center
    Miami Beach, FL
    502,717

20. America's Center/Cervantes
    Convention Center
    St. Louis, MO
    502,000

21. New Atlantic City Convention
    Center
    Atlantic City, NJ
    500,000

22. Kansas City Convention
    Center (includes H. Roe Bartle
    Hall)
    Kansas City, MO
    498,600

23. George R. Brown Convention
    Center
    Houston, TX
    451,500

24. Tulsa Exposition Center
    Tulsa, OK
    448,000

25. Moscone Convention Center
    San Francisco, CA
    442,000

26. Phoenix Civic Plaza
    Phoenix, AZ
    438,000

27. Pennsylvania Convention
    Center
    Philadelphia, PA
    435,000

28. New Charlotte Convention
    Center
    Charlotte, NC
    412,500

29. Cleveland Convention Center
    Cleveland, OH
    409,000

30. Long Beach Convention &
    Entertainment Center
    Long Beach, CA
    390,382

PSA 000156

**EXHIBIT A**
**Page 117 of 179**

*Tradeshow Week's Major Exhibit Hall Directory, 1997

31. Washington Convention
    Center
    Washington, D.C.
    381,000

32. Indiana Convention Center
    & RCA Dome
    Indianapolis, IN
    377,452

33. Palmetto Expo Center
    Greenville, SC
    375,000

34. American Royal Center
    Kansas City, MO
    372,000

35. Reno Convention Center
    Reno, NV
    370,000

36. Fairplex
    Pomona, CA
    348,920

37. Portland Metropolitan
    Exposition Center
    Portland, OR
    341,200

38. Minneapolis Convention
    Center
    Minneapolis, MN
    319,000

39. Eastern States Exposition
    West Springfield, MA
    317,000

40. Greater Columbia
    Convention Center
    Columbus, OH
    306,000

41. Baltimore Convention Center
    Baltimore, MD
    300,000

42. Colorado Convention Center
    of the Denver Convention
    Complex
    Denver, CO
    300,000

43. Cow Palace
    San Francisco
    300,000

44. Atlanta Market Center
    (Merchandise Mart, Apparel
    Mart, Gift Mart, INFORUM)
    Atlanta, GA
    296,000

45. Henry B. Gonzalez
    Convention Center
    San Antonio, TX
    291,600

46. King County Stadium/"The
    Kingdome"
    Seattle, WA
    281,147

47. CAL EXPO/California
    Exposition & State Fair
    Sacramento, CA
    263,600

48. Fort Washington Expo
    Center
    Fort Washington, PA
    260,000

49. Salt Palace Convention
    Center
    Salt Lake City, UT
    256,000

50. Wisconsin Center
    Milwaukee, WI
    256,000

51. Arizona State Fair Park
    &Exposition
    Phoenix, AZ
    255,880

52. Bayside Expo Center
    Boston, MA
    250,000

53. Dane County Expo Center
    Madison, WI
    250,000

54. San Mateo County Expo
    Center
    San Mateo, CA
    245,000

55. Louisiana Superdome
    New Orleans, LA
    240,030

56. Dr. Albert B. Sabin
    Convention Center
    Cincinnati, OH
    240,000

57. Tampa Convention Center
    Tampa, FL
    236,000

58. Charlotte Merchandise Mart
    Charlotte, NC
    224,000

PSA 000157

EXHIBIT A
Page 118 of 179

*Tradeshow Week's Major Exhibit Hall Directory, 1997

Here is the Stadia information that you requested.  Some do have names (naming rights), some do not.

NFL Stadia Opened Since 1996:

1.    ALLTEL Stadium - Jacksonville Jaguars
2.    Ericcson Stadium - Carolina Panthers
3.    Jack Kent Cooke Stadium - Washington Redskins
4.    Baltimore Ravens Stadium

NFL Stadia Proposed by 2006 (to date)

1.    Tampa Bay Stadium - Tampa Bay Buccaneers
2.    Tennessee Oilers Stadium
3.    Cleveland Browns Stadium
4.    Cincinnati Bengals Stadium
5.    Detroit Lions Stadium
6.    San Francisco 49ers Stadium (on hold)
7.    Washington State Football/Soccer Stadium and Exhibition Center - Seattle Seahawks
8.    Denver Broncos Stadium
9.    Pittsburgh Steelers Stadium

MLB Stadia Opened Since 1996:

1.    Turner Field - Atlanta Braves
2.    BankOne Ballpark - Arizona Diamondbacks

MLB Stadia Proposed by 2006 (to date):

1.    Miller Field - Milwaukee Brewers
2.    Safeco Field - Seattle Mariners
3.    Houston Astros Stadium
4.    Detroit Tigers Stadium
5.    Minnesota Twins Ballpark (on hold)
6.    New York Mets Ballpark
7.    Cincinnati Reds Ballpark

PSA 000158

| Free-Standing Parking Garages | | | |
|---|---|---|---|
| Garage | Location | Owner/Operator | Stalls |
| 6th & Cherry Garage | 6th & Cherry | Republic Parking | 770 |
| Post Office | 4th & Lander | Post Office | 980 |
| "Sinking Ship" | 2nd & Yesler | AMPCO | 250 |
| King County Administration Garage | 5th & Jefferson | King County | 740 |
| Bon Marche Garage | 3rd & Stewart | Bon Marche | 840 |
| Market & Western Garage | Western & Virginia | Pike Place Market PDA | 530 |
| Seattle Central Community College | Bolyston & Pine | SCCC | 527 |
| Swedish Hospital | Boren & James | Sweedish Hopital | 110 |
| Seattle University | Broadway & Marion | Sweedish Hopital | 100 (approx) |
| Providence Hospital | 15th & Jefferson | Providence Hospital | 724 |
| Mercer Garage | Mercer & 3rd | Seattle Center | 1500 |
| Key Arena Garage | Thomas & Warren | Seattle Center | 400-500 |

