STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF KING          )

     I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

     Dated this 25TH day of October, 2001.

_____
(Signature of Notary)
J. E. Todd
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at Bothell, WA

My appointment expires 6-9-05

STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF KING          )

     I certify that I know or have satisfactory evidence that **ROBERT J. WHITSITT** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

     Dated this 15 day of NOVEMBER, 2001.

_____
(Signature of Notary)
KIM LINDBECK
(Legibly Print or Stamp Name of Notary)
Notary public in and for the State of Washington, residing at EDMONDS, WA

My appointment expires 3/15/04

LL 014-007
F 1402
D 10710

# FIFTH AMENDMENT

to

## MASTER LEASE

between

### WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

### FIRST & GOAL INC.,

a Washington corporation

Dated: October 25, 2001

1          FIFTH AMENDMENT TO MASTER LEASE

2

3    EFFECTIVE DATE:  October 25, 2001

4.   BETWEEN:          WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
5                      a Washington State public corporation
6                      401 Second Avenue South, Suite 520
7                      Seattle, WA 98104                                    ("PSA")

8    AND:              FIRST & GOAL INC.,
9                      a Washington corporation
10                     505 Fifth Avenue South, Suite 900
11                     Seattle, WA 98104                                    ("FGI")

12        This is the Fifth Amendment to the Master Lease between PSA and FGI (the "Lease").

13   All defined terms used in this Fifth Amendment shall have the same meaning as in the Lease

14   unless otherwise separately defined in this Fifth Amendment.

15

16        1.   Field Surface. A new Section 7A entitled FIELD PLAYING SURFACE is added

17   between the end of existing Section 7 and the beginning of existing Section 8, as follows:

18

19   "SECTION 7A              FIELD PLAYING SURFACE

20   7A.1  Field Surface.

21

22        7A.1.1 Initial Installation.    FGI is authorized to install and maintain an artificial
23        turf, known as FieldTurf™ ("FieldTurf"), as the playing surface in the
24        Stadium (the "Field Surface").  FieldTurf shall not have indelible lines,
25        yardage markers, hash marks, end zones, field logos or similar indicators,
26        and all such indicators shall be removable.  The design specifications for
27        the FieldTurf, including, but not limited to, its sub-base, drainage and
28        installation, are hereby approved to the extent they are consistent with the
29        FieldTurf manufacturer's specifications.    To the extent the design
30        specifications are not consistent with the FieldTurf manufacturer's
31        specifications, however, they shall be subject to the prior approval of the
32        PSA in its sole discretion. FGI agrees to defend and indemnify PSA from
33        any claim or liability on account of or arising out of the performance
34        characteristic of the FieldTurf Field Surface known as "GMAX." Except
35        as provided in the preceding sentence, the Project Design Documents and
36        Construction Documents for the Stadium, as described in the Development

PSA 000192

Agreement, are hereby deemed amended to reflect a FieldTurf Field Surface, and are hereby approved by the PSA.

7A.1.2 <u>Replacement</u>.  If after installation of the FieldTurf, FGI elects to change the Field Surface to another type of artificial surface or natural grass, such change shall constitute Major Maintenance or Modernization.

7A.2    <u>Olympic Games and/or World Cup Soccer</u>.

FGI acknowledges that FieldTurf is not currently approved for Olympic Games soccer by the International Olympic Committee and is not currently approved for the final round of World Cup Soccer by the Federation Internationale de Football Association ("FIFA").  If the Olympic Games are awarded to Seattle and Olympic Games soccer games are venued at the Stadium or in the event that the final round of World Cup Soccer games are venued at the Stadium, and at that time the regulatory body for whichever of the above competitions is occurring requires a natural grass playing field for soccer games, then FGI shall overlay the Field Surface with a temporary natural grass playing surface that meets the then current requirements of the applicable regulatory body.  The cost of complying with the requirements of this Section shall be paid by FGI, but such cost is not an allowed cost of preparing, operating, and restoring the Project for purposes of Section 6.3 or Major Maintenance or Modernization.  If there is any uncertainty over whether or not the International Olympic Committee or FIFA will allow its respective competitions to be played on the Field Surface, such uncertainty shall be resolved based on a letter signed by the applicable regulatory authority specifically identifying the approved playing surface.

7A.3    <u>National Teams Soccer</u>.

If required to attract and host a match involving either the United States Men's or Women's National Team or United States Men's or Women's Olympic Team, in either a World Cup qualifying match, Olympics qualifying match, or a "friendly" (exhibition) international exhibition match, FGI shall overlay the Field Surface with a temporary natural grass playing surface that meets the then current requirements of the applicable regulatory authority at FGI's sole expense, so long as the applicable regulatory authority allows the match on an overlay of natural grass.  Compliance with this Section is not Major Maintenance or Modernization. This obligation shall be limited to one match per Lease Year.  If in a given Lease Year, a match described above has not used the Stadium as its venue, then FGI's obligation under this Section shall nonetheless be satisfied for that Lease Year, and such obligation shall not cumulate or carry over to a future Lease Year.

