1   The Honorable James L. Robart

8   IN THE UNITED STATES DISTRICT COURT
9   FOR THE WESTERN DISTRICT OF WASHINGTON
    AT SEATTLE

| | |
|---|---|
| STARK, *et al.* | Case No. CV06-1719 JLR |
| Plaintiffs, | SEAHAWKS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | (CONSENT) AND SUPPORTING MEMORANDUM OF AUTHORITIES |
| THE SEATTLE SEAHAWKS, FOOTBALL, NORTHWEST, LLC, *et al.*, | **NOTED FOR CONSIDERATION**: May __, 2007 |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Seahawks Defendants' Summary Judgment
Motion & Supporting Memorandum

Case No. CV06-1719 JLR

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

RELIEF REQUESTED ................................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS ................................................................................. 1

SUMMARY JUDGMENT STANDARD ..................................................................................... 3

SUMMARY OF ARGUMENT ..................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.   PLAINTIFFS VOLUNTARILY CONSENTED TO THE PAT-DOWNS. ............................ 4

    A.  Plaintiffs Admit That They Voluntarily Consented to the Pat-Downs. ............................. 5

    B.  Even Without Regard to Plaintiffs' Express Admission of Voluntary
        Consent, Undisputed Facts Establish Their Voluntary Consent. ....................................... 5

        1.  There was consent. ....................................................................................................... 6

        2.  Plaintiffs' consent was voluntary. ................................................................................ 8

CONCLUSION ............................................................................................................................ 11

Seahawks Defendants' Summary Judgment      **COVINGTON & BURLING LLP**
Motion & Supporting Memorandum      1201 PENNSYLVANIA AVE, NW
                                                    i     WASHINGTON, DC 20002
Case No. CV06-1719 JLR      TEL: 202.662.6000  FAX: 202.662.6291

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................. 3

*Dolan v. City of Tigard*, 512 U.S. 374 (1994) ............................................................................. 10

*Florida v. Jimeno*, 500 U.S. 248 (1991) ....................................................................................... 4

*Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir. 2006) .................................................................. 10

*Henry*, 615 F.3d at 1231 ............................................................................................................... 11

*Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir. 1999) ..................................... 10

*McMorris v. Alioto*, 567 F.2d 897 (9th Cir. 1978) ...................................................................... 10

*Morgan v. United States*, 323 F.3d 776 (9th Cir. 2003) ............................................................ 4, 7

*Pavao v. Pagay*, 307 F.3d 915 (9th Cir. 2002) ........................................................................... 4, 6

*Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006) .................................................. 10

*Scheuring v. Traylor Brothers, Inc.*, 476 F.3d 781 (9th Cir. 2007) ............................................... 3

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ................................................................. 3, 4, 8

*United States v. Aukai*, 440 F.3d 1168 (9th Cir. 2006) ................................................................. 7

*United States v. Cannon*, 29 F.3d 472 (9th Cir. 1994) ................................................................ 10

*United States v. Davis*, 482 F.2d 893 (9th Cir. 1973) .......................................................... passim

*United States v. Doran*, 482 F.2d 929 (9th Cir. 1973) ................................................................. 7

*United States v. Garcia*, 997 F.2d 1273 (9th Cir. 1993) ............................................................... 6

*United States v. Henry*, 615 F.2d 1223 (9th Cir. 1980) ............................................................ 6, 9

*United States v. Iglesias*, 881 F.2d 1519 (9th Cir. 1989) ............................................................ 10

*United States v. Impink*, 728 F.2d 1228 (9th Cir. 1984) .............................................................. 6

Seahawks Defendants' Summary Judgment
Motion & Supporting Memorandum

ii

Case No. CV06-1719 JLR

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

*United States v. Miner*, 484 F.2d 1075 (9th Cir. 1973) ................................................................. 8

*United States v. Patayan Soriano*, 361 F.3d 494 (9th Cir. 2004) ......................................... *passim*

*United States v. Rosi*, 27 F.3d 409 (9th Cir. 1994) ....................................................................... 6

