# EXHIBIT C

Dockets.Justia.com

Frederick Stark                                                      April 26, 2007

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

------------------------------------------------------

FRED and KATHLEEN STARK, a          )
married couple,                     )    ORIGINAL
                                    )
          Plaintiffs,               )
                                    )
     vs.                            )    No. CV06-1719 JLR
                                    )
THE SEATTLE SEAHAWKS, FOOTBALL      )
NORTHWEST, LLC, a Washington        )
limited liability company,         )
FIRST & GOAL, INC., a Washington    )
corporation, THE WASHINGTON         )
STATE PUBLIC STADIUM AUTHORITY,     )
a Washington municipal              )
corporation, and LORRAINE HINE,     )
in her capacity as chair of the     )
Washington State Public Stadium     )
Authority board of directors,       )
                                    )
          Defendants.               )


------------------------------------------------------

Deposition Upon Oral Examination Of
FREDERICK B. STARK

------------------------------------------------------

8:55 a.m.

April 26, 2007

1111 Third Avenue, Suite 3200

Seattle, Washington


REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661

Exhibits to Ainsworth Decl.
Page 81

Frederick Stark                                                      April 26, 2007

Page 12

1        Q.    Is there anyone besides your wife that you

2    know that regularly attends Seahawks games at Qwest

3    Field?

4        A.    No.

5        Q.    When did you first learn about the pat-down

6    policy at Qwest Field?

7        A.    It would have been a preseason game in 2005,

8    probably August.

9        Q.    Did you learn prior to attending that game

10   in August 2005 that there would be pat-downs at the

11   Seahawks game?

12       A.    No.

13            MR. WION:    And I object to the extent that

14   that mischaracterizes his prior testimony.

15       Q.    How did you learn about the pat-down policy

16   at Qwest Field?

17       A.    I was there and there was a pat-down policy.

18       Q.    Did you see any signs when you came to Qwest

19   Field?

20       A.    I did not.

21       Q.    Do you read the newspaper, sir?

22       A.    I do.

23       Q.    Do you recall seeing press coverage

24   announcing there would be pat-downs at Qwest Field?

25       A.    No.

SEATTLE DEPOSITION REPORTERS
www.seadep.com          (206)622-6661 * (800)657-1110          FAX: (206)622-6236
495a7286-4cee-47b1-ad62-0a1202d27bc7

Exhibits to Ainsworth Decl.
Page 82

Frederick Stark                                                April 26, 2007

Page 14

1      objection, but that's fine.

2            Q.   Go ahead.

3            A.   I'm sorry, what was the question?

4                 (Reporter read back as requested.)

5            A.   In reference to attending Seahawks games, I

6      don't know.

7            Q.   Do you think you would have remembered that

8      if that had happened?

9            A.   Probably not.

10           Q.   You don't think you'd remember if you were

11     patted down by someone carrying a badge or a gun?

12                MR. WION:   Objection, asked and answered.

13           Q.   You can answer.

14           A.   My answer is the same.

15           Q.   Has any pat-down screener ever threatened to

16     use force to search you, sir?

17           A.   No.

18           Q.   Has anyone threatened you with criminal

19     sanctions if you did not consent to the search?

20           A.   No.

21           Q.   Have you ever contacted the Seattle Seahawks

22     regarding the pat-down policy?

23           A.   I have.

24           Q.   When did you contact them?

25           A.   I do not recall the date.

Exhibits to Ainsworth Decl.
Page 83

Frederick Stark                                                    April 26, 2007

Page 30

1        Q.    And what did you consider at that time, sir?

2        A.    Well, whether it was going to be a game

3    worth seeing.   Whether it was worth going to tolerate

4    the pat-down procedure.   Yeah.

5        Q.    At that time, sir, did you understand you

6    had a choice to not attend the football game?

7        A.    Yes.

8        Q.    And you understand you made the choice to

9    attend the football game?

10       A.    Yes.

11       Q.    And you understand that by making that

12   choice you would be patted down?

13             MR. WION:   Object to the form.

14       A.    No.

15       Q.    Why didn't you understand that, sir?

16       A.    Because there had been times I have not been

17   patted down.

18       Q.    On how many occasions were you not patted

19   down, sir, prior to the start of the 2005 season?

20       A.    I'm sorry, prior to the start of the 2005

21   season --

22       Q.    I'm sorry, I asked the wrong question.

23             After the start of the 2005 season, on how

24   many occasions have you attended a Seahawks game where

25   you have not been patted down?



