THE HONORABLE JAMES ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRED and KATHLEEN STARK, a married couple, <br><br> Plaintiffs, <br><br> vs. <br><br> THE SEATTLE SEAHAWKS, FOOTBALL NORTHWEST, LLC, a Washington limited liability company, FIRST & GOAL, INC., a Washington corporation, THE WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a Washington municipal corporation, and LORRAINE HINE, in her capacity as chair of the Washington State Public Stadium Authority board of directors, <br><br> Defendants. | Case No. CV 06-1719 JLR <br><br> PLAINTIFFS' OPPOSITION TO SEAHAWKS DEFENDANTS' MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT WITHIN 90 DAYS OF TRIAL DATE <br><br> **Noted for Consideration**: May 22, 2007 |

## I.   INTRODUCTION

Defendants Seattle Seahawks, Football Northwest LLC and First & Goal Inc. (collectively, the "Seahawks") seek an order permitting an untimely and unwarranted motion for summary judgment. The Court should deny the Seahawks' request.

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 1

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   The Seahawks have not identified any legitimate reason for failing to bring the
2   proposed motion prior to the dispositive motion deadline. Despite clear knowledge of the
3   "consent" issue, the Seahawks failed even to request a deposition of the Starks until after the
4   dispositive motion deadline had passed. Moreover, the Seahawks' proposed motion is without
5   merit: it relies almost entirely upon inadmissible evidence, and is not supported by the law.
6   Finally, even if the Court is inclined to consider the Seahawks' motion, it should not adopt the
7   Seahawks' proposed schedule. That schedule would unfairly prejudice and visit the
8   consequences of the Seahawks' delay on the Starks. Rather, the Court should, if it will
9   consider the untimely motion, require the Seahawks to note the motion under the normal rules
10  and provide the Starks with a full opportunity to prepare a response.

## II.    STATEMENT OF FACTS

12  Plaintiffs Fred and Kathleen Stark filed this action along with a Motion for Preliminary
13  Injunction on November 29, 2006. The Complaint seeks an injunction precluding the
14  defendants from conducting further pat-down searches and other relief including the award of
15  attorneys' fees. The basic facts relating to the Seahawks' "consent" defense were stated on the
16  face of the Complaint: "Except as described above, the Starks were subjected to upper body
17  pat-downs at every Seahawks home game they attended in 2005 and 2006. The Starks verbally
18  objected each time, but ultimately submitted to the searches in order to gain admittance to the
19  Stadium and attend the game." Complaint, at ¶ 37.
20  The Starks' Motion for Preliminary Injunction, filed with their Complaint, directly
21  addressed the anticipated "consent" defense, and presented authority showing that the Starks'
22  acquiescence to the pat-down searches as an unavoidable condition to attending the Seahawks
23  games (at a publicly-owned stadium) did not amount to "voluntary consent" under the
24  applicable constitutional standards. *See* Starks' Motion for Preliminary Injunction at pp. 14-

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 2

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

15. The Motion stated the issue clearly: "The Starks verbally objected to each pat-down search, and their submission to the searches as their only avenue of attending Seahawks home games at the public Stadium does not amount to voluntary consent." Starks' Motion for Preliminary Injunction at p. 15. *See also* Declaration of Christopher T. Wion ("Wion Dec."), Ex. 6 ¶¶ 3, 4, 6, 12, 14, 15.

Thus, the Seahawks clearly were on notice of both the facts relating to the alleged "consent" defense and of the legal issue itself from the inception of the lawsuit. In fact, the Seahawks asserted in their Answer (dated January 3, 2007) that "Plaintiffs consented to the pat-down procedure." Seahawks' Answer at p. 9.

After a scheduling conference with the Court, the parties agreed to a case schedule providing for expedited discovery and an early trial date in order to permit a resolution of the case prior to the beginning of the 2007 NFL season. The original case schedule called for a trial beginning on June 25, 2007. Pursuant to Local Rule 16(b), which provides that dispositive motions shall be filed no later than 90 days prior to the trial date, the dispositive motions cutoff was March 27, 2007.[1]

One week after the dispositive motion deadline, on April 3, 2007, the Seahawks requested, for the first time, a deposition date for the Starks. Wion Dec., ¶ 2, Ex. 1. Counsel for the Starks responded on April 9, 2007, indicating that the Starks were generally available in April, with the exception of April 17, 19 and 20. Wion Dec., ¶ 3, Ex. 2. The Seahawks responded on April 11, indicating that they preferred to depose the Starks on April 26, 2007. Wion Dec., ¶ 4, Ex. 3.

