# EXHIBIT 1

Wion Declaration
Page 5

Dockets.Justia.com

## Garth Wojtanowicz

| | |
|---|---|
| **From:** | Ainsworth, Paul [PAinsworth@cov.com] |
| **Sent:** | Tuesday, April 03, 2007 12:55 PM |
| **To:** | Chris Wion; Tim J. Filer; Dunbar, John |
| **Cc:** | Garth Wojtanowicz; Tim Leyh; Levy, Gregg; Smith, Irene |
| **Subject:** | RE: Stark v. Seahawks - Discovery Issues - 26(f) call-in number |

Chris,

Just to confirm, we have tentatively scheduled to have a follow-up to our discussion this afternoon for Thursday, April 5 at 3PM Pacific.  Please let me know if that time does not work for you.

With respect to the deposition schedule, you indicated that you would get back to us soon with some proposed dates for depositions.  As John Dunbar and I stated during the call, we want to be sure the parties meet the discovery deadlines set forth in the scheduling order and also that you've had the opportunity to take the depositions you might need to respond to the pending motions for summary judgment.  We look forward to hearing from you shortly on the deposition schedule.

Paul

---

**From:** Chris Wion [mailto:chrisw@dhlt.com]
**Sent:** Tuesday, April 03, 2007 1:47 PM
**To:** Ainsworth, Paul; Tim J. Filer; Dunbar, John
**Cc:** Garth Wojtanowicz; Tim Leyh; Levy, Gregg; Smith, Irene
**Subject:** RE: Stark v. Seahawks - Discovery Issues - 26(f) call-in number

Counsel:

The call in number for today's 26(f) call at 11:00 am Pacific is:

* Toll Free Dial In Number: (888)622-5357

* PARTICIPANT CODE: 905666

The purpose of the call is to address deficiencies in the Seahawks Defendants' responses to the following: Plaintiffs' Interrogatories Nos. 3, 5, 7, 14, 15, 17, 24, 29, and 30, and; Plaintiffs' Requests for Production Nos. 11, 23, 24, 25, 27, and 29.

With respect to the PSA, we would like to address production of a complete set of Board Meeting Minutes, per my email to John on Thursday, March 29.

-Chris

Christopher T. Wion
Attorney at Law
Danielson Harrigan Leyh & Tollefson LLP
999 Third Avenue, Suite 4400
Seattle, Washington 98104

Tel:  (206) 623-1700
Fax:  (206) 623-8717

This internet e-mail message contains confidential, privileged information that is intended only for the addressee. If you have received this e-mail message in error, please call us (collect, if necessary) immediately at (206) 623-1700 and ask to speak to the message sender. Thank you. We appreciate your assistance in correcting this matter.

Wion Declaration
Page 7

# EXHIBIT 2

## Garth Wojtanowicz

| | |
|---|---|
| **From:** | Chris Wion |
| **Sent:** | Monday, April 09, 2007 5:21 PM |
| **To:** | 'Ainsworth, Paul'; 'Dunbar, John'; 'Tim J. Filer' |
| **Cc:** | Garth Wojtanowicz; Tim Leyh |
| **Subject:** | Starks v. Seahawks - deposition scheduling |

Counsel -

For purposes of deposition scheduling, I thought it would be useful to provide a summary of witness availability. My understanding is that the following witnesses are available in April as follows:

**Seahawks Defendants' witnesses:**

Mr. Sheehan: April 20, 24, 26 or 27 (in NYC)

Mr. Ahlerich: April 24 - 27 (in NYC)

Mr. Schieck: April 12, 18, 19 (in Seattle)

Mr. Kory Whalen:  ?

**PSA's witnesses:**

Ann Kawasaki Romero:  April 13 (Seattle)

30(b)(6):  April 13 (Seattle)

Lorraine Hine:  April 25, 26, 27 (Seattle)

**Plaintiffs' witnesses:**

Starks:  Generally available except April 17, 19, 20 (Seattle)

Robert Wuorenma:  Generally available (greater availability in afternoons) (Seattle)

Bob Schneier:  April 16, 27, 30 (Minneapolis)

Given the foregoing, Plaintiffs would like to schedule Mr. Schieck's deposition for April 18, Ms. Hine's deposition for April 25, Mr. Ahlerich's deposition for April 26, and Mr. Sheehan's deposition for April 27. We also anticipate noting a 30(b)(6) deposition for FGI and will provide a list of topics shortly.  (Paul, could you please provide Mr. Whalen's dates of availability?)

Please let us know if the proposed dates are acceptable.  If you need additional dates of availability from our witnesses in May, please let us know.

