The Honorable James L. Robart

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STARK, et al. | Case No. CV06-1719 JLR |
| Plaintiffs, | SEAHAWKS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (STATE ACTION) |
| v. | |
| THE SEATTLE SEAHAWKS, FOOTBALL, NORTHWEST, LLC, et al., | **NOTED FOR CONSIDERATION:** May 18, 2007 |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Plaintiffs contend that state action can be established here under the "symbiotic relationship" or the "public function" test. They do so even though there is no dispute that the challenged conduct -- the NFL pat-down policy -- was conceived, designed, implemented, and paid for *solely* by private parties without even consulting PSA; that PSA did not approve, compel, encourage or ratify the pat-down procedures; and that PSA has no responsibility for *any* operations at Qwest Field, much less responsibility for security on NFL game days.

Despite having completed discovery, including depositions of all of the declarants, plaintiffs offer no evidence -- none -- to counter the facts set forth in defendants'

---

Seahawks Defendants' Reply in Support of
Motion for Summary Judgment (State Action)

Case No. CV06-1719 JLR

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

Dockets.Justia.com

motions for summary judgment, much less to support plaintiffs' bare allegations of state action. On this issue, "there is no genuine issue of material fact and [the defendants] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

When seeking to hold private parties responsible for an alleged constitutional violation, the Court must "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr*, 192 F.3d 826, 835 (9th Cir. 1999); *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.").

The undisputed facts here reinforce that governing presumption. The record demonstrates conclusively that there is no "close nexus" between the State and the challenged pat-downs, as required under the symbiotic relationship test. And a consistent line of holdings confirms that neither operating a football stadium nor providing security is a "traditionally and exclusively governmental function," as required under the public function test. Accordingly, defendants are entitled to summary judgment.[1]

I.  **BECAUSE UNDISPUTED FACTS ESTABLISH THAT THEY ARE NOT STATE ACTORS, THE SEAHAWKS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.**

   A.  **There Is No "Symbiotic Relationship" Between PSA and FGI.**

In attempting to show a "symbiotic relationship" between PSA and FGI, plaintiffs rely almost entirely on the Supreme Court's decision in *Burton v. Wilmington*

---

[1] Plaintiffs argue that the factual nature of the state action determination, for which they cite *Brentwood Academy v. Tennessee Secondary School. Athletic Association*, 531 U.S. 288 (2001), somehow renders it inappropriate for summary judgment. (Resp. at 13, 14-15.) But *Brentwood* came to the Supreme Court on summary judgment, and the Court expressed no concern in resolving the state action issue on that basis. 531 U.S. at 293. Here, as in *Brentwood,* the material facts are undisputed and summary judgment is therefore appropriate. Fed. R. Civ. P. 56(c).

Seahawks Defendants' Reply in Support of Motion
for Summary Judgment (State Action)

Case No. CV06-1719 JLR

2

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

*Parking Authority,* 365 U.S. 715 (1961). Plaintiffs' broad reading of *Burton* cannot be reconciled with "[s]ubsequent Supreme Court decisions" that "have read *Burton* narrowly," *see Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1451 (10th Cir. 1995), especially where, as here, the issue is whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity . . . ." *Kirtley v. Rainey,* 326 F.3d 1088, 1093 (9th Cir. 2003). Indeed, plaintiffs have not even acknowledged that, as the Supreme Court itself has noted, "later cases have refined the vague 'joint participation' test embodied in that case." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 57 (1999).

Those later cases have made clear that in order to establish a symbiotic relationship based on "joint participation," "mere approval or acquiescence" by the state in the challenged conduct is insufficient. *Blum v. Yaretsky,* 457 U.S. 991, 1004-05 (1982). Nor is it sufficient that the state profits *from the relationship*; to establish a symbiotic relationship, the plaintiff must prove that the state profits *from the challenged activity. See, e.g., Morse v. N. Coast Opportunities, Inc.,* 118 F.3d 1338, 1343 (9th Cir. 1997); *see also Rendell-Baker v. Kohn,* 457 U.S. 830, 843 (1982) (explaining that in *Burton* the "State profited from the restaurant's *discriminatory conduct*") (emphasis added).

