THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRED and KATHLEEN STARK, a married couple,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>THE SEATTLE SEAHAWKS, FOOTBALL NORTHWEST, LLC, a Washington limited liability company, FIRST & GOAL, INC., a Washington corporation, THE WASHINGTON STATE PUBLIC STADIUM AUTHORITY, a Washington municipal corporation, and LORRAINE HINE, in her capacity as chair of the Washington State Public Stadium Authority board of directors,<br><br>　　　　　　Defendants. | Case No. CV06 1719 JLR<br><br>**DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION)**<br><br>NOTE ON MOTION CALENDAR: May 18, 2007<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs fail to come forward with evidence that satisfies the requirements for state action, and summary judgment should be granted. There is no evidence that PSA or Ms. Hine are involved in the patdowns in any way. Plaintiffs argue that this case satisfies the symbiotic relationship and public function tests, but plaintiffs fail to meet their burden to come forward with evidence that creates a disputed issue of material fact on either test. Summary judgment should be granted.

Page 1 -  **DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR**    568396\4

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

I. **FGI'S ACTIONS ARE NOT ATTRIBUTABLE TO PSA OR MS. HINE UNDER A SYMBIOTIC RELATIONSHIP THEORY.**

Plaintiffs' symbiotic relationship arguments rely heavily on *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), but subsequent decisions have cut back on *Burton* and on lower court decisions that had relied on it. For example, when considering a Ninth Circuit decision that had relied on *Burton*, the Ninth Circuit stated that its previous decision had been "implicitly overruled" by subsequent Supreme Court decisions. *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1341 (9th Cir. 1997), *overruling Ginn v. Matthews*, 533 F.2d 477, 480 (9th Cir. 1976). The Ninth Circuit noted that after *Burton*, the Supreme Court "has since made it clear that governmental funding and extensive regulation without more will not suffice to establish governmental involvement in the actions of a private entity." *Morse*, 118 F.3d at 1341, *citing Rendell-Baker v. Kohn*, 457 U.S. 830, 842-43 (1982). The court further stated:

> [T]he "symbiotic relationship" test of *Burton*, upon which [our previous decision] relied, was not satisfied by a mere showing of extensive governmental funding and regulations. *Rendell-Baker*, 457 U.S. at 842. The Court explained that *Burton's* symbiotic relationship test required additional evidence of interdependence, such as the physical location of the private entity in a building owned <u>and operated</u> by the State, and a showing that the State profited from the private entity's discriminatory conduct.

*Id.* (emphasis added).

In this case, plaintiffs argue that PSA provided funds for stadium construction, and that PSA oversees certain public benefits, such as providing affordable tickets. But government funding, and even "extensive" governmental regulation, would not be not enough to create state action. *Id.* As for whether PSA owns and operates Qwest Field, it is true that PSA owns the stadium, but FGI operates the stadium as its "sole master tenant" and is the stadium's

Page 2 - **DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR**    568396\4

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

1  "exclusive" operator. (Kawasaki Dec., Ex. A at p. 11, Master Lease § 2.1).[1] There also is no

2  evidence that PSA has profited from the patdowns. (Kawasaki Dec. ¶ 12).

3  Plaintiffs dispute the testimony by the PSA's Executive Director that PSA has not

4  profited from the patdowns, (Kawasaki Dec. ¶ 12), but plaintiffs have produced no evidence that

5  creates a material factual dispute on this issue. (*See* Seahawks' Reply in Supp. of Summ.

6  Judgment ("Seahawks Reply") 4). Plaintiffs fail to come forward with evidence that PSA is

7  receiving any income as a result of the patdowns.

8  PSA's rental income is fixed, and does not depend on ticket sales. (Kawasaki Dec. ¶ 9).

9  Nevertheless, plaintiffs appear to argue that PSA profits from the patdowns due to five types of

10  revenue that PSA or the State of Washington receive from FGI. The fact that PSA receives

11  income from its relationship with FGI does not itself create state action; the income must be

12  derived from the patdowns. (*See* Seahawks' Reply 4-6). None of the income from FGI satisfies

13  this requirement.