**EXHIBIT A**
**Page 120 of 179**

PSA 000159

9723&0ESIGM GARGES

MASTER LEASE
EXHIBIT 20.1.2

PERMITTED EXCEPTIONS

1.  Reservation of Possessory Rights by King County, Washington as set forth in that certain Warranty Deed executed by King County, Washington, as grantor, in favor of the Washington State Public Stadium Authority, as grantee, dated _____, 1998 recorded with King County Records, No. _____ (to be recorded).

2.  Assessment by Metro Tunnel filed February 13, 1991 with King County Records, No. 0440-766620-4876-09, provided that PSA shall be responsible for causing King County to pay all amounts owing as provided for in the Agreement and Letter of Intent referenced in Permitted Exception #21.

3.  An unrecorded lease between King County, as lessor, and Donald B. Murphy Contractors, Inc. & Associated, a joint venture, as lessee, dated December 1, 1973 relating to the stadium energy plant, as disclosed by an assignment for security purposes recorded under Recording No. 7402150375, which lease was subsequently assigned to Citicorp, as lessee, as disclosed by Recording No. 8612120582, and a bill of sale conveying the stadium plant to The Bank of California, N.A., by assignment recorded under Recording No. 7402150374.

4.  Financing Statement executed by King County, State of Washington Department of Stadium Administration ("King County"), as debtor, in favor of Citicorp Leasing, Inc. ("Citicorp") recorded on December 12, 1986 with King County Records, No. 8612120582, as continued by instruments recorded under Recording Nos. 9107030441, 9107250418 and 9609171167. PSA shall be responsible for causing King County to pay all amounts owing under such Financing Statement as provided for in the Agreement and Letter of Intent referenced in Permitted Exception #21 below.

5.  Liability, if any, for the pro-rated portion of current year's general taxes for the Property which is currently being carried on the tax rolls as exempt from taxation.

6.  Release of Damages executed by Northern Pacific Railway Company in favor of the City of Seattle in connection with the construction of a side sewer, dated April 23, 1949, recorded on April 29, 1949 with King County Records, No. 3897380.

7.  Release of Damages executed by Northern Pacific Railway Company in favor of the City of Seattle in connection with the construction of a side sewer, dated April 26, 1964, recorded on May 3, 1964 with King County Records, No. 5874002.

8.  Release of Damages executed by Great Northern Railway Co. in favor of the City of Seattle in connection with the construction of a side sewer dated October 11, 1967, recorded on November 15, 1967 with King County Records, No. 6265537.

Exhibit 20.1.2
Page 1

**EXHIBIT A**
**Page 121 of 179**

PSA 000160

9.    Ordinance No. 98852 creating the Pioneer Square Historic District.

10.   Easement for fire hydrants executed by King County, as grantor, in favor of the City of Seattle, as grantee, dated May 2, 1995, recorded May 2, 1995 with King County Records, No. 9505021077.

11.   Easement for utilities, hot water flows and returns, air conditioning water flows and returns, 10,000 gallon underground fuel tank with supply and return lines recorded February 15, 1974 with King County Records, No. 7402150375.

12.   Easement for one electric substation in favor of Burlington Northern Inc recorded March 8, 1979 with King County Records, No. 7903080743.

13.   Easement for underground electric distribution facilities in favor of the City of Seattle recorded February 26, 1997 with King County Records, No. 9702261536.

14.   City of Seattle Ordinance No. 118857 pertaining to amended land use and zoning affecting a westerly portion of the Project Site recorded with King County Records, No. 9801209276.

15.   Covenants for off-site parking from Merrill Place LLC recorded June 16, 1998 with King County Records, No. 9806160880.

16.   Covenants for off-site parking from Union Station Associates LLC recorded June 16, 1998 with King County Records, No. 9806160881.

17.   Covenant for off-site parking from Union Station Associates LLC recorded June 16, 1998 with King County Records, No. 9806160882.

18    Covenant for off-site parking from Washington State Major League Baseball recorded June 18, 1998 with King County Records, No. 9806181828.

19.   Covenant for off-site parking from Washington State Public Stadium Authority recorded July 20, 1998 with King County Records, No. 9807301034.

20.   Covenant for geologic hazard area from King County recorded July 31, 1998 with King County Records, No. 9807311097.

21.   Agreement and Letter of Intent among King County, Washington, City of Seattle, Washington State Public Stadium Authority, First & Goal Inc., Football Northwest Inc. and Washington State Department of Transportation dated June 25, 1998 and recorded with King County Records, No. 9807012001.

22.   Agreement, Stadium and Exhibition Center Property Contributions and Reservation of Possessory Rights between King County, Washington and The Washington State Public Stadium Authority dated September 30, 1998 and recorded with King County Records, No. _____ (to be recorded).

Exhibit 20.1.2
Page 2

EXHIBIT A
Page 122 of 179

PSA 000161

30002803.04

23.    Existing utility and electrical power easements.

24.    A prospective electrical power easement in favor of Seattle City Light for purposes of improving electrical services on and near the area of the current north lot of the Kingdome (to be recorded).