PSA 000193

1      7A.4   International Exhibition Soccer.

2

3               If required to attract and host "First Division" or above international professional
4               soccer matches (games), FGI shall overlay the Field Surface with a temporary
5               natural grass playing surface that meets the then current requirements of the
6               applicable regulatory authority, except as limited in the following paragraph, so
7               long as the applicable regulatory authority allows the match on an overlay of
8               natural grass.  Compliance with this Section is not Major Maintenance or
9               Modernization.

10

11               This obligation shall be limited to three (3) matches per Lease Year when the
12               Field Surface is not accepted for play by either of the competing teams in the
13               specific match.  If in a given Lease Year, less than three (3) matches described
14               above use the Stadium as a venue, then FGI's obligation under this Section shall
15               nonetheless be satisfied for that Lease Year, and such obligation shall not
16               cumulate or carry over to a future Lease Year.  FGI's compliance with the
17               requirements of this Section 7A.4 shall be at FGI's sole cost and expense, except
18               that if the match has paid attendance of fewer than 40,000, FGI may charge the
19               promoter for some or all of the cost of compliance with the requirements of this
20               Section.  For purposes of this Section, attendees that occupy club seats, luxury
21               suites, or season ticket holders, who do not pay a separate charge for attendance at
22               the match, but rather receive tickets for the match as part of their annual payment
23               for attending Events at the Stadium, shall be counted as paid attendance.  In order
24               to effectuate this provision, FGI may require the promoter of the match to post
25               reasonable security to pay the estimated cost of FGI's compliance with this
26               Section, and that Security shall either be returned to the promoter or, if the
27               promoter does not promptly pay to FGI the estimated cost of FGI's compliance
28               with this Section, then such security shall be delivered to FGI following the
29               match, depending on whether the actual paid attendance is at least 40,000 or not,
30               all on specific terms and conditions to be more fully developed in the Use
31               Agreement with the promoter.

32

33      7A.5   Major League Soccer.

34

35               If Major League Soccer ("MLS") establishes a soccer team with Seattle as its
36               home city, FGI would enter into a long term use agreement which allows that
37               soccer team to use the Stadium as its home field, upon commercially reasonable
38               rates and terms.  If at that time, MLS requires a natural grass playing surface, and
39               if MLS has not sanctioned regular season games in another venue on other than a
40               natural grass surface, then FGI will remove the artificial Field Surface and replace
41               it with a natural grass Field Surface that conforms to the then current requirements
42               of both the NFL and the MLS; provided, however, that no permanent installation
43               will be made of a Field Surface prohibited by the NFL.  The cost of initially
44               replacing the Field Surface with natural grass shall be paid by FGI as its sole cost.
45               Compliance with this Section is not Major Maintenance or Modernization, except

as provided in Section 7A.8 below.  If there is any uncertainty regarding the Field Surface requirements of MLS, this shall be resolved by reliance on a letter signed by MLS specifically identifying the approved playing surface.  If at any time following installation of a natural grass Field Surface, MLS no longer requires a natural grass playing surface, or has sanctioned regular season games in another venue on other than a natural grass surface, FGI may, subject to Section 7A.1.2, remove the natural grass Field Surface and replace it with a Field Surface of other than natural grass, the cost of which shall be deemed to be Major Maintenance or Modernization.

7A.6    Amateur Events

FGI shall provide reasonable opportunities to qualifying high school, youth and recreational athletic groups to use the Stadium for athletic events ("Youth Events").  However, no such Youth Event shall interfere with FGI's scheduled commercial events or with dates then on "hold" for FGI's commercial events, which occur at the Stadium (including FGI's reasonable pre-event and post-event activities such as preparation, set-up and take-down).  When Youth Events occur at the Stadium, FGI shall charge only its Direct Costs.  FGI's "Direct Costs" for purposes of this paragraph are those incremental costs and expenses incurred by FGI solely due to holding the Youth Event at the Stadium, but not costs that FGI would have incurred anyway had the Youth Event not been held at the Stadium. This Section shall apply only while the Stadium Field Surface is not natural grass.

7A.7    Certain Common Terms.

For purposes of Section 7A.3 and .4 above:

"If required to attract and host the event" shall mean that whether the Field Surface is FieldTurf or overlaid natural grass is, in good faith, the decisive factor in determining whether such event shall be held at the Stadium.  In other words, the Field Surface is the only remaining issue in determining whether a promoter of the event will enter into a Stadium Use Agreement, upon commercially reasonable rates and terms, such that the event will be held at the Stadium if the Field Surface is overlaid with natural grass but the event will not be held at the Stadium if the Field Surface is not overlaid with natural grass.  For purposes of the foregoing provision, "commercially reasonable rates and terms" shall have its common meaning; provided, however, that FGI may recover from the promoter the costs that FGI would have reasonably incurred in preparing a natural grass field for hosting the subject event.  By "hosting," it is meant only that the Stadium will be the venue at which the event will be held; FGI shall not be required or expected to act as an event promoter, or to otherwise contribute economically to hosting an event in any manner whatsoever.