*United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1995) ....................................................... *passim*

*United States v. Woodrum*, 202 F.3d 1 (1st Cir. 2000) ................................................................ 10

*Wyman v. James*, 400 U.S. 309 (1971) ....................................................................................... 10


### STATE CASES

*State v. Flowers*, 57 Wash. App. 636, 789 P.2d 333 (Wash. Ct. App. 1990) ............................... 10

*Washington v. Gibson*, 88 Wash. App. 1050 (Wash. Ct. App. 1997) ........................................ 4, 5

*Washington v. Head*, 136 Wash. 2d 619, 964 P.2d 1187 (Wash. 1998) ........................................ 4

*Washington v. McCrorey*, 70 Wash. App. 103, 851 P.2d 1234 (Wash. Ct. App. 1993) ................. 4

*Washington v. Reichenbach*, 153 Wash. 2d 126, 101 P.3d 80 (Wash. 2004) ............................ 3, 4


### FEDERAL CONSTITUTION & RULES

Fed. R. Civ. P. 56 ........................................................................................................................ 1, 3

U.S. Constitution amend. IV .......................................................................................................... 4

Seahawks Defendants' Summary Judgment  
Motion & Supporting Memorandum  
iii  
Case No. CV06-1719 JLR

**COVINGTON & BURLING LLP**  
1201 PENNSYLVANIA AVE, NW  
WASHINGTON, DC 20002  
TEL: 202.662.6000  FAX: 202.662.6291

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 56(b), defendants Seattle Seahawks, Football Northwest, LLC, and First & Goal Inc. respectfully move for summary judgment as to each of plaintiffs' three claims.

Plaintiffs seek to enjoin limited pat-down inspections that are a condition for admission to NFL games at Qwest Field; plaintiffs argue that such pat-downs violate the Fourth Amendment of the U.S. Constitution and its state counterpart. *But plaintiffs freely admit that, in order to watch NFL games in person, they have voluntarily consented to the pat-downs and that, in the absence of an injunction, they will continue to do so in the future.* Thus, even if the pat-downs constitute state action (the subject of another pending motion for summary judgment), they cannot violate plaintiffs' constitutional rights. Defendants are therefore entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

Beginning in the fall of 2005, in an effort to detect and deter the threat of suicide bomb attacks, the NFL required all persons attending NFL games to undergo a limited upper-body pat-down as a condition of admission. (Declaration of Paul A. Ainsworth in Support of Motion for Summary Judgment, Ex. A, ¶¶ 18, 28.)

There is no dispute that Seahawks fans, including plaintiffs, received ample notice of the pat-down requirement. The Seahawks began notifying the public about the requirement in August 2005; they continue to provide such notice. (Ainsworth Decl., Ex. B, ¶¶ 16-17.) Among other things, the Seahawks have issued press releases, sent emails to season ticket holders, and posted notices on the Qwest Field and Seahawks websites. (*Id.* ¶ 17.) The Seahawks have also posted signs at every stadium entrance and played audio announcements

Seahawks Defendants' Summary Judgment  
Motion & Supporting Memorandum  

Case No. CV06-1719 JLR

COVINGTON & BURLING LLP  
1201 PENNSYLVANIA AVE, NW  
WASHINGTON, DC 20002  
TEL: 202.662.6000  FAX: 202.662.6291

over the stadium loudspeakers. (*Id.*) In addition, since 2006, Seattle Seahawks season tickets have expressly stated:

> *You and your belongings may be searched upon entry into Qwest Field*, and prohibited items may be confiscated. *By tendering this ticket and entering Qwest Field, you consent to such searches* and waive any related claims you might have against the NFL, its Member Clubs, its affiliates, Seahawks, First & Goal and their agents. If you elect not to consent to those searches, you will be denied entry into Qwest Field.

(*Id.* ¶ 16 (emphasis added).)