Frederick Stark                                                April 26, 2007

Page 78

1          MR. WION:  Objection, mischaracterizes his

2     testimony.  Objection to form.

3          A.   Do I agree that my consent was voluntary, is

4     that the question I heard?

5          Q.   No.

6          MR. AINSWORTH:  Would you reread the

7     question.

8               (Reporter read back as requested.)

9          MR. WION:  Same objection.

10         A.   Involuntary.

11              No.

12         Q.   So, Mr. Stark, do you agree with me that

13    when you attended the Seattle Seahawks games over the

14    last two seasons, knowing of the pat-down procedures,

15    that your consent to those pat-down procedures was

16    voluntary?

17         MR. WION:  Objection to the form,

18    mischaracterizes prior testimony.

19         A.   I'm sorry, just -- could you repeat the

20    question?

21              (Reporter read back as requested.)

22         MR. WION:  Same objections.

23         A.   Beyond my counsel's objections, I would have

24    to say yes, or including his objections, or whatever

25    that all is.



Exhibits to Ainsworth Decl.
Page 85

Frederick Stark                                              April 26, 2007

Page 79

1        Q.    And sir, if you decide to attend Seattle

2    Seahawks games in the future, and pat-down is a

3    requirement of attending those games, do you agree

4    with me that your consent to those pat-downs will be

5    voluntary?

6                 MR. WION:   Objection to the form.

7        A.    Yes.

8                 MR. AINSWORTH:   John?

9             I have no further questions.   Mr. Dunbar

10   will have some for you.

11                    E-X-A-M-I-N-A-T-I-O-N

12   BY MR. DUNBAR:

13       Q.    Mr. Stark, my name is John Dunbar, and I

14   represent the Public Stadium Authority and Lorraine

15   Hine.

16            Have you ever seen Ms. Hine's declaration in

17   this case?

18       A.    Possibly.   I'm...

19                 MR. DUNBAR:   Why don't you go ahead and mark

20   that as our next one.

21                    (Exhibit-45 marked.)

22       Q.    You've been handed a copy of Exhibit-45,

23   correct?

24       A.    Yes.

25       Q.    And that is the declaration of Lorraine

Frederick Stark                                                        April 26, 2007

Page 118

1                          S-I-G-N-A-T-U-R-E

2

3

4              I declare under penalty of perjury under

5        the laws of the State of Washington that I have read

6        my within deposition, and the same is true and

7        accurate, same and except for changes and/or

8        corrections, if any, as indicated by me on the CHANGE

9        SHEET flyleaf page hereof.  Signed in...............,

10       WA, on the........day of................, 2007.

11

12

13

14                      ..........................

15                      FREDERICK B. STARK

16                      Taken: April 26, 2007

17

18

19

20

21

22

23

24

25       Keri A. Aspelund

Exhibits to Ainsworth Decl.
Page 87

```
 1                      C-E-R-T-I-F-I-C-A-T-E

 2        STATE OF WASHINGTON )

 3                           )  ss.

 4        COUNTY OF KING      )

 5              I, the undersigned Registered

 6        Professional reporter and an officer of the Court

 7        under my commission as a Notary Public for the State

 8        of washington, hereby certify that the deposition upon

 9        oral examination was taken before me and transcribed

10        under my direction;

11              That each witness was duly sworn by me to

12        testify truthfully; that the transcript of the

13        deposition is a full, true, and correct transcript;

14        that I am neither attorney for, nor a relative or

15        employee of, any of the parties to the action or any

16        attorney or counsel employed by the parties hereto,

17        nor financially interested in its outcome.

18              IN WITNESS WHEREOF, I have hereunto set

19        my hand and seal this 30 day of April    , 2007.

20

21              /S/ KERI A. ASPELUND

22

23        NOTARY PUBLIC in and for the State of

24        Washington, residing at Tacoma. Commission

25        expires March 21, 2010.   CCR No. 2661
```

# EXHIBIT D

Kathleen Stark                                                    April 26, 2007

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

------------------------------------------------------------

FRED and KATHLEEN STARK, a            )
married couple,                       )        ORIGINAL
                                      )
              Plaintiffs,             )
                                      )
       vs.                            )    No. CV06-1719 JLR
                                      )
THE SEATTLE SEAHAWKS, FOOTBALL        )
NORTHWEST, LLC, a Washington          )
limited liability company,            )
FIRST & GOAL, INC., a Washington      )
corporation, THE WASHINGTON           )
STATE PUBLIC STADIUM AUTHORITY,       )
a Washington municipal                )
corporation, and LORRAINE HINE,       )
in her capacity as chair of the       )
Washington State Public Stadium       )
Authority board of directors,         )
                                      )
              Defendants.             )