---

[1] Defendants clearly recognized this limitation, as both the Seahawks and defendants Public Stadium Authority and Lorraine Hine filed motions for summary judgment on the "state action" issue on that date.

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 3

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

On April 13, 2007, after unforeseen discovery delays, the parties stipulated to an amendment of the case schedule. Among other things, that stipulation extended the trial date to July 16 – 19, 2007. Even under this amended case schedule, the deadline for filing dispositive motions was April 17, 2007.[2]

The Seahawks never indicated that they needed to depose the Starks in order to gather evidence for a summary judgment motion, nor did they request a deposition date for the Starks at any time between January (when the case schedule was issued) and April. Wion Dec., ¶¶ 2, 6. The Seahawks have offered no explanation for this delay.[3]

### III. ARGUMENT

As the Seahawks freely admit, their proposed Motion for Summary Judgment is untimely pursuant to Local Rule 16(g). The Seahawks have not presented any compelling reason why the Court should disregard its earlier scheduling order and permit an untimely motion at this stage of the litigation.

    A.    <u>The Seahawks Could Have Filed Their Motion Within the Time Allowed Under the Local Rules.</u>

The Seahawks were well aware of the "consent" issue long before the deadline passed. The issue was squarely raised in the Starks' Motion for Preliminary Injunction filed in November 2006 and the Seahawks asserted the Starks "consent" as an affirmative defense in

---

[2] If the dispositive motion cutoff date is calculated using the amended case schedule, the deadline for dispositive motions would be April 17, 2007. However, the original dispositive motion deadline had already run under the original case schedule when the parties stipulated to extend the trial date, and even the "revised" cutoff (assuming that the change in trial date could extend a deadline that had already passed) expired the same day the Court entered the Order extending the trial date (April 17, 2007).

[3] It is difficult to imagine that the Seahawks' ability to depose the Starks depended on the completion of written discovery – the Starks have very few documents (the produced only 29 pages of documents responsive to Defendants' requests; *see* Wion Dec., ¶ 7), particularly documents relating to the issue of "consent," that were not already available to the Seahawks (such as the Starks' season ticket renewal forms). Even so, the Starks provided responses to the Seahawks' discovery requests on March 20, 2007, which would still have left time for the Seahawks to conduct depositions prior to the dispositive motion deadline.

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 4

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

their Answer. Yet the Seahawks did not even request a deposition of the Starks until April 3, 2007, after the original dispositive motion cutoff.

On April 13, 2007, the parties stipulated to continue the trial date to July 16, 2007 (the Court entered the Order on April 17, 2007). Even if this continuance did change the dispositive motion deadline, the Seahawks did not propose a date for the Starks' deposition that would have permitted them to file a motion even under the new case schedule, despite being informed that the Starks were available.[4] Rather, the Seahawks proposed April 26, 2007 – well after the deadline even under the revised case schedule (which at that time had not yet been presented or entered).

The Seahawks have offered no legitimate explanation for this delay, other than to state without support that the Starks' depositions could not be conducted prior to the deadline. This contention is without merit – the Seahawks could have, but did not, request the Starks' deposition at any time prior to the deadline. The Seahawks' delay is inexcusable, and their motion should be denied.

        B.      <u>The Seahawks' Proposed Motion Is Without Merit.</u>

            i.  <u>The Seahawks' Proposed Motion Relies Upon Inadmissible Evidence.</u>

The deposition testimony upon which the Seahawks rely is almost entirely inadmissible. The alleged "admissions" by the Starks consist of nothing more than lay persons' opinions about legal terms of art. They are not admissible, and they certainly are not dispositive of the legal issue of whether the Starks consented to the searches, or whether such alleged consent was legally valid.

---

[4] The Seahawks' motion states, without support, that the Starks' deposition "could not be scheduled prior to the 90-day deadline." Seahawks' Motion for Leave at p. 2:1-2. However, the Seahawks never even attempted to schedule the Starks' deposition until April 3, 2007, nor did they ever indicate that they needed to take the Starks' depositions prior to mid-April in order to enable a timely summary judgment on the matter. Wion Dec., ¶¶ 2, 6.