Also, as I discussed with both Paul and John, we believe that the pending motions for summary judgment should be renoted for May 4, to allow us an opportunity to depose Ms. Hine prior to filing our oppositions. At present, those oppositions are due April 16, nine days before the first day Ms. Hine will be available for deposition, on April 25. Re-noting the motions for May 4 will make our oppositions due on April 30, and the replies due on May 4. Please let us know as soon as possible whether this is acceptable, as the alternative will be for us immediately to move for a 56(f) continuance.

Please copy Garth and Tim on any response, as I will have only intermittent email access over the next two days. Thank you.

-Chris

Wion Declaration
Page 9

1

Christopher T. Wion
Attorney at Law
Danielson Harrigan Leyh & Tollefson LLP
999 Third Avenue, Suite 4400
Seattle, Washington 98104
Tel:  (206) 623-1700
Fax:  (206) 623-8717
_____

This internet e-mail message contains confidential, privileged information that is intended only for the addressee. If you have received this e-mail message in error, please call us (collect, if necessary) immediately at (206) 623-1700 and ask to speak to the message sender. Thank you. We appreciate your assistance in correcting this matter.

Wion Declaration
Page 10

2

# **EXHIBIT 3**

## Garth Wojtanowicz

**From:**  Ainsworth, Paul [PAinsworth@cov.com]
**Sent:**  Wednesday, April 11, 2007 10:10 AM
**To:**  Chris Wion; Dunbar, John; Tim J. Filer
**Cc:**  Garth Wojtanowicz; Tim Leyh
**Subject:** RE: Starks v. Seahawks - deposition scheduling

Chris,

Taking into account your email below, I've coordinated with John Dunbar to see if we could come up with some
dates that would work for the defendants' witnesses and counsel. As I mentioned to Tim Leyh in a brief call
yesterday, we also want to try and minimize travel time to the extent possible. If you are amenable, our proposal
calls for double tracking Ms. Hine in Seattle and Mr. Schneier in Minnesota on 4/27. With respect to the plaintiffs,
we do not believe a full day deposition will be necessary for each of them and we'd propose scheduling their
depositions back-to-back on the same day.

I have not received dates yet for Mr. Whalen from his attorney, but I hope to get his schedule soon and will pass
that on as quickly as I get it. With respect to the 30(b)(6) deposition of FGI, once I have received your notice I'll
be able to advise you of dates that a 30(b)(6) witness would be available. These proposed dates also assume
that we can agree upon a joint stipulation to extend the schedule along the lines of the one we proposed
yesterday or something substantially similar.

4/23 - Bob Wuorenma
4/24 - Paul Schieck
4/25 - Ann Romero Kawasaki
4/26 - Fred Stark (AM) Kathleen Stark (PM)
4/27 - Lorraine Hine / Bruce Schneier (Minnesota)

5/2 - Milton Ahlerich (NYC)
5/3 - Michael Sheehan (NYC)
5/? - Kory Whalen (DC)

I understand you're occupied today, but please let us know your thoughts at your earliest convenience.

Paul

---

**From:** Chris Wion [mailto:chrisw@dhlt.com]
**Sent:** Monday, April 09, 2007 8:21 PM
**To:** Ainsworth, Paul; Dunbar, John; Tim J. Filer
**Cc:** Garth Wojtanowicz; Tim Leyh
**Subject:** Starks v. Seahawks - deposition scheduling

Counsel -

For purposes of deposition scheduling, I thought it would be useful to provide a summary of witness
availability. My understanding is that the following witnesses are available in April as follows:

**Seahawks Defendants' witnesses:**

Wion Declaration
Page 12

Mr. Sheehan: April 20, 24, 26 or 27 (in NYC)
Mr. Ahlerich: April 24 - 27 (in NYC)
Mr. Schieck: April 12, 18, 19 (in Seattle)
Mr. Kory Whalen: ?
**PSA's witnesses:**
Ann Kawasaki Romero: April 13 (Seattle)

30(b)(6): April 13 (Seattle)

Lorraine Hine: April 25, 26, 27 (Seattle)

**Plaintiffs' witnesses:**

Starks: Generally available except April 17, 19, 20 (Seattle)

Robert Wuorenma: Generally available (greater availability in afternoons) (Seattle)

Bob Schneier: April 16, 27, 30 (Minneapolis)


Given the foregoing, Plaintiffs would like to schedule Mr. Schieck's deposition for April 18, Ms. Hine's deposition for April 25, Mr. Ahlerich's deposition for April 26, and Mr. Sheehan's deposition for April 27. We also anticipate noting a 30(b)(6) deposition for FGI and will provide a list of topics shortly. (Paul, could you please provide Mr. Whalen's dates of availability?)

Please let us know if the proposed dates are acceptable. If you need additional dates of availability from our witnesses in May, please let us know.