The Seahawks Defendants demonstrated, with a sworn affidavit from PSA's Executive Director, that PSA does not profit from the pat-down inspections. (See Seahawks' Defs. Mot. for Summ. J. at 3.) Offering no contrary evidence, plaintiffs ask the Court to disregard this evidence because it is "conclusory, self-serving, and unsupported." (Resp. at 22.) But the affidavit is plainly admissible, based on personal knowledge from a competent witness (whose deposition was taken by plaintiffs). Even if that were not the case, summary

Seahawks Defendants' Reply in Support of Motion
for Summary Judgment (State Action)

Case No. CV06-1719 JLR

3

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

judgment would still be warranted; where the party opposing summary judgment bears the burden of proving a fact at trial -- as plaintiffs do here with respect to all elements of their claims, including state action, *see Lee v. Katz*, 276 F.3d 550, 553-54 (9th Cir. 2002) -- "the moving party need only point out that there is an absence of evidence to support the nonmoving party's case." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). With respect to an asserted symbiotic relationship, plaintiffs have not offered -- nor could they offer -- any such evidence here.

Plaintiffs suggest a number of ways in which PSA profits *from its lease with FGI* (*see* Resp. at 10-11), but the issue here, as noted before, is whether *PSA* profited *from the pat-downs. See Morse,* 118 F.3d at 1343 ("no symbiotic relationship where government did not profit from *alleged unconstitutional conduct* of a private entity" (emphasis added)); *Rendell-Baker,* 457 U.S. at 838. Because plaintiffs have offered no evidence to show that PSA profited from the pat-downs themselves,[2] there is no symbiotic relationship here. Indeed, on similar facts, the Tenth Circuit found no symbiotic relationship between the state and a private security firm because, among other reasons, the state did not profit from *the challenged pat-*

---

[2] Plaintiffs assert that PSA benefits from the pat-downs because they make fans feel more secure, which in turn may lead to increased attendance at Seahawks' games (an ironic consequence, given plaintiffs' position), which in turn benefits PSA to the extent that it collects and remits to the state a portion of a general ticket surcharge (*i.e*., a surcharge unrelated to the pat-downs or to stadium security). (Resp. at 21-22.) Of course, the same logic would suggest that the Seahawks engage in state action whenever they sign a prominent free agent or draft a promising rookie; those activities may also lead to increased attendance, which in turn could lead to similar indirect "benefits" for PSA. No case of which we are aware holds that such an attenuated "benefit" would satisfy the constitutional standard.

In any event, plaintiffs' assertion is based on speculation reflected in a deposition *question;* the *question* speculated that "*if* fans didn't feel secure, . . . they *might* not come in as great of numbers to NFL games." (Resp. at 21. (emphasis added).) Such speculation, even if it were unambiguously reflected in actual testimony, does not create a genuine issue of fact. *See R.W. Beck & Assocs. v. City and Borough of Sitka*, 27 F.3d 1475, 1481 n.4 (9th Cir. 1994) ("Arguments based on conjecture or speculation are insufficient to raise a genuine issue of material fact, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

---

Seahawks Defendants' Reply in Support of Motion
for Summary Judgment (State Action)

Case No. CV06-1719 JLR

4

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

*downs. See Gallagher,* 49 F.3d at 1453 (no symbiotic relationship where "the record does not establish that *the allegedly unconstitutional conduct* generated profits that were indispensable elements in the University's financial success") (emphasis added).[3]

Although the Court need go no further, plaintiffs' symbiotic relationship argument also fails to account for post-*Burton* case law requiring a "close nexus" between the government and the challenged action. Plaintiffs attempt to avoid this requirement by accusing defendants of "conflat[ing] the nexus analysis with the symbiotic relationship analysis." (Resp. at 20.) Tellingly, plaintiffs cite only an out-of-circuit district court decision to support this asserted distinction (*id.* (citing *Richards v. Lowell*, 472 F. Supp. 2d 51 (D. Mass 2007))); decisions from the Supreme Court, Ninth Circuit, and Western District of Washington dictate a different result.

The Supreme Court has unambiguously held that a close nexus between the state and the challenged conduct is *always* necessary for state action, regardless of which test is applied. "[S]tate action may be found, *if and only if*, there is such a close nexus *between the State and the challenged action* that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001) (emphasis added); *see also Single Moms Inc. v. Mont. Power Co.,* 331 F.3d 743, 747 (9th Cir. 2003); *Kabbani v. Council House, Inc,* 406 F. Supp. 2d 1189, 1194 (W.D. Wash. 2005) (Lasnik, C.J.). In *Kabbani,* Chief Judge Lasnik explained:

---

[3] Plaintiffs attempt to distinguish the Tenth Circuit's decision on the ground that "*Gallagher* was not a case involving a symbiotic relationship." (Resp. at 20.) That, of course, is precisely our point. There was no symbiotic relationship in *Gallagher* because, among other reasons, the state did not profit from the pat-downs performed at the rock concert. *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1453 (10th Cir. 1995). The same is true here.