14  First, plaintiffs argue that PSA profits from a ticket surcharge that FGI collects on the

15  sale of each Seahawks' ticket, (Pls. Mem. 18, 21-22), but plaintiffs fail to come forward with

16  evidence that the surcharge payments are linked to the patdowns. The ticket surcharge is used to

17  pay a tax obligation owed by PSA, a deferred sales tax on stadium construction costs. *See*

18  RCW 36.102.070. The amount due is $37 million. (Dunbar Dec., Ex. E at p. 4).[2] Pursuant to a

19  1999 agreement, adopted well before the patdowns, the surcharge percentage is to be set so as to

20  retire the tax obligation.[3] The surcharge is still 1.2%, the same rate in the 1999 agreement.

21

22

---

23  [1] References to the "Kawasaki Dec." are to the Declaration of Ann Kawasaki-Romero in Support of Motion for Summary Judgment by Defendants PSA and Hine.

24  [2] References to the "Dunbar Dec." are to Defendants PSA and Lorraine Hine's Reply In Support of

25  Motion for Summary Judgment (State Action).

26  [3] Kawasaki Dec., Ex. A at pp. 138-139, Second Amendmt. to Master Lease § 18.2.3.

Page 3 - **DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR**    568396\4

Plaintiffs seem to argue that total surcharge amounts collected might have increased as a result of the patdowns, but plaintiffs fail to come forward with any such evidence. Plaintiffs also fail to explain how any hypothetical increase in total surcharges collected could provide a financial benefit to PSA. PSA may use the ticket surcharge money "solely" to pay the deferred sales tax obligation, the $37 million owed.[4] Any hypothetical increase in collected surcharges beyond that amount will not benefit PSA. To the extent plaintiffs argue that, without the patdowns, total collected surcharges hypothetically might have fallen, that argument also fails. FGI must cover a shortfall in collected surcharges. When the last deferred sales tax payment is made, if the surcharges collected are insufficient to pay the tax debt, then FGI is obligated to pay the remaining tax owed.[5] There is no evidence that PSA or Ms. Hine "profit from the patdowns" through collection of the surcharge.

Second, plaintiffs argue that the state profits from its relationship with FGI because the state common schools fund receives revenue from the Exhibition Center (also called the Event Center), a building next to the football stadium. (Pls. Mem. 18). Plaintiffs have come forward with no evidence that these revenues are linked to the patdowns. In fact, revenue from the Exhibition Center on NFL game days is not shared with the common school fund. (Kawasaki Dec. ¶ 9, Ex. A at pp. 24-25, Master Lease, §§ 6.1.1.4, 6.1.2; Dunbar Dec., Ex. B at pp. 3-5). Plaintiffs also fail to mention that patdowns do not even occur before entry to the Exhibition Center. (Dunbar Dec., Ex. F at p. 3). PSA and Ms. Hine do not "profit from the patdowns" through Exhibition Center revenues.

---

[4] Kawasaki Dec., Ex. A at pp. 139-140, Second Amendmt. to Master Lease, § 18.2.4.

[5] The Master Lease provides that the surcharge is "intended to enable PSA to collect sufficient funds . . . to meet its obligations" to pay the Deferred Sales Tax, up to $37 million less any other deferred sales tax funds PSA had deposited. (Kawasaki Dec., Ex. A at pp. 139-140, Second Amendmt. to Master Lease, § 18.2.4). The Master Lease provides that when the last deferred sales tax installment is paid, FGI shall remit to PSA "such amount as may be required to timely pay in full the remaining Deferred Sales Tax," up to that same stated amount. (*Id.*). Thus, if the collected surcharge "amount is not sufficient to pay the total bill for deferred sales tax, FGI will have to supplement that." (Dunbar Dec., Ex. D at pp. 3-4).