25.    A prospective public and private transportation easement in favor of the County's Transportation Department ("Metro") as described in the Agreement and Letter of Intent referenced in Permitted Exception #21 (to be recorded).

26.    A prospective easement in favor of the RTA in connection with a proposed Weller Street public access pedestrian bridge as such easement extends onto the Kingdome Parcel as described in the Agreement and Letter of Intent referenced in Permitted Exception #21 (to be recorded).

Exhibit 20.1.2
Page 3

**EXHIBIT A**
**Page 123 of 179**

PSA 000162

30002803 04

MASTER LEASE
EXHIBIT 26.14

After Recording Return To:

Allen D. Israel
Foster Pepper & Shefelman PLLC
1111 Third Avenue, Suite 3400
Seattle, Washington 98101

MEMORANDUM OF MASTER LEASE

GRANTOR:    WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a
            Washington public corporation ("PSA")

GRANTEE:    FIRST & GOAL INC., a Washington corporation ("FGI")

PREMISES LEGAL DESCRIPTION:

1.    Abbreviated Form:  Lots 1–35, Block 325 and Lots 1–35, Block 285,
      Seattle Tidelands

2.    Additional legal description is on Exhibit A attached hereto.

ASSESSOR'S PROPERTY TAX PARCEL ACCOUNT NUMBER(S):

Assessor's Property Tax Parcel Account Number(s) is(are) on Exhibit B attached
hereto.

1.    PSA has leased to FGI upon the terms and conditions of the Master Lease
between the parties dated November 24, 1998 (the "Master Lease"), certain real property
described in attached Exhibit A incorporated herein by reference (the "Premises"), together with
certain improvement to be constructed thereon pursuant to a Development Agreement between
the parties dated November 24, 1998 (the "Development Agreement").

2.    The Master Lease shall be for an initial term commencing on the Commencement
Date as defined therein and shall end on the last day of the thirtieth (30th) complete Lease Year
following the Completion Date, as defined therein, plus one completion term of up to 12 months,

30004695.02

Exhibit 26.14  Page 1

EXHIBIT A
Page 124 of 179                    PSA 000163

```
20000522000750
FIRST AMERICAN LE        13.00
PAGE 001 OF 006
05/22/2000,11:27
KING COUNTY, WA
```

## AFTER RECORDING MAIL TO:

Name___ Foster Pepper & Shefelman

Address___ 1111 Third Ave., Suite 3400

City/State___ Seattle, WA 98101

_____ attn: Allen D. Israel

Document Title(s): (or transactions contained therein)
1. Memorandum of Master Lease
2.
3.
4.

Reference Number(s) of Documents assigned or released:

☐  Additional numbers on page _____ of document

*First American Title Insurance Company*

353940·C3

1ST AM-S ⑥

*(this space for title company use only)*

Grantor(s): (Last name first, then first name and initials)
1.
2.   Washington State Public Stadium Authority
3.
4.
5. ☐  Additional names on page _____ of document

Grantee(s): (Last name first, then first name and initials)
1.   First & Goal Inc.
2.
3.
4.
5. ☐  Additional names on page _____ of document

Abbreviated Legal Description as follows: (i.e. lot/block/plat or section/township/range/quarter/quarter)

Por. Blocks 285 & 325 Seattle Tidelands

☐  Complete legal description is on page _____ of document

Assessor's Property Tax Parcel / Account Number(s):

766620-4876 & 766620-4880

WA-1

NOTE: *The auditor/recorder will rely on the information on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.*

Filed for Record at Request of
After Recording Return to:

Allen D. Israel
Foster Pepper & Shefelman PLLC
1111 Third Avenue, Suite 3400
Seattle, Washington 98101

## MEMORANDUM OF MASTER LEASE

**Grantor:**      WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a
Washington public corporation ("PSA")

**Grantee:**      FIRST & GOAL INC., a Washington corporation ("FGI")

**Legal:**       POR. Block 285 & 325, SEATTLE TIDELANDS, additional legal
description is on Exhibit A attached hereto

**Tax Number:**     POR. 76620-4876; and 766620-4880

1.      PSA has leased to FGI upon the terms and conditions of the Master Lease
between the parties dated November 24, 1998 as amended by First Amendment to Master Lease
dated July 22, 1999 (the "Master Lease"), certain real property described in attached Exhibit A
incorporated herein by reference (the "Premises"), together with certain improvement to be
constructed thereon pursuant to a Development Agreement between the parties dated November
24, 1998 as amended by First Amendment to Development Agreement dated November 1, 1999
(the "Development Agreement").

2.      The Master Lease shall be for an initial term commencing on the Commencement
Date as defined therein and shall end on the last day of the thirtieth (30th) complete Lease Year
following the Completion Date, as defined therein, plus one completion term of up to 12 months,
in accordance with the terms of the Master Lease. The term may be extended for up to three
extension periods of ten (10) years each, plus one completion term of up to twelve months in
accordance with the terms of the Master Lease. The Completion Date is expected to occur in late
2002.

3.      If the North Half Lot, as defined in the Property Contribution Agreement which is
described in the Development Agreement, is acquired by PSA, then upon such acquisition that
property shall become part of the Premises and subject to the Master Lease and the modified
description of the Premises shall be recorded as an amendment to this Memorandum.

30004595.03

**EXHIBIT A**
**Page 126 of 179**          PSA 000165

Section 27 of the Development Agreement contemplates the possibility of further development of certain portions of the Premises. In such event, the Premises shall be appropriately modified, if required, and the modified description of the Premises shall be recorded as an amendment to this Memorandum.