PSA 000195

-4-W:\annk\#269644 v6 - FINAL FIFTH AMENDMENT TO MASTER LEASE.doc

1    7A.8    Major Maintenance or Modernization, Cost of Preparing Field Surface.

2

3        If FGI permanently replaces the Field Surface with natural grass, such
4        replacement will be deemed Major Maintenance and/or Modernization to the
5        extent the Field Surface needs replacement anyway by reason of its age or
6        condition. (If at the time of such replacement, the Field Surface would not be due
7        for replacement by reason of remaining useful life, a pro rata portion of the
8        replacement shall be deemed Major Maintenance and/or Modernization.)"

9

10    2.    Integration.    All matters related to the Field Surface, including any and all

11    negotiations, discussions, correspondence, promises, and agreements relating thereto prior to the

12    date hereof, are fully integrated into this Amendment.

13

14    3.    No Further Modification.    The Lease remains in full force and effect and

15    unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

16    Amendment, and this Fifth Amendment.

17

'8        IN WITNESS WHEREOF, this Fifth Amendment has been executed by the

19    Parties to be effective on the date first set forth above.

20    PSA:        WASHINGTON  STATE  PUBLIC  STADIUM
21            AUTHORITY, a public corporation of the State of
22            Washington
23
24
25
26    By: _____
27        Lorraine Hine, Chair of the Board

28    FGI:        FIRST & GOAL INC., a Washington corporation
29
30
31
32    By: _____
33        Robert J. Whitsitt, President

34

PSA 000196

1   STATE OF WASHINGTON   )

2                         ) ss.

3   COUNTY OF KING       )

4

5        I certify that I know or have satisfactory evidence that LORRAINE HINE is the

6   person who appeared before me, and said person acknowledged that said person signed this

7   instrument, on oath stated that said person was authorized to execute the instrument and

8   acknowledged it as the Chair of the Board of the WASHINGTON STATE PUBLIC

9   STADIUM AUTHORITY, a public corporation of the State of Washington, to be the free and

10  voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11                   Dated this 25TH day of October, 2001.



12

13                               J. E. Todd

14                            (Signature of Notary)

15                        J. E. Todd

16                      (Legibly Print or Stamp Name of Notary)

17                      Notary public in and for the State of Washington,

18                      residing at Bothell, WA

19                      My appointment expires 6-9-05

20

21

22  STATE OF WASHINGTON   )

23                         ) ss.

24  COUNTY OF KING       )

25

26        I certify that I know or have satisfactory evidence that ROBERT J. WHITSITT

27  is the person who appeared before me, and said person acknowledged that said person signed this

28  instrument, on oath stated that said person was authorized to execute the instrument and

29  acknowledged it as the President of FIRST & GOAL INC., a Washington corporation, to be the

30  free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

31                   Dated this 1st day of ~~October~~ November, 2001.

32

33                                   

34                            (Signature of Notary)

35                      KIM LINDBECK

36                      (Legibly Print or Stamp Name of Notary)

37                      Notary public in and for the State of Washington,

38                      residing at EDMONDS, WA

39                      My appointment expires 3/15/04

SIXTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 20, 2003

PSA 000198

# SIXTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE:   November 20, 2003

BETWEEN:         WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
a Washington State public corporation
800 Occidental Ave So #700
Seattle, WA 98134                          ("PSA")

AND:              FIRST & GOAL INC.,
a Washington corporation
800 Occidental Ave So #200
Seattle, WA 98134                          ("FGI")

This is the Sixth Amendment to the Master Lease between PSA and FGI (the "Lease"). All defined terms used in this Sixth Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Sixth Amendment.

1.      Section 5.7.1.1 of the Master Lease is amended by adding the following sentence at the end of Section 5.7.1.1:

> "The L/C Reserve may be suspended and reinstated from time to time by PSA, in its sole discretion, pursuant to Section 5.7.4."

2.      Section 5.7.4 of the Master Lease is deleted in its entirety and replaced with the following:

> "5.7.4  L/C Reserve
>
> 5.7.4.1  At any time during any Lease Year, PSA may give FGI written notice requiring that FGI provide PSA with a standby letter of credit in the amount of the L/C Reserve (the "Reserve Letter of Credit"). FGI agrees to provide the Reserve Letter of Credit within thirty (30) days of receipt of PSA's written notice. The Reserve Letter of Credit will have a term ending on that last day of the then Lease Year or such shorter period of time as may be specified in PSA's notice to FGI requiring the procurement of a Reserve Letter of Credit. The Reserve Letter of Credit shall be issued by a financial institution reasonably acceptable to PSA, and may be drawn upon by PSA upon presentation of a "sight draft" in a reasonable, mutually agreed form.