Plaintiffs first learned of the pat-down policy in August 2005. (Ainsworth Decl., Exhibit C, 12:5-8; Ainsworth Decl., Ex. D, 27:9-12.) With notice of the requirement, plaintiffs attended games (and presented themselves for pat-downs) repeatedly during the 2005-06 season (Ainsworth Decl., Ex. E, ¶¶ 4-7.); renewed their season tickets for the 2006-07 season (Ainsworth Decl., Ex. D, 29:1-8); and attended every home game during this past season, presenting themselves for pat-downs each time (*id.* at 48:2-3).

Plaintiffs concede that they have given voluntary consent to the pat-downs and are prepared to do so in the future. (Ainsworth Decl., Ex. C, 78:12-79:7; Ainsworth Decl., Ex. D, 34:11-35:6, 56:9-58:19.) They admit that no one forces them to attend Seahawks games and that they could avoid the pat-downs merely by electing not to attend the games. (Ainsworth Decl., Ex. D, 34:11-35:6.) And they acknowledge that no one has threatened the use of force or criminal sanctions – or any other consequence, other than being denied admission to the game – if they were to withhold consent to the pat-downs. (Ainsworth Decl., Ex. C, 14:15-20.)

Seahawks Defendants' Summary Judgment  
Motion & Supporting Memorandum

Case No. CV06-1719 JLR

2

**COVINGTON & BURLING LLP**  
1201 PENNSYLVANIA AVE, NW  
WASHINGTON, DC 20002  
TEL: 202.662.6000 FAX: 202.662.6291

1   While plaintiffs assert that they have verbally "objected" to the pat-downs, they nonetheless have repeatedly chosen to "tolerate" them because they are Seahawks fans and consider Seahawks games "worth seeing." (Ainsworth Decl., Ex. C, 30:1-10.)

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding whether summary judgment is appropriate, this Court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party." *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007).

## SUMMARY OF ARGUMENT

Undisputed facts demonstrate that plaintiffs voluntarily consented to the pat-downs. Voluntary consent is an established exception to federal and state constitutional prohibitions on unreasonable searches. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973); *Washington v. Reichenbach*, 153 Wash.2d 126, 131, 101 P.3d 80, 84 (Wash. 2004); *United States v. Davis*, 482 F.2d 893, 913 (9th Cir. 1973). Because plaintiffs cannot meet their burden of establishing that they did not voluntarily consent to the pat-downs, defendants are entitled to summary judgment.

Seahawks Defendants' Summary Judgment Motion & Supporting Memorandum

Case No. CV06-1719 JLR

3

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

# ARGUMENT

## I. PLAINTIFFS VOLUNTARILY CONSENTED TO THE PAT-DOWNS.

The Fourth Amendment guarantees the right to be free from unreasonable searches. U.S. Const. amend. IV. It is well established that consent renders a search reasonable, and therefore constitutional, if the subject's consent is voluntary. *Morgan v. United States*, 323 F.3d 776, 781 (9th Cir. 2003) (citing *Florida v. Jimeno*, 500 U.S. 248, 252 (1991)); *see United States v. Patayan Soriano,* 361 F.3d 494, 501-02 (9th Cir. 2004). As the Ninth Circuit has expressly held, "consent vitiates a Fourth Amendment claim." *United States v. Van Poyck,* 77 F.3d 285, 291 (9th Cir. 1996).

Unlike a criminal case, in which the government bears the burden of proving consent to a challenged search, in a civil case the plaintiff "carries the ultimate burden of establishing each element of his claim, including lack of consent." *Pavao v. Pagay*, 307 F.3d 915, 918-19 (9th Cir. 2002). And whether consent to a search is voluntary "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. at 227.[1]

---

[1] The Fourth Amendment analysis applies equally to plaintiffs' state constitutional claim. Washington courts have held that consensual searches are valid under the state constitution, *Washington v. Reichenbach*, 153 Wash.2d 126, 131, 101 P.3d 80, 84 (Wash. 2004), and that the voluntariness of such consent is determined by applying the federal standard, s*ee Washington v. McCrorey*, 70 Wash.App. 103, 111, 851 P.2d 1234, 1239 (Wash. Ct. App. 1993) ("[T]he proper analysis for voluntary consent under article 1, section 7 should be consistent with the federal rule enunciated in *Schneckloth*."), *overruled on other grounds, Washington v. Head*, 136 Wash.2d 619, 624, 964 P. 2d 1187, 1189-90 (Wash. 1998); *Washington v. Gibson*, 88 Wash. App. 1050 (Wash. Ct. App. 1997) (same).