------------------------------------------------------------

Deposition Upon Oral Examination Of
KATHLEEN J. STARK

------------------------------------------------------------

1:15 p.m.
April 26, 2007
1111 Third Avenue, Suite 3200
Seattle, Washington


REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661

Exhibits to Ainsworth Decl.
Page90

Kathleen Stark                                                    April 26, 2007

Page 27

1          Q.    If you look at paragraph 3, Mrs. Stark, it's

2      on page 2, does that refresh your recollection as to

3      when the first time that you were pat down at a

4      Seattle Seahawks game?

5          A.    Yes.

6          Q.    Do you recall pat-downs occurring before

7      August 2005 at Qwest Field?

8          A.    No, I don't.

9          Q.    And you don't have any reason to disagree

10     with the testimony of your husband that it was August

11     22nd, 2005?

12         A.    That's correct.

13         Q.    Turning back to Exhibit-51.  At the time you

14     purchased your playoff tickets for the 2005 season,

15     you were aware of the pat-down policy at Qwest Field,

16     is that correct?

17              MR. WION:  Object to the form.

18         A.    Well, yes.

19         Q.    Is it correct that you handle -- that the

20     season tickets are in your name, Mrs. Stark?

21         A.    Yes.

22         Q.    And so you handle the renewal of season

23     tickets each year?

24         A.    Right.

25         Q.    And the purchase of playoff game tickets?

Kathleen Stark                                                          April 26, 2007

Page 29

1       Q.     And you renewed your season tickets for the

2    2006 season?

3       A.     Yes.

4       Q.     And at the time you renewed your season

5    tickets for the 2006 season, you were aware of the

6    pat-down policy for Seattle Seahawks games at Qwest

7    Field, correct?

8       A.     Correct.

9                  (Exhibit-53 marked.)

10      Q.     I'm going to hand you what has been marked

11   as Exhibit-53, and take a moment to look at the

12   document, and then please tell me --

13      A.     I -- okay.

14      Q.     -- whether you recognize that document?

15      A.     Yeah, well, they look so much alike.

16             I was looking at this one thinking it was

17   2007, but now I see that I have the 2007 here, okay,

18   yes.

19      Q.     And what is this document?

20      A.     It's the invoice for the 2007 season

21   tickets.

22      Q.     And did you renew your season tickets for

23   2007?

24      A.     Yes, I did.

25      Q.     Do you recall when you renewed your season

Exhibits to Ainsworth Decl.
Page92



Kathleen Stark                                                    April 26, 2007

Page 34

1          A.    I think to volunteer for something is to

2    step forward on your own initiative and volunteer to

3    do something.

4          Q.    I didn't ask what volunteering is, Mrs.

5    Stark, I asked what the term "voluntary" means.

6          A.    Voluntary.

7              MR. WION:   Same objection.

8          A.    Voluntary.   That's kind of hair splitting.

9              Again, it's something you are willing to do

10   on your own volition.

11         Q.    Do you attend -- is your attendance at

12   Seattle Seahawks games voluntary?

13         A.    Yes.

14         Q.    No one makes you go to the Seattle Seahawks

15   games, do they?

16         A.    (Shakes head.)   No.   Sorry.

17         Q.    And you're aware that pat-downs are a

18   requirement to enter Qwest Field, correct?

19         A.    Correct.

20         Q.    And you are willing to go through the

21   pat-downs because you want to attend Seattle Seahawks

22   games, is that correct?

23              MR. WION:   Object to the form.

24         A.    That is correct.

25         Q.    And you're aware that you have the right to

SEATTLE DEPOSITION REPORTERS
www.seadep.com          (206)622-6661 * (800)657-1110          FAX: (206)622-6236
79a74af9-d5f2-4727-b4a7-ab15cf2e2ffc

Exhibits to Ainsworth Decl.
Page93

Page 35

1     not attend Seahawks games, correct?

2          A.    Correct.

3          Q.    And by not attending a Seattle Seahawks

4     game, you would not have to be pat down, correct, by

5     Seattle Seahawks security people?

6          A.    Correct.

7          Q.    Do you have an understanding of what the

8     term "consent" means?