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 5

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

F.R.E. 701 provides that lay testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." This rule has been applied to exclude lay testimony regarding legal conclusions. *See, e.g., U.S. v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) ("The lay witness may not, however, testify as to a legal conclusion, such as the correct interpretation of a contract"); *Evangelista v. Inland Boatmen's Union of Pacific*, 777 F.2d 1390, 1398 (testimony by lay witness "as to the correct construction of the collective bargaining agreement . . . is an inadmissible legal conclusion").[5] The Advisory Committee notes to F.R.E. 704 also recognize that Rule 701 precludes lay testimony regarding legal issues, stating that Rules 701 and 702 "afford ample assurances against admission of opinions which would merely tell the jury what result to reach . . . . <u>They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.</u>" (Emphasis added.)

The testimony upon which the Seahawks rely clearly involves lay opinion testimony about legal issues. Specifically, the questions asked by counsel – and the responses elicited – were directed toward obtaining the Starks' <u>opinions</u> as to whether their attendance at the games under the circumstances constituted "voluntary consent" to the Seahawks' pat-down procedures. While the issue of voluntariness is "a question of fact to be determined from the

---

[5] Indeed, testimony as to legal conclusions is inadmissible even when offered by an expert who may have a deeper understanding of the legal issues involved. *See also U.S. v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (testimony calling for legal conclusion inadmissible and not appropriate subject for expert testimony); *Aguilar v. International Longshoremen's Union*, 966 F.2d 443 (9th Cir. 1992) (reasonableness and foreseeability "were matters of law for the court's determination" and not proper subjects for expert testimony); *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 509-10 (2nd Cir. 1977) (excluding expert testimony involving "opinion as to the legal standards which he believed to be derived from the contract" and his opinion that the parties' conduct "was not a legal waiver by the plaintiffs").

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 6

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

totality of the circumstances,"[6] the <u>conclusion</u> as to whether a particular act is voluntary and operates as "consent" in the context of alleged infringement of constitutional rights is one for the trier of fact, and the standards for that determination are legal issues weighted with nuances and distinctions not apparent to the lay person.

An examination of the questions themselves readily shows that they were intended to elicit legal conclusions, and not the <u>facts</u> that would allow a trier of fact to reach a conclusion on the issue of "voluntary consent". For example, Seahawks' counsel asked Mr. Stark the following questions:

> . . . do you agree that by attending Seattle Seahawks games and going through the pat-down procedure, you have consented to the pat-down? (Wion Dec., Ex. 4 at p. 77:13 – 16);
>
> . . . do you believe that your consent to the pat-down procedures was involuntary? (*Id.* at p. 77:24 – 25);
>
> . . . do you agree with me that when you attended the Seattle Seahawks games over the last two seasons, knowing of the pat-down procedures, that your consent to those pat-down procedures was voluntary? (*Id.* at p. 78:12 – 16);
>
> . . . if you decide to attend Seattle Seahawks games in the future, and pat-down is a requirement of attending those games, do you agree with me that your consent to those pat-downs will be voluntary? (*Id.* at p. 79:1 – 5).[7]

<u>Counsel for the Starks asserted objections to each of these questions</u>. Each clearly is intended to elicit Mr. Stark's opinion as to whether the circumstances at issue satisfy the legal standards of "consent" and "voluntariness." Mr. Stark's opinion on these issues is not relevant (a lay person's understanding of words fraught with legal implications cannot possibly aid the

---

[6] *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

[7] It is apparent that counsel's questions, based as they were on legal principles beyond the ken of the average person, caused some confusion in Mr. Stark. In response to the question ". . . do you agree that by attending Seattle Seahawks games and going through the pat-down procedure, you have consented to the pat-down?", Mr. Stark replied (after counsel's objection): "I've consented while objecting, consented under objection, I don't know the proper way to phrase that . . . ." Mr. Stark's struggle to answer counsel's question only highlights the impropriety of seeking legal conclusions from lay witnesses.

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 7

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

trier of fact, and is properly excludable under either F.R.E. 701 or F.R.E. 402). Moreover, to the extent that counsel was inquiring as to Mr. Stark's opinion as to whether his conduct constituted "voluntary consent" using Mr. Stark's own understanding of those terms, that issue is equally irrelevant, as Mr. Stark's understanding does not encompass the legal implications attached to those words.