Also, as I discussed with both Paul and John, we believe that the pending motions for summary judgment should be renoted for May 4, to allow us an opportunity to depose Ms. Hine prior to filing our oppositions. At present, those oppositions are due April 16, nine days before the first day Ms. Hine will be available for deposition, on April 25. Re-noting the motions for May 4 will make our oppositions due April 30, and the replies due on May 4. Please let us know as soon as possible whether this is acceptable, as the alternative will be for us immediately to move for a 56(f) continuance.

Please copy Garth and Tim on any response, as I will have only intermittent email access over the next two days. Thank you.

-Chris




Christopher T. Wion
Attorney at Law
Danielson Harrigan Leyh & Tollefson LLP
999 Third Avenue, Suite 4400
Seattle, Washington 98104

Tel:  (206) 623-1700
Fax:  (206) 623-8717

This internet e-mail message contains confidential, privileged information that is intended only for the addressee. If you have received this e-mail message in error, please call us (collect, if necessary) immediately at (206) 623-1700 and ask to speak to the message sender. Thank you. We appreciate your assistance in correcting this matter.

# EXHIBIT 4

Page 1

```
 1                  UNITED STATES DISTRICT COURT
 2                 WESTERN DISTRICT OF WASHINGTON
 3                          AT SEATTLE
 4    ------------------------------------------------
 5    FRED and KATHLEEN STARK, a          )
      married couple,                     )
 6                                        )
                     Plaintiffs,          )
 7                                        )
                  vs.                     ) No. CV06-1719 JLR
 8                                        )
      THE SEATTLE SEAHAWKS, FOOTBALL      )
 9    NORTHWEST, LLC, a Washington        )
      limited liability company,         )
10    FIRST & GOAL, INC., a Washington )
      corporation, THE WASHINGTON         )
11    STATE PUBLIC STADIUM AUTHORITY,     )
      a Washington municipal              )
12    corporation, and LORRAINE HINE,     )
      in her capacity as chair of the     )
13    Washington State Public Stadium     )
      Authority board of directors,       )
14                                        )
                     Defendants.          )
15
16    ------------------------------------------------
17           Deposition Upon Oral Examination Of
18                    FREDERICK B. STARK
19    ------------------------------------------------
20                        8:55 a.m.
21                     April 26, 2007
22             1111 Third Avenue, Suite 3200
23                   Seattle, Washington
24
25    REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661
```

Wion Declaration
Page 16

Frederick Stark                                                                    April 26, 2007

Page 77

```
 1              Mr. Stark, do you have an understanding of
 2      the term "consent"?
 3              MR. WION:   Object to the form.
 4         A.   Yes.
 5         Q.   What is your understanding of the term
 6      "consent"?
 7              MR. WION:   Same objection.
 8         A.   Shucks, I don't know the definition off the
 9      top of my head.  I can't define it for you, but it is
10      basically to accept or allow something in a general
11      sense, I would say.
12         Q.   Okay.  Using your definition, your
13      understanding of what consent is, when you -- do you
14      agree that by attending Seattle Seahawks games and
15      going through the pat-down procedure, you have
16      consented to the pat-down?
17              MR. WION:   Objection to the form.
18         A.   I've consented while objecting, consented
19      under objection, I don't know the proper way to phrase
20      that, but --
21         Q.   Do you agree, sir, that it's possible to
22      consent to something that you may not like?
23         A.   Yes.
24         Q.   Do you believe that your consent to the
25      pat-down procedures was involuntary?
```

Wion Declaration
Page 17

April 26, 2007

Page 78

```
 1              MR. WION:  Objection, mischaracterizes his
 2      testimony.  Objection to form.
 3          A.   Do I agree that my consent was voluntary, is
 4      that the question I heard?
 5          Q.   No.
 6              MR. AINSWORTH:  Would you reread the
 7      question.
 8                   (Reporter read back as requested.)
 9              MR. WION:  Same objection.
10          A.   Involuntary.
11              No.
12          Q.   So, Mr. Stark, do you agree with me that
13      when you attended the Seattle Seahawks games over the
14      last two seasons, knowing of the pat-down procedures,
15      that your consent to those pat-down procedures was
16      voluntary?
17              MR. WION:  Objection to the form,
18      mischaracterizes prior testimony.
19          A.   I'm sorry, just -- could you repeat the
20      question?
21                   (Reporter read back as requested.)
22              MR. WION:  Same objections.
23          A.   Beyond my counsel's objections, I would have
24      to say yes, or including his objections, or whatever
25      that all is.
```

1          Q.   And sir, if you decide to attend Seattle

2     Seahawks games in the future, and pat-down is a

3     requirement of attending those games, do you agree

4     with me that your consent to those pat-downs will be

5     voluntary?