Seahawks Defendants' Reply in Support of Motion
for Summary Judgment (State Action)

Case No. CV06-1719 JLR                           5

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

> the purpose of the state action requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains. Therefore, the crucial relationship for a finding of state action is between the governmental entity and the action taken by the private entity, not the [relationship] between the governmental entity and the private actor.

406 F.2d at 1194. (citations and quotations omitted; alteration and emphasis in original).[4]

Plaintiffs do not argue that PSA is involved in conducting pat-downs or in implementing the pat-down policy. Indeed, plaintiffs acknowledge that the Seahawks Defendants implemented the policy at the direction of the NFL. (Resp. at 11.) Because PSA has no involvement in the pat-down policy, there is no "close nexus" and thus no symbiotic relationship.

**B. Neither Operating a Football Stadium Nor Providing Security Is An Exclusively Governmental Function.**

Plaintiffs also contend that state action may be found because PSA "delegated a public function" to the Seahawks Defendants. (Resp. at 23.) But plaintiffs offer no evidence or authority for the proposition that the function at issue here -- whether defined in terms of

---

[4] Even if *Richards* stated the law of this Circuit, plaintiffs' symbiotic relationship argument would fail. *Richards* held that the most "salient" factor in evaluating a symbiotic relationship is "'the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs.'" *Richards v. Lowell,* 472 F. Supp. 2d 51, 75 (D. Mass. 2007) (quoting *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 21 (1st Cir. 1999). The court further explained that evidence of "profits" is relevant only to the extent that they "'aris[e] from the challenged conduct rather than from the relationship as a whole'" and emphasized that, in order to find a close nexus, the "'the challenged conduct must be indispensable to the financial success of the joint project.'" *Richards,* 472 F. Supp. 2d at 75 (quoting *Perkins,* 196 F.3d at 21). Neither factor is present here.

Plaintiffs' reliance on *Halet v. Wend Investments. Co.*, 672 F.2d 1305 (9th Cir. 1982) and *Geneva Towers Tenants Ass'n v. Federated Mortgage Investors,* 504 F.2d 483, 487-88 (9th Cir. 1974), both for the proposition that there is sufficient evidence of interdependence to establish state action, is similarly misplaced. Both *Halet* and *Geneva Towers* were decided before the Supreme Court held in *Blum* and in *Rendell-Baker*, that even substantial public financing, support, and regulation are insufficient to establish state action. *See also San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 544 (1987) ("[t]he Government may subsidize private entities without assuming constitutional responsibility for their actions").

Seahawks Defendants' Reply in Support of Motion
for Summary Judgment (State Action)

Case No. CV06-1719 JLR

6

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

leasing or operating a football stadium, "managing a publicly owned facility" (*id*. at 24), or providing security -- is "both traditionally and *exclusively* governmental." *Kirtley,* 326 F.3d at 1093 (quotations omitted) (emphasis added); *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352 (1974).

Instead, plaintiffs emphasize the public benefits from defendants' operation of Qwest Field. But the mere fact that the defendants "perform[]a function which serves the public does not make its acts state action." *Rendell-Baker,* 457 U.S. at 842 (footnote omitted). Rather, "[t]he public function test is satisfied only on a showing that the function at issue is both traditionally and *exclusively* governmental." *Kirtley,* 326 F.3d at 1093 (citations and quotations omitted) (emphasis added); *Jackson,* 419 U.S. at 352. And the Supreme Court has made clear that "[w]hile many functions have been traditionally performed by governments, very few have been '*exclusively* reserved to the State.'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (emphasis added).

Examples of functions deemed "exclusively reserved to the State" include holding elections (*Terry v. Adams*, 345 U.S. 461, 484 (1953)); operating a town (*Marsh v. Alabama*, 326 U.S. 501, 507-09 (1946)); and serving as an international peacekeeping force (*Dobyns v. E-Systems, Inc.*, 667 F.2d 1219, 1226-27 (5th Cir. 1982)). In contrast, functions performed by governments not deemed "exclusively reserved to the State" include operating schools (*Rendell-Baker,* 457 U.S. at 842); operating a military academy (*Mentavlos v. Anderson*, 249 F.3d 301, 317 (4th Cir. 2001)); operating nursing homes (*Blum,* 457 U.S. at 1011); and maintaining military aircraft (*Vincent v. Trend W. Tech. Corp.,* 828 F.2d 563, 569 (9th Cir. 1987)).