Page 4 -  DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR     568396\4

Third, plaintiffs argue that PSA benefits from the relationship with FGI through the sale of naming rights for Qwest Field. (Pls. Mem 18). The naming rights agreement was approved in 2004, before the patdowns began in 2005. Naming rights payments are scheduled as fixed amounts, (Dunbar Dec., Ex. A at p. 7, Approval of Naming Rights Agreement), and patdowns have no impact on what PSA receives.[6] Plaintiffs have come forward with no evidence that naming rights revenue to the PSA has increased due to the patdowns. PSA and Ms. Hine do not "profit from the patdowns" through naming rights income.

Fourth, plaintiffs point out that PSA receives income through the sale of seat licenses. (Pls. Mem. 11). The seat license income is deposited in a PSA account and remitted to FGI; PSA receives only the interest on those revenues before the account is swept. (Dunbar Dec., Ex. E at p. 6).[7] Plaintiffs have come forward with no evidence that this income results from the patdowns.

Finally, having failed to find a link between the patdowns and PSA revenues, plaintiffs turn to a potential source of future State revenue. Plaintiffs point out that the State will receive 10% from the sale of the Seahawks *if* the Seahawks are sold within 25 years after construction

---

[6] Naming rights income funds certain work, but if there is a shortfall, FGI must cover it. Naming rights income to PSA is placed in an account that is "used only for Major Maintenance and Modernization Improvements" at Qwest Field, but if the naming rights funds prove insufficient to pay for Major Maintenance and Modernization Improvements, FGI must fund the difference needed for such work. (Kawasaki Dec., Ex. A at pp. 48-49, Master Lease, § 11.5-11.6). PSA is "responsible for funding" this work, but only "to the extent of funds available in the Naming Rights Account and the Capital Improvements Account." (*Id*. § 11.5). FGI is "responsible … for funding Major Maintenance and Modernization Improvements in excess of the funds available" in these accounts, and the "excess shall be paid by FGI …." (*Id*.). To date, FGI's expenditures on such work have significantly outstripped funds in the Naming Rights Account, and all of the naming rights income will be paid back to FGI. (Dunbar Dec., Ex. E at p. 6).

[7] From January 1, 2004, PSA has received $17,474 in interest from the license account. (Dunbar Dec., Ex. C).

Page 5 - **DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR**   568396\4

bonds were issued.[8] (Pls. Mem. 22). There is no evidence that any sale is contemplated at this time, and no one knows if the patdown policy will still be in effect at the time of any such sale, which could occur many years from now. Once again, plaintiffs fail to come forward with any evidence to support their argument that PSA or Ms. Hine profited from the patdowns.

Plaintiffs have failed to come forward with evidence that PSA or Ms. Hine profited from the private entity's challenged conduct. *Morse*, 118 F.3d at 1341. Plaintiffs' symbiotic relationship arguments fail to raise a material issue of fact.

## II. THERE IS NO EXCLUSIVELY PUBLIC FUNCTION AT ISSUE HERE.

Plaintiffs' efforts to satisfy the public function test also fail. To escape summary judgment by relying on a public function argument, plaintiffs were required to come forward with evidence that FGI is performing a traditional and exclusively governmental function. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Plaintiffs fail to do so.

In an effort to bolster their argument, plaintiffs seek to rely on the *Katz* decision, but *Katz* does not support plaintiffs.[9] As *Katz* explains, "[i]t is important to identify the function at issue" because a private party "may be a State actor for some purposes but not for others." 276 F.3d at 555 n.5 (emphasis added). When FGI operates a public stadium, hosts NFL games, or provides security at a sporting event, FGI is not performing an exclusively governmental function. Plaintiffs have come forward with no evidence that stadium operations, professional sporting

---

[8] The Stadium Act provides that bonds could issue upon a certification that included that statement that:

"A nonparticipatory interest in the professional football team has been granted to the state beginning on the date on which bonds are issued under this section which only entitles the state to receive ten percent of the gross selling price of the interest in the team that is sold if a majority interest or more of the professional football team is sold within twenty-five years of the date on which bonds are issued under the [this] section. The ten percent shall apply to all preceding sales of interests in the team which comprise the majority interest sold. This provision shall apply only to the first sale of such a majority interest. The ten percent must be deposited in the permanent common school fund. If the debt is retired at the time of the sale, then the ten percent may only be used for costs associated with capital maintenance, capital improvements, renovations, reequipping, replacement, and operations of the stadium and exhibition center." RCW 43.99N.020(2)(b)(vi).

[9] *Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002).

Page 6 - DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR    568396\4

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

events, or security at sporting events satisfy the "exclusively governmental" requirement. In fact, the undisputed evidence shows just the opposite. (Kawasaki Dec. ¶ 13).

Plaintiffs point out that PSA monitors certain public benefits, such as affordable seats, but this does not satisfy the public function requirement. The private school in *Rendell-Baker* also provided a public benefit, by schooling troubled children referred by city and state government. Despite that fact, there was no state action, because plaintiffs failed to satisfy the requirement that the public function must be one that is traditionally the "exclusive prerogative" of the state. 457 U.S. at 842. Plaintiffs here fail for the same reason, making summary judgment appropriate.

### III. THERE IS NO BASIS FOR RELIEF AGAINST PSA OR MS. HINE.

Plaintiffs argue that there is sufficient state action by PSA and Ms. Hine to allow relief against them. But "state action may be found, if and only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001). In this case, it is undisputed that PSA and Ms. Hine are not participating in the patdowns, in any way. Plaintiffs have come forward with no evidence of such a nexus. There is no basis for attributing FGI's conduct to PSA or Ms. Hine, or for granting relief against them.

Page 7 - DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR     568396\4

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

1  IV.  **CONCLUSION.**

2      The motion for summary judgment by PSA and Ms. Hine should be granted.

3  DATED: May 18, 2007                Respectfully submitted,

4

5                                         By: /s/ John J. Dunbar

John J. Dunbar, WSBA No. 15509
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Telephone: (503) 228-2525
Facsimile: 503-226-3910
Email: jdunbar@bjllp.com

Attorneys for Defendants The Washington State Public Stadium Authority and Lorraine Hine

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Page 8 - **DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION), Case No. CV06 1719 JLR**   568396\4

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 18th day of May, 2007, I served a true and correct copy of the foregoing **DEFENDANTS PSA AND LORRAINE HINE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (STATE ACTION),** by the method shown below, addressed to the following named persons at their last-known addresses on the date shown above:

| | |
|---|---|
| Timothy G. Leyh, Esq.<br>Christopher T. Wion, Esq,<br>Danielson Harrigan Leyh & Tollefon LLP<br>999 Third Avenue, Suite 4400<br>Seattle, Washington 98104<br>    Counsel for Plaintiffs | BY EMAIL AND FEDERAL EXPRESS |
| Gregg H. Levy, Esq.<br>Paul A. Ainsworth, Esq.<br>Covington & Burling LLP<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004 | BY EMAIL AND FEDERAL EXPRESS |
| Jeffrey Miller, Esq,<br>Timothy Filer, Esq.<br>Foster Pepper PLLC<br>1111 Third Avenue, Suite 3400<br>Seattle, Washington 98101<br>    Attorneys for Defendants The Seattle Seahawks,<br>    Football Northwest LLC and First & Goal, Inc. | BY EMAIL AND FEDERAL EXPRESS |

/s/ John J. Dunbar
John J. Dunbar, WSBA No. 15509
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Phone: (503) 228-2525
Fax: (503) 226-3910
Email: jdunbar@bjllp.com

Attorneys for Defendants The Washington State Public Stadium Authority and Lorraine Hine

Page 1 - **CERTIFICATE OF SERVICE**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\568396\4