5.     In the event of a conflict between the provisions of this Memorandum and the Master Lease, the provisions of the Master Lease shall control.

Dated this _____ day of May 2000.

PSA:                                WASHINGTON STATE PUBLIC STADIUM AUTHORITY

By: _____
Frederick Mendoza, Vice-Chair of the Board

FGI:                                FIRST & GOAL INC.

By: _____
Robert L. Collier, Vice-President

[ACKNOWLEDGEMENTS FOLLOW]

30004695.03

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **FREDERICK MENDOZA** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Vice-Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this *15* day of May 2000.



*Bonnie Gillen Barney*
(Signature of Notary)
*Bonnie Gillen Barney*
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at *Kent*

My appointment expires *5/9/04*

BONNIE GILLEN BARNEY
NOTARY PUBLIC
STATE OF WASHINGTON
MISSION EXPIRES
MAY 9, 2004

---

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **ROBERT L. COLLIER** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Vice-President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this *16th* day of May 2000.

Notary Public
State of Washington
LESLEE A. BUSH
My Appointment Expires Feb. 07, 2003

*Leslee A. Bush*
(Signature of Notary)
*Leslee A. Bush*
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at *Bellevue*

My appointment expires *February 07, 2003*

3000-4695 03

**EXHIBIT A**
**Page 128 of 179**

PSA 000167

## EXHIBIT A

Legal Description

Lots 5 through 35, Block 285, Lots 5 through 35, Block 325, the Seattle Tide Lands as shown on the official maps of the Seattle Tide Lands in Volume 2, pages 29, 30, 31 and 32 in King County, Washington, and that portion of 3rd Avenue South, vacated per City of Seattle Ordinance No. 10552, conveyed to King County by Burlington Northern, Inc. by Warranty Deed recorded under King County Auditor's File No. 7112140537.

EXCEPT that portion of Lot 5 said Block 325, lying North of the adjusted line per City of Seattle Lot Boundary Adjustment Number 9806721.

And EXCEPT that portion of Lot 5 said Block 285 and said vacated 3rd Avenue South lying North of the adjusted line per City of Seattle Lot Boundary Adjustment Number 9806720.

And EXCEPT any portion of said Block 285 not conveyed to King County by said Warranty Deed recorded under King County Auditor's File No. 7112140537.

TOGETHER WITH an access and egress easement for vehicles and pedestrians of all types and kinds 90 feet in width (60 foot wide roadway plus sidewalks), being a southerly extension of 2nd Ave. So to the northerly boundary of Lot 5, Block 325 described above.

SUBJECT TO an easement by reservation for a portion of the footprint of the Weller Street pedestrian bridge touchdown together with related maintenance and access rights to and for the Weller Street pedestrian bridge on, over and through that portion of the following described property which is located within the unexcepted portions of Lot 5, Block 325 and vacated 3rd Avenue South described above:

A portion of the Southwest quarter of the Northwest quarter of Section 5, Township 24 North, Range 4 East, W.M.; King County, Washington being a portion of Block 285, Seattle Tidelands as recorded in Volume 2, pages 29 and 30 of Plats, Records of King County, Washington and also vacated 3rd Avenue South as vacated by City of Seattle Vacation Ordinance No. 10552. More particularly described as follows:

Commencing at the intersection of Occidental Avenue South and South King Street; thence South 89°53'29" East (Seattle Tidelands), 703.55 feet along the centerline of South King Street; thence South 00°06'31" West, 40.00 feet perpendicular to the centerline of South King Street to a point on the South margin of South King Street said point being described as 673.47 feet distant from the intersection of the East margin of Occidental Avenue South and the South margin of South King Street in a Warranty Deed filed under Auditor's File No. 7112140537 records of King County, Washington; thence continuing South 00°06'31" West, 60 feet along a property line per said Deed; thence South 89°53'29" East, 15.10 feet along a property line per said Deed; thence South 00°40'42" East, 100.10 feet; said point being the TRUE POINT OF

EXHIBIT A - 1

3000469503

PSA 000168

BEGINNING; thence South 88°53'57" East, 93.95 feet to a property line per said Deed; thence South 01°06'03" West, 110.00 feet along said property line; thence North 88°53'57" West, 102.55 feet; thence North 00°40'42" West, 110.06 feet; thence South 88°53'57" East, 11.41 feet to the TRUE POINT OF BEGINNING.

SUBJECT TO a 10 foot wide water line easement by reservation across a portion of Lot 4, Block 285, Seattle Tidelands, located 5 feet on each side of the following described centerline:

Commencing at the intersection of Occidental Avenue South and South King Street; thence South 89°53'29" East (Seattle Tidelands), 703.55 feet along the centerline of South King Street; thence South 00°06'31" West, 40.00 feet perpendicular to the centerline of South King Street to a point on the South margin of South King Street said point being described as 673.47 feet distant from the intersection of the East margin of Occidental Avenue South and the South margin of South King Street in a Warranty Deed filed under Auditor's File No. 7112140537 records of King County, Washington; thence continuing South 00°06'31" West, 60 feet along a property line per said Deed; thence South 89°53'29" East, 15.10 feet along a property line per said Deed; thence South 00°40'42" East, 100.10 feet; thence South 88°53'57" West, 11.41 feet; thence South 00°40'42" West, 14.68; said point being the TRUE POINT OF BEGINNING; thence North 89°38'57" West 19.19 feet, more or less, to the existing 6 inch water line running approximately north and south, and the termination of the herein described centerline.