5.7.4.2  To the extent PSA draws against the Reserve Letter of Credit in any Lease Year, then the amount of credit available to PSA under that Reserve Letter of Credit shall be reduced by such amount(s) drawn..  If PSA holds a Reserve Letter of Credit and has given FGI notice under Section 5.7.4.1 requiring a subsequent Reserve Letter of Credit, then PSA may draw on the existing Reserve Letter of Credit if FGI has not provided the replacement Reserve Letter of Credit when required by Section 5.7.4.1.

5.7.4.3  All out-of-pocket costs (excluding the cost of FGI's employees' time) associated with the Reserve Letter of Credit, including, without limitation, all service charges, shall be paid by FGI but shall be reimbursed to FGI by PSA, and FGI shall invoice PSA for such costs (supported by reasonable documentation of the costs) within thirty (30) days of the issuance of the Reserve Letter of Credit.  PSA shall pay the invoiced amount within thirty (30) days of receipt of FGI's invoice, and if PSA does not do so, the unpaid amount shall bear interest pursuant to Section 26.25 and shall be subject to a late charge in the amount set forth in Section 5.4.2.  In addition, after such 30 day period, all such invoiced amount, plus accrued interest and late charges, which remain unpaid by PSA may be applied as a credit against any Rents payable hereunder by FGI, and the credit will satisfy PSA's payment obligation when and to the extent so applied. The amounts paid by PSA pursuant to this Section 5.7.4.3 are Reasonable PSA Operating Expenses.

5.7.4.4  The amount of the Rent Letter of Credit described in Section 21.5 shall not affect the amount of the Reserve Letter of Credit."

3.    <u>No Further Modification</u>.

The Lease remains in full force and effect and unmodified except by the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment, the Fifth Amendment and this Sixth Amendment.

2C:\Documents and Settings\annk.PSA\Local Settings\Temporary Internet Files\OLK1FF\

PSA 000200

IN WITNESS WHEREOF, this Sixth Amendment has been executed by the Parties to be effective on the date first set forth above.

PSA:                              WASHINGTON STATE PUBLIC STADIUM
                                  AUTHORITY, a public corporation of the State of
                                  Washington

                                  By: _____
                                       Lorraine Hine, Chair of the Board

FGI:                              FIRST & GOAL INC., a Washington corporation

                                  By: _____
                                       Tod Leiweke, CEO

PSA 000201

3 C:\Documents and Settings\annk.PSA\Local Settings\Temporary Internet Files\OLK1FF\

STATE OF WASHINGTON      )
     ) ss.
COUNTY OF KING      )

       I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

       Dated this _23rd_ day of December, 2003.



       _J.E. Todd_
                          (Signature of Notary)
       _J.E. Todd_
          (Legibly Print or Stamp Name of Notary)
       Notary public in and for the State of Washington, residing
       at _Bothell, WA_

       My appointment expires _6-9-05_

STATE OF WASHINGTON      )
     ) ss.
COUNTY OF KING      )

       I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the person who appeared before me, and said person acknowledged that said person signed this instrument, on oath stated that said person was authorized to execute the instrument and acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

       Dated this _23rd_ day of December, 2003.



       _J.E. Todd_
                          (Signature of Notary)
       _J.E. Todd_
          (Legibly Print or Stamp Name of Notary)
       Notary public in and for the State of Washington, residing
       at _Bothell, WA_

       My appointment expires _6-9-05_

4C:\Documents and Settings\annk.PSA\Local Settings\Temporary Internet Files\OLK1FF\

SEVENTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: July 22, 2004

PSA 000203

# SEVENTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: July 22, 2004

BETWEEN:        WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
                a Washington State public corporation
                Qwest Field & Events Center
                800 Occidental Ave. S. #700
                Seattle, WA 98134                              ("PSA")

AND:            FIRST & GOAL INC.,
                a Washington corporation
                800 Occidental Ave. S., #200
                Seattle, WA 98134                              ("FGI")

        This is the Seventh Amendment to the Master Lease between PSA and FGI (the "Lease").

All defined terms used in this Seventh Amendment shall have the same meaning as in the Lease

unless otherwise separately defined in this Seventh Amendment.

        1.    Conformity of Due Dates.

                In order that both the Annual Exhibition Center Operating Expense Budget and

the Annual Maintenance Plan shall be due on the same date, Section 6.1.3 and a portion of

Section 11.1.3 are hereby amended to read:

                6.1.3. Annual Exhibition Center Operating Expense Budget

                At least thirty (30) days prior to the beginning of each Lease Year, FGI

shall submit to PSA its budget for Exhibition Center operations for that Lease Year, for PSA's

review and comment.