Seahawks Defendants' Summary Judgment
Motion & Supporting Memorandum

Case No. CV06-1719 JLR

4

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

### A. Plaintiffs Admit That They Voluntarily Consented to the Pat-Downs.

Plaintiffs admit that they voluntarily consented to the pat-downs in the past and are prepared to do so in the future in order to attend Seattle Seahawks games. (*See* Ainsworth Decl., Ex. C, 78:12-79:7; Ainsworth Decl., Ex. C, 34:11-35:6, 56:9-58:19.)

Mr. Stark testified that "when [he] attended the Seattle Seahawks games over the last two seasons, knowing of the pat-down procedures, [his] consent to those pat-down procedures was voluntary." (Ainsworth Decl., Ex. C, 78:12-25.) He further admitted that "if [he] decide[s] to attend Seattle Seahawks games in the future, and [a] pat-down is a requirement of attending those games, . . . [his] consent to those pat-downs will be voluntary." (*Id.* at 79:1-7.)

Mrs. Stark testified that her consent to the pat-downs is voluntary. She admitted that her "attendance at Seattle Seahawks games [is] voluntary," (Ainsworth Decl., Ex. D, 34:11-13); that she is "aware that pat-downs are a requirement to enter Qwest Field," (*id.* at 34:17-19); and that "by tendering [her] ticket and entering Qwest Field, [she] consented to the searches" (*id.* at 56:9-58:19).

Because there is no dispute as to the voluntariness of plaintiffs' consent to the pat-downs, there can be no violation of plaintiffs' Fourth Amendment rights. *See, e.g., Patayan Soriano,* 361 F.3d at 501-02.

### B. Even Without Regard to Plaintiffs' Express Admission of Voluntary Consent, Undisputed Facts Establish Their Voluntary Consent.

Even without regard to their express admissions, undisputed facts compel the conclusion that plaintiffs voluntarily consented to the pat-downs and will continue to do so if they decide to attend Seahawks games in the future. "In determining whether [the Starks]

Seahawks Defendants' Summary Judgment  
Motion & Supporting Memorandum  
Case No. CV06-1719 JLR

5

**COVINGTON & BURLING LLP**  
1201 PENNSYLVANIA AVE, NW  
WASHINGTON, DC 20002  
TEL: 202.662.6000  FAX: 202.662.6291

freely and voluntarily consented to the search, . . . the crucial factor is whether they could have freely withdrawn [from the gates at Qwest Field] and avoided the search." *United States v. Henry*, 615 F.2d 1223, 1230 (9th Cir. 1980). Undisputed evidence, as well as common sense, establish that plaintiffs easily could have done so, which in turn means that they voluntarily consented to the pat-downs and thereby vitiated their constitutional claims. *Van Poyck,* 77 F.3d at 291.

### 1. There was consent.

Consent may be expressed in words or implied by action. *See Pavao v. Pagay,* 307 F.3d 915 (9th Cir. 2002) (holding that "clear and unequivocal consent could be implied from the totality of the circumstances.") As the Ninth Circuit has noted, "[i]n most implied consent cases, the suspect himself takes some action that implies consent … ." *United States v. Impink,* 728 F.2d 1228, 1233 n.3 (9th Cir. 1984). Courts have also "infer[ed] consent from the cooperative attitude of a defendant." *Id.* at 1232 (citations omitted). *See United States v. Garcia,* 997 F.2d 1273, 1281 (9th Cir. 1993) (police officers' "request to talk" combined with affirmative responses and "step back clearing the way for the officers' entry are sufficient to give rise to an inference of consent"); *United States v. Rosi,* 27 F.3d 409 (9th Cir. 1994) (request to change his clothes and provision of a key to his condo supporting finding of consent). Here, there is no dispute that, with actual knowledge of the pat-down requirement, plaintiffs repeatedly and voluntarily presented themselves for pat-downs on game days, thereby manifesting their consent.