9               MR. WION:  Object to the form.

10         A.    It means to agree to something.

11              MR. WION:  When you're at a good place, it

12    might be about time for a break.  It's been about an

13    hour.

14              MR. AINSWORTH:  Oh, it has, you're right.

15    Just let me ask a couple questions.

16              MR. WION:  Sure.

17              MR. AINSWORTH:  I'm a slow thinker, so I

18    have to apologize.

19              Actually, let's go ahead and take a break

20    now.

21              (Brief recess.)

22         Q.    Mrs. Stark, I believe I asked you whether in

23    2007 you discussed with your husband whether to renew

24    your season tickets for 2007; did you have any

25    discussions with your husband in 2006 as to whether to

SEATTLE DEPOSITION REPORTERS
(206)622-6661 * (800)657-1110
www.seadep.com                                          FAX: (206)622-6236
79a74af9-d5f2-4727-b4a7-ab15cf2e2ffc

Exhibits to Ainsworth Decl.
Page94

Page 37

1     be pat down as a requirement to enter the stadium?

2          A.   Yes.

3          Q.   And no one has ever threatened you to cause

4     you to agree to be pat down to attend a Seahawks game?

5          A.   Pardon me?

6          Q.   No one has ever threatened you in order to

7     get you to consent to attend -- I'm sorry, strike

8     that.

9               No one has ever threatened you in order to

10    get you to agree to the pat-down in order to attend a

11    Seahawks game?

12         A.   Well, the threat is that you're not allowed

13    to enter the stadium.

14         Q.   So, the consequence of not agreeing is you

15    cannot enter the stadium, is that right?

16         A.   That's the way I understand it.

17         Q.   But no one has threatened you with physical

18    force in order to get you to consent or agree?

19         A.   That's correct.

20         Q.   Have any police officers ever instructed you

21    that you must consent?

22         A.   No.

23         Q.   Why did you decide in November 2006 to file

24    this lawsuit against the Seattle Seahawks, FGI, the

25    Public Stadium Authority, and Lorraine Hine?

Kathleen Stark                                                April 26, 2007

Page 56

1        Q.    I'm asking you for your understanding of

2    what your ticket terms mean.  Your lawyer will argue

3    with me later about the legality of that, but I am

4    asking you for your understanding.

5              MR. WION:  I think she's answered that.  Do

6    you have another question that you're posing?

7        Q.    I don't think she did answer it, so let me

8    restate it again.

9              My question is, do you understand that by

10   tendering your ticket and entering Qwest Field, you

11   consented to the searches and waived any claims

12   against the NFL, the Seattle Seahawks, and First &

13   Goal?

14             MR. WION:  Objection, compound, among other

15   objections, also calls for a legal conclusion about a

16   document she's read for the first time right here in

17   this room.

18             MR. AINSWORTH:  Counselor, can you stop the

19   long speaking objections.  I think objection to form

20   is all that is needed in this district.

21             MR. WION:  I think those objections are

22   appropriate, and I think she's answered your question.

23             MR. AINSWORTH:  I don't think she has.  If

24   you want, we can have the court reporter read it back.

25             MR. DUNBAR:  I think there have been some

SEATTLE DEPOSITION REPORTERS
www.seadep.com          (206)622-6661 * (800)657-1110          FAX: (206)622-6236
79a74af9-d5f2-4727-b4a7-ab15cf2e2ffc

Exhibits to Ainsworth Decl.
Page96

Kathleen Stark                                              April 26, 2007

Page 57

1    kind of lengthy objections here, Chris, respectfully,

2    and I think at a certain point it's just quicker to

3    get an answer and move on.

4         MR. WION:  I'm happy to do that.  I've

5    attempted to have short, brief objections that are

6    appropriate, and we continue to have what appear to be

7    the same question or a minor modification of the same

8    question to which I have the same objections, but

9    apparently they're not improving the quality of the

10   question, so I'm attempting to provide you with the

11   information you might need to ask a question that is

12   not objectionable.

13        MR. DUNBAR:  You're not instructing the

14   witness to not to respond, correct?

15        MR. WION:  I am not doing that.  I have not

16   done that.

17        MR. DUNBAR:  I think at a certain point it

18   might be appropriate to say same objection, and then

19   allow the witness to respond, and we'll finish a

20   little sooner this afternoon.

21        MR. WION:  John, I did do that a number of

22   times, it did not appear to be effective, so I felt it

23   was appropriate to provide a slightly fuller

24   explanation of the objection.