Mrs. Stark's testimony is equally irrelevant and inadmissible. Counsel asked Mrs. Stark the following questions; each clearly intended to elicit improper opinion testimony and legal conclusions:

> I asked what the term "voluntary" means. (Wion Dec., Ex. 5, at p. 34:5);
>
> . . . is your attendance at Seattle Seahawks games voluntary? (*Id.* at p. 34:11 – 12);
>
> Do you have an understanding of what the term "consent" means? (*Id.* at p. 35:7-8)
>
> Do you understand that by attending a Seattle Seahawks game where the pat-down policy is a requirement that you are consenting to be pat down to attend the game? (*Id.* at p. 36:18-21);
>
> . . . do you understand that this states that by tendering the ticket and entering Qwest Field, you have waived claims against the Seahawks, and the NFL, and FGI? (*Id.* at p. 54:22 – 25);[8]

Counsel for the Starks asserted repeated objections these questions, which, like those asked of Mr. Stark, clearly sought to elicit Mrs. Stark's <u>opinion</u> as to whether there was voluntary consent, not the <u>facts</u> that go into making that determination. In other words the

---

[8] Read in context, this question is even more clearly intended to elicit Mrs. Stark's opinion regarding the legal effect of language on the back of a Seahawks' ticket. In fact, Seahawks' counsel had asked the same or similar questions previously in the deposition, over numerous objections. *See* Wion Dec., Ex. 5 at p. 52:14 – 58:10. After objections by the Starks' counsel, and Mrs. Stark's response that "I understand they think so, but I don't believe that's true," and that "I feel like I'm being asked to be pinned down on some kind of a legal question that I still have no way to answer knowledgeably," Seahawks' counsel asked Mrs. Stark: "I'm asking you for your understanding of what your ticket terms mean. Your lawyer will argue with me later about the legality of that, but I am asking you for your understanding." (Wion Dec., Ex. 5 at p. 55:5 – 56:4).

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 8

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

testimony amounts to nothing more than "opinions which would merely tell the [trier of fact] what result to reach" and "inadequately explored legal criteria."[9] This is precisely the type of testimony F.R.E. 701 is meant to exclude. As such, the testimony is irrelevant and inadmissible under F.R.E. 402 and 701.

The Seahawks' proposed motion is based primarily – if not entirely – on this irrelevant and inadmissible evidence. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed.R.Civ.P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). As such, the Court should deny the Seahawks' request for leave to file its motion.

ii. The Seahawks' Proposed Motion is Not Supported by the Law.

The Seahawks' proposed motion is without merit and will waste the parties' resources as well as those of the Court. Issues of fact preclude a grant of summary judgment on the issue of consent, and the Court will be required to hear evidence at trial in order to properly decide the issue.[10]

The validity of consent turns upon the voluntariness with which it was given. "The question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

Preannouncement of a search policy cannot sanitize an otherwise unconstitutional search. Any argument to the contrary is based on the false premise that, if a person is aware that the search will take place, submission to the search is "voluntary." As the Washington

---

[9] Advisory Committee note to F.R.E. 704.
[10] The Plaintiffs' Motion for Preliminary Injunction, dated November 29, 2006, set forth the relevant legal standards and argument as to why the Starks' attendance at the Seahawks games did not constitute "voluntary consent."

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 9

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Supreme Court has held, "neither the voluntary nature of the activity nor the preannouncement of the search, standing alone, make the search constitutional." *Kuehn v. Renton School District No. 403*, 103 Wn.2d 594, 600 (1985). Any other rule would eviscerate the constitutional right to be free from unreasonable searches.

A number of courts have refused to apply the consent exception in stadium search cases, where attendance at a rock concert or sporting event was conditioned on submission to a search. *See, e.g., Johnson v. Tampa Sports Authority*, 442 F.Supp.2d 1257, 1271 ("[t]his type of implied consent, where the government conditions the receipt of a benefit… on the waiver of a constitutional right… has been deemed invalid as an unconstitutional condition"); *Nakamoto v. Fasi*, 635 P.2d 946, 951 (Haw. 1981) ("Once having extended… an invitation to the public to use its arena upon paying the price of admission, [defendant] could not further condition the exercise of this privilege upon compliance with an unconstitutional requirement."); *Jacobsen v. City of Seattle,* 98 Wn.2d 668, 674 (1983); *Wheaton v. Hagan*, 435 F.Supp. 1134 (M.D. N.C. 1977); *Stroeber v. Comm. Veterans Auditorium*, 453 F.Supp. 926, 933 (S.D. Iowa 1997); *Gaioni v. Folmar*, 460 F.Supp. 10, 14 (M.D. Ala. 1978); *Collier v. Miller*, 414 F.Supp. 1357, 1366 (S.D. Tex. 1976); *State v. Carter*, 267 NW2d 385 (Iowa 1978). *See also Bourgeois v. Peters*, 387 F.3d 1303, 1324 (rejecting argument that demonstration participants consented to search because they could choose not to participate in the protest).