6               MR. WION:  Objection to the form.

7          A.   Yes.

8               MR. AINSWORTH:  John?

9               I have no further questions.  Mr. Dunbar

10    will have some for you.

11                    E-X-A-M-I-N-A-T-I-O-N

12    BY MR. DUNBAR:

13         Q.   Mr. Stark, my name is John Dunbar, and I

14    represent the Public Stadium Authority and Lorraine

15    Hine.

16              Have you ever seen Ms. Hine's declaration in

17    this case?

18         A.   Possibly.  I'm...

19              MR. DUNBAR:  Why don't you go ahead and mark

20    that as our next one.

21                    (Exhibit-45 marked.)

22         Q.   You've been handed a copy of Exhibit-45,

23    correct?

24         A.   Yes.

25         Q.   And that is the declaration of Lorraine

Frederick Stark                                                    April 26, 2007

Page 120

SEATTLE DEPOSITION REPORTERS
600 UNIVERSITY STREET, SUITE 320
SEATTLE, WA 98101
(206) 622-6661

DATE:  April 30, 2007

CHRISTOPHER T. WION
Danielson Harrigan Leyh & Tollefson
999 Third Avenue, Suite 4400
Seattle, WA 98104

NOTICE OF READINESS FOR SIGNATURE

Case Name:        STARK v. THE SEATTLE SEAHAWKS
Venue:            USDC/WDW/SEATTLE
Cause No:         CV06-1719 JLR
Witness:          FREDERICK B. STARK
Taken:            April 26, 2007

Your office has received an e-transcript of the
deposition of FREDERICK B. STARK.
Please arrange for the witness to review the
deposition transcript, record any changes on
the Change Sheet, and sign (1) the Change Sheet
and (2) the Original Signature Page.

Please return the Change Sheet and the Original
Signature Page to this office within 30 days so
they may be filed with the original transcript.

                                    _____
                                    KERI A. ASPELUND, Reporter

cc:   File
      PAUL A. AINSWORTH, ESQ.
      JOHN J. DUNBAR, ESQ.
      Enclosure (envelope)

# EXHIBIT 5

Kathleen Stark                                                                April 26, 2007

Page 1

```
 1                 UNITED STATES DISTRICT COURT
 2               WESTERN DISTRICT OF WASHINGTON
 3                         AT SEATTLE
 4    ----------------------------------------------------
 5    FRED and KATHLEEN STARK, a        )
      married couple,                   )
 6                                      )
                        Plaintiffs,     )
 7                                      )
                  vs.                   ) No. CV06-1719 JLR
 8                                      )
      THE SEATTLE SEAHAWKS, FOOTBALL    )
 9    NORTHWEST, LLC, a Washington      )
      limited liability company,       )
10    FIRST & GOAL, INC., a Washington )
      corporation, THE WASHINGTON       )
11    STATE PUBLIC STADIUM AUTHORITY,   )
      a Washington municipal            )
12    corporation, and LORRAINE HINE,   )
      in her capacity as chair of the   )
13    Washington State Public Stadium   )
      Authority board of directors,     )
14                                      )
                        Defendants.     )
15
16    ----------------------------------------------------
17          Deposition Upon Oral Examination Of
18                   KATHLEEN J. STARK
19    ----------------------------------------------------
20                      1:15 p.m.
21                   April 26, 2007
22           1111 Third Avenue, Suite 3200
23                Seattle, Washington
24
25    REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661
```

Kathleen Stark                                                    April 26, 2007

Page 34

 1        A.   I think to volunteer for something is to

 2   step forward on your own initiative and volunteer to

 3   do something.

 4        Q.   I didn't ask what volunteering is, Mrs.

 5   Stark, I asked what the term "voluntary" means.

 6        A.   Voluntary.

 7             MR. WION:  Same objection.

 8        A.   Voluntary.  That's kind of hair splitting.

 9             Again, it's something you are willing to do

10   on your own volition.

11        Q.   Do you attend -- is your attendance at

12   Seattle Seahawks games voluntary?

13        A.   Yes.

14        Q.   No one makes you go to the Seattle Seahawks

15   games, do they?

16        A.   (Shakes head.)  No.  Sorry.

17        Q.   And you're aware that pat-downs are a

18   requirement to enter Qwest Field, correct?

19        A.   Correct.

20        Q.   And you are willing to go through the

21   pat-downs because you want to attend Seattle Seahawks

22   games, is that correct?