Seahawks Defendants' Reply in Support of Motion for Summary Judgment (State Action)

Case No. CV06-1719 JLR

7

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

Even if the Court were to accept plaintiffs' mistaken premise that the relevant function is operating a publicly owned stadium, the Supreme Court's decision in *Flagg* squarely demonstrates on which side of the line that function falls. There, the Court squarely rejected an argument that "the operation of a park for recreational purposes" is an exclusively public function, observing that such a holding could not be justified "in the teeth of the experience of several American entrepreneurs who amassed great fortunes by operating parks for recreational purposes." *Id.* at 160 n. 8.[5] The same principle applies to operating football stadiums, many of which are owned and/or operated by private entities, including private colleges as well as NFL clubs themselves.

But plaintiffs' characterization of the relevant function is incorrect. In *Gallagher,* plaintiffs argued that "safeguarding public property" was the relevant function, but the court deemed that characterization "too broad," holding that the function at issue was "more accurately described as providing security" at a government owned facility. *Gallagher,* 49 F. 3d at 1457. And a consistent line of cases has held that providing security at government owned facilities is not an *exclusively* governmental function. *See Gallagher,* 49 F.3d at 1457 ("the mere performance of security functions . . . is not traditionally an exclusive function of

---

[5] Neither of the two cases on which plaintiffs principally rely supports the proposition that leasing and operating a publicly-owned stadium is traditional and exclusive governmental function. (Resp. at 23.) As noted in the text, *Flagg* itself rejected the argument that *Evans v. Newton,* 382 U.S. 296 (1966), stands for the "broad doctrine" that operation of a park for recreational purposes satisfies the public function test. *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 160 & n.8 (1978). In *Lee v. Katz*, 276 F.3d 550, 555-56 (9th Cir. 2002), the issue was whether the "regulation of free speech in a public forum" constituted a traditionally and exclusively governmental function.

Seahawks Defendants' Reply in Support of Motion
for Summary Judgment (State Action)

Case No. CV06-1719 JLR

8

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291

the state." (footnote omitted)); *Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996) (security at public housing facility). Plaintiffs do not argue otherwise.

Because defendants are not engaged in any exclusively governmental function, plaintiffs cannot rely on the "public function" test to establish state action.

## CONCLUSION

Because undisputed facts establish that the pat-downs at Qwest Field are not state action, plaintiffs' constitutional challenges must fail. Accordingly, the Seahawks Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

 /s/ Paul A. Ainsworth

| *Of Counsel:* | Tim J. Filer, WSBA #16285 |
| --- | --- |
| Gregg H. Levy | Jeffrey S. Miller, WSBA #28077 |
| Paul A. Ainsworth | FOSTER PEPPER PLLC |
| COVINGTON & BURLING LLP | 1111 Third Avenue, Suite 3400 |
| 1201 Pennsylvania Ave, NW | Seattle, WA 98101 |
| Washington, DC 20004 | tel: 206.447.4400 |
| tel: 202.662.6000 | fax: 206.447.9700 |
| fax: 202.662.6291 | |

May 18, 2007

Seahawks Defendants' Reply in Support of Motion for Summary Judgment (State Action)

Case No. CV06-1719 JLR

9

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000 FAX: 202.662.6291

**CERTIFICATE OF SERVICE**

I HEREBY certify that on May 18, 2007, I electronically filed the foregoing Reply in Support of the Seahawks Defendants' Motion for Summary Judgment (State Action) with the Clerk of the Court using the ECM/CMF system which will send notification of the filing to Timothy G. Leyh, Esq. and Christopher T. Wion, Esq. of Danielson Harrigan Leyh & Tollefson LLP, 999 Third Avenue, Suite 4400, Seattle, WA 98104, Counsel for Plaintiffs, and John J. Dunbar of Ball Janik LLP, 101 Southwest Main Street, Suite 1100, Portland, OR 9720, Counsel for Defendants the Washington State Public Stadium Authority and Lorraine Hine, in her official capacity as Chairperson of the Washington State Public Stadium Authority board of directors.

    /s/ Paul A. Ainsworth
Paul A. Ainsworth
COVINGTON & BURLING LLP
1201 Pennsylvania Ave, N.W.
Washington, DC. 20004
tel: 202.662.5416
fax: 202.662.6291

Seahawks Defendants' Reply in Support of Motion for Summary Judgment (State Action)

Case No. CV06-1719 JLR

10

**COVINGTON & BURLING LLP**
1201 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20002
TEL: 202.662.6000  FAX: 202.662.6291