SUBJECT TO an easement by reservation for extensions of 2nd Ave. So. (approximately 90 feet), 3rd Ave. So. (approximately 72 feet), and South Lane St. (approximately 72 feet) for the purpose of providing bus ingress, egress and through travel for the benefit of King County's Transportation Department. Grantee has the right to establish the exact location of this reserved easement so long as its configuration provides reasonable bus ingress and egress and through travel to the Washington State Department of Transportation's adjacent multi-modal facility. Improvements for this reserved easement are subject to the provisions of Section 1.5.4 of the Property Contribution Agreement and Paragraph 12a, third bullet of Exhibit C thereto (Agreement and Letter of Intent) which Property Contribution Agreement is more particularly identified in Exhibit B to this Statutory Warranty Deed as Exception to Title No. 15. This reserved easement shall be extinguished upon dedication of the area comprising the reserved easement as a public street right of way meeting the same specifications as this easement reservation.

FIRST AMENDMENT

to

MASTER LEASE

Dated November 24, 1998

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: July 22, 1999

1    FIRST AMENDMENT TO MASTER LEASE

2

3    EFFECTIVE DATE: July __, 1999

4

5    BETWEEN:    WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

6                       a Washington State public corporation

7                       401 Second Avenue South, Suite 520

8                       Seattle, WA  98104                          ("PSA")

9

10   AND:       FIRST & GOAL INC.,

11                       a Washington corporation

12                       110-110th Avenue N.E., Suite 550

13                       Bellevue, WA  98004                         ("FGI")

14

5         This is the First Amendment to the Master Lease dated November 24, 1998, between the

16   parties hereto (the "Lease"). All defined terms used herein shall have the same meaning as in the

17   Lease unless otherwise defined herein.

18        1.    Maintenance Plans. Sections 11.1.3 and 11.1.4 of the Lease are modified as

19   follows. FGI shall submit to PSA the first Annual Maintenance Plan and the first Five-Year Plan

20   for the Exhibition Center and Parking Facility after the RV show in March, 2000, but before June

21   30, 2000. Subsequent Annual Maintenance Plans and updates of Five-Year Plans shall be

22   submitted by FGI to PSA at least thirty (30) days prior to each Lease Year, except that FGI shall

23   submit to PSA the first Annual Maintenance Plan and the first Five-Year Plan for the Stadium

24   and Other Improvements on or before October 31, 2003.  PSA shall have 60 days from FGI's

25   submission to review and approve the first Annual Maintenance Plans for the Exhibition

26   Center/Parking Facility and Stadium/Other Improvements, respectively.  Subsequent Annual

27   Maintenance Plans shall be subject to the thirty (30) day review and approval period provided in

28   Section 11.1.3.

9         2.    Other Terms Ratified.

30        All other terms and conditions of the Lease are hereby ratified and affirmed.

FIRST AMENDMENT TO MASTER LEASE              **EXHIBIT A**        Res. 89 Exhibit A.DOC
08/23/99                          -1-        Page 132 of 179

PSA 000171

1
2      IN WITNESS WHEREOF, this First Amendment has been executed by the
3  Parties as of the dates set forth below.
4
5      PSA:                          WASHINGTON STATE PUBLIC STADIUM
6                                    AUTHORITY, a public corporation of the State of
7                                    Washington
8
9
                                     By: *Lorraine Hine*
10
11                                         Lorraine Hine, Chair of the Board
12
13     FGI:                          FIRST & GOAL INC., a Washington corporation
14
5
                                     By: *Robert Whitsitt*
16
17                                         Robert J. Whitsitt, President
18

PSA 000172

**EXHIBIT A**
**Page 133 of 179**

STATE OF WASHINGTON      )
                         ) ss.
COUNTY OF KING           )

I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 22 day of July, 1999.



_Robin M Wohlhueter_
(Signature of Notary)

_____
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at _Kíng County_

My appointment expires _4-14-01_

STATE OF WASHINGTON      )
                         ) ss.
COUNTY OF KING           )

I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 22 day of July, 1999.

_Cynthia L. Kelley_
(Signature of Notary)

_Cynthia L. Kelley_
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at _Kirkland, WA_

My appointment expires _9-28-01_

PSA 000173

**EXHIBIT A**
**Page 134 of 179**

FIRST AMENDMENT TO MASTER LEASE
08/23/99

-3-

Res. 89 Exhibit A.DOC

SECOND AMENDMENT

to

MASTER LEASE

Dated November 24, 1998

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: September *17*, 1999

## SECOND AMENDMENT TO MASTER LEASE

2

3  EFFECTIVE DATE: September __, 1999

4

5  BETWEEN:       WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

6                 a Washington State public corporation

7                 401 Second Avenue South, Suite 520

8                 Seattle, WA  98104                        ("PSA")

9

10  AND:          FIRST & GOAL INC.,

11                a Washington corporation

12                110-110th Avenue N.E., Suite 550

13                Bellevue, WA  98004                        ("FGI")

14

15        This is the Second Amendment to the Master Lease dated November 24, 1998, between

16  the parties hereto, as previously amended on July 22, 1999, (collectively, together with this

17  Second Amendment, the "Lease").  All defined terms used herein shall have the same meaning as

18  in the Lease unless otherwise defined herein.  All references in other documents to the "Master

19  Lease" shall be interpreted to mean the Lease as hereby amended, unless a different

20  interpretation is compelled by the circumstances.  All references to the "County Ordinance" shall

21  be interpreted to mean King County Ordinance No. 1999-0366, as amended or superseded from

22  time to time.  All references to the "MOU" shall be interpreted to mean the Memorandum of

23  Understanding Regarding Implementation of Various Aspects of Chapter 220, Laws of 1997,

24  dated August 26, 1998 among the Office of Financial Management of the State of Washington,

25  the Office of the State Treasurer of the State of Washington, and PSA, as amended on April 20

26  and April 28, 1999.