                11.1.3  Annual Maintenance Plan

                All prior amendments to Section 11.1.3 are deleted and superseded by this

Seventh Amendment. Section 11.1.3, in its entirety, shall read as follows:

-1-O:\Contracts & Agreements\Master Lease\Amendements\#451802-v4-Final Seventh Am

1   "At least thirty (30) days prior to each Lease Year, FGI shall
2   submit to PSA, for PSA's review and approval, a plan for the
3   Normal Maintenance activities to be conducted at the Premises by
4   FGI during that Lease Year (the "Annual Maintenance Plan").
5   PSA shall have ninety (90) days from FGI's submission to review
6   and approve, conditionally approve or disapprove the Annual
7   Maintenance Plan.   Any subsequent changes in the Annual
8   Maintenance Plan shall be approved under the same procedure as
9   for the initial approval of an Annual Maintenance Plan. FGI shall
10  perform Normal Maintenance substantially in accordance with the
11  PSA-approved Annual Maintenance Plan unless FGI has a
12  reasonable justification not to do so."

13
14  2.   Notices.  The addresses for purposes of notice under section 26.17 are:

15
16  If to PSA:        WASHINGTON STATE PUBLIC STADIUM
17                    AUTHORITY
18                    Qwest Field & Events Center
19                    800 Occidental Ave. S. #700
20                    Seattle, WA 98134
21                    Attn: Ms. Ann Kawasaki Romero, Executive Director
22                    Fax No.: 206-381-7949
23                    Confirmation No.: 206-381-7940

24  with a copy to:   BALL JANIK LLP
25                    101 SW Main Street, Suite 1100
26                    Portland, OR 97204
27                    Attn: Stephen T. Janik
28                    Fax No.: 503-295-1058
29                    Confirmation No.: 503-228-2525

30  If to FGI:        FIRST & GOAL INC.
31                    Qwest Field & Events Center
32                    800 Occidental Ave. S. # 200
33                    Seattle, WA 98134
34                    Attn: Mr. Lance Lopes, General Counsel
35                    Fax No.: 206-381-7557
36                    Confirmation No.: 206-381-7835
37

-2-O:\Contracts & Agreements\Master Lease\Amendements\#451802-v4-Final Seventh Am

1
2
3
4
5
6
7

    with a copy to:    Foster Pepper & Shefelman PLLC
    1111 Third Avenue, Suite 3400
    Seattle, Washington 98101
    Attn: Allen D. Israel
    Fax No.: 206-749-1957
    Confirmation No.: 206-447-8911

8    3.   <u>No Further Modification</u>.    The Lease remains in full force and effect and

9    unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

10    Amendment, Fifth Amendment, Sixth Amendment and this Seventh Amendment.

11

12    IN WITNESS WHEREOF, this Seventh Amendment has been executed by the

13    Parties to be effective on the date first set forth above.

14    PSA:    WASHINGTON STATE PUBLIC STADIUM
15    AUTHORITY, a public corporation of the State of
16    Washington
17
18
19
20    By _____
21    Frederick Mendoza, Vice Chair of the Board

22    FGI:    FIRST & GOAL INC., a Washington corporation
23
24
25
26    By: _____
27    Tod Leiweke, President

-3-O:\Contracts & Agreements\Master Lease\Amendements\#451802-v4-Final Seventh Am

PSA 000206

1    STATE OF WASHINGTON    )
2                           ) ss.
3    COUNTY OF KING         )
4
5           I certify that I know or have satisfactory evidence that **FREDERICK**
6    **MENDOZA** is the person who appeared before me, and said person acknowledged that said
7    person signed this instrument, on oath stated that said person was authorized to execute the
8    instrument and acknowledged it as the Vice-Chair of the Board of the **WASHINGTON STATE**
9    **PUBLIC STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the
10   free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11                    Dated this 22nd day of July, 2004.

12
13                                                    J E Todd
14                                                    (Signature of Notary)
15                                                    J. E. Todd
16                                                    (Legibly Print or Stamp Name of Notary)
17                                                    Notary public in and for the State of Washington,
18                                                    residing at Snohomish, WA
19                                                    My appointment expires 6-9-05
20
21
22   STATE OF WASHINGTON    )
23                          ) ss.
24   COUNTY OF KING         )
25
26          I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the
27   person who appeared before me, and said person acknowledged that said person signed this
28   instrument, on oath stated that said person was authorized to execute the instrument and
29   acknowledged it as the President of **FIRST & GOAL INC.**, a Washington corporation, to be the
30   free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

31                    Dated this 23rd day of July, 2004.

32
33                                                    J E Todd
34                                                    (Signature of Notary)
35                                                    J. E. Todd
36                                                    (Legibly Print or Stamp Name of Notary)
37                                                    Notary public in and for the State of Washington,
38                                                    residing at Snohomish, WA
39                                                    My appointment expires 6-9-05