Most cases addressing the issue of consent focus on whether, before engaging in the conduct manifesting consent, the complaining party had actual or constructive knowledge of the search requirement. *See Van Poyck,* 77 F.3d at 291 (finding consent where

Seahawks Defendants' Summary Judgment  
Motion & Supporting Memorandum  

Case No. CV06-1719 JLR

6

**COVINGTON & BURLING LLP**  
1201 PENNSYLVANIA AVE, NW  
WASHINGTON, DC 20002  
TEL: 202.662.6000  FAX: 202.662.6291

the defendant "(1) signed a form warning him of monitoring and taping; (2) read signs above the phones warning of taping; and (3) read a prisoner's manual warning of the recordings").

Thus, in evaluating whether an airline passenger has consented to a search, the Ninth Circuit instructs courts to consider whether "signs, pre-boarding announcements, screening operations under way at nearby boarding gates, or other circumstances justified an inference that appellant was alerted to the procedures being employed and, by his attempt to board, manifested his willingness to submit to the search." *United States v. Davis,* 482 F.2d 893, 914 (9th Cir. 1973); *see also United States v. Doran*, 482 F.2d 929, 932 (9th Cir. 1973) (holding that when "signs and public address warnings" announced that airline passengers were subject to search, "[h]aving chosen to participate in the activity, the implication of consent is unavoidable").

In circumstances where the complaining party had such actual knowledge and voluntarily presented himself for a search, the Ninth Circuit has repeatedly found consent. *See, e.g., Van Poyck,* 77 F.3d at 291 (consent to surveillance of phone calls made during pre-trial detention); *Morgan*, 323 F.3d at 781 (consent to search for entry to military base); *United States v. Aukai*, 440 F.3d 1168 (9th Cir. 2006) (consent to search at airport).

Here, there is no dispute that plaintiffs had actual knowledge of the pat-down requirement when they presented themselves for pat-downs; accordingly, "the implication of consent is unavoidable." *Doran,* 482 F. 2d at 932. Signs at the stadium, public address announcements outside the stadium, and the backs of tickets provided actual notice to plaintiffs that they would be subject to search as a condition of entry to Seahawks games. (Ainsworth Decl., Ex. B, ¶¶ 16-17.) Indeed, plaintiffs concede that they have known of the pat-down requirement since August 2005 (Ainsworth Decl., Ex. C, 12:5-8) after which they

Seahawks Defendants' Summary Judgment  
Motion & Supporting Memorandum

Case No. CV06-1719 JLR

7

**COVINGTON & BURLING LLP**  
1201 PENNSYLVANIA AVE, NW  
WASHINGTON, DC 20002  
TEL: 202.662.6000  FAX: 202.662.6291

presented themselves for pat-downs *at least fourteen times* before filing suit (*see* Ainsworth Decl., Ex. E, ¶¶ 4-7; Ainsworth Decl., Ex. D, 48:2-3).  Even though plaintiffs have on occasion expressed objections to the policy, the undisputed fact that they have *repeatedly* presented themselves for pat-downs is dispositive.[2]

Plaintiffs further acknowledge that, despite the pat-down policy, they will attend Seahawks games in the future and, if necessary to gain entrance to the stadium, they will again voluntarily consent to the pat-downs.  (Ainsworth Decl., Ex. C, 79:1-7.)  Ninth Circuit law leaves no doubt that these circumstances constitute consent.  *See United States v. Miner*, 484 F.2d 1075, 1076 (9th Cir. 1973) (consent to initial search where defendant "admitted that he had flown six or seven times before, that he had see signs warning that all passengers and their baggage were subject to search, and that he knew what they meant").