25        MR. DUNBAR:  Okay.

SEATTLE DEPOSITION REPORTERS
www.seadep.com           (206)622-6661 * (800)657-1110           FAX: (206)622-6236
79a74af9-d5f2-4727-b4a7-ab15cf2e2ffc

Exhibits to Ainsworth Decl.
Page97

Kathleen Stark                                                April 26, 2007

Page 58

1              MR. WION:  I think --

2              MR. DUNBAR:  You've done that now, so let's

3      just move on.

4              MR. WION:  I understand.

5              MR. DUNBAR:  I hear you.  Let's just move

6      on.

7              MR. WION:  I'm happy to move on.

8              MR. AINSWORTH:  All right, could you read

9      back my question, because I'm sure Mrs. Stark has long

10     since forgotten what it was.

11                  (Reporter read back as follows:

12                  "My question is, do you understand

13                  that by tendering your ticket and

14                  entering Qwest Field, you consented to

15                  the searches and waived any claims

16                  against the NFL, the Seattle Seahawks,

17                  and First & Goal?")

18             MR. WION:  Same objections.

19      A.    Yes.

20             MR. AINSWORTH:  If you can give me a couple

21     minutes to go through my notes, and then I'll be ready

22     pass on to John.

23             MR. WION:  Sure.

24                  (Brief recess.)

25      Q.    Mrs. Stark, have you had any communications

Exhibits to Ainsworth Decl.
Page98

Page 75

1                    S-I-G-N-A-T-U-R-E

2

3

4          I declare under penalty of perjury under

5     the laws of the State of Washington that I have read

6     my within deposition, and the same is true and

7     accurate, same and except for changes and/or

8     corrections, if any, as indicated by me on the CHANGE

9     SHEET flyleaf page hereof.  Signed in...............,

10    WA, on the........day of................, 2007.

11

12

13

14          .........................

15          KATHLEEN J. STARK

16          Taken: April 26, 2007

17

18

19

20

21

22

23

24

25    Keri A. Aspelund

Exhibits to Ainsworth Decl.
Page99



1                    C-E-R-T-I-F-I-C-A-T-E

2    STATE OF WASHINGTON )

3                        ) ss.

4    COUNTY OF KING      )

5              I, the undersigned Registered

6    Professional reporter and an officer of the Court

7    under my commission as a Notary Public for the State

8    of washington, hereby certify that the deposition upon

9    oral examination was taken before me and transcribed

10   under my direction;

11             That each witness was duly sworn by me to

12   testify truthfully; that the transcript of the

13   deposition is a full, true, and correct transcript;

14   that I am neither attorney for, nor a relative or

15   employee of, any of the parties to the action or any

16   attorney or counsel employed by the parties hereto,

17   nor financially interested in its outcome.

18             IN WITNESS WHEREOF, I have hereunto set

19   my hand and seal this 30 day of April      , 2007.

20

21           /S/ KERI A. ASPELUND

22

23   NOTARY PUBLIC in and for the State of

24   Washington, residing at Tacoma. Commission

25   expires March 21, 2010.  CCR No. 2661

# EXHIBIT E



RECEIVED
NOV 29 2006
FPS CORPORATE SERVICES, INC.
_____, VICE PRESIDENT



1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

FRED and KATHLEEN STARK, a married
couple,

                    Plaintiffs,

          vs.

THE SEATTLE SEAHAWKS,
FOOTBALL NORTHWEST, LLC, a
Washington limited liability company,
FIRST & GOAL, INC., a Washington
corporation, THE WASHINGTON STATE
PUBLIC STADIUM AUTHORITY, a
Washington municipal corporation, and
LORRAINE HINE, in her capacity as chair
of the Washington State Public Stadium
Authority board of directors,

                    Defendants

Case No. CV6 1719 SLR

DECLARATION OF FRED STARK

10
11
12
13
14
15
16
17
18
19
20
21

          I, Fred Stark, swear under penalty of perjury under the laws of the State of Washington,
to the following:

22
23

          1.      I have been a lifelong football fan.  My wife, Kathleen, and I have been Seattle
Seahawks season ticket holders since 1991.

24
25

DECLARATION OF FRED STARK - 1

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

Exhibits to Ainsworth Decl.
Page 102

1     2.      Prior to the 2005 season, neither I nor Kathleen had ever been subjected to a

2 pat-down search at a Seahawks game, or any other NFL football game.