The Starks' testimony establishes nothing more than the fact that they were required to submit to unlawful pat-down searches (to which they objected) as a condition to entering a publicly-financed, publicly-owned stadium. The Seahawks' attempts to argue that the Starks' mere attendance at those games, or that their supposed "admissions" amount to voluntary consent, are without merit. The Starks have alleged, and continue to allege, that they did not "voluntarily consent" to the pat-down procedures, but were required to submit to them as a

PLAINTIFFS' OPPOSITION TO SEAHAWKS DEFENDANTS' MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT WITHIN 90 DAYS OF TRIAL DATE - 10

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

condition to enter Qwest Field, a public venue and a public asset, for Seahawks games. *See* Wion Dec., Ex. 6, ¶¶ 3, 4, 6, 12, 14, 15; Ex. 4, pp. 77:18-20 ("I've consented while objecting, consented under objection, I don't know the proper way to phrase that, but –").[11]

### C. Even if this Court is Inclined to Consider the Seahawks' Motion, it Should Require the Motion to be Noted and Briefed According to the Rules.

Even if this Court is inclined to consider the Seahawks' untimely motion, it should not adopt the schedule the Seahawks have proposed. The Seahawks have requested that the Court note their motion for consideration either on June 1, 2007, or two Fridays after the Court grants the Seahawks' motion for leave, with opposition and reply briefs due under normal scheduling rules.

This schedule is unfair to the Starks, as it requires them to either begin preparing a response to the Seahawks' motion without knowing whether it will actually be considered, or prepare a response within as little as one week. The Seahawks' proposal unfairly penalizes the Starks (either by wasting money responding to a brief that will not be considered or by preparing a response in less than the normal time allowed) for the Seahawks' failure to conduct discovery and file its motion in a timely fashion. If the Court is inclined to consider the Seahawks' motion, it should require the Seahawks to note the Motion according to the Rules.

## IV. CONCLUSION

The Seahawks have failed to present any legitimate reason why the proposed motion could not have been presented prior to the dispositive motion cutoff. Nor have they presented any admissible evidence supporting their claim that the proposed motion is likely to dispose of the

---

[11] The Starks did everything they could to object to the unconstitutional pat-downs while still preserving their right to attend games at a publicly-finance, publicly owned stadium, including the filing of this lawsuit. It is not clear what, if anything, the Starks could have done to object more completely. The Seahawks also ignore the possibility that future searches will be conducted without the Starks' voluntary consent. This action, which seeks injunctive relief (and other remedies such as attorneys' fees consistent with injunctive relief), is most directly concerned with those future violations.

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 11

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON
LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  case. Rather, the Seahawks rely on inadmissible evidence and a facile treatment of the legal
2  principles at issue. Permitting the Seahawks to file this untimely motion will not result in
3  judicial economy – rather, it will needlessly expend the resources of the court and the parties
4  without avoiding the need for trial. The Seahawks' motion should be denied.
5      However, should the Court decide that it will consider the Seahawks' motion, the
6  Starks respectfully request that the Court require the Seahawks to note the Motion according to
7  the local rules to prevent the injustice and inconvenience to the Starks that would result from
8  the Seahawks' proposed briefing schedule.
9      DATED this 17th day of May, 2007.

DANIELSON HARRIGAN LEYH & TOLLEFSON LLP

By _____
Christopher T. Wion, WSBA #33207
Garth D. Wojtanowicz, WSBA #30822
Attorneys for Plaintiffs, Fred and Kathleen Stark

PLAINTIFFS' OPPOSITION TO SEAHAWKS
DEFENDANTS' MOTION FOR LEAVE TO
FILE A MOTION FOR SUMMARY
JUDGMENT WITHIN 90 DAYS OF TRIAL
DATE - 12

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700  FAX. (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Paul Ainsworth and Greg H. Levy, John J. Dunbar and Irene Smith, Tim J. Filer, Jeffrey S. Miller and Jan Howell___, and I hereby certify that I have separately electronically mailed the document to the following non CM/ECF participants: Stephen T. Janik and L. Jordan.

D. Yvette Chambers

PLAINTIFFS' OPPOSITION TO SEAHAWKS DEFENDANTS' MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT WITHIN 90 DAYS OF TRIAL DATE - 13

CV 06-1719 JLR

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700  FAX, (206) 623-8717