23             MR. WION:  Object to the form.

24        A.   That is correct.

25        Q.   And you're aware that you have the right to

Page 35

```
 1    not attend Seahawks games, correct?

 2         A.    Correct.

 3         Q.    And by not attending a Seattle Seahawks

 4    game, you would not have to be pat down, correct, by

 5    Seattle Seahawks security people?

 6         A.    Correct.

 7         Q.    Do you have an understanding of what the

 8    term "consent" means?

 9              MR. WION:  Object to the form.

10         A.    It means to agree to something.

11              MR. WION:  When you're at a good place, it

12    might be about time for a break.  It's been about an

13    hour.

14              MR. AINSWORTH:  Oh, it has, you're right.

15    Just let me ask a couple questions.

16              MR. WION:  Sure.

17              MR. AINSWORTH:  I'm a slow thinker, so I

18    have to apologize.

19              Actually, let's go ahead and take a break

20    now.

21              (Brief recess.)

22         Q.    Mrs. Stark, I believe I asked you whether in

23    2007 you discussed with your husband whether to renew

24    your season tickets for 2007; did you have any

25    discussions with your husband in 2006 as to whether to
```

Wion Declaration
Page 24

1      renew your season tickets for the 2006 season?

2             A.    No, basically I get the invoice, I tell him

3      the invoice is here, he says okay, and I buy them.

4             Q.    Up to this point, have you ever discussed

5      with your husband not renewing your season tickets

6      because of the pat-down policy at Qwest Field?

7             A.    No.

8             Q.    But you understand that this is one option

9      you have?

10            A.    Yes.

11            Q.    I asked you a few questions ago, it's been a

12     few minutes now, if you had an understanding of

13     consent, and if I understand you correctly, and

14     correct me if I'm mischaracterizing your testimony,

15     that you understand consent to mean something you

16     agree to do, is that --

17            A.    Yes.  Yes.

18            Q.    Do you understand that by attending a

19     Seattle Seahawks game where the pat-down policy is a

20     requirement, that you are consenting to be pat down to

21     attend the game?

22                  MR. WION:  Object to the form.

23            A.    I guess I don't really understand how you're

24     using the word consent.

25            Q.    Do you understand that you are agreeing to

Kathleen Stark                                                April 26, 2007

Page 37

```
1    be pat down as a requirement to enter the stadium?

2         A.   Yes.

3         Q.   And no one has ever threatened you to cause

4    you to agree to be pat down to attend a Seahawks game?

5         A.   Pardon me?

6         Q.   No one has ever threatened you in order to

7    get you to consent to attend -- I'm sorry, strike

8    that.

9              No one has ever threatened you in order to

10   get you to agree to the pat-down in order to attend a

11   Seahawks game?

12        A.   Well, the threat is that you're not allowed

13   to enter the stadium.

14        Q.   So, the consequence of not agreeing is you

15   cannot enter the stadium, is that right?

16        A.   That's the way I understand it.

17        Q.   But no one has threatened you with physical

18   force in order to get you to consent or agree?

19        A.   That's correct.

20        Q.   Have any police officers ever instructed you

21   that you must consent?

22        A.   No.

23        Q.   Why did you decide in November 2006 to file

24   this lawsuit against the Seattle Seahawks, FGI, the

25   Public Stadium Authority, and Lorraine Hine?
```

Wion Declaration
Page 26

Page 51

1          Q.    Go back on the record.

2                Mrs. Stark, Exhibit-54, which I've handed

3     you, which I previously stated I'll represent that on

4     page FGI 1280 this is the front and back of a ticket

5     from the 2004 season, and on page 1281 is the front

6     and back of a ticket from the 2005 season, and on page

7     1282 that's the front and back of a ticket from the

8     2006 season.

9          A.    All Cardinals, huh?

10         Q.    Are they all Cardinals?

11         A.    Yeah.

12         Q.    Oh, look at that.  My paralegal was

13    thinking.

14                MR. WION:  Or a Cardinals fan.

15                MR. AINSWORTH:  Or a Cardinals fan, exactly.

16         Q.    And I've enlarged the text so that we can

17    actually read it.  So, it's a little larger than may

18    be on the back of your ticket, so I'll also make that

19    representation.  My eyes can't read the back of a

20    ticket.  It's just the photocopy was hard.

21                Have you ever looked on the language on the

22    back of your ticket, Mrs. Stark?

23         A.    Never.

24         Q.    If you'd turn to the third page.

25         A.    (Complying.)

Wion Declaration
Page 27

Kathleen Stark                                                          April 26, 2007

Page 52

```
 1          Q.   If you'd go ahead and read to yourself the
 2     ticket terms for 2006.
 3          A.   (Complying.)
 4               MR. AINSWORTH:  Counsel, these were produced
 5     to you I believe it was last Friday, that packet I
 6     sent you of things.
 7               MR. WION:  I don't doubt it.
 8               For the record, Mrs. Stark does have her
 9     reading glasses with her.
10               THE WITNESS:  Yeah, well even then, it's
11     hard.
12          Q.   Have you gone through that, Mrs. Stark?
13          A.   Yeah.
14          Q.   I'm going to ask you to just focus on the
15     last three sentences on the ticket terms.  If you
16     could read that for the record, please.
17          A.   Is that the part that starts right after the
18     bold?
19          Q.   After the all caps, correct.
20          A.   Yeah, "You and your belongings may be
21     searched upon entry into Qwest Field, and prohibited
22     items may be confiscated.  By tendering this ticket
23     and entering Qwest Field, you consent to such searches
24     and waive any related claims that you might have
25     against the NFL, its Member Clubs, affiliates,
```