27        1.     Taxes and Ticket Surcharge.  Section 18 of the Lease is hereby amended to read

28  in its entirety as follows:

**EXHIBIT A**
**Page 136 of 179**

PSA 000175

18.1   King County Taxes.

King County is authorized by RCW 36.38.010 to levy a tax of up to 10% on tickets for admission to events at the Project (the "Admissions Tax"), and by RCW 36.38.040 to levy a tax of up to 10% on parking at the Project (the "Parking Tax"). FGI shall collect and remit such taxes as provided by Law, including the County Ordinance (and in applying such County Ordinance, FGI is "a person who by agreement with PSA is obligated to collect the tax") and by any agreement with King County or the State of Washington. Any failure of FGI to collect and remit such taxes as required by Law or any Admissions Tax and Parking Tax collection agreement with King County or the State of Washington, which failure is material and remains uncured, shall constitute an Event of Default under this Lease.

18.2   Ticket Surcharge.

18.2.1 In accordance with Section 13.2.3.2 of the Development Agreement and Section 19.3 of this Lease, PSA hereby imposes and FGI hereby consents to and agrees to pay, a Ticket Surcharge. The Ticket Surcharge of this Section 18.2 is the exclusive surcharge on tickets for events at the Project contemplated by Section 19.3 of this Lease and Section 13.2.3.2 of the Development Agreement. FGI agrees to this limited and exclusive exercise of PSA's authority under Section 105(5) of the Act. PSA shall not impose any other fees, charges, surcharges or taxes pursuant to Section 105(5) of the Act or Section 13.2.3.2 of the Development Agreement or Section 19.3 of this Lease without FGI's prior consent which may or may not be given in FGI's sole discretion.

18.2.2 FGI shall collect, remit, and report to the State Treasurer (notwithstanding anything in the Development Agreement or Lease to the contrary) the Ticket Surcharge substantially in the manner, and subject to substantially the terms (including without limitation record retention, late charges, and provisions for delinquent payments or underpayments), as those applicable to FGI's collection, remittance, and reporting of the Admissions Tax under Section 18.1 by the County Ordinance. Notwithstanding the foregoing, the amount of the Ticket Surcharge shall not be printed on tickets. For the purposes of applying this clause and Section 18.3.2 below, the rights

PSA 000176

1    of the County or State under the County Ordinance shall be considered corresponding

2    rights of PSA and the State Treasurer herein (and either PSA or the State Treasurer may

3    exercise such rights).  PSA and FGI may mutually agree upon different methods of

4    collection, remittance and reporting of Ticket Surcharges if they determine them to be

5    simpler or more efficient. FGI shall remit the Ticket Surcharge and Rent by separate

6    checks. FGI shall provide to PSA written evidence of payment of the Ticket Surcharge to

7    the State Treasurer at the same time FGI makes each such payment to the State Treasurer.

8    The Ticket Surcharge shall be computed as a percentage of charges for admission to

9    events computed in exactly the same manner and on the identical revenue base as the

10   Admissions Tax on the Project levied by King County pursuant to the authority of

11   Section 301(5) of the Act, codified as RCW 36.38.010(5).

12            18.2.3 The Ticket Surcharge percentage rate shall be one and two-tenths

13   percent (1.2%).  The Ticket Surcharge shall commence effective upon the effective date

14   that the County's Admission Tax is reduced to a rate, whereby such tax rate plus 1.2%

.5   does not exceed the "maximum permissible admissions tax rate" as defined in Section

16   13.2.3.3 of the Development Agreement ("Maximum Total Rate"); provided, however,

17   that:  (a) in the event of an NFL player strike or lockout which materially reduces the

18   number of Team Regular Season or Playoff Home Games played in the Stadium, or

19   damage or destruction materially reduces the number of events held at the Project, and if

20   the sum of the Ticket Surcharge and the Admissions Tax then being imposed is less than

21   the Maximum Total Rate, then the Parties shall, with approval of the State, negotiate a

22   reasonable temporary adjustment to the Ticket Surcharge percentage rate (up to a

23   maximum rate equal to the amount by which the Maximum Total Rate exceeds the actual

24   rate of Admissions Tax then being imposed) to compensate for the estimated lost Ticket

25   Surcharge for such reduced Home Games and/or events, but only to the extent reasonably

26   necessary to enable PSA to raise the Maximum Aggregate Amount contemplated by

27   Section 18.2.4, including projected future interest and earnings; and (b) such Ticket

28   Surcharge rate is always subject to reduction to a lesser rate (or, with the agreement of

29   FGI, to increase to a greater rate) as may be determined by the State Treasurer consistent

30   with Section 8.13 of the Lease, Protection of Tax-Exempt Bonds; and (c) PSA may

increase the Ticket Surcharge, to a percentage rate greater than one and two-tenths percent (1.2%), but not greater than a rate (when combined with the Admissions Tax rate) that would exceed the Maximum Total Rate, if PSA reasonably determines that projected revenues and earnings necessary to fund the Deferred Sales Tax Funds (defined in the Development Agreement) at any particular time are likely to be less than those previously projected as necessary to accrue sufficient Deferred Sales Tax Funds to timely repay the Deferred Sales Tax, but only to the extent reasonably necessary to enable PSA to raise the Maximum Aggregate Amount contemplated by Section 18.2.4, including projected future interest and earnings. In the event of the enactment of any Law which would make a subsequent imposition of any Ticket Surcharge, or increase of the rate of any Ticket Surcharge, illegal in the absence of the agreement of any person or persons other than the parties to this Lease, then the parties to this Lease shall in good faith negotiate an amendment to this Lease to achieve the intended outcome of this Section 18.2 while being fully consistent with such Law.