                    -4-O:\Contracts & Agreements\Master Lease\Amendments\#451802-v4-Final Seventh Am

EIGHTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: November 17, 2005

PSA 000208

50591079.8

EXHIBIT A
Page 169 of 179

1        EIGHTH AMENDMENT TO MASTER LEASE

2

3   EFFECTIVE DATE: November 17, 2005

4   BETWEEN:        WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
5                   a Washington State public corporation
6                   800 Occidental Ave. S., #700
7                   Seattle, WA 98134                                    ("PSA")
8
9   AND:            FIRST & GOAL INC.,
10                  a Washington corporation
11                  800 Occidental Ave. S., # 200
12                  Seattle, WA  98134                                   ("FGI")

13       This is the Eighth Amendment to the Master Lease between PSA and FGI (the "Lease").

14  All defined terms used in this Eighth Amendment shall have the same meaning as in the Lease

15  unless otherwise separately defined in this Eighth Amendment.

16       1.    Annual Exhibition Center Operating Expense Budget.  Section 6.1.3 as amended

17  in the Seventh Amendment to the Master Lease dated July 22, 2004 (the "Seventh Amendment")

18  is hereby further amended to read in its entirety as follows:

19       6.1.3   Annual Exhibition Center Operating Expense Budget

20            At least thirty (30) days prior to the beginning of each FGI Fiscal Year,

21  FGI shall submit to PSA its budget for Exhibition Center operations for that FGI Fiscal

22  Year, for PSA's review and comment.  "FGI Fiscal Year" shall initially be the 12 month

23  period ending March 31 of each year, subject to FGI giving notice of change to PSA as

24  provided herein.  For the one-time period commencing January 1, 2006 and concluding

25  March 31, 2006, FGI shall submit to the PSA its budget for the Exhibition Center

26  operations for that period, for the PSA's review and comment, no later than December

27  31, 2005.

28  2.   Reporting Period.     Section 6.1.5 is hereby amended to read in its entirety as follows:

29       6.1.5   Reporting Period

50591079 8                                  -1-

PSA 000209

**EXHIBIT A**
**Page 170 of 179**

1    FGI shall submit to PSA, on or before the forty-fifth (45th) day of each
2    calendar quarter for the immediately preceding calendar quarter, a written statement
3    signed by FGI, and certified by its chief financial officer to be true and correct, showing
4    in detail the amount of Exhibition Hall Revenues, Exhibition Hall Expenses, and
5    Exhibition Hall Net Profits, as of the end of the preceding calendar quarter. In addition to
6    FGI's quarterly report of Exhibition Hall Net Profits, FGI shall submit to PSA an annual
7    audited report of Exhibition Hall Revenues, Exhibition Hall Expenses, and Exhibition
8    Hall Net Profits for the immediately preceding FGI Fiscal Year, not later than seven (7)
9    months following the end of each Lease Year. Each such report shall be certified as
10   accurate by the chief financial officer of FGI and each such annual report and final report
11   shall be accompanied by a certificate of an independent certified public accountant
12   reasonably satisfactory to PSA that such report has been prepared in accordance with
13   generally accepted accounting principles ("GAAP") consistently applied except as so
14   noted and accurately states the Exhibition Hall Revenues, Exhibition Hall Expenses, and
15   Exhibition Hall Net Profits for the period of such report. The format and detail of the
16   above reports shall be subject to the approval of PSA.

17   3.    Annual Reporting on Operations.    Section 8.9 is hereby amended to read in its entirety
18   as follows:

19          8.9    Annual Reporting on Operations

20          FGI shall submit to PSA for public disclosure not later than seven (7)
21   months following the end of each Lease Year an audited profit and loss financial
22   statement for FGI's operations of the Project for the immediately preceding FGI Fiscal
23   Year. This statement shall be certified as accurate by the chief financial officer of FGI
24   and shall be accompanied by a certificate of an independent certified public accountant
25   reasonably satisfactory to PSA that such statement has been prepared in accordance with
26   GAAP, except as so noted, and accurately states the profits and losses of FGI for the
27   period of such statement. The format and detail of the statement of profits and losses
28   shall be subject to the approval of PSA.

29   4.    Annual Maintenance Plan.    Section 11.1.3 as amended in the Seventh

EXHIBIT A
Page 171 of 179                                    PSA 000210

1    Amendment is hereby further amended to read in its entirety as follows:

2          11.1.3  Annual Maintenance Plan

3            At least thirty (30) days prior to each FGI Fiscal Year, FGI shall submit to
4    PSA, for PSA's review and approval, a plan for the Normal Maintenance activities to be
5    conducted at the Premises by FGI during that FGI Fiscal Year (the "Annual Maintenance
6    Plan"). PSA shall have one hundred twenty (120) days from FGI's submission to review
7    and approve, conditionally approve or disapprove the Annual Maintenance Plan. Any
8    subsequent changes in the Annual Maintenance Plan shall be approved under the same
9    procedure as for the initial approval of an Annual Maintenance Plan. FGI shall perform
10   Normal Maintenance substantially in accordance with the PSA approved Annual
11   Maintenance Plan unless FGI has a reasonable justification not to do so.