### 2. Plaintiffs' consent was voluntary.

For a consensual search to be valid, the consent must, of course, be "freely and voluntarily given"; consent is voluntary unless it is the product of duress or coercion. *Schneckloth*, 412 U.S. at 219, 227.   This same standard applies to consent to searches for admission to government facilities such as  airports and military installations.  *See, e.g., Davis*, 482 F.2d at 914 ("The [*Schneckloth v.*] *Bustamonte* test would be applicable in determining whether consent to a preboarding search was 'voluntarily' given.").

---

[2]   The Ninth Circuit has occasionally used the term "implied consent" to refer to one of the factors for determining the reasonableness of an administrative search.  Although the challenged pat-downs should be deemed reasonable under this line of cases as well, there is no need for analysis under the administrative search framework here because plaintiffs' voluntary consent provides an independent basis for rejecting plaintiffs' constitutional claim.  *See Davis,* 482 F.2d at 914-15; *see generally Van Poyck,* 77 F.3d at 291 .

Seahawks Defendants' Summary Judgment
Motion & Supporting Memorandum

Case No. CV06-1719 JLR

8

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

In the decades since *Schneckloth*, the Ninth Circuit has identified five factors "as guideposts" to aid in determining whether consent was coerced or voluntary: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." *Patayan Soriano,* 361 F.3d at 502 (quotation omitted). Of course, none of the factors supports a finding of coerced consent here.

If a person has the opportunity to avoid the search, federal courts almost always find consent voluntary. *United States v. Henry*, 615 F.2d 1223, 1230 (9th Cir. 1980). For example, in *Henry,* which involved the search of a briefcase by airport security personnel, the Ninth Circuit took a common sense approach, holding consent voluntary because defendant could have avoided the search by withdrawing his briefcase and "walk[ing] out of the airport with it." *Id.* at 1230-31; *see id.* at 1231 ("the crucial factor is whether Henry could have freely withdrawn the briefcase and avoided the search").

Similarly, here, plaintiffs are free to avoid the pat-downs by not approaching the gates at Qwest Field or by not purchasing tickets in the first instance. (Ainsworth Decl., Ex. D, 34:11-35:6). Just as in *Henry,* "[n]o one attempted to compel [plaintiffs] to consent to" the pat-downs. (Ainsworth Decl., Ex. C, 14:15-20; Ainsworth Decl., Ex. D,37:17-22.) *See Henry,* 615. F.2d at 1231. ("No one attempted to compel Henry to consent to the search.").

Plaintiffs recognize that if they do not consent to the pat-downs, they cannot attend Seahawks games. (Ainsworth Decl., Ex. D, 37:9-13). But the choice between consenting to pat-downs and forgoing attendance at a football game has no constitutional significance; in fact, the Ninth Circuit and Washington courts have consistently found consent

Seahawks Defendants' Summary Judgment
Motion & Supporting Memorandum

Case No. CV06-1719 JLR

9

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

voluntary in circumstances substantially more coercive than those presented here. *See, e.g., Patayan Soriano,* 361 F.3d at 502-03 (consent voluntary despite police officer's threat that defendant's girlfriend's children would be taken away); *United States v. Cannon,* 29 F.3d 472, 474, 477 (9th Cir. 1994) (consent voluntary despite being given after a frisk and while seated in a patrol car); *United States v. Iglesias,* 881 F.2d 1519, 1522-23 (9th Cir. 1989) (consent voluntary despite officer's threats to return with dogs and search warrant); *State v. Flowers,* 57 Wash.App. 636, 645, 789 P.2d 333, 339 (Wash. Ct. App. 1990) (consent voluntary despite defendant's being "ordered out of his room at gunpoint by several officers . . . [and] ordered to kneel with his hands behind his head").[3]

In *Gilmore*, the Ninth Circuit held that conditioning the right to travel by air on consent to a search was not unconstitutional because the defendant "had a meaningful choice. He could have presented identification, submitted to a search, or left the airport. That he chose the latter does not detract from the fact that he could have boarded the airplane had he chosen one of the other two options." 435 F.3d at 1139. This common sense recognition, which echoes the Ninth Circuit's decision in *Henry*, should be dispositive here. Because plaintiffs

---

[3] The unconstitutional conditions doctrine similarly has no application here. As the Supreme Court has explained, "[u]nder the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). Attending NFL games is not a constitutional right; and plaintiffs receive no *governmental* benefit from consenting to the pat-downs. *See United States v. Woodrum*, 202 F.3d 1, 10 (1st Cir. 2000); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 368 (7th Cir. 1999).