3     3.      On or about August 22, 2005, Kathleen and I attended a Seahawks pre-season

4 home game against the Dallas Cowboys.  Upon arriving at the stadium, we were surprised to

5 learn that, as a condition of our entry to the game, we were required to submit to a pat-down

6 search.  We verbally objected, but ultimately submitted to the pat-down as our only option to

7 attend the game.  Upon inquiry, we were given no definitive answers to our questions.  Only

8 that the pat-downs were required under a new NFL policy instituted to prevent terrorist suicide

9 bombers from detonating a hidden vest bomb.  This was the first NFL game at which we were

10 subjected to a pat-down search.

11     4.      On or about September 2, 2005, we attended a second Seahawks pre-season

12 home game against the Minnesota Vikings.  We again lodged our objection, but ultimately

13 submitted to a pat-down as a condition of our entry to the stadium.

14     5.      On September 18, 2005, we attended our first regular season Seahawks home

15 game for the 2005 regular season.  Upon arriving at the Stadium, we discovered that the NFL's

16 pat-down policy was being enforced at Seahawks home games during the regular season as

17 well as the pre-season at Qwest Field (the "Stadium").

18     6.      At the entrance to the Stadium, we were stopped by a security officer and

19 informed that we were required to submit to a pat-down search as a condition of our entry to

20 the Stadium.  We verbally objected, but ultimately submitted to a pat-down as our only option

21 to gain admittance to the game.

22     7.      We attended Seahawks 2005 regular season and post-season home games at the

23 Stadium on September 25, October 16, October 23, November 13, January 14, 2006 and

24 January 22.

25

DECLARATION OF FRED STARK - 2

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

8.      On February 5, 2006, we attended Superbowl XL at Ford Field, in Detroit, Michigan.  Although we were required to pass through metal-detectors similar to the kind used at airports, we were not patted-down and did not observe any other ticket holders being patted down.

9.      During the 2006 pre-season and current regular season, we attended home games at the Stadium on August 12, August 31, September 17, September 24, October 22, November 6, November 12, and November 27.

10.     Pat-downs at these home games have ranged from the non-existent, to a highly intrusive, offensive, and humiliating full-body frisking.

11.     At one Seahawks home game on November 13, 2005, during a heavy downpour, we were not subjected to a pat-down, nor did we observe any other ticket holders being patted-down.  Many people were wearing ponchos or other bulky wet-weather protection.  Had the stadium security officers conducted the pat-down searches under these conditions, large crowds would have been forced to stand in the rain before being permitted entry to the Stadium.

12.     At another Seahawks home game on July 31, 2006, I verbally objected to being patted-down and asked to speak with the security officer's supervisor.  Two supervisors were called to discuss the situation.  Rather than submitting to yet another pat-down, I removed my shirt to show that I was not concealing anything.  The original security officer whisked me through the entrance without any further search.

13.     At the other end of the spectrum, at a home game on October 16, 2005, I was subjected to a highly intrusive, offensive and humiliating full-body frisking.  A security officer ran his hands down my sides, reached around me and grasped my buttocks.  He then felt both my arms and across my chest.  Then, he moved his hands towards my groin area, where he found and handled the inhaler in my pant pocket that I carry to treat my asthma.  The security

DECLARATION OF FRED STARK - 3

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1   officer then placed both of his hands around my left thigh, running them down to my sneaker

2   top, which he also felt thoroughly.  After this episode and other pat-downs, I have been left

3   feeling physically ill and emotionally unsettled for up to 24 hours afterwards.

4        14.    Except as described above, Kathleen and I were subjected to upper body pat-

5   downs at every Seahawks home game we attended in 2005 and 2006.  Many have been

6   cursory, unlikely to detect well-concealed contraband.  Each time, we verbally objected, but

7   ultimately submitted to the searches in order to attend the game.

8        15.    Kathleen and I intend to continue attending Seahawks home games for the

9   duration of the 2006 season, and intend to renew our season tickets in the future.  I understand

10  that if we do not renew our season tickets each year, we forfeit our right to purchase future

11  season tickets and would be put on a waiting list.

12       16.    I feel strongly that the pat-down searches at the Stadium are an unnecessary and

13  unwarranted intrusion into my right of privacy, and I strenuously object to being treated like a

14  criminal simply because I choose to attend a professional football game.

15       DATED this 27th day of November, 2006 in Seattle, Washington.

16

17

18  _____
    FRED STARK

19

20

21

22

23

24

25

DECLARATION OF FRED STARK - 4