Wion Declaration
Page 28

Kathleen Stark                                                      April 26, 2007

Page 53

1      Seahawks, First & Goal and their agents.  If you elect

2      not to consent to these searches, you will be denied

3      entry into Qwest Field."

4            Q.    Have you ever read this language before,

5      Mrs. Stark?

6            A.    No.

7            Q.    Did you read this language before you

8      brought suit in this case?

9            A.    I don't recall.  Probably not.  Like I said,

10     I get out my tickets, I check the time and the date, I

11     put it in my little packet, and that's -- you know,

12     they run their thing over the bar code, and that's it.

13           Q.    What is your understanding of the three

14     sentences that you just read for the record?

15           A.    It means if you do not submit to a search,

16     then you can be denied entry, and you're not going to

17     get your money back either.

18           Q.    And you use the word "submit," Mrs. Stark,

19     what did you mean by submit?  The ticket doesn't say

20     submit, does it?

21           A.    No.

22           Q.    What does it say?

23           A.    You asked me what my understanding was, and

24     that's my understanding.

25           Q.    Okay.  Do you also understand that you have

Kathleen Stark                                                April 26, 2007

Page 54

1    waived any related claims you might have against the

2    NFL, its member clubs, Seahawks, or the First & Goal?

3            MR. WION:  Objection to the form, asks for a

4    legal conclusion.

5            MR. AINSWORTH:  I asked for her

6    understanding.

7        A.    Would you repeat that, please.

8            MR. AINSWORTH:  Can you read it back for

9    her.

10           (Reporter read back as requested.)

11           MR. WION:  Same objection.

12       A.    I don't know how to answer that.

13       Q.    Do you understand what it means to waive a

14   claim?

15           MR. WION:  Same objection.

16       A.    Yes.

17       Q.    What is your understanding of what to waive

18   a claim means?

19           MR. WION:  Same objection.

20       A.    It means that you've given up your right to

21   a claim.

22       Q.    So, having read this language, do you

23   understand that this states that by tendering the

24   ticket and entering Qwest Field, you have waived

25   claims against the Seahawks, and the NFL, and FGI?

Kathleen Stark                                                                    April 26, 2007

Page 55

```
 1              MR. WION:   Can you read back the question,

 2       please.

 3                   (Reporter read back as requested.)

 4              MR. WION:   Same objection.

 5         A.   Sorry, the answer I was thinking of is a

 6       little flippant.

 7              I understand that they think so, but I don't

 8       believe that's true.

 9         Q.   Why don't you believe that's true, Mrs.

10       Stark?

11         A.   Because I think I still have a right to

12       voice my opinion.

13         Q.   Mrs. Stark, does this state that you can't

14       voice your opinion, the ticket language here?

15         A.   No, you're right, sorry.

16              "By tendering this ticket and entering Qwest

17       Field, you consent to such searches and waive any

18       related claims that you might have against the NFL,

19       its Member Clubs, affiliates, Seahawks, First & Goal

20       and their agents.  If you elect not to consent to

21       these searches, you will be denied entry into Qwest

22       Field."

23              I don't know, I feel like I'm being asked to

24       be pinned down on some kind of a legal question that I

25       still have no way to answer knowledgeably.
```

www.seadep.com

SEATTLE DEPOSITION REPORTERS
(206)622-6661 * (800)657-1110

FAX: (206)622-6236

Wion Declaration
Page 31

Page 56

```
 1              Q.   I'm asking you for your understanding of
 2       what your ticket terms mean.  Your lawyer will argue
 3       with me later about the legality of that, but I am
 4       asking you for your understanding.
 5              MR. WION:  I think she's answered that.  Do
 6       you have another question that you're posing?
 7              Q.   I don't think she did answer it, so let me
 8       restate it again.
 9              My question is, do you understand that by
10       tendering your ticket and entering Qwest Field, you
11       consented to the searches and waived any claims
12       against the NFL, the Seattle Seahawks, and First &
13       Goal?
14              MR. WION:  Objection, compound, among other
15       objections, also calls for a legal conclusion about a
16       document she's read for the first time right here in
17       this room.
18              MR. AINSWORTH:  Counselor, can you stop the
19       long speaking objections.  I think objection to form
20       is all that is needed in this district.
21              MR. WION:  I think those objections are
22       appropriate, and I think she's answered your question.
23              MR. AINSWORTH:  I don't think she has.  If
24       you want, we can have the court reporter read it back.
25              MR. DUNBAR:  I think there have been some
```

Wion Declaration
Page 32

Page 57

1      kind of lengthy objections here, Chris, respectfully,

2      and I think at a certain point it's just quicker to

3      get an answer and move on.