18.2.4 The Ticket Surcharge is intended to enable PSA to collect sufficient funds (including the aggregate proceeds of the Ticket Surcharge itself and the projected interest and other earnings accrued thereon) for, and may be utilized solely for the purpose of, enabling PSA to meet its obligations under Section 13.3 of the Development Agreement, up to the Maximum Aggregate Amount. The "Maximum Aggregate Amount" of the Ticket Surcharge, and interest and earnings thereon, shall be equal to the amount by which (x) the lesser of the actual Deferred Sales Tax or $37,000,000; exceeds (y) the amount of Deferred Sales Tax Funds (other than Ticket Surcharge proceeds) deposited pursuant to Section 13.2.3.1 of the Development Agreement and the MOU, and the interest earned on such funds. PSA shall timely perform all of its obligations under the Lease, the Development Agreement and the provisions of the MOU under the captions "Payments for Deferred Sales Taxes" and "PSA Obligation to Repay Expenditures in Excess of $300 Million Expenditure Limit." When, based on the reasonable projections, the amount of aggregate Ticket Surcharges theretofore collected and remitted, together with actual and projected future interest and earnings, equals or exceeds 95% of the total Ticket Surcharges and interest and earnings

thereon projected to be required under this Section 18.2, then FGI's obligation to collect and remit additional Ticket Surcharges shall cease, subject to the following sentence. At the time for the last installment payment by PSA of the Deferred Sales Taxes, FGI shall remit to PSA such amount as may be required (together with other remaining Deferred Sales Tax Funds) to timely pay in full the remaining Deferred Sales Taxes, up to the Maximum Aggregate Amount described in this Section 18.2.4, plus any additional amount required from FGI under Section 13.2.2 of the Development Agreement. Any disagreement between PSA and FGI as to when PSA has received sufficient Ticket Surcharge funds is subject to Dispute Resolution.

18.2.5 PSA shall cause the State Treasurer to establish an interest-bearing account (or to invest in interest-bearing instruments) for such Ticket Surcharge proceeds to accumulate funds to pay the amount of the Deferred Sales Taxes, which account will be a different account than the account described in Section 13.2.3.1 of the Development Agreement.

18.2.6. The Ticket Surcharge collected with respect to admissions in respect of Exhibition Hall Events is included in both "Exhibition Hall Revenues" and "Exhibition Hall Expenses."

18.3    Audit Rights.

18.3.1. As provided in Section 17.2 of the Development Agreement, FGI shall have the right to audit the applicable records of PSA to determine if PSA is in compliance with its obligations under Section 18.2 of the Lease and to determine when the Ticket Surcharge should terminate.

18.3.2 PSA shall have the same rights regarding auditing of records relating to Ticket Surcharges as the audit rights of the County and the State Treasurer relating to Admission Taxes pursuant to the County Ordinance and the statutes referenced therein. PSA may rely on, and participate in, any such audit performed by or for State Treasurer, or may perform its own audit. FGI shall fully cooperate with any such audit.

2.    Other Terms Ratified.

All other terms and conditions of the Lease are hereby ratified and affirmed.

**EXHIBIT A**
**Page 140 of 179**

3.   Inconsistencies in Development Agreement.

2          To the extent any provision of Section 13.2 of the Development Agreement is

3   inconsistent with the provisions of Section 18 of the Lease, the language in the Lease shall

4   control.

5

6          IN WITNESS WHEREOF, this Second Amendment has been executed by the

7   Parties as of the dates set forth below.

8       PSA:                          WASHINGTON STATE PUBLIC STADIUM

9                                     AUTHORITY, a public corporation of the State of

10                                    Washington

11

12

13      By: _Lorraine Hine_____

            Lorraine Hine, Chair of the Board

15      FGI:                          FIRST & GOAL INC., a Washington corporation

16

17

18      By: _Robert Whitsitt_____

19          Robert J. Whitsitt, President

20

STATE OF WASHINGTON  )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that LORRAINE HINE is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 17th day of September, 1999.

_Robin M Wohlhueter_
(Signature of Notary)

_Robin M Wohlhueter_
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at _King County_

My appointment expires _4/14-01_

STATE OF WASHINGTON  )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that ROBERT J. WHITSITT is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of FIRST & GOAL INC., a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this B7th day of September, 1999.

_Charlotte J. Kores_
(Signature of Notary)

_Charlotte J. Kores_
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington,
residing at _Renton_

My appointment expires _May 19, 2003_

**EXHIBIT A**
**Page 142 of 179**

PSA 000181

LL014007
Au #1402
Doc# 6299

Rev 115

THIRD AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: September 28, 2000

PSA 000182

C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.doc

# THIRD AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: September 28, 2000

BETWEEN:  WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
a Washington State public corporation
401 Second Avenue South, Suite 520
Seattle, WA 98104                                    ("PSA")

AND:  FIRST & GOAL INC.,
a Washington corporation
110-110th Avenue N.E., Suite 550
Bellevue, WA 98004                                   ("FGI")

This is the Third Amendment to the Master Lease between PSA and FGI (the "Lease"). All defined terms used in this Third Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Third Amendment.