12       5.    Five-Year Major Maintenance and Modernization Plan.    Section 11.1.4 as
13   amended in the Fourth Amendment to the Master Lease dated November 1, 2001 is hereby
14   further amended to read in its entirety as follows:

15         11.1.4. Five-Year Major Maintenance and Modernization Plan

16           FGI shall submit to PSA, for PSA's review and approval, a new or
17   updated plan of scheduled work to be performed upon the Premises during the next five
18   FGI Fiscal Years in order to meet FGI's obligations under Section 11.1.2.2 for certain
19   modifications, capital improvements and upgrading, as well as FGI's rights under Section
20   11.4 for Modernization Improvements (a 'Five-Year Plan'). The Five-Year Plan for the
21   Exhibition Hall shall be submitted by March 1 of each Lease Year. The Five-Year Plan
22   for the Stadium and Other Improvements shall be submitted by March 1 of each Lease
23   Year. A Five-Year Plan may be broken down into Major Repair and Modernization
24   Improvement sections. PSA shall have ninety (90) days from FGI's submission to review
25   and approve, conditionally approve, or disapprove each Five-Year Plan. Any subsequent
26   changes in a Five-Year Plan shall be approved under the same procedure as for the initial
27   Five-Year Plan. FGI shall perform Major Maintenance and Modernization each year

**EXHIBIT A**
**Page 172 of 179**

PSA 000211

1      substantially in accordance with the PSA approved Five-Year Plan, as that Five-Year

2      Plan may be revised from year to year, unless FGI has a reasonable justification not to do

3      so.

4      6.    Annual Maintenance Report. Section 11.1.5 as amended in the Fourth

5      Amendment to the Master Lease dated November 1, 2001 is hereby further amended to read in

6      its entirety as follows:

7            11.1.5  Annual Maintenance Report

8            Within one hundred twenty (120) days following each FGI Fiscal Year,

9      FGI shall provide to PSA a report in reasonable detail on the prior FGI Fiscal Year's Normal and

10     Major Maintenance.  PSA shall have one hundred twenty (120) days to review and comment on

11     each annual maintenance report.  In addition, PSA shall have the opportunity to audit (generally

12     pursuant to the process described in Section 6.1.7) FGI's maintenance records.

13     7.    No Further Modification.    The Lease remains in full force and effect and

14     unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

15     Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment and this Eighth

16     Amendment.

17           IN WITNESS WHEREOF, this Eighth Amendment has been executed by the

18     Parties to be effective on the date first set forth above.

19     PSA:                          WASHINGTON  STATE  PUBLIC  STADIUM
20                                   AUTHORITY, a public corporation of the State of
21                                   Washington
22
23
24
25                                   By: _Lorraine Hine_____
26                                        Lorraine Hine, Chair of the Board

27

28

EXHIBIT A                    PSA 000212
Page 173 of 179

1      FGI:      .      FIRST & GOAL INC., a Washington corporation

2

3

4

5                        By:_____

6                              Tod Leiweke, CEO

**EXHIBIT A**
**Page 174 of 179**

PSA 000213

1    STATE OF WASHINGTON    )
2                              ) ss.
3    COUNTY OF KING         )

4

5         I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the
6 person who appeared before me, and said person acknowledged that said person signed this
7 instrument, on oath stated that said person was authorized to execute the instrument and
8 acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**
9 **STADIUM AUTHORITY**, a public corporation of the State of Washington, to be the free and
10 voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11                Dated this 17th day of November, 2005.



12
13
14                                 _Jodene E. Todd_
15                                 (Signature of Notary)
16                                 Jodene E. Todd
17                                 (Legibly Print or Stamp Name of Notary)
18                                 Notary public in and for the State of Washington,
19                                 residing at Mill Creek, WA
20                                 My appointment expires 10/9/09

21

22    STATE OF WASHINGTON    )
23                              ) ss.
24    COUNTY OF KING         )

25

26         I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the
27 person who appeared before me, and said person acknowledged that said person signed this
28 instrument, on oath stated that said person was authorized to execute the instrument and
29 acknowledged it as the Chief Executive Officer of **FIRST & GOAL INC.**, a Washington
30 corporation, to be the free and voluntary act of such corporation for the uses and purposes
31 mentioned in the instrument.