Indeed, the Ninth Circuit has rejected unconstitutional conditions challenges to airport screening searches despite the fact that such searches implicate the constitutional right to interstate travel. *See Gilmore v. Gonzales*, 435 F.3d 1125, 1139 (9th Cir. 2006); *United States v. Davis*, 482 F.2d 893, 913 (9th Cir. 1973). Similarly, conditions requiring a person to forgo welfare benefits or the right to pursue a profession have been deemed insufficient to constitute an unconstitutional condition that negates consent. *McMorris v. Alioto*, 567 F.2d 897, 901 (9th Cir. 1978) (legal profession); *Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006) (welfare benefits); *see also Wyman v. James*, 400 U.S. 309, 317-26 (1971) (same).

Seahawks Defendants' Summary Judgment
Motion & Supporting Memorandum
Case No. CV06-1719 JLR

10

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

1   "could have freely withdrawn [from the gates at Qwest Field] and avoided the search," their

2   consent must be deemed voluntary.  *Henry,* 615 F.3d at 1231.

3          And "[b]ecause consent vitiates a Fourth Amendment claim, [plaintiffs'] Fourth

4   Amendment claim independently fails on this ground." *Van Poyck,* 77 F.3d at 291.

## CONCLUSION

       Undisputed facts establish that plaintiffs have consented to the pat-downs and that their consent was voluntary.  Because plaintiffs cannot establish a violation of their constitutional rights, the Seahawks Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

        /s/ Paul A. Ainsworth

| *Of Counsel:* | Tim J. Filer, WSBA #16285 |
| --- | --- |
| Gregg H. Levy | Jeffrey S. Miller, WSBA #28077 |
| Paul A. Ainsworth | FOSTER PEPPER PLLC |
| COVINGTON & BURLING LLP | 1111 Third Avenue, Suite 3400 |
| 1201 Pennsylvania Ave, NW | Seattle, WA 98101 |
| Washington, DC 20004 | tel: 206.447.4400 |
| tel: 202.662.6000 | fax: 206.447.9700 |
| fax: 202.662.6291 | |

May 11, 2007

---

Seahawks Defendants' Summary Judgment  
Motion & Supporting Memorandum

11

**COVINGTON & BURLING LLP**  
1201 PENNSYLVANIA AVE, NW  
WASHINGTON, DC 20002  
TEL: 202.662.6000  FAX: 202.662.6291

Case No. CV06-1719 JLR

**CERTIFICATE OF SERVICE**

I HEREBY certify that on May 11, 2007, I electronically filed the foregoing Motion for Summary Judgment and Memorandum of Authorities, and supporting materials with the Clerk of the Court using the ECM/CMF system which will send notification of the filing to Timothy G. Leyh, Esq. and Christopher T. Wion, Esq. of Danielson Harrigan Leyh & Tollefson LLP, 999 Third Avenue, Suite 4400, Seattle, WA 98104, Counsel for Plaintiffs, and John J. Dunbar of Ball Janik LLP, 101 Southwest Main Street, Suite 1100, Portland, OR 9720, Counsel for Defendants the Washington State Public Stadium Authority and Lorraine Hine, in her official capacity as Chairperson of the Washington State Public Stadium Authority board of directors.

    /s/  Paul A. Ainsworth
Paul A. Ainsworth
COVINGTON & BURLING LLP
1201 Pennsylvania Ave, N.W.
Washington, DC. 20004
tel: 202.662.5416
fax: 202.662.6291

Seahawks Defendants' Summary Judgment
Motion & Supporting Memorandum
Case No. CV06-1719 JLR

12

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291