4              MR. WION:  I'm happy to do that.  I've

5      attempted to have short, brief objections that are

6      appropriate, and we continue to have what appear to be

7      the same question or a minor modification of the same

8      question to which I have the same objections, but

9      apparently they're not improving the quality of the

10     question, so I'm attempting to provide you with the

11     information you might need to ask a question that is

12     not objectionable.

13             MR. DUNBAR:  You're not instructing the

14     witness to not to respond, correct?

15             MR. WION:  I am not doing that.  I have not

16     done that.

17             MR. DUNBAR:  I think at a certain point it

18     might be appropriate to say same objection, and then

19     allow the witness to respond, and we'll finish a

20     little sooner this afternoon.

21             MR. WION:  John, I did do that a number of

22     times, it did not appear to be effective, so I felt it

23     was appropriate to provide a slightly fuller

24     explanation of the objection.

25             MR. DUNBAR:  Okay.

Wion Declaration
Page 33

Kathleen Stark                                                                      April 26, 2007

```
 1                 MR. WION:  I think --
 2                 MR. DUNBAR:  You've done that now, so let's
 3      just move on.
 4                 MR. WION:  I understand.
 5                 MR. DUNBAR:  I hear you.  Let's just move
 6      on.
 7                 MR. WION:  I'm happy to move on.
 8                 MR. AINSWORTH:  All right, could you read
 9      back my question, because I'm sure Mrs. Stark has long
10      since forgotten what it was.
11                     (Reporter read back as follows:
12                         "My question is, do you understand
13                         that by tendering your ticket and
14                         entering Qwest Field, you consented to
15                         the searches and waived any claims
16                         against the NFL, the Seattle Seahawks,
17                         and First & Goal?")
18                 MR. WION:  Same objections.
19           A.    Yes.
20                 MR. AINSWORTH:  If you can give me a couple
21      minutes to go through my notes, and then I'll be ready
22      pass on to John.
23                 MR. WION:  Sure.
24                     (Brief recess.)
25           Q.    Mrs. Stark, have you had any communications
```

Wion Declaration
Page 34

Kathleen Stark                                                      April 26, 2007

Page 77

SEATTLE DEPOSITION REPORTERS
600 UNIVERSITY STREET, SUITE 320
SEATTLE, WA  98101
(206) 622-6661

DATE:  April 30, 2007

CHRISTOPHER T. WION
Danielson Harrigan Leyh & Tollefson
999 Third Avenue, Suite 4400
Seattle, WA  98104

NOTICE OF READINESS FOR SIGNATURE

Case Name:      STARK v. THE SEATTLE SEAHAWKS
Venue:          USDC/WDW/SEATTLE
Cause No:       CV06-1719 JLR
Witness:        KATHLEEN J. STARK
Taken:          April 26, 2007

Your office has received an e-transcript of the
deposition of KATHLEEN J. STARK.
Please arrange for the witness to review the
deposition transcript, record any changes on
the Change Sheet, and sign (1) the Change Sheet
and (2) the Original Signature Page.

Please return the Change Sheet and the Original
Signature Page to this office within 30 days so
they may be filed with the original transcript.

_____
KERI A. ASPELUND, Reporter

cc:  File
PAUL A. AINSWORTH, ESQ.
JOHN J. DUNBAR, ESQ.
Enclosure (envelope)

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRED and KATHLEEN STARK, a married
couple,

Case No. **CV6 1719** JLR

          Plaintiffs,

DECLARATION OF FRED STARK

     vs.

THE SEATTLE SEAHAWKS,
FOOTBALL NORTHWEST, LLC, a
Washington limited liability company,
FIRST & GOAL, INC., a Washington
corporation, THE WASHINGTON STATE
PUBLIC STADIUM AUTHORITY, a
Washington municipal corporation, and
LORRAINE HINE, in her capacity as chair
of the Washington State Public Stadium
Authority board of directors,

          Defendants

     I, Fred Stark, swear under penalty of perjury under the laws of the State of Washington,
to the following:

     1.     I have been a lifelong football fan. My wife, Kathleen, and I have been Seattle
Seahawks season ticket holders since 1991.

DECLARATION OF FRED STARK - 1

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

1      2.     Prior to the 2005 season, neither I nor Kathleen had ever been subjected to a

2  pat-down search at a Seahawks game, or any other NFL football game.