1.    The First Amendment to the Master Lease dated November 24, 1998 is hereby deleted.

2.    Section 11.1.3 of the Master Lease is modified as follows:

The first sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"FGI shall submit to PSA, for PSA's review and approval, a plan for the Normal Maintenance activities to be conducted at the Premises by FGI for a given Lease Year (the "Annual Maintenance Plan"). The Annual Maintenance Plan for the Exhibition Hall shall be submitted by June 1, 2001 and by June 1 of each Lease Year thereafter. The first Annual Maintenance Plan for the Stadium and Other Improvements shall be submitted by October 31, 2003 and thereafter by June 1 of each Lease Year thereafter."

PSA 000183

**EXHIBIT A**
**Page 144 of 179**

09/27/00

3.    Section 11.1.4 of the Master Lease is modified as follows:

The first sentence of Section 11.1.4 is deleted in its entirety and replaced with the

following:

"FGI shall submit to PSA, for PSA's review and approval, a new
or updated plan of scheduled work to be performed upon the
Premises during the ensuing five-year period in order to meet
FGI's obligations under Section 11.3 for Major Maintenance and
under Section 11.1.2.2 for certain modifications, capital
improvements and upgrading, as well as FGI's rights under Section
11.4 for Modernization Improvements (a 'Five-Year Plan'). The
Five-Year Plan for the Exhibition Hall shall be submitted by
March 1, 2001 and by March 1 of each Lease Year thereafter. The
first Five-Year Plan for the Stadium and Other Improvements shall
be submitted by October 31, 2003, and thereafter by March 1 of
each Lease Year thereafter."

4.    No Further Modification.

The Lease remains in full force and effect and unmodified except by the Second

Amendment and this Third Amendment.

IN WITNESS WHEREOF, this Third Amendment has been executed by the

Parties to be effective on the date first set forth above.

PSA:                    WASHINGTON STATE PUBLIC STADIUM
                        AUTHORITY, a public corporation of the State of
                        Washington

By: _____
        Lorraine Hine, Chair of the Board

FGI:                    FIRST & GOAL INC., a Washington corporation

By: _____
        Robert J. Whitsitt, President

PSA 000184

2 C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.do

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 28th day of _September_ 2000.

_Robin M Worchester_
(Signature of Notary)

_____
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Kisep County WA_

My appointment expires _4-14-01_

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

Dated this 3 day of _November_, 2000.

_Charlotte J. Kores_
(Signature of Notary)

_Charlotte J. Kores_
(Legibly Print or Stamp Name of Notary)

Notary public in and for the State of Washington, residing at _Renton_

My appointment expires _May 19, 2003_

3C:\WINDOWS\TEMP\#236176 v3 - THIRD AMENDMENT TO MASTER LEASE.do

LL 017-07
F 1402
D 1071

FOURTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 1, 2001

PSA 000186

**EXHIBIT A**
**Page 147 of 179**

O:\Contracts & Agreements\#261614 v1 - Fourth Amendment to Master Lease.doc

# FOURTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: November 1, 2001

BETWEEN:    WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
a Washington State public corporation
401 Second Avenue South, Suite 520
Seattle, WA 98104                                              ("PSA")

AND:        FIRST & GOAL INC.,
a Washington corporation
505 Fifth Avenue South, Suite 900
Seattle, WA 98104                                              ("FGI")

This is the Fourth Amendment to the Master Lease between PSA and FGI (the "Lease"). All defined terms used in this Fourth Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Fourth Amendment.

1.    Section 11.1.3 of the Master Lease, as amended, is modified as follows:

1.1    The second sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"The Annual Maintenance Plan for the Exhibition Center and Parking Facility shall be submitted by June 1, 2001 and by August 1 of each Lease Year thereafter."

1.2    The third sentence of Section 11.1.3 is deleted in its entirety and replaced with the following:

"The first Annual Maintenance Plan for the Stadium and Other Improvements shall be submitted by August 1, 2003 and by August 1 of each Lease Year thereafter."

1.3    The fourth sentence of Section 11.1.3 is deleted and replaced with the following:

1

EXHIBIT A
Page 148 of 179

PSA 000187

"PSA shall have ninety (90) days from FGI's submission to review and approve, conditionally approve, or disapprove the Annual Maintenance Plan."

2.    Section 11.1.4 of the Master Lease, as amended, is modified as follows:

The fifth sentence of Section 11.1.4 is deleted in its entirety and replaced with the following:

"PSA shall have sixty (60) days from FGI's submission to review and approve, conditionally approve, or disapprove each Five-Year Plan."

3.    Section 11.1.5 of the Master Lease, as amended, is revised by adding the following after the first sentence of Section 11.1.5:

"PSA shall have ninety (90) days to review and comment on each annual maintenance report."

4.    <u>No Further Modification</u>.

The Lease remains in full force and effect and unmodified except by the Second Amendment, the Third Amendment and this Fourth Amendment.

IN WITNESS WHEREOF, this Fourth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                    WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a public corporation of the State of Washington

By: _____
        Lorraine Hine, Chair of the Board

**EXHIBIT A**
**Page 149 of 179**

PSA 000188

FGI:                    FIRST & GOAL INC., a Washington corporation


By:_____

         Robert J. Whitsitt, President