32               Dated this 8TH DECEMBER day of November, 2005.

33
34
35                                 (Signature of Notary)
36                                 KIM LINDBECK
37                                 (Legibly Print or Stamp Name of Notary)
38                                 Notary public in and for the State of Washington,
39                                 residing at EDMONDS, WA.
40                                 My appointment expires 3/15/08

NINTH AMENDMENT

to

MASTER LEASE

between

WASHINGTON STATE PUBLIC STADIUM AUTHORITY,

a public corporation of the State of Washington

and

FIRST & GOAL INC.,

a Washington corporation

Dated: February 23, 2006

PSA 000215

# NINTH AMENDMENT TO MASTER LEASE

EFFECTIVE DATE: February 23, 2006

BETWEEN:  WASHINGTON STATE PUBLIC STADIUM AUTHORITY,
a Washington State public corporation
800 Occidental Ave. S. #700
Seattle, WA 98134                                                    ("PSA")

AND:      FIRST & GOAL INC.,
a Washington corporation
800 Occidental Ave. S., #200
Seattle, WA 98134                                                    ("FGI")

This is the Ninth Amendment to the Master Lease between PSA and FGI dated November 24, 1998 (the "Lease"). All defined terms used in this Ninth Amendment shall have the same meaning as in the Lease unless otherwise separately defined in this Ninth Amendment.

1.    <u>Tobacco Sponsor Advertising</u>. The last sentence of Section 9.2 of the Lease is hereby deleted in its entirety and replaced with the following:

"No advertising of any form at the Premises will contain a promotion of tobacco products, except for: (i) point of sale advertising to the extent not prohibited by Laws and (ii) Permitted Sponsor Advertising. "Permitted Sponsor Advertising" shall be strictly limited to advertising which: (a) is displayed during a national or international touring event not involving the Team (the "Touring Event"); (b) is displayed at all of the other venues in which the Touring Event takes place; (c) is required to be displayed at the Touring Event pursuant to a written agreement between a company sponsoring all or part of the Touring Event and the promoter of the Touring Event; (d) is visible only within the interior (and not exterior) of the Stadium, Exhibition Hall, and/or other areas within the Premises which are specifically designated for use solely by the Touring Event; (e) does not violate any Laws or any of the prohibitions of that certain Master Settlement Agreement made by and among various parties, including 46 states of the United States of America and various tobacco companies, executed on November 23, 1998, as amended (the "MSA"); and (f) does not promote any specific tobacco product or contain any symbols or characters associated with any tobacco product, provided that it may contain the name of the tobacco company or the Brand Name (as that term is defined in Section II(i) of the MSA) sponsoring all or part of the Touring Event."

1    2.    <u>No Further Modification</u>.    The Lease remains in full force and effect and

2  unmodified except by the First Amendment, Second Amendment, Third Amendment, Fourth

3  Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eighth Amendment,

4  and this Ninth Amendment.

5

6              IN WITNESS WHEREOF, this Ninth Amendment has been executed by the

7  Parties to be effective on the date first set forth above.


8        PSA:              WASHINGTON STATE PUBLIC STADIUM
9                          AUTHORITY, a public corporation of the State of
10                         Washington
11
12
13
14                         By: _Lorraine Hine_____
15                             Lorraine Hine, Chair of the Board


16       FGI:              FIRST & GOAL INC., a Washington corporation
17
18
19
20                         By: _____
21                             Tod Leiweke, President


PSA 000217

1    STATE OF WASHINGTON   )

2                             ) ss.

3    COUNTY OF KING        )

4

5         I certify that I know or have satisfactory evidence that **LORRAINE HINE** is the

6    person who appeared before me, and said person acknowledged that said person signed this

7    instrument, on oath stated that said person was authorized to execute the instrument and

8    acknowledged it as the Chair of the Board of the **WASHINGTON STATE PUBLIC**

9    **STADIUM AUTHORITY,** a public corporation of the State of Washington, to be the free and

10   voluntary act of such corporation for the uses and purposes mentioned in the instrument.

11                  Dated this 23rd day of February, 2006.

12                                     *(Signature of Notary)*

13

14                                Jodene E. Todd

15

16                        (Legibly Print or Stamp Name of Notary)

17                     Notary public in and for the State of Washington,

18                     residing at Mill Creek, WA

19                     My appointment expires 6/9/09

20

21

22   STATE OF WASHINGTON   )

23                             ) ss.

24   COUNTY OF KING        )

25

26         I certify that I know or have satisfactory evidence that **TOD LEIWEKE** is the

27   person who appeared before me, and said person acknowledged that said person signed this

28   instrument, on oath stated that said person was authorized to execute the instrument and

29   acknowledged it as the President of **FIRST & GOAL INC.,** a Washington corporation, to be the

30   free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

31                  Dated this 28th day of February, 2006.

32                                      *(Signature of Notary)*

33

34

35                                Jodene E. Todd

36                        (Legibly Print or Stamp Name of Notary)

37                     Notary public in and for the State of Washington,

38                     residing at Mill Creek, WA

39                     My appointment expires 6/9/09

PSA 000218