3      3.     On or about August 22, 2005, Kathleen and I attended a Seahawks pre-season

4  home game against the Dallas Cowboys. Upon arriving at the stadium, we were surprised to

5  learn that, as a condition of our entry to the game, we were required to submit to a pat-down

6  search. We verbally objected, but ultimately submitted to the pat-down as our only option to

7  attend the game. Upon inquiry, we were given no definitive answers to our questions. Only

8  that the pat-downs were required under a new NFL policy instituted to prevent terrorist suicide

9  bombers from detonating a hidden vest bomb. This was the first NFL game at which we were

10  subjected to a pat-down search.

11      4.     On or about September 2, 2005, we attended a second Seahawks pre-season

12  home game against the Minnesota Vikings. We again lodged our objection, but ultimately

13  submitted to a pat-down as a condition of our entry to the stadium.

14      5.     On September 18, 2005, we attended our first regular season Seahawks home

15  game for the 2005 regular season. Upon arriving at the Stadium, we discovered that the NFL's

16  pat-down policy was being enforced at Seahawks home games during the regular season as

17  well as the pre-season at Qwest Field (the "Stadium").

18      6.     At the entrance to the Stadium, we were stopped by a security officer and

19  informed that we were required to submit to a pat-down search as a condition of our entry to

20  the Stadium. We verbally objected, but ultimately submitted to a pat-down as our only option

21  to gain admittance to the game.

22      7.     We attended Seahawks 2005 regular season and post-season home games at the

23  Stadium on September 25, October 16, October 23, November 13, January 14, 2006 and

24  January 22.

25

DECLARATION OF FRED STARK - 2

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

1    8.    On February 5, 2006, we attended Superbowl XL at Ford Field, in Detroit,

2 Michigan. Although we were required to pass through metal-detectors similar to the kind used

3 at airports, we were not patted-down and did not observe any other ticket holders being patted

4 down.

5    9.    During the 2006 pre-season and current regular season, we attended home

6 games at the Stadium on August 12, August 31, September 17, September 24, October 22,

7 November 6, November 12, and November 27.

8    10.    Pat-downs at these home games have ranged from the non-existent, to a highly

9 intrusive, offensive, and humiliating full-body frisking.

10    11.    At one Seahawks home game on November 13, 2005, during a heavy

11 downpour, we were not subjected to a pat-down, nor did we observe any other ticket holders

12 being patted-down. Many people were wearing ponchos or other bulky wet-weather

13 protection. Had the stadium security officers conducted the pat-down searches under these

14 conditions, large crowds would have been forced to stand in the rain before being permitted

15 entry to the Stadium.

16    12.    At another Seahawks home game on July 31, 2006, I verbally objected to being

17 patted-down and asked to speak with the security officer's supervisor. Two supervisors were

18 called to discuss the situation. Rather than submitting to yet another pat-down, I removed my

19 shirt to show that I was not concealing anything. The original security officer whisked me

20 through the entrance without any further search.

21    13.    At the other end of the spectrum, at a home game on October 16, 2005, I was

22 subjected to a highly intrusive, offensive and humiliating full-body frisking. A security officer

23 ran his hands down my sides, reached around me and grasped my buttocks. He then felt both

24 my arms and across my chest. Then, he moved his hands towards my groin area, where he

25 found and handled the inhaler in my pant pocket that I carry to treat my asthma. The security

DECLARATION OF FRED STARK - 3

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700    FAX, (206) 623-8717

Wion Declaration
Page 39

1  officer then placed both of his hands around my left thigh, running them down to my sneaker

2  top, which he also felt thoroughly.  After this episode and other pat-downs, I have been left

3  feeling physically ill and emotionally unsettled for up to 24 hours afterwards.

4      14.    Except as described above, Kathleen and I were subjected to upper body pat-

5  downs at every Seahawks home game we attended in 2005 and 2006.  Many have been

6  cursory, unlikely to detect well-concealed contraband.  Each time, we verbally objected, but

7  ultimately submitted to the searches in order to attend the game.

8      15.    Kathleen and I intend to continue attending Seahawks home games for the

9  duration of the 2006 season, and intend to renew our season tickets in the future.  I understand

10  that if we do not renew our season tickets each year, we forfeit our right to purchase future

11  season tickets and would be put on a waiting list.

12      16.    I feel strongly that the pat-down searches at the Stadium are an unnecessary and

13  unwarranted intrusion into my right of privacy, and I strenuously object to being treated like a

14  criminal simply because I choose to attend a professional football game.

15      DATED this 27th day of November, 2006 in Seattle, Washington.

16

17

18  FRED STARK

19

20

21

22

23

24

25

DECLARATION OF FRED STARK - 4

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX. (206) 623-8717

Wion Declaration
Page 40